IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-304

**JURY TRIAL DEMANDED**

ROBERT HARRISON, on behalf of himself, the ENVISION MANAGEMENT HOLDING, INC. ESOP, and all other similarly situated individuals,

        Plaintiffs,

v.

ENVISION MANAGEMENT HOLDING, INC. BOARD OF DIRECTORS, ENVISION MANAGEMENT HOLDING, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, ARGENT TRUST COMPANY, DARREL CREPS, III, PAUL SHERWOOD, JEFF JONES, AARON RAMSAY, TANWEER KAHN, and JOHN and JANE DOES 1 to 15,

        Defendants.

---

## COMPLAINT

---

## I.      INTRODUCTION

1.    Plaintiff Robert Harrison brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking plan-wide relief on behalf of the Envision Management Holding, Inc. Employee Stock Ownership Plan (the "Envision

ESOP" or the "ESOP") and on behalf of a class of participants (and their beneficiaries) vested in the ESOP.

2.     Envision Management Holding, Inc. (the "Company" or "Envision") employs approximately 1,000 individuals and was privately owned by Defendants Darrel Creps III, Paul Sherwood, and Jeff Jones (collectively, the "Sellers" or "Seller Defendants") until December 2017. As discussed in greater detail below, Envision owns – and is distinct from – Envision Management, LLC. In December 2017, the Seller Defendants created the Envision ESOP for the purpose of purchasing 100% of the Sellers' private Envision stock (the "ESOP Transaction" or the "Transaction"), for $163.7 million. The ESOP did not have sufficient money to purchase the Envision stock from the Sellers; according to a Department of Labor Filing, the ESOP borrowed $103,537,461 directly from the Sellers and $50,822,524 from the Company itself — approximately $154.4 million — in order to purchase Envision. After the Transaction, any retirement contributions that Envision made to the ESOP's employee-participants' accounts would be used first to pay interest due on the $154.4 million in debt the ESOP owed. The imprudent and disloyal Transaction terms caused ESOP participants to suffer monetary losses in their retirement accounts.

3.     Plaintiff and other employee-participants (whose ESOP retirement accounts were used to purchase 100% of Envision stock from the Sellers) were not given the chance to negotiate or otherwise take part in the determination of the price the ESOP paid for Envision stock. They only found out about the ESOP Transaction after the Transaction was completed and the $163.7 million purchase price was approved.

4.     Rather than involving the employee-participants directly, the Sellers hand-picked Argent Trust Company ("Argent" or the "Trustee") as Trustee of the ESOP to supposedly

"represent" the ESOP and its participants before and after the ESOP Transaction. Further, as discussed *infra*, the Sellers created the ESOP in a manner that gave the Sellers the power to "provide directions and recommendations to the Trustee [Argent] on all matters affecting the Plan and/or Trust [the ESOP]." In other words, the Sellers retained control over Argent, who controlled the ESOP.

5.      Before hiring Argent, the Sellers sought (and received) assurances from Argent that each of the Sellers would remain on the Envision Board of Directors.

6.      The Sellers further ensured control over Argent by granting themselves the right to unilaterally fire Argent from its role as Trustee of the ESOP, in the event that Argent did not carry out the Sellers' instructions. In fact, Seller Defendant Jones publicly described these ESOP terms, which purportedly allowed Argent to vote Board members off of the Board of Directors, and simultaneously permitted the Board members to fire Argent, as a form of "circular governance." Realistically, under this governance structure, the ESOP participants had no true power or control over Envision, even after purchasing 100% of Envision stock from the Seller Defendants who instilled themselves as permanent Board members.

7.      The Sellers further cemented their control over Argent by agreeing to indemnify Argent for all ERISA fiduciary liability in connection with the ESOP Transaction. Specifically, the Sellers structured the ESOP to exculpate Argent from liability stemming from the ESOP Transaction, where the indemnification was to be paid from Envision's corporate assets (i.e., from the participants' own retirement savings). This form of exculpation, which requires the ESOP's sole asset (the Company) to pay Argent for mismanaging the ESOP, is itself illegal and void under ERISA. *See* ERISA § 410(a), 29 U.S.C. § 1110(a).

8. Further, the ESOP Transaction, approved by Argent, inexplicably required the ESOP to pay two different share prices for the same Envision stock. The ESOP purchased 100,000 shares total from the Seller Defendants; the ESOP's Department of Labor Filings indicate that 63,806 shares (nearly 64% of the total shares) were purchased at a price of $1,770 per share, whereas 36,193 shares (approximately 36% of the total shares) were purchased at a price of $1,404 per share. In other words, the ESOP paid *$366 more* per share for 64% of the Envision stock purchased from the Seller Defendants.

9. There is no clear reason why the ESOP would pay $366 more per share for nearly two-thirds of the Envision stock. According to the Articles of Incorporation for Envision, the Company has only one class of shares; all shares are described identically in Envision's corporate filings. Based on this disparity alone, ***the ESOP overpaid at least $23.4 million***[1] for the Envision stock the ESOP purchased from the Sellers.

10. This price disparity (i.e., the fact that the ESOP paid $366 more per share with respect to nearly two-thirds of the stock it purchased from the Sellers) was never directly disclosed to Plaintiff or other ESOP participants. Indeed, this information is only apparent upon review of the ESOP's filings with the Department of Labor.

11. These same filings with the Department of Labor report that on December 31, 2017 – just a few weeks after the ESOP paid the Sellers between $1,404 and $1,770 per share for the Envision stock – all 100,000 shares of Envision stock were valued at the same price: **$349 per share**.

---

[1] This value was calculated by multiplying the difference in stock price ($366) by the number of shares which paid the higher price (63,806).

12.     The ESOP's filings with the Department of Labor for each subsequent year report a single share value for all Envision stock, further indicating that there is no legitimate reason why the ESOP paid $366 more per share for 64% of the stock purchased from the Sellers.

13.     There is no recognized market for private stock like Envision's, and the value of the stock must be determined based on a valuation report or stock appraisal. The valuation documents related to Envision's stock are, and continue to be, controlled by the Seller Defendants. Plaintiff and other employee-participants have never been given access to the valuation reports underlying the value of the Envision stock in their retirement accounts.

14.     Further, because the Sellers and Argent agreed to a power structure that did not give ESOP participants any control over the Board of Directors — even though they purchased 100% of the Sellers' Envision stock — the price the ESOP paid for the stock should have reflected a steep discount for the ESOP participants' lack of control over the Company. Here, the ESOP did *not* purchase the stock from the Sellers at a sufficiently discounted price, and the price paid did not adequately reflect the fact that the ESOP obtained little (if any) control over Envision as a result of the Transaction.

15.     As mentioned above, and explained in further detail below, the ESOP did not have its own money to pay the Sellers for the Envision stock and had to borrow $154.4 million in order to pay the purchase price of $163.7 million. The Sellers alone loaned over $100 million to the ESOP, at times at charging an extraordinarily high interest rate of 12%, to finance the Transaction.

16.     Argent (acting as the Trustee) and the Sellers (exercising control over Argent) caused the ESOP to take on the excessive debt burden of $154.4 million. This was not in the best

interest of the ESOP participants, whose retirement savings are dependent upon the value of Envision, which became a highly leveraged company after the Transaction.

17.     The massive amount of debt the ESOP owed — and continues to owe — the Sellers only serves the Sellers' interests. ESOP participants have not received a benefit from owning a company (Envision) that was so burdened with debt, especially because after the Transaction, a significant amount of Envision's cash was, and continues to be, required to make the mandatory loan payments owed to the Selling Shareholders. For example, in 2017, the ESOP reported that the loan payment required the following year was $4.8 million.

18.     Ultimately, the ESOP Transaction allowed the Sellers to unload their Company on the ESOP participants for significantly more than Envision was worth. And by creating the ESOP, the Sellers created a buyer to purchase their interest in Envision for $164 million, without having to give up a scintilla of control over Envision, and without having to negotiate the price for their stock with a truly independent third-party buyer.

19.     The Sellers' and Argent's actions caused Plaintiff and all other ESOP participants to suffer significant losses to their ESOP retirement savings.

20.     Plaintiff and other ESOP participants had no power to negotiate the purchase price of Envision's stock, participants have insufficient voting rights to actually make decisions for Envision, and participants have been told very little about the details of the Transaction. Meanwhile, the Sellers continue to tout the purported benefit of the ESOP: Envision's website, which is controlled by the Seller Defendants, proudly states that Envision is 100% employee owned.

21.     In an employee meeting, Envision management told employee-participants that they have been given a great opportunity to be "employee owners of Envision."

22.     Plaintiff brings this action to recover the losses incurred by the individual participants whose retirement savings are held in the ESOP, resulting from Defendants' prohibited transactions and fiduciary violations under ERISA.

## II.     JURISDICTION AND VENUE

23.     **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

24.     **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this District, and because ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), provides for nationwide service of process.

25.     **Venue**. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

      a.  The ESOP is administered in Colorado Springs, Colorado, which is located in this District;

      b.  The fiduciary breaches at issue took place in this District;

      c.  Defendants may be found in this District, as they maintain business locations throughout this District, including Boulder, Castle Rock, Fort Collins, Longmont, and the Denver Metropolitan Area, and transact business in this District; and

      d.  On information and belief, some Defendants reside in this District.

### III.     PARTIES

**A.     Plaintiff Robert Harrison**

26.     Plaintiff Robert Harrison is a former employee of Envision, who worked as an MRI and CAT-scan technician at Envision's Health Images at Diamond Hill location for four years. He is a vested participant in the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

27.     As of December 31, 2019, Plaintiff Harrison had three years of vested service in the ESOP. Mr. Harrison left Envision in August 2020 for another job. Mr. Harrison's current residence is in Denver, Colorado.

28.     In August 2020, Plaintiff requested several documents from the ESOP Plan Administrator concerning his ESOP retirement account, including the Plan Document, any other instruments under which the ESOP is operated, valuation documents for the ESOP, and any other documents used to determine the value of shares allocated to his ESOP account.

29.     The Plan Administrator (here, the Sellers, who were simultaneously members of the ESOP Committee and members of Envision's Board) was required by section 104(b) of ERISA, 29 U.S.C. § 1024(b), to respond to Mr. Harrison's request within 30 days. However, the ESOP Committee did not respond until November 2020, at which point Mr. Harrison was sent the ESOP Plan Document, the ESOP Guidelines, and the ESOP Payment Policy (all instruments under which the ESOP is operated).

30.     The Sellers refused to provide Mr. Harrison with the valuation documents or any other documents that were used to determine the value of Envision shares allocated to his ESOP account.

### B.    Seller Defendants

31.    <u>Defendant Darrel Creps, III</u> is one of the three founders of Envision Management Holdings who, along with Defendants Sherwood and Jones, sold his interest in the Company to the ESOP for over $163.7 million dollars, which unjustly enriched him at the expense of ESOP participants.

32.    Defendant Creps has been a member of the Board of Directors of Envision Management Holding, Inc. since its inception on August 15, 2017. He was also Chief Executive Officer of Envision through 2018. He currently resides in Colorado Springs, Colorado.

33.    Defendant Creps is currently the Chairman of Envision's Board of Directors, and based on the information available to Plaintiff at this time, Defendant Creps is a member of the ESOP Committee.

34.    <u>Defendant Paul Sherwood</u> is one of the three founders of Envision Management Holdings who, along with Defendants Creps and Jones, sold his interest in the Company to the ESOP for over $163.7 million dollars, which unjustly enriched him at the expense of ESOP participants.

35.    Defendant Sherwood has been a member of the Board of Directors of Envision Management Holding, Inc. since its inception on August 15, 2017. Defendant Sherwood served as Chairman of the Board from 2000 to 2018.

36.    Defendant Sherwood is currently a member of the Company's Board of Directors and, based on the information available to Plaintiff at this time, Defendant Sherwood is a member of the ESOP Committee.

37.    Defendant Jeff Jones is one of the three founders of Envision Management Holding, Inc. who, along with Defendants Creps and Sherwood, sold his interest in the Company to the ESOP for over $163.7 million dollars, which unjustly enriched him at the expense of ESOP participants.

38.    Defendant Jones has been a member of the Board of Directors of Envision Management Holding, Inc. since its inception on August 15, 2017.

39.    Defendant Jones currently serves as the Managing Director of Culture & Finance for the Company and, based on the information available to Plaintiff at this time, Defendant Jones is a member of the ESOP Committee.

40.    To the extent any individuals who sold their Envision stock to the ESOP are not identified by name as a party herein, they are named as John and/or Jane Does 1-10.

41.    Defendants Creps, Sherwood, Jones, and John and/or Jane Does 1-10 are collectively referred to as the "Seller Defendants," who sold their interest in Envision to the ESOP for $163.7 million in 2017.

42.    Each of the Seller Defendants was a "party in interest" to the ESOP within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14), because each was, at all relevant times, a Board member and thus a named fiduciary under the terms of the ESOP Plan Documents. In addition, each of the Seller Defendants is a party in interest within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14), because each has been an employee and officer at all relevant times, and owned 10% or more of Envision before and until the ESOP Transaction was completed.

43.    ERISA provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named

fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." ERISA § 402(a), 29 U.S.C. § 1102(a).

44.     The written instrument(s) according to which the ESOP was established and maintained (hereinafter referred to as the "ESOP Plan Documents") define "Named Fiduciaries" of the ESOP to include members of the Company's Board of Directors and the ESOP Committee. Thus, Defendants Creps, Sherwood, and Jones were also Named Fiduciaries to the ESOP because each is a member of the Board of Directors and the ESOP Committee as discussed further below.

### C.     ESOP Committee Defendants

45.     The Envision Management Holding, Inc. Employee Stock Ownership Plan Committee (the "ESOP Committee") as described in the instruments governing the ESOP is named as a Defendant in this action.

46.     The ESOP Committee is an association of members who were appointed by the Board (or by default were Board members) unified with a common purpose of administering and managing the Envision ESOP.

47.     Based on the information available to Plaintiff at this time, the members of the ESOP Committee during all relevant periods are/were Defendants Creps, Sherwood, and Jones, who were either (a) appointed as members of the ESOP Committee or (b) granted all powers of the ESOP Committee by operation of the ESOP Plan Documents, which state that if no members are appointed to the ESOP Committee, the Plan Sponsor (Envision Management, LLC) will act as the ESOP Committee. Of course, the Plan Sponsor acts through its Board of Directors: the Seller Defendants.

48.     To the extent any individuals who served on the ESOP Committee since the ESOP's inception in 2017 are not identified by name as a party herein, they are named as John and/or Jane Does 11-15.

49.     The ESOP Committee and its individual members (e.g., Defendants Creps, Sherwood and Jones) are collectively referred to as the "ESOP Committee Defendants."

50.     According to the ESOP Plan Document, the ESOP Committee is a Named Fiduciary.

51.     According to the ESOP Plan Document, the ESOP Committee has the power "to direct the Trustee with respect to investments of the Fund pursuant to the terms of the Trust," where "Fund" is defined as "the amount at any given time of cash, Company Stock, and other property held by the Trustee pursuant to the Plan [ESOP]."

52.     In addition, the ESOP Plan Document states that in most cases, the ESOP Committee shall direct the Trustee concerning how to "vote shares of Company Stock held in the [ESOP]," which includes directing the Trustee about how to vote on Board elections; and shall direct the Trustee on "[a]ll decisions affecting Company Stock held under the [ESOP] which do not involve voting such Company stock, including without limitation, decisions to reject or consent to tender or exchange offers and similar decisions."

53.     Similarly, the ESOP Guidelines – another instrument governing the operation of the ESOP – state that the ESOP Committee has the power "to provide directions and recommendations to the Trustee [Argent] on all matters affecting the Plan and/or Trust [the ESOP]," and to "provid[e] any voting directions to the Trustee called for under the Plan[.]"

54.     Based on the foregoing, the ESOP Committee Defendants were also fiduciaries to the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they (i) exercised authority control over the ESOP assets and (ii) exercised discretionary control or discretionary authority respecting management of the ESOP.

### D.     Board Defendants

55.     The Envision Management Holding, Inc. Board of Directors is named as a Defendant in this action.

56.     As stated *supra*, Defendants Creps, Sherwood, and Jones are and were members of the Board of Directors for Envision Management Holding, Inc. (the "Board") at all relevant times.

57.     Defendant Aaron Ramsay has been a member of the Board of Directors of Envision Management Holding, Inc. since its inception on August 15, 2017.

58.     Defendant Tanweer Kahn has been a member of the Board of Directors of Envision Management Holding, Inc. since its inception on August 15, 2017.

59.     The individual members of the Board of Directors, from the time the ESOP was established until the present, are collectively referred to as the "Board Defendants."

60.     The Board restated the ESOP in September 2017.

61.     According to Section 1.35 of the Plan Documents, the Board of Directors is a "Named Fiduciary" to the ESOP within the meaning of ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).

62.     The Board Defendants have authority to exercise all powers and duties that the ESOP Plan Document provides to the Plan Sponsor (Envision Management, LLC). Indeed, the

ESOP Plan Document states that "[a]ny action to be taken by a Plan Sponsor shall be taken by resolution or written direction duly adopted by its board of directors . . . ."

63.     Accordingly, the Board Defendants have, and had at all relevant times, the power to appoint the Trustee of the ESOP, and the power to appoint and remove the members of the ESOP Committee. As such, the Board Defendants exercised discretionary authority or discretionary control respecting management of the ESOP and are ESOP Fiduciaries the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

**E.     Trustee Defendant**

64.     Defendant Argent Trust Company is a trust company chartered in Tennessee. Argent's principal office is located in Nashville, TN, and it maintains offices in other states including Georgia, Texas, and Louisiana. Argent Trust Company is a wholly owned subsidiary of Argent Financial Group, which is headquartered in Ruston, Louisiana.

65.     Since the ESOP's inception, Defendant Argent held, managed, and controlled the ESOP's assets. Argent has been a "fiduciary" of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), because it exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of the ESOP's assets, or has discretionary authority or discretionary responsibility in the administration of the ESOP.

66.     Argent has also been a "party in interest" all al relevant time because, *inter alia*, it is a named fiduciary to the ESOP and provides services to the ESOP. ERISA § 3(14), 29 U.S.C. § 1002(14).

## IV.    <u>FACTUAL ALLEGATIONS</u>

67.    In 2000, Defendants Creps, Sherwood, and Jones founded Colorado Springs Imaging Envision Radiology LLC, which ultimately became Envision Management, LLC, which provides diagnostic imaging services in a number of states, including Colorado, Oklahoma, Louisiana, and Texas. In turn, Envision Management, LLC is owned by Envision Management Holding, Inc., a shell corporation incorporated in Delaware. The ESOP purchased 100% of the stock of Envision Management Holding, Inc. during the ESOP Transaction. As stated in paragraph 2 of the Complaint, "Envision" refers to Envision Management Holding, Inc., rather than Envision Management, LLC.

68.    Envision maintains its corporate headquarters in Colorado Springs, Colorado and currently has approximately 1,000 employees.

69.    Before establishing the ESOP, the Sellers explored selling Envision to a third-party but did not consummate such a sale.

70.    Instead, the Sellers decided to create an ESOP to purchase their Company.

71.    To effectuate their planned sale of Envision, the Sellers, acting as Board members of Envision, established the ESOP, an ERISA-protected defined contribution plan where employer contributions made on behalf of employees are invested in the employer's stock. ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6); *see also* 29 C.F.R. § 2550.407d–6 (definition of the term "employee stock ownership plan").

72.    The employer contributions, invested in employer stock, are part of employee compensation and comprise an important part of employee retirement savings.

73.     Because — and only because — an ESOP contribution qualifies as employee compensation, an employer can deduct the total value of its ESOP contribution from its income tax liability as an ordinary business expense. 26 U.S.C. § 404; 26 C.F.R. § 1.404(a)–1(b).

74.     As alleged further below, ERISA prohibits the sale of property, including common stock, by officers and directors of a company to a retirement plan sponsored by the company. ERISA § 406(a), 29 U.S.C. § 1106(a).

75.     Here, because the Envision stock that the Sellers sold to the ESOP does not trade on a public market, the share price is determined annually by a stock appraiser or valuation firm. Importantly, the valuation of Envision stock is primarily based on financial assumptions about Envision's future revenue and income; these assumptions are generated by the Sellers.

76.     To complete the planned sale of Envision to the ESOP, the Sellers, acting as Board members, appointed Argent as trustee of the ESOP to represent the ESOP in the Transaction.

77.     As discussed above, the Sellers ensured they retained control over Envision, despite the contemplated sale to the ESOP by imbuing themselves, as ESOP Committee members, with the power to direct Argent "with respect to investments of the [ESOP]."

78.     Additionally, the Sellers ensured that they would retain control over Envision after its sale to the ESOP by structuring the ESOP's terms to give them the power to direct Argent about how to "vote shares of Company Stock held in the [ESOP]," including Board election votes. This guaranteed that the Sellers would never be removed from the Board of Envision without their consent.

79.     In fact, during a video presentation that was provided to Envision employees, Defendant Jones stated that before hiring Argent as the ESOP Trustee, the Seller Defendants,

acting as Board members, "pre-negotiated with that Trustee [Argent] that the founding members [Defendant Creps and Sherwood] will be on the Board of Directors" and that Defendant Creps and Sherwood would retain "control of that Board of Directors."

80.     During the same presentation to employees, Defendant Jones also told employees that ESOPs have a "unique" feature which allows the Board members to hire and fire the Trustee, even though the Trustee technically appoints Board members. Indeed, Defendant Jones stated, "it's kind of a circular governance, which is a little goofy . . . but the main take away for you all is that the Founding members still have control over that Board of Directors."

81.     The power to determine the Board members and management of the Company's operations are the main hallmarks of control over a corporation. No rational buyer, acting at arm's-length, would pay fair market value for the Company if the buyer did not obtain control over the company. And few buyers would be willing to buy a corporation if they would be able to obtain only little or no control over the company being purchased. Here, the Sellers retained the power to appoint members of the Board (which they utilized to retain their positions as Board members) and further retained management control over the day-to-day operations of Envision.[2]

82.     Because the ESOP did not gain control over Envision as a result of the Transaction, the purchase price the ESOP paid should have been heavily discounted, to reflect the lack of control. Taxing authorities have determined that discounts for lack of control as high as 40% are appropriate.

---

[2] Additionally, the Board Defendants retained power through the Articles of Incorporation to issue an additional 10,000 shares of the Company, which were not sold to the ESOP.

83. The valuation which was used to set a purchase price of $163.7 million for the ESOP Transaction did not adequately reflect the fact that the Sellers retained full control over Envision after the ESOP purchased the Company.

84. In essence, the ESOP — which was created by the Sellers — acted as a buyer that was controlled by the Shareholders, and therefore would buy Envision for $163.7 million, while allowing the Sellers to retain control of the company.

85. As noted above, Envision, the corporation the ESOP purchased from the Seller Defendants, is a shell corporation. Put differently, Envision is a holding company which, through a complicated corporate structure, owns primarily minority interests in Envision's radiology centers and operations. Because Envision has only a minority interest in the radiology centers and operations, even the Seller Defendants themselves have little control over Envision's operations and radiology centers.

86. For example, Envision does not own any of its radiology centers; rather, it primarily holds minority interests in its centers and operations, through joint ventures with Centura Ventures LLC, Texas Health Resources, and other undisclosed third-party owners, as shown below. Specifically, the ESOP owns just 25% of the 12 centers in Denver, Colorado and owns 49% of the 17 centers in Texas.



87.     And while Envision's website states that Envision is "**100% owned** by its employees through an Employee Stock Ownership Plan," the ESOP actually only owns primarily minority interests in most of the radiology centers within Envision's corporate structure.

88.     The fact that Envision has only a minority interest in most of its radiology centers and operations gives it little control over the operations and business decisions writ large; this should have resulted in a further discount to the price the ESOP paid to purchase Envision stock.

89.     However, because the Sellers themselves provided the financial assumptions, they were able to sell the ESOP their Envision stock at the inflated values of $1,770 and $1,404 per share. Further, because the Selling Shareholders controlled Argent, who represented the ESOP as buyer in the Transaction, the Sellers were able to fetch sales prices based on aggressive and unrealistic financial assumptions to maximize the proceeds from the ESOP Transaction.

90.     Ultimately, the Sellers sold 100,000 shares of Envision stock to the ESOP for $163,760,049 in three separate categories:

- 5,311 shares were sold at $1,770 per share, in exchange for a cash payment of $9,400,000;

- 58,496 shares were sold at $1,770 per share, financed by a $103,537,471 loan from the Seller Defendants; and

- 36,194.52 shares sold at $1,404/share, financed by a $50,822,524 loan from Envision itself.

91.     Notably, as highlighted above, the ESOP paid *$366 more* per share for 64% of the Envision stock the ESOP purchased from the Sellers. There is no clear reason why the ESOP would pay two different prices for the same stock, particularly when the Articles of Incorporation for Envision Management Holdings, Inc. indicate that there is only one class of common stock, which has the same par value of $0.0001 per share.

92.     In addition, the ESOP's filings with the Department of Labor report that on December 31, 2017 — just a few weeks after the ESOP paid Defendants $1,770 per share for 64% of the Envision stock and $1,404 for 36% of the Envision stock — all 100,000 shares the ESOP bought were independently valued at $349 per share.

93.     Every year since the ESOP Transaction, the ESOP's filings with the Department of Labor report that all the stock purchased by the ESOP, regardless of the original purchase price, had the same valuation.

94.     The employees, whose retirement accounts in the ESOP were used to purchase the Envision Stock from the Sellers, were never provided an explanation for why certain shares were sold to them for $1,770 per share, while others sold for $1,404 per share. Indeed, participants were

never told of the disparity in stock prices paid by the ESOP; this information was learned only through Plaintiff's investigation of Department of Labor filings.

95.     The disparity in price paid by the ESOP for the exact same shares of stock alone indicates that the ESOP overpaid for the Envision stock by at least $23 million, which is calculated by multiplying the $366 overpayment per share by 63,807 (the total number of shares for which the ESOP paid the higher price of $1,770 per share).

96.     To finance the Transaction, Argent caused the ESOP to enter into a financing arrangement with the Sellers on or around December 19, 2017. According to the ESOP's 2017 Form 5500, which was filed with the Department of Labor, "[i]n December 2017, the Plan entered into a $103,537,471 term loan agreement with the prior shareholders of the Company to purchase 58,495.746 shares of Company common stock." Under the terms of this loan agreement, the Sellers loaned the ESOP $103,537,471 to partially finance the ESOP's purchase of the Company. Pursuant to the terms of this loan agreement, the ESOP was only required to pay interest on the loan until December 2022, "after which point payments will be made over 26 years, with interest at 5.00%." However, according to the ESOP's 2017 Form 5500, the loan was refinanced in February 2018 to pay a 12% annual interest rate. According to the 2018 Form 5500 the ESOP filed with the Department of Labor, the loan was refinanced again, this time lowering the interest rate but extending the loan term by four years: "the agreement provides for the loan to be repaid interest only until December 2022, at which point in time annual payments will be made over 30 years, with interest at 2.59% and 5.00% at December 31, 2018 and 2017, respectively." Argent accepted each of these financing arrangements on behalf of the ESOP.

97.     The 12% interest rate Argent approved was extraordinarily high. Indeed, interest rates at 12% are indicative of severe corporate distress. Based on market indices from February 2018, a company that was suffering severe corporate distress at that time — including the risk of default — could typically borrow money at an interest rate between 10% and 11%, indicating that the 12% interest rate Argent approved for the ESOP was unreasonable by any measure. *See, e.g.*, ICE BofA CCC & Lower US High Yield Index Effective Yield.

98.     Paying the required interest, in addition to the inflated price for Envision stock, not only enriched the Sellers, but cannibalized participants' retirement savings.

99.     The terms of the Transaction required Envision to make contributions in amounts sufficient for the ESOP to service the debt to the Sellers and repay the Sellers, which puts financial strain on the Company.

100.    Contributions made to employees' individual accounts are an important part of Envision employee compensation under ERISA. *See* 26 U.S.C. § 404; 26 C.F.R. § 1.404(a)-1(b).

101.    The ESOP is wholly undiversified, meaning the Company is the ESOP's only investment. The retirement savings of Plaintiff and other ESOP participants therefore depend on the Company continuing to be a viable business with a steadily-increasing value.

102.    Shortly after the Transaction, the Company's stock held by the ESOP was reported to be valued at $34,960,000, or 21% of what the ESOP had paid for the Company. The ESOP's 2017 5500 reports a total loss of $128.8 million in the value of Envision stock as a result of this new valuation.

103.    In connection with the Transaction, the Sellers, through the Board, sought to indemnify Argent for any and all liability or cost resulting from Argent's conduct using the Company's assets (the "Indemnification Agreement").

104.    The Indemnification Agreement would relieve Argent from its liability for mismanaging the ESOP and causing prohibited transactions because the Indemnification Agreement would cause any liability to be borne by ESOP participants.

## V.    **PLAINTIFF SEEKS PLAN-WIDE RELIEF**

105.    Plaintiff brings these claims for plan-wide relief pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and as a class action pursuant to Federal Rule of Civil Procedure 23 (a) and (b), on behalf of the following Class:[3]

> All participants in the Envision ESOP on or after September 1, 2017 who vested under the terms of the ESOP, and those participants' beneficiaries, excluding Defendants and their immediate family members; any fiduciary of the Plan; the officers and directors of Envision or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

106.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides that "A civil action may be brought [. . .] by a participant, beneficiary or fiduciary for appropriate relief under [ERISA section 409, 29 U.S.C.] section 1109[.]". In turn, ERISA section 409(a) states that any fiduciary with respect to a plan who breaches "any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter *shall be personally liable to make good to such plan any losses resulting from each such breach*[.]" 29 U.S.C. § 1109(a) (emphasis added).

---

[3] Plaintiff reserves the right to revise his class definition, and to propose other or additional classes in subsequent pleadings or his motion for class certification, after discovery in this action.

107.    The Supreme Court has explained that Plaintiff's ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), claims are necessarily "brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). In other words, the relief Plaintiff seeks pursuant to § 1132(a)(2) "inures to the benefit of the plan *as a whole*." *Id.* at 140.

108.    In *LaRue v. DeWolff, Boberg, and Associates, Inc.*, 552 U.S. 248 (2008), which involved a defined contribution plan like the Envision ESOP, the Supreme Court further explained that "[ERISA] §§ 409(a) and 502(a)(2) [29 U.S.C. §§ 1109 and 1132(a)(2)] permit recovery of *all* plan losses caused by a fiduciary breach.") *LaRue*, 552 U.S. at 261 (Thomas, J., concurring).

109.    **Numerosity.** The Class satisfies the numerosity requirement because it is composed of hundreds of persons. The Plan currently has approximately 884 participants. The number of Class members is so large that joinder of all its members is impracticable.

110.    **Commonality.** As to the members of the Class, this case presents numerous common questions of law and fact, among them:

      a.  Whether Argent engaged in a prudent and loyal investigation of the proposed purchase of 100,000 shares of Envision stock by the ESOP in the ESOP Transaction, including whether the ESOP Transaction's terms and price were fair and in the best interest of ESOP participants;

      b.  Whether Argent improperly relied on unrealistic financial projections of Envision's future cash flows and earnings, for purposes of assessing the value of Envision stock;

      c.  Whether Argent failed to properly consider Envision's guarantee of the ESOP's $154 million loan, which would be classified as debt on Envision's balance sheet and a charge to shareholders' equity;

      d.  Whether Argent failed to properly consider the reduced cash flow the Company would suffer due to its obligation to make contributions to the ESOP in an amount sufficient to cover the ESOP's loan payments;

    e.   Whether the Sellers were involved in the preparation of all financial projections used in appraisals of Envision stock that formed the basis of the stock appraisal relied upon to set the ESOP purchase price of $164 million;

    f.   Whether the ESOP engaged in prohibited transactions;

    g.   The amount of losses suffered by the ESOP as a result of the unlawful conduct alleged herein;

    h.   The proper form of equitable and injunctive relief; and

    i.   The extent to which any non-fiduciary Defendants are subject to equitable remedies and relief.

106.   **Typicality.** Plaintiff's claims are typical of the claims of the Class because (among other things): (a) he was employed by Envision and is a participant in the Plan; (b) to the extent that Plaintiff seeks relief on behalf of the Plan pursuant to § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), his claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class Member; (c) to the extent that Plaintiff seeks equitable relief, that relief would affect all Class Members equally; and (d) all of the Class members were injured and continue to be injured in the same manner, because each of them overpaid for Envision stock as a result of the same alleged breaches of fiduciary duty and prohibited transactions.

107.   **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class and is committed to the vigorous representation of the Class. Plaintiff's retained counsel, Cohen Milstein Sellers and Toll PLLC ("Cohen Milstein"), is experienced in class action and ERISA litigation, and Plaintiff has no interests antagonistic to or in conflict with the interests of the Class.

108.   **Rule 23(b)(1)(A).** Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the ESOP and its participants. This action challenges whether Defendants acted consistently with their

fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants relating to the ESOP. The Class may be certified under Rule 23(b)(1)(A).

109. **Rule 23(b)(1)(B).** Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the ESOP and engaged in prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class. Further, the relief granted by the Court, including any equitable relief, injunctive relief, or accounting of profits, may be dispositive of the interests of other class members.

110. **Rule 23(b)(2).** Additionally and alternatively, class certification is appropriate pursuant to Federal Rule of Civil Procedure (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations. Further, as ERISA is based on trust law, any monetary relief consists of equitable monetary relief that is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

111.   **Rule 23(b)(3)**. Additionally and alternatively, class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this action. Common questions related to liability will necessarily predominate over any individual questions because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for Envision stock in the Transaction. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

112.   A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the ESOP, the issues in this litigation will be most efficiently resolved in a single proceeding rather than multiple proceedings. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

113.   The following also favor certification of this case as a class action:

   a.   No other litigation concerning this controversy has been filed by any other members of the Class; and

   b.   The names and addresses of the Class members are available from the ESOP.

114.     Notice will be provided to all members of the Class to the extent required by Federal Rule 23.

## VI.     CAUSES OF ACTION

### Count I
**Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. § 1106(a)**
**(Against Argent and the ESOP Committee Defendants)**

115.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

116.     ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

117.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), provides that a plan fiduciary shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes the direct or indirect loan of money between the plan and a party in interest.

118.     ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to include

- "any fiduciary … of such employee benefit plan;"

- "an employer any of whose employees are covered by such plan;"

- "an employee, officer, [or] director . . . or a 10 percent or more shareholder" of an employer whose employees are covered by the ESOP; or

- "a relative (as defined in paragraph (15)) of any individual described in subparagraph (A), (B), (C), or (E)[.]"

ERISA § 3(14)(A), (C), (H), and (F), 29 U.S.C. § 1002(14)(A), (C), (H), and (F).

119.    To the extent Defendants Creps, Sherwood, and Jones did not own directly the Envision stock sold to the ESOP, their family members or family trusts owned the stock. As such, each of the Sellers is a party in interest to the ESOP within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

120.    Argent, acting as the Trustee of the ESOP and a fiduciary of the ESOP, approved and caused the ESOP to purchase 100,000 shares of the Company from the Sellers, each of whom was a party in interest to the ESOP. This was a prohibited transaction because the ESOP Transaction constituted an exchange of property between the ESOP and the Sellers in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of the ESOP assets to the Sellers in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

121.    Because the ESOP Committee had the power to direct Argent with respect to decisions for the ESOP, they also caused the ESOP to purchase 100,000 shares of the Company from the Sellers, each of whom was a party in interest to the ESOP. This was a prohibited transaction because the ESOP Transaction constituted an exchange of property between the ESOP and the Seller Defendants in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of the ESOP assets to the Sellers in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

122.    Thereafter the ESOP Committee Defendants and Argent caused additional payments to the Sellers by the ESOP, which constitutes the exchange of property between the ESOP and Sellers in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of the ESOP assets to the Sellers in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

123. In their fiduciary capacity, the ESOP Committee Defendants and Argent also caused the ESOP to borrow hundreds of millions of dollars from the Sellers, which constituted a prohibited transaction in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

124. The ESOP Committee Defendants and Argent caused payments by the ESOP of principal and interest to the Sellers in connection with the ESOP's loan from the Sellers. Each of those payments constitutes a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

125. The ESOP Committee Defendants and Argent are liable for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3), for causing the prohibited transactions set forth herein.

## Count II
### Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. § 1106(a)
### (Alternatively against the Seller Defendants as Non-Fiduciaries)

126. Plaintiff incorporates the preceding paragraphs as though set forth herein.

127. ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

128. Because the Seller Defendants (Creps, Sherwood, and Jones) have been ESOP Committee members and Board members before and after the ESOP Transaction, they were/are parties in interest to the ESOP within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14) at all relevant times.

129. The ESOP's purchase of 100,000 shares of Envision's voting common stock from the Seller Defendants constituted an exchange of property between the ESOP and parties in interest in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).

130. Thus, even if no Seller Defendant is found to be a fiduciary who caused the prohibited transactions alleged in Count I, each of them is still liable as a non-fiduciary party in interest under *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) because each of them knowingly participated in transactions which violated ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D)..

- As chief executives, officers, and Board members, the Seller Defendants were involved in and directed the preparation of the financial projections underlying the stock appraisal which was the basis of the ESOP's purchase price for the Company and the subsequent stock appraisals of Envision stock at year end 2017, 2018, and 2019.

- The Sellers knew that they had "pre-negotiated" retaining control over the Company after the Transaction.

- The Sellers knew that the price the ESOP paid for the Envision stock did not adequately reflect the ESOP's complete lack of control over the Company, including the inability of the ESOP participants to elect Board members.

- The Sellers knew that the unrealistic and unreliable financial projections would result in the ESOP overpaying for Envision stock in the Transaction.

- They knew that they encouraged and/or recommended Argent's approval of the Transaction for greater than fair market value.

- They knew they illegally promised to exculpate Argent with the Company's assets.

- Based on their position and unique access to company financial information, they knowingly participated in Argent's fiduciary violations, alleged above, and knew that Argent had no prudent basis for approving the Transaction.

131. Thus, the Seller Defendants are alternatively liable for appropriate equitable relief as nonfiduciary parties in interest, including the disgorgement of any ill-gotten gains they received.

132.    The Seller Defendants are also noteholders of the ESOP's loan used to complete the transaction. As parties to the loan and signatories of the loan agreements, they knowingly participated in each payment by the ESOP of principal and/or interest to themselves, each of which constitutes a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). For this reason as well, the Sellers are liable for appropriate equitable relief under ERISA.

**Count III**
**Breach of Fiduciary Duties Under ERISA § 404(a)(1)(A) and (B),**
**29 U.S.C. § 1104(a)(1)(A) and (B)**
**(Against Argent and ESOP Committee Defendants)**

133.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

134.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and [the] beneficiaries [of the plan.]"

135.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that a plan fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]"

136.    In the context of a sale of the sponsoring company/employer to an ESOP, the duties of loyalty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), and prudence under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), require a fiduciary to undertake an appropriate investigation to ensure that the ESOP and its participants pay no more than adequate consideration for the company's assets and the participants' account in the ESOP which requires both

137.    Argent was required to undertake appropriate and independent due diligence and investigate the fair market value of the Envision stock before approving the Transaction. Among

other things, Argent was required to conduct a thorough and independent review of any "independent appraisal" (i.e., the stock appraisal) to make sure that reliance on that appraisal was reasonably justified under the circumstances of the ESOP Transaction; to investigate the reliability and reasonableness of the management projections for Envision's future revenue, earnings, and cash flow upon which the discounted cash flow method used in the appraisal was based; and to make an honest, objective effort to read and understand the valuation reports and opinions, and question any uncertain methods and assumptions.

138.    Given that the ESOP Committee had the power to direct Argent with respect to decisions for the ESOP, they also were required to undertake appropriate and independent due diligence and investigate the fair market value of the Envision stock before directing or recommending that Argent approve the Transaction. Before directing approval of the Transaction, the ESOP Committee should have conducted a thorough and independent review of any "independent appraisal" (i.e., the stock appraisal) to make sure that reliance on that appraisal was reasonably justified under the circumstances of the ESOP Transaction.

139.    Also, because the ESOP Committee Defendants prepared the management projections for Envision's future revenue, earnings, and cash flow upon which stock valuation for the Transaction price was based, they were conflicted because they stood to gain by inflating Envision's financial projections, which they did.

140.    As alleged above, a prudent and loyal investigation of all the relevant ESOP Transaction terms, financial projections, and assumptions in connection with the ESOP Transaction would have revealed that the price the ESOP paid was greater than fair market value of the Envision stock at the time of the Transaction.

141.    A prudent and loyal investigation by the ESOP Committee Defendants and Argent also would have revealed that it was imprudent to approve the ESOP's purchase of Envision stock at both $1,770 and $1,404 per share, because these share prices did not adequately reflect the fact that the ESOP gained no control over the Company, and did not have the ability to elect Board members.

142.    A prudent and loyal investigation by the ESOP Committee Defendants and Argent would also have revealed that the enormous debt burden taken on by the ESOP to complete the Transaction was imprudent and not in the ESOP participants' best interests.

143.    A prudent and loyal investigation by the ESOP Committee Defendants and Argent would also have revealed that the ESOP Transaction terms, taken together, were not in the best interest of the ESOP participants.

144.    By failing to act prudently and loyally in participants' best interests in connection with the ESOP Transaction, and by failing to restore the losses caused thereby, the ESOP Committee and Argent breached their fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), and caused losses to the ESOP and the individual retirement accounts of the participants in the ESOP.

145.    The ESOP Committee and Argent, as fiduciaries to the ESOP, are liable for appropriate relief under ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3), and ERISA § 409, 29 U.S.C. § 1109, for these violations of ERISA.

**Count IV**
**Failure to Monitor in Violation of ERISA § 404(a)(1)(A) and (B),**
**29 U.S.C. § 1104(a)(1)(A) and (B)**
**(Against Board Defendants)**

146.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

147.    Any fiduciary with the power to appoint and/or remove other fiduciaries has an obligation to monitor the appointed fiduciary to ensure that he/she is acting in compliance with the terms of the Plan and in accordance with ERISA. *See* 29 C.F.R. § 2509.75-8 (FR-17). If the appointed fiduciary has violated or continues to violate ERISA, the monitoring fiduciary must remove the appointed fiduciary and attempt to restore any losses to the plan caused by the ERISA violations.

148.    The ESOP Plan documents provide that the Board Defendants appoint and have the power to remove the Trustee of the ESOP. Because the Board Defendants appointed Argent as the ESOP Trustee, they had a duty to monitor Argent and remove it if necessary.

149.    The Board Defendants breached their duty to monitor Argent. Among other things, the Board Defendants:

      a.    failed to monitor and evaluate the performance of Argent, or have a system in place for doing so, standing idly by while participants suffered substantial losses as a result of Argent's fiduciary breaches;

      b.    failed to monitor the fiduciary processes of Argent to ensure that the price the ESOP paid for Envision stock was adequately discounted to reflect the ESOP's lack of control over the Company;

      c.    knew and failed to correct the fact that Argent was acting based on unrealistic and unreliable financial projections for Envision's future revenues, cash flows and earnings;

      d.    failed to ensure that Argent conducted adequate due diligence regarding the financial projections underlying the Envision stock valuation at the time of the Transaction;

      e.    failed to ensure that ESOP participants did not pay $366 more for 64% of the 100,000 shares the ESOP purchased from the Sellers given that the Board Defendants knew that there was only one share class of Envision stock and all shares were effectively identical, given that later all shares were valued at exactly the same amount;

  f.  failed to implement a system to avoid conflicts of interest;

  g.  failed to remove Argent when they knew that its performance was inadequate for the reasons described herein; and

  h.  failed to ensure that Argent took appropriate remedial action after the ESOP Transaction.

150. The Board Defendants are liable for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3), for their failure to appropriately monitor their appointees.

### Count V
### Co-Fiduciary Liability Under ERISA § 405(a)(1) and (a)(3), 29 U.S.C. § 1105(a)(1) and (a)(3)
### (Against the Board Defendants)

151. Plaintiff incorporates the preceding paragraphs as though set forth herein.

152. ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary[.]"

153. The Board Defendants were the highest level management at Envision and were involved in and directed the preparation of the financial projections underlying the stock appraisal Argent relied upon in determining (i) the purchase price the ESOP paid for the Company; and (ii) the subsequent valuations of Envision stock at year-end 2018 and 2019.

154. Given their involvement in hiring Argent, including their agreement with Argent to retain control of the Company after the Transaction, Board Defendants knew that the price the ESOP paid for Envision stock was not adequately discounted to reflect the fact that the Sellers retained control over the Company.

155.    Given their longstanding ownership of and management of the Company, the Board Defendants knew that the financial projections were unrealistic and unreliable.

156.    Based on their position and unique access to company financial information and involvement in Argent's hiring, the Board Defendants knowingly participated in the fiduciary violations of Argent alleged above and knew that Argent had no basis for approving the Transaction.

157.    As such, under ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), the Board Defendants are liable as co-fiduciaries for the ESOP's losses as a result of Argent's fiduciary violations.

## Count VI
## Illegal Agreement to Exculpate Fiduciary Liability under ERISA § 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3), and ERISA § 410(a), 29 U.S.C. § 1110(a)
## (Against all Defendants)

158.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

159.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy."

160.    ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3), authorize a plan participant to bring a civil action to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or to obtain other appropriate equitable relief to redress violations of ERISA or the terms of the plan or to enforce any provisions of ERISA.

161.    Defendants adopted terms of the ESOP Plan Document that state that the Company will indemnify the ESOP Committee Defendants, Argent and all of its affiliates for "any and all claims, losses, costs, expenses (including, without limitation, attorney's fees and court costs),

damages, actions or causes of action arising from, on account of or in connection with the performance by such person of his duties in such capacity, other than such of the foregoing arising from, on account of or in connection with the willful neglect or willful misconduct of such person."

162.    Additionally, the Seller Defendants entered into an agreement with Argent to indemnify Argent and any of its affiliates (the "Indemnitees") for "any cost, expense, loss or other damage, including reasonable attorneys' fees, that any of the Indemnitees suffer resulting from any legal proceedings related in any way to the performance of services by any one or more of the Indemnitees[.]"

163.    The indemnification provisions in the ESOP Plan Document terms and in Argent's engagement agreement violate ERISA § 410(a), 29 U.S.C. § 1110(a), because they purport to relieve Argent and the ESOP Committee Defendants of fiduciary liability for violations of ERISA, including the fiduciary provisions set forth in ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106.

164.    As such, these provisions must be declared void because they purport to shift Argent's and the ESOP Committee Defendants' liability for fiduciary violations of ERISA to the Company, which is currently owned by the ESOP.

165.    This attempt to relieve Defendants of their liability for losses caused by their fiduciary violations is void as against public policy and should be declared as such pursuant to ERISA § 502(a)(2) and (a)(3), 29 U.S.C. §1132(a)(2) and (a)(3).

## VII.    PRAYER FOR RELIEF

Plaintiff, on behalf of himself, the ESOP, and the Class, prays that judgment be entered against Defendants on each Count and that the ESOP and the Class be awarded the following relief:

A.     Declare that Argent, the ESOP Committee Defendants, and the Board Defendants have breached their fiduciary duties under ERISA;

B.     Enjoin Argent, the ESOP Committee Defendants, and the Board Defendants from further violations of their fiduciary responsibilities, obligations, and duties;

C.     Remove Argent as the Trustee of the Envision ESOP or bar it from serving as a fiduciary of the ESOP in the future;

D.     Appoint a new independent fiduciary to manage the Envision ESOP and order the costs of such independent fiduciary be paid for by Defendants;

E.     Order Argent to restore all the losses resulting from their fiduciary breaches and to disgorge all profits made through use of assets of the ESOP;

F.     Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to ordering disgorgement of profits, providing an accounting for profits, ordering surcharge against Defendants to restore losses to the ESOP, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants;

G.     Enjoin the Defendants from dissipating any of the proceeds they received from the Transaction held in their actual or constructive possession until the ESOP participants' rights can be adjudicated;

H.     Enjoin the Defendants from transferring or disposing of any of the proceeds they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the ESOP participants' ability to recover the same;

I.     Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or order payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

J.     Award pre-judgment interest and post-judgment interest; and

K.     Award such other and further relief that the Court determines is appropriate pursuant to ERISA § 502(a)(2) and/or (a)(3), 29 U.S.C. § 1132(a)(2) and/or (a)(3), or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, or that is equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

January 29, 2021                                 Respectfully submitted,


                                                */s/ Joseph M. Sellers*
                                                Joseph M. Sellers
                                                Michelle C. Yau (admission pending)
                                                Mary J. Bortscheller (admission pending)
                                                **COHEN MILSTEIN SELLERS & TOLL
                                                PLLC**
                                                1100 New York Ave. NW
                                                Fifth Floor
                                                Washington, DC 20005
                                                (202) 408-4600
                                                jsellers@cohenmilstein.com
                                                myau@cohenmilstein.com
                                                mbortscheller@cohenmilstein.com


                                                *Attorneys for Plaintiff*