**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-00304-RBJ

ROBERT HARRISON, on behalf of himself, the ENVISION MANAGEMENT HOLDING, INC. ESOP, and all other similarly situated individuals,

    Plaintiff,

    v.

ENVISION MANAGEMENT HOLDING, INC. BOARD OF DIRECTORS, *et al.*,

    Defendants.

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL ARBITRATION ACT OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF JURISDICTION**

**INTRODUCTION**

Plaintiff seeks to litigate, on a representative basis, claims that he must arbitrate on an individual basis. Plaintiff seeks benefits that he claims Defendants owe him under the terms of his ERISA-regulated retirement plan, the Envision Management Holding, Inc. Employee Stock Ownership Plan (the "Plan"). But such benefits may be awarded, if at all, only pursuant to the terms of the "Plan Document" that governs the Plan.[1] That document requires arbitration of these claims. By filing his complaint in federal court, Plaintiff seeks to circumvent two federal laws—the Federal Arbitration Act ("FAA"), which mandates enforcing arbitration provisions, and ERISA, which dictates enforcing the terms of governing plan documents.

Federal statutes should be harmonized, and "[a] party seeking to suggest that two statutes cannot be harmonized . . . bears the heavy burden of showing 'a *clearly expressed congressional*

---

[1] A true and correct copy of the Plan Document is attached hereto as Exhibit A.

*intention*' that such a result should follow." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). (emphasis added). ERISA contains no express (or implied) intention by Congress not to harmonize these statutes and, therefore, the Court should "give effect to both." *Id.* Here, the FAA's directive to enforce arbitration agreements, *see id.* at 1621, and ERISA's directive to enforce plan terms, *see US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013), are both fulfilled by enforcing the arbitration provision contained in the Plan Document.

Accordingly, the Court should compel Plaintiff to arbitrate all of his claims on an individual basis pursuant to the FAA, and either stay this lawsuit or, in the alternative, dismiss the case (and close it administratively) under Rule 12(b)(1). Either way, and again consistent with the terms of the Plan Document, the Court should award Defendants their fees and costs in bringing this motion.

## BACKGROUND

### I.   Statutory Background, Parties, and Claims in Plaintiff's Complaint.

This case involves an employee stock ownership plan ("ESOP"), an ERISA-regulated defined-contribution plan defined under 29 U.S.C. § 1107(d)(6)(A) that allows participating employees to acquire a beneficial interest in company stock of their employer. Congress intended that ESOPs would provide a tax-favored way for employers to fund retirement benefits for employees and serve as a "'technique of corporate finance' that would encourage employee ownership." *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992).

Plaintiff, Robert Harrison, filed this putative ERISA class action against various defendants related to his former employer, Envision Management LLC, and the Plan.[2] The Complaint alleges

---

[2] Specifically, the Complaint names the Envision Management Holding, Inc. Board of Directors (the "Board"); the Envision Management Holding, Inc. Employee Stock Ownership Plan Committee (the "ESOP Committee"); Argent Trust Company ("Argent"), the Plan's independent trustee; and individual defendants Darrel Creps, III, Paul Sherwood, Jeff Jones, Aaron Ramsay, and Tanweer Khan. Dr. Khan's name is misspelled in the Complaint, but spelled correctly here.

the following ERISA violations: that defendants engaged in prohibited transactions related to the Plan's purchase of shares of Envision Management Holding, Inc. stock at a price that was purportedly higher than fair market value (Counts I, II); that certain defendants breached fiduciary duties (Counts III, IV, V); and that certain indemnification provisions are invalid (Count VI).

All of these claims are premised on duties that arise under (and benefits allegedly due pursuant to) the Plan Document, which mandates that Plan participants, like Plaintiff, bring such claims only in individualized, binding arbitration.

## II.     Relevant Terms in the Plan Document.

Plaintiff has been a participant since the Plan was first adopted. *See* Compl. ¶ ¶ 26-27. Since the Plan's inception and through the present, the governing Plan Document has stated that "all Covered Claims must be resolved exclusively pursuant to the provisions of this Section 21 (the 'Arbitration Procedure')." *See* Ex. A at § 21.1. The Plan Document defines "Claimant" as "an Eligible Employee, Participant or Beneficiary," and broadly defines the term "Covered Claim." *See id.*, § 21.1, 21.1(a). Under the Plan Document definitions, and as discussed further below, Plaintiff is a "Claimant," and each count of his Complaint is a "Covered Claim."

The Plan Document also contains a "Class Action Waiver" provision, which provides that claims "must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis." *Id.*, § 21.1(b). Further, the Class Action Waiver provision provides that, for claims brought under 29 U.S.C. § 1132(a)(2) to seek relief under ERISA § 409, Claimants are entitled to pursue remedies for their individual Plan accounts (as opposed to the accounts of any other Plan participants). *Id.* The "Class Action Waiver" provision is "material and non-severable," and "[a]ny dispute or issue as to the applicability or validity" of it "shall be determined by a court of competent jurisdiction" rather than the arbitrator. *Id.*

**ARGUMENT**

In the FAA, Congress enshrined in statute "a liberal federal policy favoring arbitration" that was specifically designed to counteract prior "widespread judicial hostility to arbitration[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 344. Thus, federal courts "must rigorously enforce arbitration agreements," including for "claims that allege a violation of a federal statute[.]" *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quotations omitted).

In short, according to the plain text of the FAA and multiple recent Supreme Court cases interpreting it, enforcement of arbitration agreements is mandatory: The FAA states that they "shall be valid, irrevocable, and enforceable," *see* 9 U.S.C. § 2; courts must compel arbitration "in accordance with the terms of the agreement" upon the motion of either party, *see id.* § 4; and courts faced with such a motion must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[,]" *see id.* § 3. *Accord. Concepcion*, 563 U.S. at 344.

The Tenth Circuit upholds this command by noting that "'[q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration,' and thus, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000). Any contract with an arbitration clause gives rise to "a presumption of arbitrability," which "may be overcome only if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995).

When questions of enforceability arise, the Tenth Circuit "appl[ies] a two-step inquiry," namely: "(1) did the parties agree to arbitrate the dispute; and (2) if so, are there 'legal constraints

4

external to the parties' agreement that foreclose the arbitration of those claims.'" *Ward v. Express Messenger Sys., Inc.*, 413 F. Supp. 3d 1079, 1083 (D. Colo. 2019) (alterations omitted). The first step "focuses on two considerations: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement." *Scarpitti v. Charter Commc'ns, Inc.*, No. 18-CV-02133-REB-MEH, 2018 WL 10806905, at *1 (D. Colo. Dec. 7, 2018).

## I. Plaintiff Should Be Compelled to Pursue All of His Claims Via Binding Arbitration.

### A. The Plan Document Contains a Valid and Enforceable Arbitration Provision.

ERISA directs courts to enforce plan documents as written. *US Airways, Inc.*, 569 U.S. at 101. Moreover, employers have "large leeway to design [employee benefit plans] as they see fit." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013). The written plan document binds participants, beneficiaries, and employers and governs claims made under the plan. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (holding that ERISA's statutory scheme is "built around reliance on the face of written plan documents").

Since its inception, this Plan Document has provided that any "Covered Claim" "made by or on behalf of an Eligible Employee, Participant or Beneficiary . . . shall be resolved exclusively by binding arbitration[.]" Ex. A, § 21.1(a). This provision means what it says: Section 21.1 of the Plan Document binds Plaintiff and requires arbitration of his claims.[3]

The Supreme Court has held that arbitrators are competent to interpret and apply federal law and, thus, claims for violations of a federal statute—including putative class actions or

---

[3] Federal common law, not state law, governs the determination whether the Plan Document's arbitration provision binds Plaintiff. *See Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998) (When interpreting the terms of an ERISA plan, "the relevant principles of contract interpretation are not those of any particular state's contract law, but rather are a body of federal common law tailored to the policies of ERISA."). That is because ERISA contains a broad preemption provision. *See* 29 U.S.C. § 1144(a).

representative claims brought under federal law—may be arbitrated unless "the FAA's mandate has been overridden by a contrary congressional command[.]" *See American Express Co.*, 570 U.S. at 233 (quotation omitted). The Court also has observed that "[i]n many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the [FAA] and other federal statutes," and "[t]hroughout, we have made clear that *even a statute's express provision for collective legal actions* does not necessarily mean that it precludes 'individual attempts at conciliation' through arbitration." *Epic Sys. Corp.*, 138 S. Ct. at 1627 (emphasis added).

This means that the FAA applies to claims alleging violations of ERISA. No court has recognized any "clearly expressed congressional intention" in ERISA to override the FAA, nor any reason why ERISA should be unique among federal statutes as exempt from the Supreme Court's clear guidance in *American Express* and *Epic Systems*. Each circuit to consider the question—including the Tenth Circuit—has concluded that "Congress did not intend to prohibit arbitration of ERISA claims."[4] *Williams*, 203 F.3d at 767; *see also Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513-14 (9th Cir. 2019) (*Dorman II*)[5] (collecting cases).

For example, in *Dorman II*, the Ninth Circuit reversed a district court's refusal to compel arbitration based on a provision contained in a plan document. There, as here, the plaintiff-employee brought ERISA claims for breach of fiduciary duty. In holding that both the plan's arbitration and class action waiver provisions were enforceable and binding, the court concluded

---

[4] Because the Tenth Circuit in *Williams* concluded that "Congress did not intend to prohibit arbitration of ERISA claims," 203 F.3d at 767, there are no "legal constraints external to the parties' agreement that foreclose the arbitration of those claims." *Ward*, 413 F. Supp. 3d at 1083.

[5] *Dorman II* was the second of two concurrently-issued opinions addressing whether a district court erred in refusing to enforce an arbitration provision contained in an ERISA-regulated retirement plan. In *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) (*Dorman I*), the Ninth Circuit overruled its prior precedent on the arbitrability of ERISA claims in light of the Supreme Court's decision in *American Express*.

that "[t]he Plan and [the plaintiff] both agreed to arbitration on an individual basis[.]"  The court therefore held that "the Plan expressly agreed in the Plan document that all ERISA claims should be arbitrated," and "[a] plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect."  *Id.* at 512-14 (citation omitted).  The court enforced the arbitration provision as written.

The Court should reach the same conclusion here.  Plaintiff alleges that he "is a vested participant" in the Plan, and that he has participated in the Plan since its inception.  *See* Compl. ¶¶ 26-27.  Consequently, he has agreed to be bound by Section 21.1 of the Plan Document by virtue of his being a participant for the entire time that the Plan provision has been in effect.  *See Schoemann v. Excellus Health Plan*, *Inc.*, 447 F. Supp. 2d 1000, 1007 (D. Minn. 2006) (ERISA plan terms (like forum-selection clauses) bind participants, even when participants do not negotiate or affirmatively consent to terms).[6]  The Court should conclude that Section 21.1 is valid and binds Plaintiff with respect to the forum in which he can bring his "Covered Claims."

---

[6] To the extent Plaintiff may argue that the arbitration provision in the Plan Document is not binding on him because he did not receive notice of it or did not take affirmative action to manifest his agreement to it, he would be mistaken.  Plaintiff was provided a copy of the Plan Document before he filed suit and, more relevant, by participating in the Plan, Plaintiff is bound to abide by its terms.  *See Schoemann*, 447 F. Supp. 2d at 1007.

Likewise, Plaintiff would be incorrect if he argued that arbitration should not be compelled because the Plan Document's arbitration provision was not described in the Plan's summary plan description ("SPD").  An ESOP's *plan document* controls and governs the plan's terms.  Participants may receive other documents, like an SPD, that may explain plan terms.  The Supreme Court has concluded, however, that statements in an SPD "'communicate with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan.'"  *US Airways, Inc.*, 569 U.S. at 92 n.1 (alterations omitted) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011)).  Following *Amara*, the Tenth Circuit has concluded that an SPD "cannot create terms that are not also authorized by, or reflected in, governing plan documents."  *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1131 (10th Cir. 2011).  Because the Plan Document unambiguously requires Plaintiff to arbitrate, precedent from the Supreme Court and Tenth Circuit requires enforcing the Plan Document's arbitration provision, even if not referenced in the SPD.

Indeed, this case is unlike those in which courts (perhaps wrongly) decline to enforce arbitration provisions that were added to ERISA plan documents as amendments *after* the events giving rise to the participant's claims occurred. *See, e.g.*, *Hensiek v. Bd. of Dirs. of Casino Queen Holding Co.*, No. 3:20-CV-377-DWD, 2021 WL 267655, at *6 (S.D. Ill. Jan. 25, 2021), *appeal docketed*, Nos. 21-1175, 21-1176, 21-1177 (7th Cir. Jan. 29, 2021). Here, the Plan Document has included the arbitration provision since the Plan's inception and, accordingly, for the entire time Plaintiff has participated in it. There is no basis for declining to enforce the provision.

### B. Plaintiff's Claims Fall Within the Scope of the Arbitration Provision.

#### 1. Section 21.1 of the Plan Document is a "Broad" Arbitration Provision that is Presumptively Valid.

When there is any question whether claims are arbitrable, courts first "determine whether the parties' arbitration clause is broad or narrow," and "'[w]here the arbitration clause is broad, there arises a presumption of arbitrability[.]'" *St. Charles v. Sherman & Howard L.L.C.*, No. 14-CV-03416-RM-CBS, 2015 WL 1887758, at *2 (D. Colo. Apr. 24, 2015). The presumption of arbitrability "may be overcome only if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (quotation omitted).

The language of an arbitration provision evinces whether it is "broad." Thus, "the phrases 'arising out of or relating to' mean that the parties intended their arbitration agreement to be construed broadly." *St. Charles*, 2015 WL 1887758, at *2. In addition, in *ARW Exploration Corp.*, the agreements at issue provided for arbitration of "*any matter* with respect to which a decision must be made," which the Tenth Circuit described as "broad and sweeping language" that gave rise to a "presumption of arbitrability." *ARW Exploration Corp.*, 45 F.3d at 1458, 1462 (emphasis added).

8

The definition of "Covered Claim" in Section 21.1 of the Plan Document is unquestionably broad and favors arbitration, and it reinforces the presumption of arbitrability:

> *Any claim* made by or on behalf of [a Claimant] *which arises out of, relates to, or concerns* this Plan, the Trust Agreement, or the Trust, including *without limitation*, *any claim* for benefits . . . ; *any claim* asserting a breach of, or failure to follow, the Plan or Trust; and *any claim* asserting a breach of, or failure to follow, any provision of ERISA or the Code, *including without limitation* claims for breach of fiduciary duty, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the [Internal Revenue] Code.

Ex. A § 21.1(a) (emphases added). This definition of "Covered Claim" encompasses "any claim" under the two statutes (ERISA and the Internal Revenue Code) that could potentially provide for liability with respect to an ERISA-governed plan. The definition also uses the terms "without limitation," as well as the "arising out of" language that the court held in *St. Charles* implicates the presumption of arbitrability. In short, Section 21.1 is as "broad" as an arbitration provision could be, and therefore the claims at issue here are presumptively arbitrable.

### 2. All of Plaintiff's Claims Fall Within the Scope of the Plan Document's Arbitration Provision Because the Claims are All "Covered Claims," and the Provision Applies to All Defendants.

Even absent a finding that Section 21.1 is a "broad" provision entitled to a presumption of arbitrability, Plaintiff's claims fall easily within the plain language[7] of a "Covered Claim" subject to arbitration. The Complaint's six counts fall within the "Covered Claims" definition because each "assert[s] a breach of, or failure to follow, [a] provision of ERISA." Ex. A, § 21.1(a); Compl. ¶¶ 115-165. Accordingly, Plaintiff's claims fall within the scope of the arbitration provision.

Moreover, the Plan Document's arbitration provision applies to all Defendants. Section 21.1 "shall apply to all Covered Claims asserted by a Claimant, whether such Covered Claims are

---

[7] *See, e.g.*, *Martinez v. Plumbers & Pipefitters Nat'l Pension Plan*, 795 F.3d 1211, 1219 (10th Cir. 2015) (Courts interpret ERISA plans by "consider[ing] the common and ordinary meaning as a reasonable person in the position of the plan participant would[.]").

9

asserted solely against one or more of the Plan's fiduciaries or are also asserted against the Primary Sponsor or any other non-fiduciary (e.g., a Plan service provider)." Ex. A, § 21.1(l). Specifically, Argent, the ESOP Committee, and the Board are fiduciaries, and the other Defendants are non-fiduciaries.

Whether by presumption or by plain meaning, Plaintiff's claims are arbitrable because they fall within the plain definition of "Covered Claims" in the Plan Document, and the Court therefore should compel arbitration under Section 4 of the FAA.

## II. THE COURT SHOULD STAY THE CASE PENDING ARBITRATION OR, IN THE ALTERNATIVE, DISMISS IT.

Section 3 of the FAA directs courts to stay proceedings where, as here, alleged claims are arbitrable and a party has asked for a stay. *See* 9 U.S.C. § 3. "When the parties have entered into an arbitration agreement, and either party requests a stay of the case pending arbitration, the Court *must* stay the case. *Jajack v. New York Life Ins. Co.*, No. 20-CV-01590-MEH, 2020 WL 8269316, at *6 (D. Colo. Dec. 28, 2020) (emphasis added).

Moreover, the court in *Jajack* also observed that "[a] district court lacks subject matter jurisdiction over disputes that are covered by an arbitration agreement," and "dismissal under Rule 12(b)(1) is appropriate if there is a valid and enforceable arbitration clause." *Id.* at *4 (citing *Hagerman v. United Transp. Union*, 281 F.3d 1189, 1195 (10th Cir. 2002)). The court in *Jajack* administratively closed that case after compelling arbitration, as this Court should here.

For the reasons discussed above, *see* Sections I.A & I.B *supra*, the Plan Document dictates arbitration of the claims here. Accordingly, the Court should either (1) stay this proceeding pursuant to Section 3 of the FAA, or (2) in the alternative, dismiss and close the case administratively under Rule 12(b)(1), subject to potential reopening for good cause.

### III.  PLAINTIFF MUST ARBITRATE ON AN INDIVIDUAL BASIS.

#### A.  This Court Should Enforce Section 21.1(b)'s Class Action Waiver Provision.

The Plan Document contains a "Class Action Waiver" provision, which provides that "[a]ll Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis." Ex. A, § 21.1(b). In case that were not clear enough, Section 21.1(b) goes on to reiterate that "[e]ach arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." *Id.*

Section 21.1(b) also explains that Claimants may arbitrate claims under 29 U.S.C. § 1132(a)(2) as to their individual accounts only. Ex. A, § 21.1(b). Next, the Plan Document reiterates that "[t]he arbitrator(s) shall consequently have no jurisdiction or authority to compel or permit any class, collective, or representative action in arbitration, to consolidate different arbitration proceedings, or to join any other party to any arbitration." *Id.*

If Plaintiff were to contest that Section 21.1(b) applied to any arbitration proceeding he might bring (as he has, in filing a putative class action), the Plan Document specifies that this Court (not the arbitrator) should resolve that issue: "[a]ny dispute or issue as to the applicability or validity of this Section 21[.1](b) (the 'Class Action Waiver') shall be determined by a court of competent jurisdiction." *Id.* In other words, the Plan Document leaves for this Court to decide questions regarding the applicability and validity of the Class Action Waiver. *See, e.g.*, *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718-19 (5th Cir. 2019) ("[C]lass arbitrability is a gateway issue for courts, not arbitrators, to decide, absent clear and unmistakable language to the contrary").

11

The Plan Document also provides that the Class Action Waiver provision in Section 21.1(b) is a "material and non-severable" term, and that "[i]n the event a court of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure . . . shall be rendered null and void in all respects." Ex. A, § 21.1(b).

Thus, the Plan Document leaves for the Court to decide any dispute related to the enforceability of the Class Action Waiver provision—and for reasons provided below, the Court should conclude that the provision must be enforced.

### B. Enforcement of This Individual Arbitration Provision—and Waiver of Class or Representative Arbitration—is Required.

The Supreme Court has held that class action waivers in arbitration provisions are valid and enforceable. "In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp.* v. *Lewis*, 138 S. Ct. 1612, 1619 (2018). The Court repeatedly has held that individualized arbitration provisions are enforceable even for claimants who seek to vindicate important statutory rights. *See American Express*, 570 U.S. at 233 (upholding individual arbitration of antitrust claims); *AT&T Mobility LLC*, 563 U.S. at 344 (invalidating California state law that required availability of class-wide arbitration and enforcing class arbitration waiver); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (upholding individual arbitration of age discrimination claims brought under the ADEA).

These decisions reflect that the enforcement of arbitration provisions "is a matter of contract" that courts "must rigorously enforce . . . according to their terms." *American Express*, 570 U.S. at 233; *Dorman II*, 780 F. App'x at 514 ("Because 'arbitration is a matter of contract,' the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individual basis.") (citation omitted).

The Supreme Court enforces these prohibitions on class-wide arbitration even when doing so might mean that the resulting expected recovery in an individual arbitration would be dwarfed by the cost of arbitrating the claim. *See American Express*, 570 U.S. at 232; *AT&T*, 563 U.S. at 531 (rejecting argument that class arbitration was needed for claims "that might otherwise slip through the legal system").

The Class Action Waiver in Section 21.1(b) provides expressly that: "[a]ll Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis," and describes remedies available for claims under 29 U.S.C. § 1132(a)(2). Notably, enforcing the Class Action Waiver would not affect the remedies that Plaintiff could obtain under ERISA. Whether Plaintiff proceeded in arbitration or federal court, he personally would recover an amount limited only to the adverse impact on his individual Plan account. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (29 U.S.C. § 1132(a)(2) in the context of defined contribution plans (like ESOPs) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account").

Consequently, this Court should order that any arbitration must be on an individual basis.[8]

---

[8] To the extent Plaintiff cites recent opinions from the Northern District of Illinois or Second Circuit in support of an argument that the Class Action Waiver provisions impermissibly restrict claims under 29 U.S.C. § 1132(a)(2), such an argument should fail. Neither opinion is binding on this Court and both are distinguishable.

First, in *Smith v. GreatBanc Trust Co.*, No. 20 C 2350, 2020 WL 4926560 (N.D. Ill. Aug. 21, 2020), the court denied a motion to compel arbitration in part based on its conclusion that a provision requiring individual arbitration interfered with ERISA's remedial scheme as to claims under 29 U.S.C. § 1132(a)(2). *Id.* at *4. *Smith* is currently on appeal before the Seventh Circuit. The court quoted a Supreme Court case for the proposition that, under 29 U.S.C. § 1132(a)(2), claims are "'brought in a representative capacity on behalf of the plan as a whole'" and "extend[] to the entire plan." *Smith*, 2020 WL 4926560, at *4 (quoting *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)). Critically, *Smith* involved an ESOP (like this Plan), which is a type of defined *contribution* plan—whereas *Russell* involved a defined *benefit* plan. And the two types of ERISA plans are markedly different. "A defined contribution plan 'provides for an individual account for each participant and for benefits based solely upon the amount contributed to the

## IV. THE COURT SHOULD AWARD DEFENDANTS' ATTORNEYS' FEES AND COSTS, AS PROVIDED UNDER THE PLAN DOCUMENT.

The Plan Document provides for an award of attorneys' fees to any party required to enforce the arbitration provision. *See* Ex. A, § 21.2. Plaintiff's filing of the Complaint (and refusal to dismiss it) necessitated this Motion. Defendants thus are entitled to reimbursement of attorneys' fees, costs, and any other expenses incurred with respect to moving to compel arbitration. *See Lamkin v. Morinda Properties Weight Parcel, LLC*, 440 F. App'x 604, 610 (10th Cir. 2011) (awarding fees where contracts included a similar arbitration enforcement provision).

---

participant's account,'" and "[a] defined benefit plan . . . , consists of a general pool of assets rather than individual dedicated accounts" "'where the employee, upon retirement, is entitled to a fixed periodic payment.'" *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). Indeed, the Supreme Court later explained in *LaRue* that "our references to the 'entire plan' in *Russell*, which accurately reflect the . . . *defined benefit* context, *are beside the point in the defined contribution context*." *LaRue*, 552 U.S. at 255-56 (emphases added). As noted above, a defined contribution plan participant has an interest in his or her plan account only. *Id.* Therefore, the court in *Smith* erred in relying on *Russell* to conclude that an ESOP participant has a right to bring a 29 U.S.C. § 1132(a)(2) claim on behalf of the entire plan and other participants.

Second, in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021), the Second Circuit held that ERISA claims did not fall within the scope of the terms of an arbitration provision in an employee handbook. *Id.* at 183-84. That makes *Cooper* factually distinguishable, because here the Plan Document plainly requires arbitration of ERISA claims like those in Plaintiff's Complaint. Still, Plaintiff may argue that the Class Action Waiver is unenforceable based on *dicta* from the decision, where the court suggested that there *may* be some "tension" between requiring individual arbitration of ERISA claims under 29 U.S.C. § 1132(a)(2) and following a prior Second Circuit case, *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), in which the court required a plaintiff suing under 29 U.S.C. § 1132(a)(2) to demonstrate that she would represent absent plan participants adequately. *Cooper*, 990 F.3d at 184-85 (citing *Coan*, 457 F.3d at 261-62). Importantly, the Second Circuit acknowledged that the potential "tension" "*would not* necessarily justify, on its own, a countertextual reading of an arbitration agreement that applied to a given circumstance." *Cooper*, 457 F.3d at 185 (emphasis added). In other words, the *Cooper dicta* in and of itself should not justify invalidating the individual arbitration requirement in Section 21.1(b). Regardless, there is no "tension" here because protecting absent participants is not an issue in this case, as it was in *Coan*; if Plaintiff followed the Plan Document he would not be suing as a representative, but would be arbitrating as an individual with no effect on other accounts. And in any event, the "tension" to which *Cooper* refers was caused by requirements in *Coan*, a case that does not bind this Court.

14

## CONCLUSION

The Court should compel Plaintiff to arbitrate his claims on an individual basis pursuant to the terms of the arbitration provision in the Plan Document. In the interim, the Court should stay this case, or, in the alternative, dismiss and administratively close it. Either way, the Court should award Defendants their attorneys' fees and costs incurred in seeking this relief.

DATED: May 10, 2021

Respectfully submitted,

*/s/ Randall H. Miller*
BRYAN CAVE LEIGHTON PAISNER LLP
Randall H. Miller
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Phone: (303) 866-0572
Email: randy.miller@bclplaw.com

Barbara A. Smith
211 N. Broadway, Suite 3600
Saint Louis, MO 63102
Phone: (314) 259-2367
Email: barbara.smith@bclplaw.com

William Bard Brockman
1201 West Peachtree Street, NW
One Atlantic Center, 14th Floor
Atlanta, GA 30309-3488
Phone: (404) 572-6600
Email: bard.brockman@bclplaw.com

Counsel for Envision Defendants

*/s/ Lars C. Golumbic*
GROOM LAW GROUP, CHARTERED
Lars C. Golumbic
William J. Delany
Paul J. Rinefierd
1701 Pennsylvania Avenue, NW
Washington, D.C. 20006
Phone: (202) 857-0620
Fax: (202) 659-4503
Email: lgolumbic@groom.com
wdelany@groom.com
prinefierd@groom.com

Counsel for Defendant Argent Trust Company

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2021, a true and correct copy of the foregoing DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL ARBITRATION ACT OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF JURISDICTION was sent to all counsel of record via the CM/ECF system.

*/s/ Randall H. Miller*
Randall H. Miller