IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ROBERT HARRISON, on behalf of himself,
the ENVISION MANAGEMENT
HOLDING, INC. ESOP, and all other
similarly situated individuals,

        Plaintiff,

v.

ENVISION MANAGEMENT HOLDING,
INC. BOARD OF DIRECTORS, et al.,

        Defendants.

Civil Action No. 1:21-cv-304

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND/OR DISMISS**

## I.   INTRODUCTION

This case concerns Defendants' creation of a retirement plan for their employees which served as a means to sell their company stock for an inflated price while keeping control of the company. Specifically, Plaintiff Robert Harrison brings this ERISA[1] action to remedy Defendants' imprudent and disloyal conduct in orchestrating the sale of Envision Management Holding, Inc. (the "Company" or "Envision") to the Envision Management Holding, Inc. Employee Stock Ownership Plan (the "Plan" or "ESOP") for $163.7 million. Defendants seek to compel arbitration of Mr. Harrison's claims or to dismiss for lack of jurisdiction. ECF No. 30-1. But Defendants are not merely seeking an alternate forum to resolve this dispute. Rather, they ask the Court to endorse a severe limitation of the substantive relief Congress made available to Mr. Harrison under ERISA,

---

[1] The Employee Retirement Income Security Act, 29 U.S.C. § 1101 *et seq.*

including his right to seek relief on behalf of the Plan as a whole. Neither the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") nor ERISA permit that result.

The Court should deny Defendants' motion for the further reason that Mr. Harrison did not consent to arbitrate his fiduciary breach claims. Indeed, Mr. Harrison had no notice of the arbitration provision. The provision is found in the Plan Document (*see* Dkt. 34-1), which was never given to Mr. Harrison during his employment with Envision. Instead, participants only received the Summary Plan Description ("SPD") which advised that ESOP participants could file fiduciary breach claims in federal court but *said nothing about arbitration*. Worse, Mr. Harrison was never told that if he filed in federal court, he could be liable for attorneys' fees and costs if he was unsuccessful in contesting the undisclosed arbitration provision.

Arbitration is not a trap for the unwary or an instrument to avoid liability. The FAA requires consent to arbitration *and* that parties in arbitration retain the ability to effectively vindicate all their statutory rights. This Court should reject Defendants' attempts to evade these basic requirements and deny their motion in its entirety.

## II. FACTS

Defendants Creps, Sherwood, and Jones (the "Sellers") owned Envision until December 2017, when they created the Envision ESOP to purchase their Company stock for $163.7 million ("the Transaction"). Dkt. 1 ("Compl.") at ¶ 2. The Sellers hand-picked Argent Trust Company to represent the ESOP (the buyer of their stock) in the Transaction but retained control over the ESOP through their control over Argent. *Id*. at ¶¶ 4-6. Defendant Jones acknowledged as much to Envision employees, stating that though Argent would appoint members of the Envision Board of Directors, the Sellers would "still have control over that Board[.]" *Id*. at ¶¶ 79-80. Further, the

2

Sellers retained the right to unilaterally fire Argent and they also agreed that the Company would indemnify Argent from ERISA fiduciary liability related to the Transaction. *Id*. at ¶¶ 6-7, 103-104.

The Transaction itself, approved by Argent, inexplicably required the ESOP to pay two different share prices for the same class of shares of Envision stock: $1,404 per share for approximately one-third of the shares, and $1,770 per share ($366/share more) for the rest. *Id*. at ¶¶ 8, 90-91. Based on this disparity alone, **the ESOP overpaid at least $23.4 million** for the Envision stock purchased from the Sellers. *Id*. at ¶¶ 9, 95. Further, the ESOP paid too much for the stock because the price did not reflect a significant discount for the ESOP's lack of control over the Company, and the Company's lack of control over the core business. *Id*. at ¶¶ 14, 79-88.

Argent (acting as the Trustee) and the Sellers (exercising control over Argent) caused the ESOP to take on an excessive debt burden of $154.4 million to purchase the stock. *Id*. at ¶ 2. The Sellers loaned over $100 million of this amount to the ESOP, at times charging an extraordinarily high interest rate of 12%. *Id*. at ¶¶ 15, 96-97. This behavior was self-dealing at worst, and at best it failed to serve the best interest of the ESOP participants, whose retirement savings are dependent upon the value of a now-highly leveraged company. *Id*. at ¶¶ 16-17.

Plaintiff Robert Harrison worked for Envision from 2016 to 2020 and is a vested participant in the Envision ESOP. *Id*. ¶¶ 26-27. During his employment with Envision, Mr. Harrison never received a copy of the Plan Document which included the arbitration provision and was never informed of the arbitration provision. Harrison Decl. ¶¶ 3-5. Mr. Harrison seeks relief on behalf of the entire Plan, including the restoration of all "losses to the plan," the disgorgement of profits, the removal of Argent as a fiduciary, and injunctive relief pursuant to 29 U.S.C. §§ 1132(a)(2) & (a)(3) and 1109. Compl. ¶¶ 1, 105, 106; Prayer for Relief A-K.

3

### III.   ARGUMENT

#### A.   Defendants' Motion to Compel Arbitration Should be Denied

Contrary to Defendants' assertion, there is no presumption in favor of arbitrability where, as here, the parties dispute whether an agreement to arbitrate exists in the first place. *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002) ("The presumption in favor of arbitration […] disappears when the parties dispute the existence of a valid arbitration agreement.") (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)). Rather, Defendants, as the parties seeking to compel arbitration, bear the burden of proving the existence of a valid arbitration agreement. *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012); *Ward v. Express Messenger Sys., Inc.*, 413 F. Supp. 3d 1079, 1083 (D. Colo. 2019). This requires showing that (1) legal constraints external to the parties' agreement do not foreclose arbitration of the claims, and (2) the parties agreed to arbitrate the claims at issue. *Williams v. Imhoff*, 203 F.3d 758, 766-67 (10th Cir. 2000). Because Defendants have failed to meet their burden on both requirements, the motion to compel arbitration should be denied.[2]

##### 1.   The non-severable arbitration provision eliminates statutory remedies and is thus invalid

The Supreme Court has repeatedly held that an arbitration provision is invalid if it acts as a "prospective waiver of a party's *right to pursue* statutory remedies." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-*

---

[2] A stay during arbitration would deprive Mr. Harrison of his right under Section 16 of the FAA to appeal the decision. If this Court concludes that arbitration is appropriate, Plaintiff would request dismissal pursuant to Fed. R. Civ. P. 12(b)(3) or (6) in order to take an immediate appeal.

*Plymouth, Inc.*, 473 U.S. 614, 637 n.19) (emphasis original). "That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Id*. at 236. The Tenth Circuit has explained that the proposition that litigants in arbitration "have an adequate forum" in which to resolve statutory claims "falls apart [ ] if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights."[3] *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). *See also Nesbitt v. FCNH*, 811 F.3d 371, 376-378 (10th Cir. 2016) ("effective vindication exception" applies even where both parties agree to arbitrate); *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1148 (10th Cir. 2014) ("*Gilmer* reasoned that by submitting statutory claims to arbitration, a plaintiff does not lose the protection of substantive rights afforded by the statute, but rather submits their resolution to an alternative forum.").

The statutory rights at issue derive from ERISA § 502(a)(2), which gives a participant the right to sue "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109, in turn, makes fiduciaries "personally liable to make good to [the] plan *any* losses to the plan resulting from" a fiduciary breach and requires fiduciaries to "restore to [the] plan *any* profits of such fiduciary which have been made through use of assets of the plan[.]" 29 U.S.C. § 1109(a) (emphases added). Section 1109 expressly authorizes removal of a breaching fiduciary and any

---

[3] The fee-shifting provision Defendants rely on in their motion for fees (Plan Document § 21.1) is still another barrier to effective vindication which renders the entire arbitration provision void. *See Pollard v. ETS PC, Inc.*, 186 F.Supp.3d 1166, 1176 (D. Colo. 2016) ("By far, the most common examples of arbitral provisions that thwart effective vindication of federal statutory rights . . . are those that impose prohibitive costs on the plaintiff (such as paying or splitting the arbitrator's fee), or that would hold the plaintiff liable for" defendant's attorneys' fees and costs if unsuccessful).

"such other equitable or remedial relief as the court may deem appropriate." *Id*. Simply put, § 502(a)(2) is a unique provision of ERISA that allows plan participants to sue plan fiduciaries and recover *all* losses suffered by *all* plan participants, not only individual losses. *See, e.g. LaRue v. DeWolff, Boberg and Assoc.*, 552 U.S. 248, 261 (2008) (Thomas, J., concurring) ("On their face, §§ 409 and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach."); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) ("a plaintiff with Article III standing" may sue on behalf of the plan and "may seek relief under § 1132(a)(2) that sweeps beyond [that plaintiff's] own injury"). When a participant seeks relief under § 1132(a)(2), the claim is necessarily "brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *LaRue*, 552 U.S. at 256 ("§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries").

The arbitration provision here cannot be enforced because it would strip Mr. Harrison of substantive rights conferred by ERISA: namely, the right to proceed under § 1132(a)(2) and seek multiple remedies on behalf of the Plan as a whole. Specifically, the arbitration provision prohibits Mr. Harrison from proceeding under § 1132(a)(2) and seeking relief on behalf of the Plan by stating that claims "must be brought solely in the Claimant's individual capacity and not in a representative capacity." Plan Document § 21.1(b).[4] On its face, this language bars Mr. Harrison from bringing an (a)(2) claim, which can only be brought in a representative capacity. *Russell*, 473

---

[4] Defendants refer to § 21.1(b) as "a 'Class Action Waiver' provision, but the Plan does not contain a class action waiver that is separate from the mandatory arbitration requirement. Section 21 of the Plan Document is entitled "ERISA Arbitration and Class Action Waiver," and its short title is "Arbitration Procedure." *See* Plan Document § 21.1. (labeled "Arbitration Requirement and Procedure"); *see also* § 21.1(b) (labeled "No Group, Class, or Representative Arbitrations.").

U.S. at 142 n.9; *LaRue*, 552 U.S. at 256. In addition, even though § 1109 expressly authorizes restoration of "any" losses to the plan and disgorgement of "any" profits fiduciaries made through the use of plan assets, the Plan's arbitration provision limits remedies to "losses to the Claimant's individual account" and only "a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets." *Id*.[5] The provision further states that the claimant "may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief" to anyone other than the claimant and prohibits relief that is "binding on the Plan Administrator or Trustee with respect to [anyone] other than the Claimant." *Id*. This not only limits Mr. Harrison from obtaining the monetary relief available to him under § 1109 but makes it impossible for the arbitrator to remove the Plan fiduciary and to award other equitable and injunctive relief. A fiduciary cannot be removed or replaced with respect to only Mr. Harrison. The same is true for other remedies requested in the Complaint, such as a constructive trust or equitable lien on ill-gotten gains, an injunction that prevents Defendants from dissipating or transferring the proceeds they received from the Transaction, and an order enjoining enforcement of illegal indemnification arrangements. *See* Compl. Prayer for Relief. These remedies are authorized by 29 U.S.C. §§ 1132(a)(2) and (a)(3), but the plain language of the arbitration provision forbids Mr. Harrison from seeking or receiving them because they necessarily provide

---

[5] The disgorgement remedy is designed to deter fiduciaries from self-dealing. *Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230, 245-46 (3d Cir. 2016) ("The purpose of disgorgement of profits is deterrence, which is undermined if the fiduciary is able to retain proceeds from his own wrongdoing."). Limiting disgorgement to a pro-rated portion of profits in individualized arbitration would seriously undermine Congress's intended prophylactic effect.

relief to all participants (and would enjoin or bind Defendants with respect to all participants), not just Mr. Harrison.[6]

In short, the Plan's arbitration provision does not simply provide a different forum for Mr. Harrison to vindicate his statutory rights or require him to forgo a class action. The plain language of the arbitration provision eliminates his ability to proceed under § 1132(a)(2) and obtain remedies that § 1109 explicitly authorizes. These non-severable terms "do not comport with ERISA's remedial scheme, which goes beyond an individual participant's account and extends to the entire plan, encompassing relief that includes the disgorgement of profits and removal of fiduciaries." *Smith v. GreatBanc Trust Co.*, No. 20 C 2350, 2020 WL 4926560 at *4 (N.D. Ill. Aug. 21, 2020) (holding that identical arbitration provisions in an ESOP were unenforceable with respect to § 1132(a)(2) claims). *See also Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184 (2d Cir. 2021) (noting that requiring individual arbitration of a § 1132(a)(2) claim potentially violated the rule against "forbidding the assertion of certain statutory rights").

Defendants mischaracterize *LaRue*, which simply held that for defined contribution plans (e.g., 401(k) plans), § 1132(a)(2) permits claims even where only an individual account actually lost money as a result of fiduciary breach. 552 U.S. at 256 ("Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular

---

[6] Though ERISA plan document terms generally must be enforced "as written," MTC at 5, it is well-established that plan document terms may not conflict with ERISA. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568–69 (1985) ("trust documents cannot excuse trustees from their duties under ERISA, and [ ] must generally be construed in light of ERISA's policies"); *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (emphasizing that plan documents must be followed *insofar as they accord with the statute* per 29 U.S.C. § 1104(a)(1)(D)). The arbitration provision here is inconsistent with ERISA § 502(a)(2) and thus Defendants' ERISA-based argument fails.

individual accounts, it creates the kind of harms that concerned the draftsmen of § 409."). *LaRue* did not purport to limit the plan-wide remedies that are otherwise available under ERISA, and it certainly did not hold that plan-wide relief is unavailable in suits involving defined contribution plans. *Id.* at 254 (reiterating that "the text of § 409(a) characterizes the relevant fiduciary relationship as one 'with respect to a plan,' and repeatedly identifies the 'plan' as the victim of any fiduciary breach and the recipient of any relief.") (quoting *Russell*, 473 U.S. at 136-37). To the contrary, the Court emphasized that § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries[.]" *Id.* at 256.

Because the arbitration provision here eliminates Mr. Harrison's "right to pursue statutory remedies," *American Express*, 570 U.S. 235, the entire provision, including the so-called class action waiver, is invalid. By the arbitration provision's own terms, the invalidity of any of its requirements means that "the entire Arbitration Procedure [*i.e.* all of § 21] … shall be rendered null and void in all respects" as to each of Mr. Harrison's ERISA claims. Plan Document § 21.1(b). Moreover, the terms that seek to eliminate Mr. Harrison's right to proceed under § 1132(a)(2) and seek plan-wide relief are expressly identified as "material and non-severable." *Id.*; MTC at 11-12. The Court need not go any further to deny the motion to compel arbitration.

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) does not change this result. There the Supreme Court held that arbitration agreements requiring individualized proceedings are valid even though they preclude individuals from bringing collective actions to protect statutory rights. The arbitration agreement in *Epic* did not require plaintiffs to waive their statutory rights; it simply barred a particular procedural vehicle. Similarly, other cases cited by Defendants do not involve arbitration agreements that require waiver of statutory claims. *See Am. Exp. Co.*, 570 U.S. at 233

(noting that the arbitration agreement did not prevent the party's right to pursue statutory remedies); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (invalidating state law requiring availability of class-wide arbitration); *Gilmer*, 500 U.S. at 28 (upholding arbitration agreement but acknowledging that such agreements are valid only to the extent that they do not require waiver of statutory rights).

Beyond impermissibly depriving Mr. Harrison of his statutory rights, enforcement of the Plan's arbitration provision in the context of an ESOP would be unworkable. The value of every ESOP participant's account is based on the same valuation of Company stock. Yet the arbitration provision states that an arbitrator's award is not binding on Plan fiduciaries and cannot provide a remedy for anyone other than the Claimant. Plan Document §§ 21.1(b), 21.1(g). Enforcement of the arbitration provision would thus almost certainly result in multiple, individualized arbitration decisions yielding different determinations of the stock's value and binding plan fiduciaries to conflicting requirements. And because Plan Document § 21.1(i) bars disclosure of any aspect of the arbitration proceeding, individual arbitrators would not even be aware of decisions by other arbitrators. This would also conflict with ERISA's reporting and disclosure regime, which requires the disclosure of any prohibited transactions, as well as the value of all the assets held in the ESOP (i.e., the value of all shares of Envision stock), in a plan's annual Form 5500 filing with the Department of Labor. *See* 29 U.S.C. § 1023(b)(2) and § 1023(b)(3)(C).

Enforcement of the Plan's arbitration provision would create chaos rather than simplify the process for participants to pursue their statutory rights, contrary to Congress's goal in the FAA to establish an "alternative to the complications of litigation." *Wilko v. Swan*, 346 U.S. 427, 431

(1953), *abrogated on other grounds by Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989)).

### 2. Arbitration should not be compelled because Mr. Harrison did not consent to arbitrate his claims.

Because the arbitration provision eliminates statutory remedies, it is unenforceable under the FAA and ERISA, and this Court need not go any further. The lack of consent to arbitration, however, provides an alternative basis to deny the motion to compel arbitration.

Under the FAA, a party cannot be forced to arbitrate unless he has consented to arbitration. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019). Such mutual assent is a "strictly" required and "foundational FAA principle." *Id.* at 1415 (2019) (citations omitted). The Supreme Court has been unwavering on this point, emphasizing that "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quotation omitted). ERISA cannot override this core requirement. 29 U.S.C. § 1144(d) (stating ERISA does not modify or supersede other federal laws).

The arbitration provision is unenforceable against Mr. Harrison because he did not consent or otherwise agree to be bound by it. Harrison Decl. ¶ 6. Mr. Harrison had no knowledge of the arbitration provision that purported to strip him of his statutory right to sue in federal court, but not for any failure on his part. *Id*. ¶ 3-6 (stating that during his employment with Envision, Mr. Harrison never received or reviewed the Plan Document, was never informed about the arbitration provision, and never agreed to arbitrate claims regarding the ESOP). Indeed, the SPD – the only

11

document which ERISA requires that plans provide to participants[7] – stated that "[i]f it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit **in a federal court**." *Id*. ¶ 11, Ex. A (emphasis added) (hereinafter "2018 SPD") at 14-15. Far from putting ESOP participants on notice of the Plan's arbitration provision, the SPD affirmatively assured that participants like Mr. Harrison could seek redress in federal court – which is precisely what he did here. Any reasonable conception of "consent" must require that a person have actual or constructive notice of the thing to which he consents. Such consent is missing here.

Further, because the FAA requires *mutual* consent to arbitration, this Court and others have repeatedly rejected attempts to impose arbitration unilaterally. *See, e.g., Dumais*, 299 F.3d at 1219 (joining "other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory"); *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 782-83 (7th Cir. 2014) (holding that where one party "retain[s] the sole, unilateral discretion" to impose an arbitration provision, the provision is "illusory" and therefore invalid); *Morrison v. Amway Corp.*, 517 F.3d 248, 254-55 (5th Cir. 2008).[8] This touchstone FAA principle means that before Defendants can force *Mr. Harrison* to arbitrate, *Mr. Harrison* must consent to arbitrate. And here, even under the most lenient conception of consent, there is no basis to infer that Mr. Harrison agreed to arbitrate this dispute.

---

[7] *See* ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1).

[8] These cases also reject mandatory arbitration where one party has the unilateral right to modify the terms of the arbitration agreement.

Defendants contend that Mr. Harrison "consented" to the arbitration clause because he participated in the Plan and the arbitration clause was included in the Plan Document. MTC at 6-7.[9] But even in a "take-it-or-leave-it" adhesive contract, the counterparty must at least have the opportunity to "leave it" and reject the contract altogether. *See e.g. Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991) (explaining consent may be inferred only where a party to be bound was "given notice of the… provision" and "retained the option of rejecting the contract with impunity."). It is unclear how Mr. Harrison could have withheld his consent to arbitration when he had no actual or constructive notice that the arbitration clause even existed. Harrison Decl. ¶ 5; *Smith*, 2020 WL 4926560, at *3 (rejecting argument that ESOP participant consented to arbitrate through participation in the plan because plaintiff had no notice of the arbitration provision). Consent to arbitration plainly cannot be inferred without notice. *Carnival Cruise Lines*, 499 U.S. at 595-97 (enforcing a forum selection clause contained on the back of a cruise ticket).

Defendants give little attention to the SPD's assurance that a participant can bring a claim in federal court, and the short explanation offered misleads the Court on both the facts and the law. The problem is not simply that "the Plan Document's arbitration provision was not described in" the SPD. MTC at 7, fn. 6. Rather, the SPD specifically assured participants that they could bring this dispute to **federal court**, contrary to the Plan Document's arbitration provision. *See* 2018 SPD at 14-15. And Defendants also mischaracterize *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, which expressly *did not reach* the conclusion that Defendants suggest. *Compare* MTC

---

[9] In support of their argument, Defendants rely on the *unpublished* portion of an otherwise published opinion. MTC at 6-7; *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 512, n. ** (9th Cir. 2019) ("*Dorman II*") (noting that the opinion is not precedent).

13

at 7, fn. 6 *with Eugene S.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("We need not determine [the holding of *CIGNA v. Amara*], though, because the SPD does not conflict with the Plan or present terms unsupported by the Plan; rather, it *is* the Plan").

Lastly, *Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000 (D. Minn. 2006), is irrelevant. ERISA claims can be arbitrated only by virtue of the FAA, and it is the FAA that governs the arbitration of ERISA claims. As explained above, consent is the "cornerstone" of the formation of an agreement to arbitrate under the FAA. *Granite Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287, 298-99 n. 6 (2010).ERISA itself makes room for the operation of other federal laws, *see* 29 U.S.C. § 1144(d), and that means an arbitration provision can be enforced only if the FAA's strict consent requirements are satisfied.

### B.  Defendants Are Not Entitled to Attorneys' Fees and Costs

Even if the Court finds that the arbitration agreement in the Plan Document is valid (which it is not, for the reasons stated in Section III.A, *supra*), the Court should decline to order Plaintiff to pay Defendants' attorneys' fees and costs. The validity of the arbitration clause here is genuinely disputed, and thus this case is not analogous to *Lamkin v. Morinda Properties Weight Parcel, LLC*, which Defendants cite in support of their request. 440 F. App'x 604 (10th Cir. 2011). That case dealt with a plaintiff who *had consented* to arbitration, but who filed suit in court contending that the defendant had waived its right to compel arbitration, despite clear evidence that defendant *had not* waived that right. *Id.* at 609-10. Further, imposing attorneys' fees and costs on the Plaintiff in circumstances such as these, where Mr. Harrison neither consented to nor had notice of the arbitration clause (Harrison Decl. ¶¶ 5-6), would have a strong chilling effect on plaintiffs seeking

14

to vindicate their rights under ERISA, which declared it the policy of Congress to provide for "ready access to the Federal courts."[10] 29 U.S.C. § 1001(b).

## IV.   CONCLUSION

The Court should deny Defendants' motion to compel individual arbitration because the arbitration clause in the Plan Document functions as a prospective waiver of statutory rights and because Mr. Harrison never consented to arbitrate his claims. The Court should also deny Defendants' request for attorneys' fees and costs.

June 1, 2021

Respectfully submitted,

*/s/ Mary J. Bortscheller*
Michelle C. Yau
Mary J. Bortscheller
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2021, a true and correct copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion to Compel Arbitration and/or Dismiss was sent to all counsel of record via the CM/ECF system.

*/s/ Mary J. Bortscheller*
Mary J. Bortscheller

---

[10] ERISA also expressly requires a district court to exercise discretion before allowing attorneys' fees. 29 U.S.C. § 1132(g)(1).