IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 21–cv–00304–CNS–MDB

ROBERT HARRISON and GRACE HEATH, on behalf of themselves,
the ENVISION MANAGEMENT HOLDING INC. ESOP,
and all other similarly situated individuals,

    Plaintiffs,

v.

ENVISION MANAGEMENT HOLDING, INC. BOARD OF DIRECTORS,
ENVISION MANAGEMENT HOLDING, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE,
ARGENT TRUST COMPANY,
DARREL CREPS, III,
PAUL SHERWOOD,
JEFF JONES,
NICOLE JONES,
AARON RAMSAY,
TANWEER KHAN, and
LORI SPAHN

    Defendants.

## ORDER

This action is before the Court on Defendants Envision Management Holding, Inc. Board of Directors, Envision Management Holding, Inc. Employee Stock Ownership Plan Committee, Argent Trust Company, Darrel Creps, III, Paul Sherwood, Jeff Jones, Nicole Jones, Aaron Ramsay, Tanweer Kahn, and Lori Spahn's (collectively, "Defendants") Renewed Motion to Stay Pending 9 U.S.C. § 16 Appeal in Light of Intervening Supreme Court Decision (["Motion"], Doc. No. 98.) Plaintiffs have responded in opposition, and Defendants have replied.

(["Response"], Doc. No. 101; ["Reply"], Doc. No. 103.) After carefully reviewing the referenced Supreme Court decision, the Motion, Response, Reply, case file, and other applicable case law, the Court **DENIES** the Motion.

## BACKGROUND

This case involves an ERISA-regulated employee stock ownership plan ("Plan"). (*See* Doc. No. 1.) On January 29, 2021, Plaintiff Robert Harrison filed a class action complaint, bringing six causes of action against the various Defendants and seeking Plan-wide relief.[1] (*Id.* at 38–39.) The action was initially assigned to the Honorable R. Brooke Jackson, who allowed Defendants to file a motion compel arbitration. (Doc. No. 33 (noting, "[t]here appears to be a legitimate issue as to whether the arbitration provision is valid and enforceable").) The action was later reassigned to the Honorable Regina M. Rodriguez, and on March 24, 2022, Judge Rodriguez denied Defendants' motion to compel arbitration, finding the arbitration provision at issue "invalid because it conflicts with ERISA"—specifically, "the arbitration provision acts as a prospective waiver because it disallows plan-wide relief, which is expressly contemplated by ERISA." (*See* Doc. No. 54 at 4–5.)

On April 4, 2022, Defendants appealed Judge Rodriguez's Order. (Doc. No. 55.) The same day, Defendants filed an unopposed motion to stay, and the Honorable Nina Y. Wang—the assigned magistrate judge at the time—granted the motion and imposed a stay. (Doc. Nos. 56, 60.) On February 9, 2023, the Tenth Circuit affirmed Judge Rodriguez's Order. (Doc. Nos. 66, 67.) Defendants filed a petition for rehearing, which the Tenth Circuit denied. On April 19,

---

[1] On June 21, 2023, Plaintiff filed an Amended Complaint which added Grace Heath as a Plaintiff, identified two new Defendants (Nicole Jones and Lori Spahn), and added additional factual allegations and an additional ERISA claim. (Doc. No. 91.)

2

2023, the Tenth Circuit issued its mandate returning jurisdiction to the district court. (Doc. No. 75.)

On May 1, 2023, the parties filed a joint status report, indicating one or more Defendants intended to file a petition to the U.S. Supreme Court. (Doc. No. 78 at 4.) Defendants argued the stay previously imposed by Judge Wang should be kept in place pending resolution of any petition to the Supreme Court. (*Id.* at 2-4.) Plaintiff Harrison disagreed and opposed any continued stay. (*Id.*)

On May 16, 2023, the Court held a conference to better understand the various interests at issue. During that conference, the Court decided to lift the stay, but stage discovery to account for the anticipated petition to the Supreme Court. (Doc. No. 80; 81.) Specifically, the Court set out the following deadlines:

- Initial disclosures will be served or before June 19, 2023
- Responsive pleadings will be filed on or before June 19, 2023
- Written discovery will begin on August 16, 2023
- Fact discovery will end April 3, 2024
- Affirmative experts will be disclosed on or before June 24, 2024
- Rebuttal experts will be disclosed on or before August 24, 2024.
- Expert discovery will end October 14, 2024
- Dispositive/702 motions will be filed on or before November 19, 2024

(*See* Doc. No. 80.)

On July 6, 2023, Defendants filed the instant Motion, arguing that when this Court decided to lift the stay, it did not have the benefit of the U.S. Supreme Court's decision in *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915 (2023), in which the Supreme Court "held unequivocally that a district court 'must stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing.'" (Doc. No. 98 at 2 (quoting *Coinbase*, 143 S. Ct. at 1918).)

3

Plaintiffs contend that *Coinbase* does "not change the law in the Tenth Circuit[,]" and does not warrant reinstatement of a stay. (Doc. No. 101 at 1–2.)

## LEGAL STANDARD

Courts typically have broad discretion in determining whether to issue a stay. *See United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). However, this Motion concerns Section 16(a) of the Federal Arbitration Act ("FAA"), and the Tenth Circuit has held that a district court is "automatically and immediately," *Hardin v. First Cash Financial Serv., Inc.*, 465 F.3d 470, 474 (10th Cir. 2006), divested of jurisdiction "upon the filing of a non-frivolous § 16(a) appeal" and does not regain jurisdiction "until the appeal is resolved on the merits," *McCauley v. Halliburton Energy Serv., Inc.*, 413 F.3d 1158, 1160 (10th Cir. 2005). The recent *Coinbase* decision makes clear that the stay is mandatory. *See Coinbase*, 143 S. Ct. at 1918.

## ANALYSIS

The Court is called upon to decide whether to reinstate the stay previously imposed by Judge Wang (Doc. No. 60) and recently lifted by this Court. (Doc. Nos. 80, 81.)

In *Coinbase*, the district court and court of appeals declined to stay the district court proceedings pending Coinbase's appeal of under 9 U.S.C. § 16(a). The issue before the Supreme Court was whether "the District Court was required to stay its proceedings," once "Coinbase appealed from the denial of its motion to compel arbitration[.]" *Coinbase*, 143 S. Ct. at 1923. The *Coinbase* court answered in the affirmative. It reasoned that:

> [a]bsent an automatic stay of district court proceedings, Congress's decision in § 16(a) to afford a right to an interlocutory appeal would be largely nullified. If the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of

4

> arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along. Absent a stay, parties also could be forced to settle to avoid the district court proceedings (including discovery and trial) that they contracted to avoid through arbitration.

*Coinbase*, 143 S. Ct. at 1921. Justice Kavanaugh, writing for the majority, also noted that:

> allowing a case to proceed simultaneously in the district court and the court of appeals creates the possibility that the district court will waste scarce judicial resources—which could be devoted to other pressing criminal or civil matters— on a dispute that will ultimately head to arbitration in any event.

*Id.*

In this case, the parties agree that a *Coinbase* stay is appropriate pending an appeal to the Tenth Circuit under 9 U.S.C. § 16(a). (*See, e.g.,* Doc. No. 101 at 3.) However, the parties disagree as to whether a *Coinbase* stay should extend through and until resolution of a petition to the U.S. Supreme Court.

Defendants argue that, notwithstanding that the Tenth Circuit issued its mandate and returned jurisdiction to the district court, the stay should be reinstated because if this Court allows the matter to move forward, "the 'asserted benefits' of arbitration that the Supreme Court identified—'efficiency, less expense, less intrusive discovery, and the like'—would risk being 'irretrievably lost.'" (Doc. No. 98 at 4 (quoting *Coinbase*, 143 S. Ct. at 1921).) Defendants also contend that any previously articulated prejudice to Plaintiffs no longer exists because Defendants complied with this Court's order to stage discovery and serve initial disclosures on June 19, 2023. (*Id.*)

In their Response, Plaintiffs counter that the holding in *Coinbase* is narrower than Defendants describe. Specifically, Plaintiffs argue that *Coinbase* merely resolves a circuit split and adopts what was already settled in the Tenth Circuit—that the statutory right to appeal under

5

9 U.S.C. § 16(a) comes with an automatic stay. (Doc. No. 101 at 1–3.) But according to Plaintiffs, the automatic stay does not extend through resolution of a petition to the U.S. Supreme Court. (*Id.* at 4.) Moreover, reinstating the stay here would be prejudicial to Plaintiffs because even though Defendants provided some documentary discovery, the case has been pending since January 2021, the relevant transaction occurred in December 2017, and any continued delay will make it more difficult to locate witnesses, deal with faded memories, and generally-speaking, litigate their claims. (*Id.* at 5.)

In their Reply, Defendants continue to argue that *Coinbase* applies and that "the clear upshot of *Coinbase* is that a district court should not move forward with a matter while the question of whether that matter should be in federal court in the first place remains undecided." (Doc. No. 103 at 2.) However, they also argue that in the alternative, the Court should grant a stay under the four-factor stay analysis in *McCauley*. (Doc. No. 103 at 3.)

At bottom, the Court has two questions to answer: 1) Does *Coinbase* require a stay, and if it does not, 2) should the Court reinstate the stay anyway? The Court has reviewed the *Coinbase* decision carefully and on the first question the Court answers, no. *Coinbase* does not alter the law that previously informed this Court's decision, nor does it demand a different decision now. *Coinbase* concerns the district court's power to move a case forward while an appeal is pending in the *court of appeals*. This is evident not only from the facts underlying the *Coinbase* case, but also from the Supreme Court's analysis and reasoning, which focuses on the parallel tracks in the lower court and the court of appeals. *See, e.g.*, *Coinbase,* 143 S. Ct. at 1921 (finding that "allowing a case to proceed simultaneously in the district court and the *court of appeals* creates the possibility that the district court will waste scarce judicial resources" (emphasis added)); *see,*

6

*e.g., id.* at 1922 (rejecting the argument that a stay would encourage frivolous appeals because, "the *courts of appeals* possess robust tools to prevent unwarranted delay and deter frivolous interlocutory appeals." (emphasis added)).

Nowhere in *Coinbase* does the majority discuss the application of this automatic stay beyond the court of appeals process. Moreover, an important underpinning of the *Coinbase* decision is the majority's view that "[a] right to interlocutory appeal of the arbitrability issue without an automatic stay of the district court proceedings is … like a lock without a key, a bat without a ball, a computer without a keyboard—in other words, not especially sensible." *Coinbase*, 143 S. Ct. at 1921 (2023). In other words, the stay goes hand-in-hand with the right to appeal the district court's decision to the court of appeals, and here, that right has already been exercised and Defendants have already benefitted from the attendant stay. Said another way, the court of appeals proceedings have concluded, the Tenth Circuit expressly noted that "jurisdiction is transferred back to the lower court[,]" (Doc. No. 75), and *Coinbase* does not require a different outcome.

As to the second question—should the Court reinstate the stay anyway—the Court again answers, no. Defendants argue a stay is appropriate under the four-factor stay analysis.[2] (*See* Doc. No. 103 at 3 (quoting *McCauley*, 413 F.3d at 1160).) They place relatively little weight on the first factor (likelihood of success on appeal) and argue the three "harm" factors tip decidedly in favor of a stay. (Doc. No. 103 at 3-4.) The Court disagrees.

---

[2] The four factors are: likelihood of success on appeal, and three "harm" factors: 1) irreparable harm if a stay is not granted, 2) harm to opposing party, and 3) risk of harm to the public interest.

Even if the first factor (likelihood of success on appeal) weighed in favor of a stay, the other three do not. Defendants previously estimated the length of time it would take to resolve their petition. Taking Defendants' statements at face value, the Court issued a discovery schedule that accommodates Defendants. (*See* Doc. No. 80.) If Defendants are correct in their estimate, the threat of irreparable harm to Defendants is minimal or non-existent because the Court has already provided Defendants with some relief from the burdens of discovery, and the petition should be resolved soon.[3] Under that scenario, the first factor does not weigh in Defendants' favor.

If Defendants' estimate is wrong, and the petition takes longer to resolve, the first and second harm factors must be considered together. On the one hand, without a stay, Defendants would be forced to proceed and the harm to them would increase with every stage of discovery. On the other hand, imposing a stay—in the face of a long wait for resolution of the petition— may cause harm to Plaintiffs in the form of faded witness memories, stale evidence, and delayed outcomes. In other words, both parties stand to suffer some harm if the Court disagrees with them. But given how long this litigation has already been pending, and the fact that the Court already granted Defendants some relief in the form of a staggered discovery schedule, the Court finds the first two harm factors—which are closely tied to each other—tip in favor of Plaintiffs and against a stay.

---

[3] The Court acknowledges receipt of the Notice filed at Doc. No. 104, in which Defendants note that on July 19, 2023, the Supreme Court Clerk issued a docket entry indicating that Defendants' petition for writ of certiorari was distributed for a conference on September 26, 2023, and that the Supreme Court has called for Plaintiff Harrison to respond on or before August 30, 2023.

As to the third factor—risk of harm to the public interest—the Court finds this factor weighs against a stay. The public has an interest in the just and speedy resolution of matters. As noted above, this matter has already been pending for some time and reinstating a stay would delay the case even more. Additionally, as witness memories fade and evidence continues to grow stale, the truth-seeking functions of litigation are frustrated, and a just resolution becomes more difficult.

The Court is not persuaded that reinstatement of the stay is appropriate, and the Motion is therefore **DENIED**.[4]

Dated this 3rd day of August, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge

---

[4] The Court reaches this conclusion even while applying a standard more favorable to Defendants than the heavy standard of a motion for reconsideration. Although not argued that way, Defendants' Motion is essentially a motion for reconsideration of this Court's prior decision to lift the stay.