IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:21-cv-304**

ROBERT HARRISON and GRACE
HEATH, on behalf of themselves, the
ENVISION MANAGEMENT HOLDING,
INC. ESOP, and all other similarly situated
individuals,

       Plaintiffs,

v.

ENVISION MANAGEMENT HOLDING,
INC. BOARD OF DIRECTORS, ENVISION
MANAGEMENT HOLDING, INC.
EMPLOYEE STOCK OWNERSHIP PLAN
COMMITTEE, ARGENT TRUST
COMPANY, DARREL CREPS, III, PAUL
SHERWOOD, JEFF JONES, NICOLE
JONES, AARON RAMSAY, TANWEER
KHAN, and LORI SPAHN,

       Defendants.

---

**DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT**

---

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................... ii

I.    **INTRODUCTION / NATURE OF THE CASE** ...................................... 1

II.   **BACKGROUND AND FACTUAL ALLEGATIONS** ................................ 2

    a.   **ESOP Background and Legal Framework.** ........................................ 2

    b.   **Envision and Background of 2017 ESOP Transaction.** ...................... 4

    c.   **The Terms of the ESOP Purchase.** .................................................... 4

    d.   **Post-Transaction Control.** ................................................................. 5

III.  **ARGUMENT AND CITATION OF AUTHORITY** ................................ 6

    a.   **Legal Standard of Review.** ................................................................ 6

    b.   **Plaintiffs' Speculation of the ESOP's Purchases of Envision Shares for $1,440 Per Share Is Wrong.** ............................................. 7

    c.   **Plaintiffs' Allegation That The Envision Stock Price Should Have Been Heavily Discounted For Lack Of "Control" Also Misses The Mark.** ................................. 9

    d.   **Plaintiffs Fail to State a Claim for Prohibited Transaction (Count I) and Fiduciary Breach (Count IV).** .......................................... 12

    e.   **Plaintiffs Fail to State a Claim for "Knowing Participation" in Prohibited Transaction (Count II).** ................................................. 17

    f.   **Plaintiffs Fail to State a Claim for Prohibited Transaction (Count III).** ............. 20

    g.   **Plaintiffs Fail to State a Claim for Failure to Monitor (Count V) and Co-Fiduciary Liability (Count VI).** ....................................... 21

    h.   **Plaintiffs' Challenge to the Plan's Indemnification Provision (Count VII) Fails.** ............................................... 23

IV.   **CONCLUSION** ...................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahrendsen v. Prudent Fiduciary Servs., LLC*,
    No. 21-cv-2157, 2022 WL 294394 (E.D. Pa. Feb. 1, 2022) ...................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................6, 16

*Bernaola v. Checksmart Fin. LLC*,
    322 F. Supp. 3d 830 (S.D. Ohio 2018) ...............................................................................14

*Carbajal v. McCann*,
    808 F. App'x 620 (10th Cir. 2020) .......................................................................................6

*Cassell v. Vanderbilt Univ.*,
    285 F. Supp. 3d 1056 (M.D. Tenn. 2018) ..........................................................................13

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
    472 U.S. 559 (1985) ........................................................................................................12

*Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Ins. Co.*,
    771 F.3d 150 (2d Cir. 2014) .............................................................................................19

*Chao v. Hall Holding Co.*,
    285 F.3d 415 (6th Cir. 2002) .............................................................................3, 4, 13, 14

*Del Castillo v. Comm. Child Care Council of Santa Clara Cty, Inc.*,
    2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) ....................................................................19

*Donovan v. Cunningham*,
    716 F.2d 1455 (5th Cir. 1983) ........................................................................................2, 3

*In re DoubleClick Inc. Priv. Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..............................................................................15

*Eyler v. Comm'r*,
    88 F.3d 445 (7th Cir. 1996) .............................................................................................14

*Fifth Third Bancorp v. Dudenhoeffer*,
 573 U.S. 409 (2014)..................................................................................7, 11, 12

*Foster v. Adams and Assoc., Inc.*,
 2020 WL 36396548 (N.D. Cal. July 6, 2020).........................................................21

*Gamino v. KPC Healthcare Holdings, Inc.*,
 2022 WL 4596576 (C.D. Cal. Aug. 15, 2022).........................................................20

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
 130 F.3d 1381 (10th Cir. 1997) ..........................................................................6, 7

*Great-West Life & Ann. Ins. Co. v. Knudson*,
 534 U.S. 204 (2002)............................................................................................19

*Harris Trust & Sav. Bank v. Salmon Smith Barney Inc.*,
 530 U.S. 238 (2000)......................................................................................17, 18

*Henry v. Champlain Enters., Inc.*,
 445 F.3d 610 (2d Cir. 2006).............................................................................13, 14

*Howard v. Shay*,
 100 F.3d 1484 (9th Cir. 1996) ..............................................................................20

*Kansas Penn Gaming, LLC v. Collins*,
 656 F.3d 1210 (10th Cir. 2011) ...............................................................................6

*Kaylor v. Fields*,
 661 F.2d 1177 ........................................................................................................7

*Keach v. U.S. Trust Co. N.A.*,
 313 F. Supp. 2d 818 (C.D. Ill. 2004), *aff'd*, 419 F.3d 626 (7th Cir. 2005)............................2, 3

*Khalik v. United Air Lines*,
 671 F.3d 1188 (10th Cir. 2012) ......................................................................22, 23

*Kurtz v. Vail Corp.*,
 511 F. Supp. 3d 1185 (D. Colo. 2021)......................................................................6

*Leber v. Citigroup, Inc.*,
 No. 07 Civ. 9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) .................................15

*Lee v. Argent Trust Co.*,
 No. 5:19-cv-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) ..................................8

*Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*,
  136 S. Ct. 651 (2016).................................................................................................19

*Packer Eng'g, Inc. v. Kratville*,
  965 F.2d 174 (7th Cir. 1992).....................................................................................24

*Perez v. PBI Bank, Inc*.,
  69 F. Supp. 3d 906 ....................................................................................................23

*Pfahler v. Nat'l Latex Prods. Co*.,
  517 F.3d 816 (6th Cir. 2007).....................................................................................24

*Pfeil v. State St. Bank & Tr. Co.*,
  806 F.3d 377 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 2511 (2016)...............................12, 13

*Pudela v. Swanson*,
  No. 91 C 3559, 1995 WL 77137 (N.D. Ill. Feb. 21, 1995)......................................23

*In re RadioShack Corp. ERISA Litig*.,
  547 F. Supp. 2d 606 (N.D. Tex. 2008) .....................................................................21

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022)....................................................................................14

*Smith v. U.S.*,
  561 F.3d 1090 (10th Cir. 2009) ..................................................................................6

*Sweda v. Univ. of Pa.*,
  923 F.3d 320, 337 (3d Cir. 2019)..............................................................................15

*Teets v. Great-West Life & Ann. Ins. Co*,
  921 F.3d 1200 (10th Cir. 2019) .................................................................................19

*White v. Chevron Corporation*,
  2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .........................................................22

*In re YRC Worldwide, Inc. ERISA Litig*.,
  No. 09-2593-JWL, 2011 WL 1303367 (D. Kan. Apr. 6, 2011)...............................21

*Zavala v. Kruse-Western, Inc.*,
  398 F. Supp. 3d 731 (E.D. Cal. 2019).................................................................17, 19

**Statutes**

29 U.S.C. § 1002(14)(C)......................................................................................................13

29 U.S.C. § 1002(14)(H)...................................................................................................13

29 U.S.C. § 1002(18) ...................................................................................................3, 13

29 U.S.C. § 1103(a)(1)...................................................................................................11

29 U.S.C. § 1104...................................................................................................12, 13

29 U.S.C. § 1104(a)...................................................................................................14

29 U.S.C. § 1104(a)(1)...................................................................................................11

29 U.S.C. § 1104(a)(1)(A)...................................................................................................21

29 U.S.C. § 1104(a)(1)(B)...................................................................................................21

29 U.S.C. § 1104(a)(1)(D)...................................................................................................11

29 U.S.C. § 1105(a)(1)...................................................................................................22

29 U.S.C. § 1106...................................................................................................15

29 U.S.C. § 1106(a)...................................................................................................12, 13, 14

29 U.S.C. § 1106(a)(1)...................................................................................................17

29 U.S.C. § 1106(a)(1)(A)...................................................................................................18

29 U.S.C. § 1106(b)...................................................................................................20, 21

29 U.S.C. § 1106(b)(3)...................................................................................................20

29 U.S.C. § 1108...................................................................................................13, 20

29 U.S.C. § 1108(e)...................................................................................................3, 13, 20

29 U.S.C. § 1132(a)(3)...................................................................................................17

ERISA § 3(14)(C)...................................................................................................13

ERISA § 3(14)(H)...................................................................................................13

ERISA § 403(18)...................................................................................................3

ERISA § 403(a)(1)...................................................................................................11

ERISA § 404...................................................................................................12, 13, 14

ERISA § 404(a)(1) ................................................................................................................11

ERISA § 404(a)(1)(A) ..........................................................................................................21

ERISA § 404(a)(1)(B) ..........................................................................................................21

ERISA § 404(a)(1)(D) ..........................................................................................................11

ERISA § 405 ........................................................................................................................22

ERISA § 406(a) ........................................................................................................12, 13, 14, 15

ERISA § 406(a)(1) ...............................................................................................................17

ERISA § 406(a)(1)(A) ..........................................................................................................18

ERISA § 406(b) ..........................................................................................................20, 21

ERISA § 406(b)(3) ...............................................................................................................20

ERISA § 408 ........................................................................................................13, 14, 15, 20

ERISA § 408(e) ........................................................................................................3, 13, 14, 20

ERISA § 502(a)(3) ...............................................................................................................17

**Other Authorities**

Rule 8 ..................................................................................................................................15

Rule 12 ................................................................................................................................17

Rule 12(b)(6) ......................................................................................................................1, 6

Pursuant to Rule 12(b)(6), Defendants Envision Management Holding, Inc. Board of Directors (the "Board"), Envision Management Holding, Inc. Employee Stock Ownership Plan Committee (the "ESOP Committee"), Darrel Creps III ("Creps"), Paul Sherwood ("Sherwood"), Jeff Jones, Nicole Jones, Aaron Ramsay ("Ramsay"), Dr. Tanweer Khan ("Khan"), Lori Spahn, and Argent Trust Company ("Argent") (collectively "Defendants"), by and through undersigned counsel, file this Motion to Dismiss and Memorandum in Support, and state as follows:

I.     **INTRODUCTION / NATURE OF THE CASE**

This lawsuit concerns a transaction involving an employee stock ownership plan or ESOP. ESOPs are a type of plan designed to invest exclusively in stock of the sponsoring company and allow employees a beneficial ownership stake in the company. A series of Congressionally-designed tax benefits encourage employers to establish ESOPs and promote employee ownership using leveraged stock purchase transactions. In the most common type of ESOP transaction, the sponsoring company appoints an independent trustee to represent the ESOP's interests; the ESOP trustee engages its own advisors, including an appraiser to opine on the company's fair market value; the trustee and selling shareholders agree on the terms of the transaction; and the acquisition is financed using debt.

This is a putative class action brought pursuant to ERISA challenging just this sort of ESOP transaction, in this case involving the sale of Envision Management Holding, Inc. ("Envision") stock to the Envision Management Holding, Inc. Employee Stock Ownership Plan (the "ESOP"). In 2017, through a simultaneous series of leveraged transactions including Envision and the ESOP (the "Transaction"), the selling shareholders of Envision sold to a combination of the ESOP and Envision 100,000 shares of Envision stock at a share price of $1,770, for an aggregate price of

$177,000,000. This aggregate price reflects various stock purchases, the details of which are described herein. The purchased shares represented 100% of Envision's outstanding stock, with the ESOP becoming the sole owner of Envision.

In their original pleading, Plaintiffs advanced a primary case theory that the ESOP had overpaid for the shares it acquired at $1,770 per share, based on a contention that the ESOP purportedly purchased another block of shares in the same Transaction for $1,404 per share. Complaint (D.E. 1) ¶¶ 8-10. Defendants later produced Transaction documents demonstrating Plaintiffs' primary theory to be unequivocally false. Despite having those key documents, Plaintiffs filed a First Amended Complaint ("FAC") (D.E. 91) that continues to advance a demonstrably false theory, along with other conclusory allegations of wrongdoing. Based on these erroneous facts and conclusory allegations, Plaintiffs contend that the ESOP's purchase of Envision shares gives rise to a breach of fiduciary duty, ERISA prohibited transactions and certain other derivative claims. However, Plaintiffs' threadbare claims cannot stand under scrutiny, and the Court should dismiss the FAC in its entirety.

## II.     BACKGROUND AND FACTUAL ALLEGATIONS

### a.   ESOP Background and Legal Framework.

ESOPs are a type of benefit plan that "invests primarily in the employer's stock." *Keach v. U.S. Trust Co. N.A.*, 313 F. Supp. 2d 818, 862 (C.D. Ill. 2004), *aff'd*, 419 F.3d 626 (7th Cir. 2005). The most common method for ESOPs to acquire employer stock is a stock purchase transaction in which a current shareholder sells an interest in the company to an ESOP that is represented by an independent trustee who is appointed by the sponsoring company. *See, e.g., Donovan v. Cunningham*, 716 F.2d 1455, 1459 (5th Cir. 1983) (describing the mechanics of a typical ESOP

transaction). The trustee, in consultation with its professional advisors, conducts due diligence and acts on behalf of the ESOP. *See, e.g.*, *Keach*, 419 F.3d at 630.

Participants virtually never contribute any of their own funds to buy shares. Instead, ESOPs typically borrow funds to finance their purchase of stock.  Vaughn Gordy, *et al.*, Nat'l Ctr. for Emp. Ownership, LEVERAGED ESOPS AND EMPLOYEE BUYOUTS 5-9 (6th ed. 2017) (copy attached as Exhibit "1" to accompanying Declaration of W. Bard Brockman).  One method involves the sponsoring company borrowing funds from a third party, like a bank (commonly called the "external loan"), and lending those funds— often at an interest rate below market—to the ESOP for its stock purchase (commonly called the "internal loan"). *Id.* at 130.

Each year, the ESOP receives from the sponsoring company contributions or dividends, and sends those funds back to the company to pay down the internal loan, which the company then typically uses to pay down the external loan. *Id.* As the ESOP pays down the internal loan, the company's shares (held in a suspense account where they were put when the ESOP first purchased them) are released to ESOP participant accounts.

ESOP purchases of closely-held stock are permitted under ERISA so long as the ESOP pays no more than "adequate consideration," which is defined as "fair market value . . . as determined in good faith" by a plan fiduciary.  ERISA §§ 408(e), 3(18), 29 U.S.C. §§ 1108(e), 1002(18).  Whether this standard is met is "expressly focused upon the *conduct* of the fiduciaries" and, specifically, whether they conducted "a prudent investigation in the circumstances then prevailing.'" *Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002) quoting *Cunningham*, 716 F.2d at 1467-68 (emphasis in original).  To aid its prudent

investigation, a trustee will "secur[e] an independent assessment from a financial advisor or legal counsel." *Id.* at 430.

### b. Envision and Background of 2017 ESOP Transaction.

Envision provides diagnostic imaging services in its home state of Colorado and in several other states. FAC ¶¶ 76, 77. Founded in 2000, Envision has grown to now have approximately 1,000 employees. *Id.* Plaintiffs contend Envision's shareholders explored a sale of the company in 2017. *Id.* ¶ 78. Rather than sell to another company, Envision's shareholders considered a sale to a newly-created ESOP for the benefit of Envision employees, who would be permitted through the ESOP for the first time to acquire an interest in employer stock. *Id.* ¶¶ 79, 80.

In connection with the proposed sale to the ESOP, Envision's Board appointed Argent as the independent trustee to represent the ESOP and its participants in the Transaction. *Id.* ¶¶ 85, 120-121. Argent negotiated the Transaction on behalf of the ESOP, undertaking an independent due diligence process and investigating the fair market value of the Envision stock before approving the Transaction. *Id.* ¶ 149. Following its due diligence process, Argent caused the ESOP to enter into the Transaction. *Id.* ¶¶ 108, 122.

### c. The Terms of the ESOP Purchase.

As a result of the December 2017 Transaction, the ESOP purchased 100% of Envision's stock for approximately $163.7 million over a series of transactions:

- First, the **ESOP** purchased from selling shareholders 91,446.325 shares ("Direct-Sold Shares") at $1,770 per share, paying $58,322,524.32 of cash and $103,537,470.93 in Seller Notes for a total of $161,859,995.25. *Id.* ¶ 102.

- Next, **Envision** redeemed from selling shareholders Jeff Jones and Nicole Jones 8,553.675 shares for $1,770 per share, and paid $5,455,352.30 million in cash and $9,684,652.45 million in promissory notes for a total of $15,140,004.75 million. In

connection with the redemption, **Envision** issued warrants to Jeff and Nicole Jones. *Id*. The Joneses did not sell this block of shares directly to the ESOP.

- Finally, the **ESOP** purchased from **Envision** at $222 per share the 8,553.675 shares **Envision** had purchased from the Joneses ("Resold Shares"), financed by a $1,900,000.00 promissory note the ESOP gave to Envision. *Id*.[1]

The Transaction resulted in the ESOP owning 100% of Envision. *Id*. ¶ 76.

Plaintiffs speculate, based on their misinterpretation of a Department of Labor filing, that "some of the shares of the ESOP purchased were purchased for approximately $1,404." *Id*. ¶ 102. They therefore contend that the ESOP overpaid for shares it purchased at $1,770 per share. As detailed more fully below, Plaintiffs' speculation is wrong. The ESOP did not purchase any shares in the transaction for $1,404 per share, as established by the Transaction documents.

### d.  Post-Transaction Control.

Defendants Creps, Sherwood, Jeff Jones, and Khan were members of the Board during the planning and design of the Transaction. *Id*. ¶ 65. Following the Transaction, these individuals continued to serve on the Board, and Defendant Ramsay joined the Board in January 2018. *Id*. ¶¶ 65-66. Plaintiffs allege that because the Board could fire Argent as Trustee, the Board had control over who was elected as Board members, thereby giving the Board control over Envision's operations and leaving the ESOP no true control of Envision. *Id*. ¶¶ 7, 92. Based on this faulty logic, Plaintiffs contend that "the price the ESOP paid for the stock should have reflected a steep discount for the ESOP participants' lack of control over the Company." *Id*. ¶ 15. Plaintiffs go so

---

[1]  Plaintiffs' description of the series of transactions in Paragraph 102 of the FAC is based entirely on the Stock Purchase, Redemption and Subscription Agreement, which the Envision Defendants produced to Plaintiffs' counsel in accordance with the Court's May 16, 2023 Order. (D.E. 80).

far as to quantify this proposed discount, suggesting that "[t]axing authorities have determined that discounts for lack of control as high as 40% are appropriate." *Id.* ¶ 93. Importantly, despite Argent's production of the valuation report supporting the ESOP's role in the Transaction, Plaintiffs offer no allegations about the manner in which Argent calculated the fair market value of the Envision stock the ESOP purchased or whether and how Argent in its assessment of fair market value took "control" or "lack of control" into account.

## III.     ARGUMENT AND CITATION OF AUTHORITY

### a.   Legal Standard of Review.

To withstand dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.")  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). "Determining whether a complaint contains well-pleaded facts sufficient to state a claim is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Carbajal v. McCann*, 808 F. App'x 620, 630-31 (10th Cir. 2020) (citation omitted).

The Court may consider documents attached to or incorporated by reference in the complaint on a Rule 12(b)(6) motion. *See Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009). Furthermore, where a document is central to a plaintiff's claim, the court may consider it on a motion to dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *see also Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1991 (D. Colo. 2021) (court

6

took judicial notice of Form 5500s and considered them on a motion to dismiss). "[F]actual allegations that contradict ... a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp.*, 130 F.3d at 1385.

In ERISA fiduciary breach cases, motions to dismiss serve as an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. 409, 425 (2014). Breach of fiduciary duty class actions, like this case, present an enhanced risk of "meritless, economically burdensome lawsuits" that ultimately discourage employers from offering employee benefit plans in the first place. *Id*. at 424. ERISA sought to strike a balance between the competing goals of "ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Id.* Recognizing this, the Supreme Court has instructed courts in ERISA breach of fiduciary duty cases to engage in a "careful, context-sensitive scrutiny of a complaint's allegations" in an effort to "divide the plausible sheep from the meritless goats." *Id.* at 425. ERISA cases are subject to the same rule generally applicable in federal court litigation, that "[d]iscovery should *follow* the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981 (emphasis supplied).

      **b.  Plaintiffs' Speculation of the ESOP's Purchases of Envision Shares for $1,440 Per Share Is Wrong.**

Plaintiffs allege that the ESOP overpaid for Envision stock, primarily based on the theory that the ESOP purchased some shares of Envision for a price of $1,770 per share, and (based on a misreading of a U.S. Department of Labor filing) purchased other shares for $1,404 per share. According to Plaintiffs, this per share price differential supports the inference that the ESOP overpaid for that portion of shares purchased at $1,770. Plaintiffs' allegation is wrong, and the

Transaction documents make that clear.  The ESOP never purchased any shares of Envision for $1,404 per share.

Plaintiffs' theory is based solely on the audited financial statement attached to the ESOP's original 2017 Form 5500 ("Original Form 5500") (copy attached as Exhibit "2" to accompanying Declaration of W. Bard Brockman)." *See* FAC ¶ 9.  Plaintiffs misread the Original Form 5500, erroneously conflating accounting treatment of debt in the Transaction with the actual price the ESOP paid for Envision shares. To clear up any confusion, Envision filed an Amended 2017 Form 5500 ("Amended Form 5500") (copy at Exhibit "3" to accompanying Declaration of W. Bard Brockman). The Amended Form 5500 explained that "the selling shareholders of the Company sold 100,000 shares of the Company's stock, representing all of the Company's outstanding stock, at a share price of $1,770, for an aggregate price of $177,000,000, through a simultaneous series of leveraged transactions with the Company and the Plan."  It further detailed that the Company purchased shares (from the Joneses) at a share price of $1,770, but that the ESOP then in turn purchased those same shares from the Company at a share price of $222 (step three in the transaction).  The $222 per share reflected the Company's post-transaction equity value due to the debt that the Company had incurred to finance the Transaction. [2]  *See, e.g.*, *Lee v. Argent Trust Co.*, No. 5:19-cv-156, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) (describing reduction in fair market

---

[2]   As set forth in the description of the Transaction at Part II.c, *supra*, Envision took out a loan and re-loaned the proceeds to the ESOP so that it could buy the "Direct Sold Shares." Envision guaranteed the Seller Notes that the ESOP gave to the Selling Shareholders; and Envision itself issued a promissory note to the Joneses.  Envision's borrowings and guarantees are liabilities on Envision's balance sheet, and like all liabilities, reduced the value of its stock.

value of shares post-transaction as a result of leverage incurred in transaction).  Simply put, the ESOP never purchased Envision stock for $1,404 per share.

The fallacy of Plaintiffs' position that the ESOP purchased shares at $1,404 per share is confirmed in the Stock Purchase, Redemption and Subscription Agreement ("SPA") (copy at Exhibit "4" to accompanying Declaration of W. Bard Brockman), which Plaintiffs relied on to describe the Transaction terms in Paragraph 102 of the FAC.  The SPA shows there were 100,000 outstanding shares of Envision stock, which the selling shareholders sold in two separate blocks.  The ESOP purchased 91,446.325 shares from certain selling shareholders for $161,859,995.25, or $1,770 per share.  SPA §§ 2.1(a), 2.2.  The remaining 8,553.675 shares (owned by the Joneses) *Envision* redeemed for $15,140.004.75, or $1,770 per share.  SPA §§ 2.1(b), 2.3.[3]  Nothing in the Stock Purchase Agreement indicates or remotely suggests that the ESOP purchased Envision stock for $1,404/share, as Plaintiffs erroneously allege.  In short, Plaintiffs' primary case theory is wrong.

### c.  Plaintiffs' Allegation That The Envision Stock Price Should Have Been Heavily Discounted For Lack Of "Control" Also Misses The Mark.

The FAC alleges that the Trustee also caused the ESOP to pay more than "adequate consideration" because the ESOP did not obtain what Plaintiffs call "control" of Envision.  FAC ¶¶ 7, 15, 92-93.  Specifically, Plaintiffs allege that after the Transaction, the ESOP Committee had the power to direct Argent to vote the Plan's shares, thus allowing the ESOP Committee to direct Argent to appoint the Envision Directors. *Id.* ¶ 60-61.  Later in the FAC, Plaintiffs engage in some sort of sleight of hand, contending that because the Board has the authority to appoint the ESOP

---

[3]   As noted above, and as alleged in the FAC at ¶ 102, the ESOP purchased those 8,553.675 shares from Envision at $222 per share.

Committee and fire Argent, the Board somehow can appoint Board members, thereby conferring on the Board the authority to control the operations of Envision through appointment of Board members without regard to the wishes of the shareholder of Envision, namely the ESOP. *Id.* ¶ 69-72. The premise of Plaintiffs' control argument is wrong for three reasons.

First, and most fundamental, the Envision Management Holding, Inc. Employee Stock Ownership Trust ("Trust Agreement"), the controlling document that sets forth the Trustee's powers and duties (which are at the heart of Plaintiffs' contention), expressly gives the Trustee (Argent) the authority to "vote any stocks or other securities that it administers, holds, manages and owns . . . ."[4] *See* Trust Agreement (copy at Exhibit "5" to accompanying Declaration of W. Bard Brockman), at Section VII "TRUSTEE POWERS", (g).[5] Argent, therefore, has the control on behalf of the ESOP that Plaintiffs contend it should have, and Plaintiffs' control discount contention fails out of the gates.

Second, even if Plaintiffs were correct (and they are not) that the Plan granted the ESOP Committee the authority to direct Argent whom to elect to the Board, that alleged authority does

---

[4]   Although the Trust Agreement subjects such authority to the terms of the ESOP "Plan" (Trust Agreement, Section VII (g)), there is no provision in the ESOP Plan Document that curtails the Trustees' authority set forth in the Trust Agreement to vote the ESOP shares. See ESOP Plan Document (copy attached at Exhibit "6" to accompanying Declaration of W. Bard Brockman) at Section 12, VOTING COMPANY STOCK, 12.1.

[5]   Plaintiffs cite the "ESOP Guidelines" in support of their contention that the ESOP Committee has the power "to provide directions and recommendations to the Trustee." FAC ¶ 62. But that document only speaks to the powers of the ESOP Committee, and the Trustee (Argent) is not a party to that document. The powers of the Trustee to act on behalf of the ESOP – which are central to Plaintiffs' contention as to "control" – are set forth in the Trust Agreement. Furthermore, Plaintiffs acknowledge the relevance of the "ESOP Plan Documents," which they contend are the "written instruments according to which the ESOP was established and maintained." *Id.* ¶ 50. The Trust Agreement is one such document through which the ESOP is maintained.

not confer on the Board the authority to appoint Board members, as Plaintiffs erroneously contend. That is because the ESOP Committee, just as Argent, is an ERISA fiduciary which has the fiduciary duty to act in the best interests of the ESOP participants with respect to fiduciary duties given to it.  ERISA §404(a)(1), 29 U.S.C. § 1104(a)(1).  ERISA requires that whoever controls the voting of the ESOP's shares act in the best interests of participants when doing so.  *Id*.  In short, even if **Argent** did not have the right to act as a discretionary trustee when voting the ESOP's shares (which it did), the **ESOP** still had that right through a different discretionary fiduciary—the ESOP Committee—when the Committee issues voting directives to the Trustee.  Therefore, the Board's ability to appoint the members of the ESOP Committee (or Argent for that matter), does not give the Board the authority to "control" Envision, as Plaintiffs mistakenly contend.

Third, even if Argent were required to follow the direction of the ESOP Committee (or the Board), as a directed ESOP trustee, Argent has the right to veto a direction it believes is not in the best interests of the ESOP participants.   Under ERISA, directed trustees have an obligation not to follow directions that would conflict with their fiduciary duties of prudence and loyalty.  ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1) (establishing that a directed trustee is only "subject to . . . proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to [ERISA].").  Indeed, ERISA's fiduciary duty provision makes explicit that ERISA fiduciaries are only bound by the plan document and trust agreement "insofar as such documents and instruments are consistent with [ERISA]."   ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  The Supreme Court has held that "this provision makes clear that the duty of prudence trumps the instructions of a plan document," *Dudenhoeffer*, 573 U.S. at 421.  The duty of prudence likewise trumps the provisions of a trust agreement.  *Id*. at 422–23 ("[T]rust documents

cannot excuse trustees from their duties under ERISA.") (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985)).   Therefore, were the ESOP Committee (or anyone else) to direct Argent to elect unqualified Board members or otherwise take an action that was not in ESOP participants' best interests, Argent would discharge its duties under ERISA and not follow that direction.  *Dudenhoeffer*, 573 U.S. at 421; *Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 389 (6th Cir. 2015) (recognizing *Dudenhoeffer*'s holding and applying it), *cert. denied*, 136 S. Ct. 2511 (2016).  That means that Argent has the right to "block" a vote.[6]

Plaintiffs' conjecture and sleight of hand aside, the ESOP was granted and always maintained control over Envision by virtue of the ability of Argent as Trustee (and ultimately the ESOP) to hire and fire directors. Plaintiffs' claim that a steep discount was required because the ESOP did not obtain control of the Board and, through that control, the operations of Envision is entirely without merit.

### d. Plaintiffs Fail to State a Claim for Prohibited Transaction (Count I) and Fiduciary Breach (Count IV).

Counts I and IV allege that Defendants violated ERISA §§ 404 and 406(a), 29 U.S.C. §§ 1104 and 1106(a), by causing the ESOP to enter into the Transaction. ERISA Section 404 sets forth ERISA's fiduciary duty of prudence, which requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

---

[6]   This legal right is expressly granted by the Trust Agreement, which provides that the Trustee's enumerated express powers in the Trust Agreement are "[i]n addition to, and not in limitation of, any authority or powers of the Trustee under this Trust Agreement or that the Trustee may have under applicable law (all such additional authority and powers being specifically hereby granted to the Trustee) . . . ."  Trust Agreement (copy at Exhibit "5" to accompanying Declaration of W. Bard Brockman) at Section VII.

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]" 29 U.S.C. § 1104. The test for determining whether the duty of prudence has been met is context specific. *Pfeil*, 806 F.3d at 385.

ERISA Sections 406(a) and 408 supply the framework for ERISA's "prohibited transaction" rules: section 406(a) bars virtually all transactions between a party in interest and a plan unless carved out in ERISA section 408.[7]  29 U.S.C. § 1106(a); *id.* § 1108. Congress created one such special carve out for ESOP's stock purchase transactions in section 408(e), which states that section 406(a)'s prohibitions "shall not apply to the acquisition" of employer stock by an ESOP "if such acquisition . . . is for adequate consideration." 29 U.S.C. § 1108(e). "[A]dequate consideration" in the context of closely-held corporations is "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) (citing 29 U.S.C. § 1002(18)); see also *Chao*, 285 F.3d at 425 (same).

Imprudence claims under section 404 and prohibited transaction claims under sections 406(a) and 408(e) are process-based; that is, they hinge on the soundness of the trustee's fiduciary process in arriving at the challenged decision. *See, e.g.*, *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1061 (M.D. Tenn. 2018) (holding that a claim for breach of fiduciary duty under section 404 is focused on "whether the fiduciary engaged in a reasonable decision-making

---

[7]     ERISA §406(a), 29 U.S.C. § 1106(a) prohibits a fiduciary from "caus[ing] the plan to engage in" the "sale or exchange . . . of any property between the plan and a party in interest[,]" including the "acquisition, on behalf of the plan, of any employer security."  "Party in interest" is defined in ERISA § 3(14)(C), (H), 29 U.S.C. § 1002(14)(C), (H), to include an "employee, officer, director . . . or a 10 percent or more shareholder directly or indirectly" of "an employer any of whose employees are covered by the plan."

process"); *Henry*, 445 F.3d at 619-20 ("[T]he adequate consideration test focuses on the conduct of the fiduciaries in determining the price, not the price itself.") (quoting *Eyler v. Comm'r*, 88 F.3d 445, 455 (7th Cir. 1996)). In suits challenging ESOP stock purchases, the section 404 and section 406(a) inquiries effectively merge. *Chao*, 285 F.3d at 437 ("[D]etermining 'adequate consideration' . . . requires . . . an examination of the process that led to the determination of fair market value in light of § 404's fiduciary duties."); *Bernaola v. Checksmart Fin. LLC*, 322 F. Supp. 3d 830, 839 (S.D. Ohio 2018) (the good faith standard for determining adequate consideration under § 408 is applicable to the breach-of-fiduciary duty analysis in § 404 when both claims are brought). In sum, claims for imprudence under section 404 and for a nonexempt prohibited transaction involving an ESOP stock purchases under section 408(e) require plaintiffs to plausibly allege that an ESOP trustee's process was flawed.  Where a complaint fails to plead sufficient facts to create an inference of a flawed process, it should be dismissed. *See Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168-69 (6th Cir. 2022).  Plaintiffs here have alleged *no* facts about Argent's review and approval process, and the FAC should be dismissed on that basis alone.

Leaving aside Plaintiffs' failure to allege facts about the process for approval of the Transaction, Counts I and IV still fail.  At the core of Plaintiffs' claims for fiduciary breach under ERISA § 404, 29 U.S.C. § 1104(a) and prohibited transaction under ERISA § 406(a), 29 U.S.C. § 1106(a) is their primary case theory that the ESOP overpaid for the Envision shares, i.e., that the ESOP paid more than fair market value.[8]  FAC ¶¶ 120, 152.  But as demonstrated above, the

---

[8]    Plaintiffs will likely argue that, to get the keys to discovery, they need only allege the elements of ERISA § 406(a)—essentially, the simple fact that an ESOP stock purchase transaction occurred—and that it is the Trustee's burden to disprove 408(e)'s adequate consideration standard

allegations supporting that primary case theory are implausible on their face, and as such, both Counts fail. The operative Transaction document – the Stock Purchase Agreement – unequivocally refutes Plaintiffs' incorrect primary case theory that the ESOP paid $1,770 for some shares and $1,404 for other shares.

Likewise, Plaintiffs' contention that the ESOP should have received a deep discount on Envision shares because of "control" fails because it is refuted by the "Plan instruments" relied upon by the FAC that establish the ESOP maintained the right to vote Envision shares to elect Board members, and, pursuant to even Plaintiffs' own logic, maintain control of Envision.

Plaintiffs' FAC also contains generic conclusory allegations that are "usual suspects" in ESOP complaints. For example, they half-heartedly allege that the ESOP incurred "excessive,"

---

at summary judgment and trial. Not so. Sections 406 and 408 exist together as parts of one coherent statutory scheme. Section 406 incorporates section 408; its first words are "[e]xcept as provided in section [408] of this title[.]" 29 U.S.C. § 1106. Section 408 is titled "Exemptions"— not "Defenses"—and specifies that "[t]he prohibitions provided in section [406] of this title shall not apply" to purchases for adequate consideration. Id. § 1108(b*); see In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001) (plaintiffs required to plead facts showing that statutory exception did not apply). Therefore, plaintiffs are required to address the section 408 adequate consideration exemption in their complaint. *See Sweda v. Univ. of Pa.*, 923 F.3d 320, 337 (3d Cir. 2019) (rejecting the notion that Rule 8 is satisfied by pleading merely that a transaction falling under section 406(a) occurred, observing that "[r]eading § [4]06(a)(1) as a per se rule barring all transactions between a plan and party in interest would . . . expose fiduciaries to liability for every transaction whereby services are rendered to the plan," thereby "miss[ing] the balance that Congress struck in ERISA[.]"), cert. denied, 140 S. Ct. 2565 (2020); *see also Ahrendsen v. Prudent Fiduciary Servs., LLC*, No. 21-cv-2157, 2022 WL 294394, at *4 (E.D. Pa. Feb. 1, 2022) (plaintiffs have an "obligation to negate" the adequate consideration exemption). Plaintiffs thus must allege more than the simple fact of a section 406 prohibited transaction. *See Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (holding that, if a "complaint does not allege any basis for presuming that a defendant's conduct fell outside a statutory exemption[,] . . . it is deficient"). A complaint alleging violations of section 406(a) must also allege facts sufficient to support a plausible inference that section 408's exemptions do not apply. *See id.* at *10.

"high interest" debt, but the FAC does not detail how, why or its specific impact on the value of Envision shares. *See* FAC ¶¶ 17, 18, 109, 110, 111.  Likewise, they summarily allege that because the Sellers provided "financial assumptions" (an occurrence in every ESOP transaction), they were able to secure an "inflated value," FAC ¶¶ 101, without any specific allegations as to what assumptions, and how Plaintiffs contend those "assumptions" caused an "inflated" value.  Finally, they state that the issuance of "warrants" (again, a common occurrence in an ESOP transaction) somehow caused the ESOP to pay more than adequate consideration for Envision shares, because those warrants at some point in the future could possibly "dilute the value of the ESOP's Envision stock after the Transaction."  FAC ¶ 94.   But Plaintiffs must allege more than just the fact that warrants (without any specifics as to their terms) were issued in connection with the Transaction—they must plausibly allege a failure of process by the fiduciary when evaluating any impact from the issuance of warrants on the fair market value of the shares the ESOP was purchasing.  Plaintiffs' allegations about issuance of warrants does nothing of the sort.   In sum, Plaintiffs' vague allegations are wholly devoid of the types of specific factual allegations sufficient to support a plausible inference of a failure of process, as Plaintiffs are required to do to state a cognizable claim.[9]  *Twombly*, 550 U.S. at 547.

---

[9]    The FAC also makes the nonsensical contention that the ESOP paid too much for Envision because Envision is merely a "holding company which, through a complicated corporate structure, owns primarily minority interests in Envisions radiology centers and operations."  FAC ¶ 97.  This conclusory allegation, like the others, says nothing of Argent's fiduciary process, and, other than speculating that this should have resulted in a "further discount," this allegation fails to include critical details to support such a contention.  Like Plaintiffs' other allegations, this one does not move the needle from possible to plausible.

Count I also fails as to the Board Defendants and the ESOP Committee Defendants because there is no plausible allegation that they "caused" the ESOP to acquire the Envision shares, no matter the price, as required by ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1).  At most, Plaintiffs offer a conclusory allegation that "[b]ecause the Board and/or the ESOP Committee also had the power to direct Argent with respect to decisions for the ESOP, they also caused the ESOP Transaction."[10]  FAC ¶ 123.  Despite having access to the complete closing binder of Transaction documents and the Envision board resolutions, Plaintiffs conspicuously fail to make any specific allegations as to how or when the Board Defendants or the ESOP Committee directed Argent to approve the Transaction, or how they otherwise caused the Transaction to occur.  Plaintiffs' conclusory allegations are insufficient to state a Section 406(a) prohibited transaction claim against the Board Defendants and ESOP Committee Defendants.

### e.  Plaintiffs Fail to State a Claim for "Knowing Participation" in Prohibited Transaction (Count II).

Plaintiffs seek to attach liability against the Seller Defendants, in their capacities as non-fiduciaries, for allegedly "knowingly participating" in a prohibited transaction.  In general, a plan participant may seek "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for a non-fiduciary's "knowing participation" in a prohibited transaction.  *Harris Trust & Sav. Bank v. Salmon Smith Barney Inc.*, 530 U.S. 238, 245-249 (2000).  Here, Plaintiffs once

---

[10]  Plaintiffs also allege that the Board Defendants "orchestrated the transaction," but stop short of alleging the Board Defendants actually caused the ESOP to acquire the Envision shares.  FAC ¶ 120.  A naked allegation that defendants "orchestrated" an ESOP transaction, without supporting factual allegations, is entitled to no weight in a Rule 12 analysis.  *See Zavala v. Kruse-Western, Inc.*, 398 F. Supp. 731, 744 (E.D. Cal. 2019) ("Such language gives the reader no indication of what it is the [defendants] did that caused the transaction to occur.")

again contend that the ESOP's purchase of 100,000 shares of Envision stock from the Seller Defendants constituted a prohibited transaction in violation of ERISA.  *See* FAC ¶ 131.  This "knowing participation" claim fails because, as demonstrated in Part III.d, *supra*, Plaintiffs have not presented plausible allegations that the ESOP overpaid for the shares it purchased.  Absent credible allegations of an underlying prohibited transaction, Plaintiffs' claim for "knowing participation" fails as a matter of law. *See Harris Trust, supra*, 530 U.S. at 251 (holding the elements of a prohibited transaction must be established before a non-fiduciary can be held liable for knowing participation under ERISA).

Even if Plaintiffs had pled sufficient facts to support an inference that the ESOP had overpaid for the shares it acquired – and they have not – the "knowing participation" claim in Count II still fails as to Defendants Nicole Jones and Jeff Jones.  Plaintiffs contend that the ESOP's purchase of 100,000 shares constituted a prohibited sale between the ESOP and parties in interest under ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).  FAC ¶ 131.  But the FAC itself acknowledges that Nicole Jones and Jeff Jones did not sell their shares to the ESOP.  Instead, the Joneses sold that block of shares to Envision, which then resold those shares to the ESOP.  *See* FAC ¶ 102; *see also* SPA at §§ 2.1(b), 2.3.  Thus, Envision's redemption of the Joneses' shares did not constitute a sale or exchange with the ESOP, and thus cannot constitute a prohibited transaction under ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).  Since Plaintiffs cannot allege that Envision's redemption of the Joneses' shares constituted a prohibited transaction, they likewise cannot assert a "knowing participation" claim against them with respect to those shares.[11]

---

[11]   Jeff Jones also sold certain shares directly to the ESOP.  *See* FAC ¶ 102 (first bullet); *see also* SPA §§ 2.1(a), 2.2 (copy at Exhibit "4" to accompanying Declaration of W. Bard Brockman).

Count II also fails because the FAC does not seek "appropriate equitable relief" for the ESOP against the Seller Defendants. "Equitable remedies are, as a general rule, directed against some specific thing: they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendants' assets." *Teets v. Great-West Life & Ann. Ins. Co*, 921 F.3d 1200, 1224 (10th Cir. 2019), *quoting Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 661 (2016). Plaintiffs here seek to impose an equitable lien or a constructive trust, both of which are forms of equitable restitution. *Id.* at 1224, *citing Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). However, those remedies are available only where the money that in good conscience belongs to a plaintiff can be "clearly traced to particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 213. The same identification and tracing requirements also apply to Plaintiffs' demand in the FAC for an accounting or disgorgement, which are also forms of equitable restitution. *Teets*, 921 F.3d at 1225-1226, *citing Knudson*, 534 U.S. at 214, n.2. The identification and tracing of specific funds in the defendant's possession are ***pleading requirements*** under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) where equitable relief is sought. *See Teets*, 921 F.3d at 1224, *citing Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Ins. Co*., 771 F.3d 150 (2d Cir. 2014) (affirming dismissal of complaint where it failed to seek appropriate equitable relief); *see also Zavala v. Kruse-Western, Inc.*, 398 F. Supp. 3d 731, 741 (E.D. Cal. 2019) (dismissing § 1132(a)(3) claim against non-fiduciary because plaintiff failed to allege ESOP property was "directed to any particular account over which plaintiff might have a valid claim"); *Del Castillo v. Comm. Child Care Council of Santa Clara Cty, Inc.*, 2019 WL 6841222 at *8-9 (N.D. Cal. Dec. 16, 2019) (dismissing § 1132(a) claim where complaint did not plead facts to support that

defendant possessed identifiable plan assets).  Here, the FAC does not identify any specific funds
in the possession of the Seller Defendants that they contend in good conscience belong to the
ESOP.  Plaintiffs therefore fail to adequately plead a right to "appropriate equitable relief" under
ERISA §502(a)(3), 29 U.S.C. § 1132(a)(3).

      **f.   Plaintiffs Fail to State a Claim for Prohibited Transaction (Count III).**

     In Count III, Plaintiffs assert an alternative prohibited transaction theory against certain of
the selling shareholders – Creps, Sherwood, Jeff Jones and Khan – under ERISA § 406(b)(3), 29
U.S.C. § 1106(b)(3).  That section provides:

> A fiduciary with respect to a plan shall not –
>
> (3)  receive any consideration for his own personal account from any party dealing with
> such plan in connection with a transaction involving the assets of the plan.

In support of this claim, Plaintiffs once again allege these three defendants caused the transaction
which resulted in the ESOP paying more than fair market value for the Envision stock. FAC ¶¶
141-143.  This prohibited transaction claim fails for two basic reasons.

     First, as explained in Part III.d,, *supra*, claims for prohibited transaction under ERISA §
406(b), 29 U.S.C. § 1106(b) are subject to the exemptions in ERISA § 408, 29 U.S.C. § 1108.  *See*
*Gamino v. KPC Healthcare Holdings, Inc.*, 2022 WL 4596576, *10 (C.D. Cal. Aug. 15, 2022),
*citing Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).   In the ESOP context, prohibited
transaction claims that a fiduciary somehow engaged in self-dealing by causing an ESOP to
overpay for the acquired shares are subject to the exemption in ERISA § 408(e), 29 U.S.C. §
1108(e).  *Id.*  Here, Plaintiffs again attempt to plead around that statutory exemption by alleging
that the ESOP paid more than "fair market value" for the Envision stock.  FAC ¶ 141.  However,
as demonstrated in Parts III.b and III.c *supra*, that assertion is based on fallacious and

unsupportable theories, that: (i) the ESOP paid $1,404 for some of the purchased shares; and (ii) the ESOP's purchase price should have reflected a discount for lack of control.

Second, liability under ERISA § 406(b), 29 U.S.C. § 1106(b) attaches only to a fiduciary that approves the complained-of transaction.  *See Foster v. Adams and Assoc., Inc*., 2020 WL 36396548, at *6-7, 9 (N.D. Cal. July 6, 2020) (granting summary in favor of monitoring defendants on § 1106(b) claim because they were not fiduciaries that approved ESOP purchase transaction). Plaintiffs here offer no factual allegations that create a plausible inference that Defendants Creps, Sherwood, Jeff Jones or Khan approved the Transaction on behalf of the ESOP.  Again, Plaintiffs offer only conclusory allegations that these defendants "orchestrated the transaction" and that they "caused themselves" to receive consideration from the Transaction.  FAC ¶¶ 141-143.   But Plaintiffs do not – and indeed cannot – plausibly allege that these defendants ***approved*** the Transaction on behalf of the ESOP.  Count III should be dismissed.

### g.   Plaintiffs Fail to State a Claim for Failure to Monitor (Count V) and Co-Fiduciary Liability (Count VI).

Plaintiffs allege the Board Defendants violated ERISA's duty to monitor under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), and that Board Defendants have co-fiduciary liability for their participation in "the fiduciary violations of Argent." FAC ¶¶ 158-168. As an initial matter, both claims fail because each requires an underlying breach of fiduciary duty to proceed against Defendants and for the reasons described herein (*supra*, Part III.d) Plaintiffs have failed to show Argent breached any fiduciary duty. *See, e.g., In re YRC Worldwide, Inc. ERISA Litig*., No. 09-2593-JWL, 2011 WL 1303367, at *2 n.2 (D. Kan. Apr. 6, 2011) (reviewing cases that find duty to monitor and co-fiduciary claims are derivative to breach of fiduciary duty claims); *In re RadioShack Corp. ERISA Litig*., 547 F. Supp. 2d 606, 616 (N.D. Tex. 2008) (finding

claims for failure to monitor and co-fiduciary liability to be derivative of plaintiffs' prudence claim). Plaintiffs allege no basis for a breach of duty to monitor or for co-fiduciary liability by the Board Defendants beyond conclusory statements. Thus, because there was no breach of fiduciary duty by Argent, the two additional claims against the Board Defendants must fail. *See White v. Chevron Corporation*, 2016 WL 4502808, at *18–19 (N.D. Cal. Aug. 29, 2016) (dismissing derivative claim after primary breach of fiduciary duty claims were dismissed).

Even assuming Plaintiffs had plausibly pled an underlying fiduciary breach against Argent, their claims that the Board Defendants failed to monitor Argent are unsupported by any facts that could give rise to an inference of deficiency in the monitoring process. Plaintiffs allege the Board Defendants failed to monitor Argent's performance, fiduciary processes, due diligence, and use of financial projections, and failed to implement a system to avoid conflicts of interest, ensure the ESOP participants did not pay more for one class of shares of Envision stock than another, and ensure Argent took remedial action after the ESOP Transaction. FAC ¶ 161. But these are conclusory statements and legal conclusions; the FAC contains no *factual allegations* regarding the Board Defendants' alleged failure to monitor, and Plaintiffs' conclusory statements and legal conclusions are not entitled to the presumption of truth. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (affirming district court's holding striking plaintiff's conclusory and formulaic allegations and granting motion to dismiss).

The allegations against the Board Defendants under ERISA § 405, 29 U.S.C. § 1105 for co-fiduciary liability similarly fail. Under subsection (a), a co-fiduciary is liable for another fiduciary's breach of fiduciary duty when: (1) the co-fiduciary had actual knowledge of another fiduciary's breach; (2) the co-fiduciary knowingly participated in the breach or undertook to

conceal it; and (3) damages resulted therefrom. Plaintiffs premise their allegations in the FAC regarding the Board Defendants' actual knowledge of or failure to stop Argent's alleged fiduciary breaches on their conclusory allegations regarding the financial projections on which Argent relied in determining the purchase price of the shares and the unsupported assertion that there should have been a discount in the purchase price for lack of control. Plaintiffs' conclusory assertions do not point to any facts that would allow the Court to draw the reasonable inference that the Board Defendants had actual knowledge that any activity of Argent constituted a breach – Plaintiffs' conclusory allegations of co-fiduciary liability, like their other claims, fail to plead their co-fiduciary liability claim. *See Khalik*, supra. Thus, Plaintiffs' claims for breach of the duty to monitor and for co-fiduciary liability should both be dismissed.

### h. Plaintiffs' Challenge to the Plan's Indemnification Provision (Count VII) Fails.

In Count VII of the FAC, Plaintiffs seek to invalidate standard provisions in the ESOP Plan Document, Envision's Bylaws, and Argent's engagement letter, all of which allegedly require Envision to indemnify Argent, the Board Defendants or the ESOP Committee Defendants.  These types of standard indemnification provisions are valid and enforceable under ERISA.  Plan sponsors may indemnify trustees and other plan fiduciaries so long as the indemnification provisions do not cover a final judgment that the indemnitee breached its fiduciary duty.  *See e.g. Perez v. PBI Bank, Inc*., 69 F. Supp. 3d 906. 913 (N.D. Ind. 2014) ("The fact that the language of the Engagement Letter limits indemnification to situations where those accused of misconduct are vindicated is what permits the indemnification clause to be enforceable."); *Pudela v. Swanson*, No. 91 C 3559, 1995 WL 77137, at *5 (N.D. Ill. Feb. 21, 1995) (holding that ESOP trustees may be indemnified by the company sponsoring the ESOP).  Indeed, "[h]ow could anyone take seriously

the proposition that ERISA forbids the indemnification of fiduciaries wrongly accused of misconduct, when ERISA itself allows a court to award fees to the prevailing side?" *Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 176 (7th Cir. 1992); *see also Pfahler v. Nat'l Latex Prods. Co*., 517 F.3d 816, 837 (6th Cir. 2007) ("Given that ERISA explicitly permits parties to insure against possibility liability, it would be illogical to interpret the statute as prohibiting indemnification agreements, which accomplish the same thing.")

Though the enforceability of the various indemnification provisions is beyond question, the Court need not even reach that conclusion to dismiss Count VII. Plaintiffs seek to invalidate the indemnification provisions to prevent Envision from indemnifying Argent, the Board Defendants and the ESOP Defendants for their alleged fiduciary breaches and violations of ERISA. But as demonstrated above, Plaintiffs have failed to assert any plausible claims of wrongdoing against these defendants. The failure to allege viable claims of wrongdoing moots Plaintiffs' attempt in Count VII to invalidate the various indemnification provisions.

## IV.    CONCLUSION

For these reasons, Defendants respectfully ask the Court to grant this motion and dismiss Plaintiffs' First Amended Complaint with prejudice in its entirety.[12]

---

[12]   The Court should dismiss the Amended Complaint with prejudice. Plaintiffs attempted to present a viable set of claims in their first pleading. After receiving the controlling ESOP documents and Transaction documents, they amended their pleading to no avail. Plaintiffs should not be granted a third attempt to allege cognizable claims.

Respectfully submitted this 28th day of August, 2023.

**BRYAN CAVE LEIGHTON PAISNER LLP**

*s/ W. Bard Brockman*
W. Bard Brockman
Katelyn W. Harrell
1201 West Peachtree Street NW
One Atlantic Center, 14th Floor
Atlanta, Georgia 30309
Telephone: (404) 572-6600
E-mail: bard.brockman@bclplaw.com
E-mail: Katelyn.harrell@bclplaw.com

Michael J. Hofmann
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
E-mail: Michael.Hofmann@bclplaw.com

*Attorneys for Defendants Envision Management Holding, Inc. Board of Directors; Envision Management Holding, Inc. Employee Stock Ownership Plan Committee; Darrel Creps III, Paul Sherwood, Jeff Jones, Nicole Jones, Aaron Ramsay, Tanweer Khan, and Lori Spahn*

**GROOM LAW GROUP**

*s/ William J. Delany*
William J. Delany
Lars C. Golumbic
Paul J. Rinefierd
1701 Pennsylvania Avenue, NW
Suite 1200
Washington, DC 20006
Telephone: (202) 659-4503
Email: LGolumbic@groom.com
Email: WDelany@groom.com
Email: PRinefierd@groom.com

*Attorneys for Defendant Argent Trust Company*

**FAEGRE DRINKER BIDDLE & REATH LLP**

*s/ Richard J. Pearl*
Richard J. Pearl
320 South Canal Street
Suite 3300
Chicago, Illinois 60606
Telephone: (312) 569-1907
Email: rick.pearl@faegredrinker.com

*Attorney for Defendants Envision Management Holding, Inc. Board of Directors; Envision Management Holding, Inc. Employee Stock Ownership Plan Committee; Darrel Creps III, Paul Sherwood, Jeff Jones, Aaron Ramsay, and Tanweer Khan*

25