IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 21-cv-00304-CNS-MDB

ROBERT HARRISON, on behalf of himself and all other similarly situated individuals
on behalf of Envision Management Holding, Inc. ESOP, and
GRACE HEATH, on behalf of herself, the Envision Management Holding, Inc. ESOP, and all other similarly situated individuals,

        Plaintiffs,

v.

ENVISION MANAGEMENT HOLDING, INC. BOARD OF DIRECTORS,
ENVISION MANAGEMENT HOLDING, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE,
ARGENT TRUST COMPANY,
DARREL CREPS, III,
PAUL SHERWOOD,
JEFF JONES,
AARON RAMSAY,
TANWEER KAHN,
NICOLE JONES, and
LORI SPAHN,

        Defendants.

---

**ORDER**

---

Plaintiffs move to certify an ERISA class under Federal Rule of Civil Procedure 23. ECF No. 172. Defendants oppose the requested relief. ECF Nos. 190, 198. For the reasons below, the Court finds that class certification is appropriate in this ERISA action, and therefore, GRANTS Plaintiffs' Motion for Class Certification.

1

## I.    BACKGROUND

This case concerns an employee stock ownership plan—the Envision Employee Stock Ownership Plan (the Plan or ESOP)—that allows participating employees to acquire an interest in company stock. *See* ECF No. 91 (Am. Compl.). The Plan is subject to and governed by the Employment Retirement Security Act of 1974 (ERISA), and all seven of Plaintiffs' claims are brought under ERISA. *See id.*, ¶¶ 115–78.

Plaintiff Robert Harrison, a former employee of Defendant Envision Management Holding, initiated this action on January 29, 2021, by filing a class action complaint. *See* ECF No. 1. Plaintiff Grace Heath, also a former employee of Envision, joined Plaintiff Harrison in the amended complaint. ECF No. 91. Both Plaintiffs are current ESOP participants who have vested Envision stock in their ESOP accounts. ECF 162 (Defs.' Answer to Am. Compl.), ¶¶ 27, 32.

Envision Management Holding, Inc. is a Colorado corporation that provides diagnostic imaging services such as MRIs, CT scans, and ultrasounds. ECF No. 172 at 2. In 2016 and 2017, Envision's owners and board members—Defendants Darrel Creps, III, Paul Sherwood, Jeff Jones, and Tanweer Khan (the Seller Defendants)— contemplated selling their company to a third-party competitor, Centers for Diagnostic Imaging (CDI), for $150 million. ECF No. 172 at 3 (citing Dep. of Jones and Creps). However, the Seller Defendants apparently did not want to sell to a third party because they were not ready to relinquish control of Envision. *Id.* So in late 2017, the Seller Defendants decided to create an ESOP with Defendant Argent Trust Company as the trustee. *Id.* According to Plaintiffs, Argent was a "rubber-stamp trustee . . . who would

2

agree to buy Envision at a much higher price ($177 million) and let [the Sellers] keep control of Envision's Board." *Id.*

The Seller Defendants are "named fiduciaries" of the ESOP. *Id.* They appointed Argent as the ESOP's trustee to represent the ESOP's purchase of 100% of the Seller Defendants' private Envision stock on December 19, 2017 (the ESOP Transaction), which, Plaintiffs argue, created a duty for the Seller Defendants to monitor Argent's performance. *Id.* Turning to Argent, Plaintiffs complain that it had little incentive to stop the ESOP Transaction or to negotiate a better price for the sale. ECF No. 91, ¶¶ 4–8. Rather, Argent's lead relationship manager, Mark Shorthouse, would earn a 20% commission of Argent's fee for its work on the $177 million deal and an additional 20% commission from Argent's ongoing trustee services fee, which Shorthouse would receive only after approving the deal. ECF No. 172 at 3 (citing Shorthouse Dep.). Plaintiffs argue that this arrangement created a conflict of interest for Shorthouse. *Id.* Plaintiffs argue that the conflict revealed itself when the Seller Defendants' opening sale price offer of $187 million—nearly $40 million more than a third party offered to buy Envision—barely budged during the negotiation process. *Id.*

In reaching the ESOP's final purchase price of Envision, Plaintiffs argue that both sides of the ESOP Transaction breached their fiduciary duties and engaged in a prohibited transaction under ERISA. *Id.* at 4. For the Seller Defendants' part, Plaintiffs argue that they "(i) hired a friendly counterpart to agree to favorable deal terms, (ii) withheld from Argent critical information about a recent offer to buy Envision for a much lower price (less than $150 million), and (iii) denied Argent's advisor's request for prior

3

valuations, which indicated that Envision was worth much less than the $177 million the ESOP paid." *Id.* On the other side, Plaintiffs contend that Argent allowed the ESOP to pay for control of Envision, even though the Seller Defendants would retain control of Envision after the ESOP Transaction. *Id.* Plaintiffs also fault Argent for failing to analyze Envision's future profitability, suggesting that Argent accepted the Seller Defendants' projections despite being unsupported, conflicted, and unreasonable. *Id.*

Plaintiffs assert causes of action against various Defendants and seek plan-wide relief. ECF No. 91. Specifically, Plaintiffs assert ERISA claims for prohibited transactions (Counts I & III); breaches of fiduciary duties (Counts IV-V); co-fiduciary liability (Count VI); knowing participation in unlawful conduct (Count II); and unlawful indemnification of fiduciaries (Count VII). *See id.* Plaintiffs seek an array of remedies, including: (1) a declaration that certain Defendants breached their fiduciary duties, (2) an injunction from further ERISA violations, (3) removal of Argent as the ESOP's trustee, (4) appointment of a new independent fiduciary, (5) recovery of losses to the plan and disgorgement of profits, (6) recovery of other appropriate equitable relief to the ESOP (disgorgement of profits, an accounting for profits, surcharge, and/or imposition of a constructive trust and/or equitable lien on assets wrongfully held by Defendants), (7) invalidation of indemnification provisions, an injunction from receiving payments pursuant to them, and the return of amounts received pursuant to them, (8) attorneys' fees and costs, and (9) pre- and post-judgment interest. *See id.* (Prayer for Relief).

Defendants tell a different story. They note that before the ESOP Transaction, the newly formed ESOP did not have any stock or assets with which to provide benefits to

4

Envision employees participating in the ESOP. ECF No. 190 at 1. Since the ESOP Transaction closed, each year ESOP participants receive an allocation of Envision stock to their individual ESOP accounts as a retirement benefit. *Id.* Defendants explain that Plaintiff Heath, like other ESOP participants, received this stock benefit as a gratuity: she did not pay or defer any compensation to start receiving Envision stock or assume any additional job obligations in exchange for receiving Envision stock in the ESOP. *Id.* (citing Heath Dep.). Defendants argue that the ESOP has been "wildly successful and conveyed significant benefits to ESOP participants." *Id.* (explaining that Envision stock has grown more than 504% from December 2017 to December 2023).

Defendants contend that they implemented steps to ensure independence and success. *Id.* at 2. They note that Envision appointed a Trustee Selection Committee comprised of disinterested non-Sellers, to review and interview three potential independent trustees to represent the ESOP. *Id.* That committee selected Argent. *Id.* Envision then appointed Argent to represent the ESOP and assess, among other things, whether the ESOP would be paying no more than "adequate consideration" for Envision stock. *Id.* Argent also engaged independent advisors to assist in evaluating the ESOP Transaction—including a valuation advisor, industry expert, and legal advisor. *Id.* (citing Shorthouse Dep.). Defendants argue that Argent and its advisors conducted extensive due diligence into Envision and its related ventures including evaluating the "fair market value" of Envision stock. *Id.* (citing Shorthouse Dep.). According to Defendants, Argent negotiated "hard" with Seller Defendants and secured multiple concessions for the ESOP's benefit. *Id.* at 2–3. Defendants note that, while the ESOP Transaction price fell

within the fair market value range, it could have been "***much higher*** given imminent tax reforms that increased Envision's value shortly after the Transaction." *Id.* at 3 (citing Shorthouse Dep.).

The tax reform Defendants reference is the Tax Cuts and Jobs Act, which ultimately reduced the corporate tax rate from 35% to 21%. ECF No. 190 at 3. Defendants explain that the rate reduction substantially boosted Envision's value by reducing its tax obligation. *Id.* (citing Shorthouse Dep.). Defendants explain that the Seller Defendants knew the tax cuts were coming, and they expected the cuts could increase the value of Envision stock by at least 10–15%. *Id.* (citing Jones Dep.). However, the parties agreed to allow the ESOP and its participants to benefit from these tax cuts by closing the ESOP Transaction on December 19, 2017, and not increasing the ESOP Transaction purchase price to account for the anticipated increase of valuation. *Id.* The Act passed on December 20, 2017, one day after the ESOP Transaction closed. *Id.* By the end of 2017, Envision's value had increased by over $28 million from the ESOP Transaction date—benefiting the ESOP and its participants. *Id.* at 3.

## III.   LEGAL STANDARD

The class action is an exceptional procedural mechanism, permitting a named plaintiff to represent a class "whose claims they wish to litigate." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014) (quotations omitted); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) ("A class action . . . enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."). To certify a class action, plaintiffs

must first satisfy Federal Rule of Civil Procedure 23(a)'s requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Plaintiffs then must show through "evidentiary proof" that at least one of three conditions defined in Federal Rule of Civil Procedure 23(b) is satisfied. *Colorado Cross Disability*, 765 F.3d at 1213 (citation omitted); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013).

Rule 23 "does not set forth a mere pleading standard. A party seeking class certification must . . . prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350; *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) ("[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23."). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (quotations omitted).

In the Tenth Circuit, the specific burden of proof that plaintiffs must satisfy in demonstrating class certifiability is not specifically defined. *See Colorado Cross Disability*, 765 F.3d at 1213; *see also Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013) ("Relaxing and shifting Rule 23(a)'s strict burden of proof . . . results in an abuse of discretion." (quotations omitted)); *Tabor,* 703 F.3d at 1228 (setting forth same "strict burden of proof" standard). Some district courts have required plaintiffs to "show, by a preponderance of the evidence, that the Rule 23

requirements are met." *Francis v. APEX USA, Inc.*, No. CIV-18-583-SLP, 2021 WL 4487985, at *2 (W.D. Okla. Sept. 30, 2021) (citing *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)). Although *Trevizo* is not so clear, *see Trevizo*, 455 F.3d at 1162 ("A party seeking class certification must show under a strict burden of proof that all four requirements are clearly met." (citation omitted)), the Court, like other district courts in this Circuit, believes that the Tenth Circuit will follow its sister circuits and adopt a "preponderance" standard at the class certification stage. *See Payne v. Tri-State CareFlight*, LLC, 328 F.R.D. 601, 621 n.12 (D.N.M. 2018) ("[A]lthough the Tenth Circuit has not yet explicitly adopted the preponderance standard for fact-finding in class certification analyses, it most likely will, and the Court will employ that standard here." (collecting cases)); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (joining First, Second, Third, Fifth, and Seventh Circuits "in concluding that plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence").

## IV.  ANALYSIS

Plaintiffs move to certify the following class:

> All participants in the Envision ESOP on or after September 1, 2017 who vested under the terms of the ESOP, and those participants' beneficiaries. Excluded from the Class are Defendants, directors of Envision, recipients of warrants or stock appreciation rights in Envision stock, and immediate family members of those excluded individuals.

ECF No. 173 at 6–7. Plaintiffs argue that there are approximately 1,000 members of the proposed class. *Id.* at 7. In the analysis below, the Court first considers whether Plaintiffs' satisfy the four Rule 23(a) requirements before moving to Rule 23(b).

**A. Rule 23(a)**

Plaintiffs contend that each Rule 23(a) requirement is satisfied. ECF No. 172 at 8. The Court considers Rule 23(a)'s requirements in turn, ultimately concluding that Plaintiffs have shown by a preponderance of the evidence that each requirement has been met.

*1. Numerosity and Ascertainability*

*a. Numerosity Requirement*

Plaintiffs argue that the ESOP had 987 participants as of December 31, 2022, which comfortably meets Rule 23's numerosity requirement. *Id.* at 16 (citing ECF No. 173-29 at 2 (Form 5500)). Plaintiffs also argue that the proposed class is easily ascertainable because it involves all members of the Plan. *Id.* (citing ECF Nos. 173-30 and 173-31). Defendants do not contest that Plaintiffs satisfy the numerosity and ascertainability requirements. *See generally* ECF Nos. 190 and 198.

Under Rule 23(a)(1), a plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a)'s numerosity inquiry is not a blunt "question of numbers." *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977). Assessing a class's numerosity is a "fact-specific inquiry," calling for the consideration of certain factors, including: "the nature of the action, the size of the individual claims, and the location of the members of the class or the

property that is the subject matter of the dispute." *Colorado Cross Disability*, 765 F.3d at 1215 (quotations omitted).

Plaintiffs' proposed class size—nearly 1,000 members—is not in dispute, and in any event, the evidence establishes this fact. *See* ECF No. 173-29 at 2. This class size makes joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). Although this factor involves more than a "question of numbers," *Horn*, 555 F.2d at 275, the Court considers the nature of the action (ERISA fiduciary litigation) and Defendants' decision to not challenge this prong, and finds that Plaintiffs have established numerosity. *See Decoteau v. Raemisch*, 304 F.R.D. 683, 687 (D. Colo. 2014) (finding class size of 500 is sufficiently numerous); *Schreiber v. National Collegiate Athletic Ass'n*, 167 F.R.D. 169, 174 (D. Kan. 1996) (certifying a proposed class of 300).

### b.  Ascertainability

The Tenth Circuit treats "ascertainability as a sub-requirement of numerosity" because, to show numerosity, "there must be presented some evidence of established, *ascertainable* numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement." *Evans v. Brigham Young Univ.*, No. 22-4050, 2023 WL 3262012, at *5 (10th Cir. May 5, 2023) (quoting *Rex v. Owens ex rel. Oklahoma*, 585 F.2d 432, 436 (10th Cir. 1978) (emphasis added)); *id.* ("If the district court cannot ascertain who falls into the class, then it cannot evaluate whether the class is so numerous that joinder is impracticable."). Circuit courts have applied varying standards when assessing ascertainability. *Id.* The Third Circuit uses a two-prong test, "requiring that (1) the class be objectively defined, and (2) there is 'a reliable and

administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 353 (3d Cir. 2013)). The Seventh Circuit, however, only requires "that a plaintiff show ascertainability by 'defining classes clearly and with objective criteria.'" *Id.* (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 672 (7th Cir. 2015)). The Tenth Circuit has not adopted either standard, instead "allow[ing] district courts to consider these tests as part of their discretion to grant or deny class certification." *Id.*

The Court finds that the proposed class satisfies the Third Circuit's more "stringent" standard, *id.*, and thus, the proposed class necessarily satisfies the Seventh Circuit standard in the process. First, ESOP membership—the basis on which the class is defined—is an objective criterion. Second, ERISA requires that all ESOP participants receive annual account statements providing the number of Envision shares the participants have in their respective ESOP accounts and the percentage vested of shares. *See* 29 U.S.C. § 1025(a). These statements provide a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes*, 725 F.3d at 353.

Plaintiffs have met their burden of showing that the proposed class is ascertainable.

### 2. Commonality

Plaintiffs argue that there are numerous questions of fact common to the proposed class, including whether the ESOP paid more than fair market value for company stock; whether each Defendant is a fiduciary, and if so, whether each Defendant breached his

or her fiduciary duties owed to the Plan; and whether the Plan suffered losses from these breaches. *See* ECF No. 172 at 18. Defendants again do not contest that Plaintiffs satisfy the commonality requirement. *See generally* ECF Nos. 190 and 198.

A plaintiff may satisfy Rule 23(a)(2)'s commonality requirement if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) ("In determining whether the . . . commonality requirement[] ha[s] been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient."). In determining whether a plaintiff has satisfied Rule 23(a)(2)'s commonality requirement, courts ask whether the class claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "A finding of commonality requires only a single question of law or fact common to the entire class." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (quotations omitted); *see also Wal-Mart*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (quotations and alterations omitted)).

Here, Plaintiffs assert that Defendants breached fiduciary duties owed to the Plan and Plan participants. Courts generally find that these issues present common questions of law and fact. *Banyai v. Mazur,* 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." (citation and quotations omitted)); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142–43

(S.D.N.Y. 2010) ("By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions."). And as Plaintiffs point out, ECF No. 172 at 10–11, courts in this district routinely find commonality in ERISA cases. *See, e.g.*, *Troudt v. Oracle Corp.*, 325 F.R.D. 373, 377 (D. Colo. 2018), *amended*, No. 16-CV-00175-REB-SKC, 2019 WL 1006019 (D. Colo. Mar. 1, 2019); *Ramos v. Banner Health*, 325 F.R.D. 382, 389 (D. Colo. 2018); *Barrett v. Pioneer Nat. Res. USA, Inc.*, No. 17-CV-1579-WJM-NYW, 2018 WL 11431448, at *3 (D. Colo. July 26, 2018).

A review of Plaintiffs' claims and allegations show that common questions exist, including whether each Defendant is a fiduciary; whether each Defendant breached their fiduciary duty or engaged in a prohibited transaction; whether the Plan suffered losses from these alleged breaches; and what equitable relief should be imposed to remedy such breaches and prevent future breaches. Resolution of these allegations necessarily will affect each class member.

The Court finds that Plaintiffs have shown by a preponderance of the evidence that the commonality requirement is satisfied.

### 3. Typicality

Plaintiffs argue that their claims are typical because the claims of Plaintiffs and the class are based on the same underlying allegation that the ESOP paid an excessive price of $177 million for Envision stock. ECF No. 172 at 19. Plaintiffs also argue that, because they bring claims under 29 U.S.C. § 1132(a)(2), they necessarily proceed in a representative capacity on behalf of the Plan as a whole. *Id.* Thus, they contend, their claims are not just typical; they are identical. *Id.* Defendants argue that Plaintiffs' claims

cannot be typical because Plaintiffs and their counsel advance claims that are adverse to the putative class and thus are atypical of the class's claims. ECF No. 190 at 6.

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)'s typicality requirement "do[es] not require that every member of the class share a fact situation identical to that of the named plaintiff." *Colorado Cross Disability*, 765 F.3d at 1216 (citation omitted). "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (quotations omitted).

Courts routinely find that ERISA actions satisfy the typicality requirement. *Barrett*, 2018 WL 11431448, at *4 (finding typicality requirement satisfied where the plaintiff sought to recover excessive expenses that would "then need to be distributed to Plan participants"); *Troudt*, 325 F.R.D. at 377; *Teets v. Great-W. Life & Annuity Ins. Co.*, 315 F.R.D. 362, 370 (D. Colo. 2016); *Ramos*, 325 F.R.D. at 389–90; *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593-JWL, 2011 WL 1303367, at *4 (D. Kan. Apr. 6, 2011); *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593-JWL, 2011 WL 1303367, at *4 (D. Kan. Apr. 6, 2011); *Shanehchian v. Macy's, Inc.*, No. 1:07-CV-00828, 2011 WL 883659, at *6 (S.D. Ohio Mar. 10, 2011) (finding typicality requirement satisfied because claims brought on behalf of ERISA plan for alleged breaches of fiduciary duties, further nothing that the "threshold for satisfying the typicality prong is a low one"); *In re Williams Companies ERISA Litig.*, 231 F.R.D. 416, 422–24 (N.D. Okla. 2005) ("Plaintiffs and the class assert

a claim for plan-wide relief under ERISA § 502(a)(2), which is by definition a representative action on behalf of the plan as a whole." (citing *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n.9 (1985)); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 350 (N.D. Ill. 2007) (typicality satisfied because plaintiffs' claims seek relief on behalf of the Plan under § 502(a)(2) for alleged fiduciary violations). A typicality finding in ERISA cases is especially true where, as here, Plaintiffs bring claims under § 1132(a)(2). *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) ("It is well settled, moreover, that [a] suit under § 1132(a)(2) is 'brought in a representative capacity on behalf of the plan as a whole' and that remedies under § 1109 'protect the entire plan.'" (quoting *Russell,* 473 U.S. at 142 & n.9)); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (§ 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries"). The Court sees no reason to deviate from these decisions, and Defendants' conflict-based argument does not alter the Court's analysis because that argument goes to the adequacy prong, not typicality. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (analyzing representatives' and counsels' potential conflicts of interest under the adequacy prong).

In sum, the claims of all class members, including Plaintiffs, are based on the same underlying allegation: that the ESOP paid an excessive price of $177 million for Envision stock. The ESOP Transaction affected all proposed class members (ESOP participants who hold vested Envision stock in their ESOP accounts) in the exact same manner, and Defendants' liability, if any, will be resolved on a class-wide basis. The Court thus finds

that Plaintiffs have shown by a preponderance of the evidence that the typicality requirement is satisfied.

### 4. Adequacy

Plaintiffs contend that both they and their counsel satisfy the adequacy requirement because all ESOP participants share a common interest in Defendants' return of the amount the ESOP overpaid for Envision stock. ECF No. 172 at 12. They also argue that Plaintiffs and counsel have vigorously prosecuted this action. *Id.* at 13.

Defendants argue in response that the actions Plaintiffs complain of—the ESOP's purchase of Envision stock—actually helped Plan participants. ECF No. 190 at 13. Stated differently, had the Seller Defendants sold Envision to a competitor (CDI) as Plaintiffs argue, Plaintiff Heath never would have realized more than $28,000 in retirement benefits. *Id.* Defendants then push back on Plaintiffs' contention that the Seller Defendants should have left Envision following the ESOP Transaction, arguing that such a move would have harmed Envision employees. *Id.* at 14. Defendants argue, for example, that Envision would have been deprived of institutional knowledge and expertise from its founders at a time when the next generation of Envision leaders was not fully prepared. *Id.* at 14–15. Defendants contend that Plan participants would have lost jobs because CDI would have consolidated operations in Minnesota, causing Envision employees in Colorado Springs to lose their jobs. *Id.* at 13. Lastly, Defendants argue that Plaintiffs have failed to supervise their counsel. *Id.* at 16. Defendants point to Plaintiffs' lack of knowledge of the common interest agreement (CIA) with the Department of Labor (DOL), arguing that counsel's decision to enter the CIA without Plaintiffs' knowledge suggests that it is their counsel—

16

not Plaintiffs—who are driving this litigation.[1] *Id.* at 17. They then argue that Plaintiffs have no recollection of having reviewed responses and objections to written discovery, and have relied entirely on their counsel to produce documents responsive to Defendants' document requests. *Id.* at 18–19.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two questions are relevant to this inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation and quotation omitted); *see also In re HomeAdvisor, Inc. Litig.*, 345 F.R.D. 208, 225 (D. Colo. 2024) (same).

a.    *Potential Conflicts Between Plaintiffs' Claims and Other Class Members*

The Court is not persuaded that a conflict exists between the Plaintiffs and their counsel, on the one hand, and the other class members, on the other. First, Plaintiffs are not seeking an order compelling Defendants to sell Envision to CDI, a competitor of Envision. ECF No. 214 at 4–5. The thrust of their allegations is that the ESOP overpaid for the Envision stock by at least $23 million. *See* ECF No. 91, ¶ 10. If shown, the potential remedy for this alleged breach would benefit all class members. Second, although they do allege that the Seller Defendants' decision to remain on the Envision board harmed

---

[1] The DOL provided investigative materials to Plaintiffs' counsel under a common interest agreement (CIA). *See* ECF No. 221-2. The Court provided a detailed background concerning Plaintiffs' counsel's arrangement with the DOL in a previous order. *See* ECF No. 275 (affirming United States Magistrate Judge Maritza Dominguez Braswell's finding that there is no common legal interest between the Plaintiffs and DOL).

the Plan, Plaintiffs are not seeking removal of the Seller Defendants from Envision's board. *Id.* at 5. Thus, Defendants' argument that removal of these individuals would harm the other class members is purely speculative and does not justify denying class certification. *See Tennille v. W. Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015) ("[T]the class representatives' interest must be coextensive with the interest of the class; but this does not mean that the class representatives' positions have to be identical with the positions of the absent class members . . . . [O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." (citations and quotations omitted)); *Foster v. Apache Corp.*, 285 F.R.D. 632, 645 (W.D. Okla. 2012) ("A speculative conflict of interest will not ordinarily defeat class certification."); 1 Newberg and Rubenstein on Class Actions § 3:58 (6th ed.) ("Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a proposed class representative from meeting the Rule 23(a)(4) adequacy requirement."). And third, Defendants' argument that the Plan paid fair market value for the Envision stock goes to the merits of the case and thus has no place at the class certification stage. *See Eisen*, 417 U.S. at 178; *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("Although the court may ultimately need to reach this [merits] question, it is not germane to the question of [class] certification.").

Defendants have not identified any remedy of that would benefit the named Plaintiffs at the expense of other class members or otherwise shown that a true conflict exists. The Court thus finds that there is no conflict between Plaintiffs' claims and the other class members.

18

b.    *Whether Plaintiffs and Counsel Will Vigorously Prosecute This
Action on Behalf of the Class*

The Court is also not persuaded that Plaintiffs have failed to supervise their counsel adequately and thus will not adequately protect the interests of the class. The Court asks whether the named Plaintiffs are "familiar in general terms with the facts underlying their claims, are familiar with the basic elements of their claims, and cannot be characterized as 'alarmingly unfamiliar' with the suit." *Ramos*, 325 F.R.D. at 389–90 (quoting *City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 585 (D. Colo. 2002)). Here, Plaintiffs satisfy this threshold. Both Plaintiffs sat for day-long depositions and have together produced hundreds of pages of documents and answered sworn interrogatories. ECF No. 172 at 13. They also have remained in regular contact with counsel. This is enough to satisfy the adequacy requirement. *See In re HomeAdvisor*, 345 F.R.D. at 225 (adequacy met where the named plaintiffs "respond[ed] to discovery requests, testif[ied] at depositions, and assist[ed] the attorneys" in the litigation).

Defendants' argument that Plaintiffs were not familiar with the CIA until the week of their depositions is not without merit. The Court sees no reason why counsel would not have shared that information sooner. But the Court will not fault Plaintiffs for their failure to communicate with anyone at DOL, as Defendants suggest. ECF No. 190 at 17. The Supreme Court has recognized that ERISA is an "an enormously complex and detailed statute." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). "Very few lawyers . . . understand ERISA." *Teets*, 315 F.R.D. at 370. The Court cannot expect the named Plaintiffs to have detailed discussions with DOL representatives concerning potential ERISA violations. *Id.*; *In re First Am. Corp. ERISA Litig.*, 263 F.R.D. 549, 558 (C.D. Cal.

2009) (adequacy requirement satisfied where "there is at least some evidence that the Plan Participants are knowledgeable about and prepared to prosecute this action" even if there was some "unfamiliarity with the case," further nothing that "a named plaintiff does not need to have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained").

Turning to counsel, the Court has little trouble concluding that counsel has, and will continue to, vigorously prosecute this action on behalf of the class. After filing suit in January 2021, Plaintiffs' counsel defeated Defendants' motion to compel arbitration; prevailed at the Tenth Circuit following Defendants' appeal of that order; and has engaged in substantial discovery, including taking numerous fact depositions, litigating multiple discovery disputes, and obtaining documents from third-parties. ECF No. 172 at 14.[2]

The Court finds that Plaintiffs and their counsel will vigorously prosecute this action on behalf of the class. *Hill v. Aspen Contracting, Inc.*, No. 120CV00149SWSMLC, 2021 WL 2662296, at *5 (D.N.M. Feb. 22, 2021) (concluding there was "no legitimate question" regarding named plaintiff and counsel's adequacy where plaintiff had "vigorously been litigating [the] action . . . engaged in discovery [and] proffered intelligible arguments in an effort to certify [the] proposed class"). Accordingly, Plaintiffs have shown by a preponderance of the evidence that they and class counsel will adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4).

---

[2] For these same reasons, appointment of Cohen Milstein Sellers & Toll PLLC as class counsel, as requested in Plaintiffs' class certification motion, ECF No. 172 at 14, is appropriate under Federal Rule of Civil Procedure 23(g). *See* Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) (setting forth factors to consider in appointing class counsel).

* * *

For the reasons above, Plaintiffs have, by a preponderance of the evidence, satisfied Rule 23(a)'s threshold certification requirements. *See* Fed. R. Civ. P. 23(a). The Court now proceeds to its analysis of Plaintiffs' class certification motion under Rule 23(b).

**B.  Rule 23(b)**

Plaintiffs argue for certification under either Rule 23(b)(1)(A) or (B), Rule 23(b)(2), and alternatively, Rule 23(b)(3). ECF No. 172 at 12–20. Defendants advance no particular argument against certification under Rule 23(b).

*i.  Rule 23(b)(1)*

Under Rule 23(b)(1), a class may be certified if (A) separate actions would create a risk of "incompatible standards of conduct" for the defendant, or (B) the plaintiff's adjudication of the case would impair others from protecting their similar interests. Fed. R. Civ. P. 23(b)(1)(A)-(B).

The Court finds Plaintiffs' arguments for certification under Rules 23(b)(1)(A) and (B) to be especially compelling. *See* ECF No. 172 at 14–18. In ERISA fiduciary actions, "courts regularly certify ERISA cases under Rule 23(b)(1)(A)." 2 Newberg and Rubenstein on Class Actions § 4.12 (6th ed.) (collecting cases). The same is true for certification under Rule 23(b)(1)(B):

> The trust-like nature of ERISA cases, therefore, generally supports certification whether one focuses on the incompatible standards that might arise for the trustee (in which case certification under Rule 23(b)(1)(A) is typically apt) or upon the indivisible interests of the members of the plan (in which case certification under Rule 23(b)(1)(B) is typically apt).

*Id.*; *see also Ramos*, 325 F.R.D. at 397 (agreeing with the "mostly uniform authority" that "ERISA fiduciary litigation presents a paradigmatic example of a Rule 23(b)(1) class" (quoting *Troudt*, 325 F.R.D. at 376)).

Here, like most ERISA actions, Plaintiffs point to several examples of possible rulings that could lead to inconsistent and incompatible judgments should individual actions proceed. ECF No. 172 at 22. For example, if Plaintiffs were to obtain a Court order removing Argent as the ESOP trustee while another court ordered the Envision board to implement heightened monitoring of Argent instead of removal, it could result in inconsistent judgments. Similarly, Plaintiffs in this case could secure a declaration that the ESOP's purchase of Envision stock constituted a prohibited transaction, while a separate lawsuit could theoretically yield a declaratory judgment finding that the same ESOP Transaction was not prohibited. These are the type of inconsistent adjudications that Rule 23(b)(1)(A) is intended to prevent. *See* 2 Newberg and Rubenstein on Class Actions § 4.12 (6th ed.).

Turning to Rule 23(b)(1)(B), Plaintiffs correctly argue that any determination as to Argent's alleged fiduciary violations or the Seller Defendants' participation in those alleged violations would apply to the ESOP as a whole. ECF No. 172 at 17. The same is true if Plaintiffs recover any funds for the ESOP. *Id.* Courts have recognized that adjudication of similar claims are particularly suited for certification under Rule 23(b)(1)(B). *Jessop v. Larsen*, No. 2:14-CV-00916-BSJ, 2015 WL 13951381, at *1 (D. Utah Dec. 1, 2015) ("The fiduciary duties owed by Defendant Bankers Trust apply to the ESOP as a whole. Any determination as to Defendant Bankers Trust's alleged fiduciary

breaches, or the Individual Defendants' participation therein, will apply to the ESOP as a whole and affect all individual ESOP participants. Likewise, any money recovered for the ESOP, from Defendant Bankers Trust or the Individual Defendants, would be paid into the ESOP and would affect all individual ESOP participants. . . . Therefore, the court grants certification under Rule 23(b)(1)(B).").

Because Defendants do not oppose certification under Rules 23(b)(1)(A) and (B), the Court will not repeat the well-established and "mostly uniform authority" analyzing the reasons why ERISA actions like this one regularly are certified under Rules 23(b)(1)(A) and (B). Accordingly, the Court finds that Plaintiffs have satisfied the requirements of Rules 23(b)(1)(A) and (B) by a preponderance of the evidence. *See* 2 Newberg and Rubenstein on Class Actions § 4.44 (6th ed.) ("ERISA cases may also be certified under both (b)(1)(A) and (b)(1)(B) simultaneously.").[3]

\* \* \*

Following its "rigorous analysis" of the class certification requirements, the Court concludes that Plaintiffs have satisfied Rule 23(a)'s and Rule 23(b)(1)'s requirements by a preponderance of the evidence. *See Wal-Mart*, 564 U.S. at 351. Class certification, therefore, is appropriate. *Colorado Cross Disability*, 765 F.3d at 1213. With this ruling, the Court emphasizes that certifying Plaintiffs' class is in no way dispositive of their underlying

---

[3] Because Plaintiffs need only satisfy one of the Rule 23(b) requirements, *see Colorado Cross Disability*, 765 F.3d at 1213, the Court declines to fully analyze whether Plaintiffs have satisfied their burden with respect to Rule 23(b)(2) or 23(b)(3). That said, Plaintiffs seek various declaratory and injunctive relief, which if granted, would apply to the entire class. Such relief would make certification under Rule 23(b)(2) appropriate. Fed. R. Civ. P. 23(b)(2) (class actions appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole").

claims. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen*, 417 U.S. at 178.

## V.  CONCLUSION

Consistent with the above analysis, the Court ORDERS as follows:

(1)   Plaintiffs' Motions for Class Certification, ECF No. 172, is GRANTED.

(2)   Plaintiffs Harrison and Heath are named as the representatives of the class.

(3)   Pursuant to Federal Rule of Civil Procedure 23(g), the law firm of Cohen Milstein Sellers & Toll PLLC is appointed as class counsel.

(4)   If either party believes that notice is warranted, that party, upon conferral with opposing counsel, shall submit to the Court a proposed class notice within 14 day of this order.[4]

DATED this 24th day of January 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[4] Rule 23(c)(2)(A) provides that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."

24