**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:21-cv-304-CNS-MDB**

ROBERT HARRISON and GRACE
HEATH, on behalf of themselves, the
ENVISION MANAGEMENT HOLDING,
INC. ESOP, and all other similarly
situated individuals,

       Plaintiffs,

v.

ENVISION MANAGEMENT HOLDING,
INC. BOARD OF DIRECTORS,
ENVISION MANAGEMENT HOLDING,
INC. EMPLOYEE STOCK OWNERSHIP
PLAN COMMITTEE, ARGENT TRUST
COMPANY, DARREL CREPS, III, PAUL
SHERWOOD, JEFF JONES, NICOLE
JONES, AARON RAMSAY, TANWEER
KHAN, and LORI SPAHN,

       Defendants.

---

**ENVISION DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT**

---

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................. 1

II. SUMMARY OF CLAIMS FOR WHICH ENVISION DEFENDANTS SEEK SUMMARY JUDGMENT ........................................................................ 5

III. KEY CONCEPTS IMPLICATED IN ESOP STOCK TRANSACTIONS .................... 6

    A. What is an ESOP? .................................................................................. 6

    B. The Trustee—and Only the Trustee—has the Fiduciary Obligation to Represent the Interests of the ESOP in an ESOP Transaction ............... 8

    C. Plaintiffs' Claims of Supposed "Conflicts of Interest" are Untenable ............ 9

    D. The Trustee's Fiduciary Obligation is to Rely Reasonably on an Expert Assessment of "fair market value" .......................................... 9

IV. STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................... 10

    A. The Envision Defendants and Their Roles at Envision ............................... 10

    B. Argent and the Envision Defendants' Roles in the ESOP Transaction ........................................................................................ 11

    C. Nicole Jones' Lack of Knowledge of the Events Surrounding the ESOP Transaction .............................................................................. 16

V. ARGUMENT ....................................................................................................... 17

    A. Summary Judgment Legal Standard .......................................................... 17

    B. Summary Judgment is Warranted in Favor of Creps, Jeff Jones, Dr. Khan, Ramsay, and Sherwood on Count I .......................................... 18

    C. Summary Judgment is Warranted in Favor of Creps, Jeff Jones, Dr. Khan, and Sherwood on Count III ........................................................ 22

    D. The Court Should Grant Summary Judgment on the "Knowing Participation" Claim Against Nicole Jones in Count II ................................. 24

VI. CONCLUSION ................................................................................................... 28

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Akers v. Palmer*,
   71 F.3d 226 (6th Cir.1995) ...................................................................... 22

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   137 F.4th 1015 (9th Cir. 2025) .............................................................. 10

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon
   v. Buth*,
   No. 18-CV-1861-WCG, 2022 WL 4088166 (E.D. Wis. Mar. 17, 2022)..................... 22

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................ 18

*Cunningham v. Cornell*,
   145 S. Ct. 1020, 221 L. Ed. 2d 591 (2025) ............................................ 27

*DeFelice v. U.S. Airways, Inc.*,
   497 F.3d 410 (4th Cir. 2007) .................................................................. 8

*DeLuca v. Blue Cross Blue Shield of Michigan*,
   628 F.3d 743 (6th Cir. 2010) ................................................................ 25

*Donovan v. Cunningham*,
   716 F.2d 1455 (5th Cir. 1983) ......................................................... 10, 11

*Farthing v. City of Shawnee*,
   39 F.3d 1131 (10th Cir. 1994) .............................................................. 19

*Foster v. Adams & Assocs., Inc.*,
   No. 18-CV-02723-JSC, 2020 WL 3639648 (N.D. Cal. July 6, 2020)
   ............................................................................................21, 23, 24, 28

*Friend v. Sanwa Bank California*,
   35 F.3d 466 (9th Cir. 1994) .................................................................. 10

*Gamino v. KPC Holdings, Inc.*,
   2022 WL 4596576 (C.D. Cal. Aug. 15, 2022) ......................................26, 28

*Harris Trust and Sav. Bank v. Salomon Smith Barney*,
   530 U.S. 238 ....................................................................................25, 26

*Hunter v. Caliber Sys., Inc.*,
   220 F.3d 702 (6th Cir. 2000) ................................................................ 25

*Kopp v. Klein*,
894 F.3d 214 (5th Cir. 2018) ...................................................................... 10

*Lingis v. Motorola, Inc.*,
649 F. Supp. 2d 861 (N.D. Ill. 2009), *aff'd sub nom. Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011) ................................................................ 9

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................................... 19

*Mertens v. Hewitt Assocs.*,
508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993) ........................... 7

*Murphy v. Verizon Commc'ns, Inc.*,
2013 WL 5206451 (N.D. Tex. Sept. 16, 2013) *aff'd*, 587 F. App'x 140 (5th Cir. 2014) ............................................................................................ 25

*Neil v. Zell*,
677 F. Supp. 2d 1010 (N.D. Ill. 2009) ................................................... 21, 22

*on Fish v. Greatbanc Tr. Co.*,
No. 09 C 1668, 2016 WL 5923448 (N.D. Ill. Sept. 1, 2016) ......................... 21

*Reich v. Compton*,
57 F.3d 270 (3d Cir. 1995) ......................................................................... 19

*Rozo v. Principal Life Ins. Co.*,
344 F. Supp. 3d 1025 (S.D. Iowa 2018) *rev'd on other grounds*, 949 F.3d 1071 (8th Cir. 2020) ................................................................................. 26

*Szalanski v. Arnold*,
609 F. Supp. 3d 698 (W.D. Wis. 2022) ....................................................... 22

*Teets v. Great-W. Life & Annuity Ins. Co.*,
286 F. Supp. 3d 1192 (D. Colo. 2017), aff'd, 919 F.3d 1232 (10th Cir. 2019), withdrawn from bound volume, and aff'd, 921 F.3d 1200 (10th Cir. 2019) ................................................................................................. 26, 27

*Troudt v. Oracle Corp.*,
No. 16-CV-00175-REB-SKC, 2019 WL 1006019 (D. Colo. Mar. 1, 2019) ..................................................................................................... 10

*Varity Corp. v. Howe*,
516 U.S. 489, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996) ........................... 7

*Zavala v. Kruse-W., Inc.*,
2021 WL 5883125 (E.D. Cal. Dec. 13, 2021) ............................................. 24

*Zavala v. Kruse-W., Inc*.,
398 F. Supp. 3d 731 (E.D. Cal. 2019) ................................................................22, 24

**Statutes, Rules & Regulations**

ERISA § 29 3(28); U.S.C. §§ 1002(18) ..............................................................10, 19, 27

ERISA § 402(a); 29 U.S.C. § 1102(a) ........................................................................20

ERISA § 403(a); 29 U.S.C. § 1103(a) ..................................................................1, 8, 20

ERISA § 405(a); 29 U.S.C. § 1105(a) ........................................................................20

ERISA § 406; 29 U.S.C. § 1106 .................................................................................25

ERISA § 406(a); 29 U.S.C. § 1106(a) ...................................................................19, 26

ERISA § 406(b);29 U.S.C. § 1106(b) ....................................................................24, 25

ERISA § 406(b)(3); 29 U.S.C. § 1106(b)(3) ...........................................................6, 23

ERISA § 408; 29 U.S.C. § 1108 .................................................................................19

ERISA § 408(c)(3); 29 U.S.C. § 1108(c)(3) ...............................................................10

ERISA § 408(e); 29 U.S.C. § 1108(e) ..................................................................19, 27

ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3) .........................................................6, 25, 26

Fed. R. Civ. P. 56 ........................................................................................................1

Fed. R. Civ. P. 56(a*)*..............................................................................................18

**Other Authorities**

32 Cong. Rec. S7934-01, 1986 WL 776250 ...............................................................8

129 Cong. Rec. S16629, 16637 .................................................................................7

132 Cong. Rec. S7892-02, 1986 WL 776243 .............................................................8

132 Cong. Rec. S7934-01, 1986 WL 776250 .............................................................7

132 Cong. Rec. S7934-01, 1986 WL 776250 .............................................................9

Tax Reform Act of 1976, § 803(h), 90 Stat. 1590 .......................................................9

Employee Stock Ownership Plans: An Employer Handbook (1980)
https://www.finance.senate.gov/imo/media/doc/prt96-25.pdf .....................................8

ERISA-LH 30-C, 1972 WL 136948 (A.&P.L.H.), 104, 105.................................................7

https://taxfoundation.org/research/all/federal/final-tax-cuts-and-jobs-act-details-analysis/ ...................................................................................................3

https://www.nytimes.com/2017/12/16/business/the-winners-and-losers-in-the-tax-bill.html ......................................................................................................3

https://www.nytimes.com/interactive/2017/12/15/us/politics/final-republican-tax-bill-cuts.html .............................................................................3

https://www.pbs.org/newshour/politics/for-gop-tax-bills-most-visible-win-may-be-averting-failure ....................................................................................3

https://www.politico.com/story/2017/12/16/trump-tax-bill-victory-lap-299573 ..........................................................................................................3

https://www.stout.com/en/insights/article/fj17-how-changes-corporate-tax-code-could-impact-business-valuations ....................................................3

https://www.usatoday.com/story/news/politics/2017/12/18/how-soon-after-president-trump-signs-tax-bill-you-see-effects/961497001/ .......................3

Pursuant to FRCP 56, Defendants Envision Management Holding, Inc. Board of Directors (the "Board"), Darrel Creps III ("Creps"), Jeff Jones, Nicole Jones, Dr. Tanweer Khan ("Dr. Khan"), Aaron Ramsay ("Ramsay"), and Paul Sherwood ("Sherwood") (collectively the "Envision Defendants") file this Motion for Partial Summary Judgment and Memorandum in Support.

## I.      INTRODUCTION[1]

On December 19, 2017, Creps, Jeff Jones, Dr. Khan, and Sherwood (the "Sellers")[2] reached an agreement with co-defendant Argent Trust Company ("Argent") to sell their stock in Envision Management Holding, Inc. ("EMHI") to the Envision Management Holding, Inc. Employee Stock Ownership Plan (the "Plan") (the "ESOP Transaction"). At that time, the Sellers also were members of EMHI's board of directors (the "Board"). Earlier in 2017, EMHI retained a sell-side advisory firm, advertised as having the nation's largest banking practice for ESOPs and receiving the "2016 ESOP Investment Bank of the Year," and a national law firm with expertise in ESOP transactions. *See infra*, Statement of Undisputed Material Facts ("SUMF") ¶ 6. The Sellers/Board worked for months with their expert advisors to address significant corporate and individual-shareholder matters involved in the establishment of a new benefit plan.

Under ERISA, someone must act as "trustee" for the plan with the "exclusive authority and discretion" to make decisions for the plan about plan assets. 29 U.S.C. 1103(a) (stating that trustee has "exclusive authority and discretion" to manage and control plan assets). EMHI appointed a Trustee Search Committee, whose members did

---

[1]      The factual statements in this Introduction are addressed in the statement of facts section of this Memorandum.

[2]      EMHI redeemed some of the stock held by Jeff Jones and all of the stock held by his spouse, Nicole Jones. Those particular shares were not sold to the Plan.

not include the Sellers/Board members and who worked independently from the Sellers/Board, to identify, evaluate, and select an institutional trustee to represent the ESOP. SUMF ¶ 8. Argent, a professional and experienced ESOP trustee, was retained as the independent, discretionary trustee for the Plan, and Argent had statutory "exclusive authority and discretion" to make the decision on behalf of the Plan whether, and on what terms, the Plan would agree to the transaction. *See id*. ¶¶ 9-13.

Certain Sellers/Board members[3] were aware Argent was performing due diligence and had retained expert advisors to assist with its evaluation, including an expert valuation firm (ComStock), an expert in the healthcare industry (Willamette), and a law firm with expertise in ERISA and ESOPs (Morrison Cohen). *Id*. ¶¶ 14-18. Certain Sellers/Board members also were aware of significant discussions and exchanges of information between Argent's team and the corporate Envision team, and that the valuation firm Argent retained to advise Argent, ComStock, was providing Argent with an opinion on the range of "fair market value" of EMHI's stock. *Id*. ¶ 19.

Ultimately, the parties reached agreement on a transaction price of $177 million. But shortly before the Sellers and Argent agreed to the ESOP Transaction's terms, news broke about major advancements in pending proposed tax cuts.[4] Days before the

---

[3] As the Court is aware, Sherwood has suffered from extremely serious health conditions that largely prevented his participation in discovery in this case, and Dr. Khan's role on the Board was limited.

[4] Plaintiffs apparently dispute the consensus before the December 19, 2017 ESOP Transaction that the tax cuts would pass. On December 16, 17, and 18, 2019, multiple news outlets reported that passage of the tax bill seemed certain after two GOP holdouts signalled support for the bill, and the corporate tax rate would be reduced from 35% to 21%. *See, e.g.*, https://www.pbs.org/newshour/politics/for-gop-tax-bills-most-visible-win-may-be-averting-failure; https://www.nytimes.com/2017/12/16/business/the-winners-and-losers-in-the-tax-bill.html; https://www.politico.com/story/2017/12/16/trump-tax-bill-victory-lap-299573; https://www.nytimes.com/interactive/2017/12/15/us/politics/final-

December 19, 2017 closing, reports nationwide indicated that corporate tax rates would be reduced from 37% to 21% on January 1, 2018. This was groundbreaking, because an estimated range of a corporation's "fair market value" at any given time is based largely on estimated future cash flows. As a general rule in valuation, when tax rates are reduced, a corporation's range of estimated fair market immediately increases because of future tax savings.[5] **Before** the ESOP Transaction, certain Sellers believed, and discussed, that their stock was worth between $20 million and $25 million *more* than the price they considered selling to the Plan. *Id*. ¶ 28.

The Sellers could have refused to sell unless they received more money. But they decided to grant the additional value to the Plan and Envision employees. *Id*. In other words, they voluntarily gave up tens of millions of dollars as part of the transition to an ESOP-owned company, and they let the Plan benefit from the significant increase in value due to the tax cuts. *Id*. Then, after the ESOP Transaction, several Sellers donated significant amounts to charities and to a grant fund for the benefit of employees experiencing financial hardships. *Id*. ¶ 30.

The Plan has been a monumental success. The value of stock allocated to participants—**who paid nothing for the stock**—has increased significantly, nearly 60%, from $1,1770 to $2,842.59 per share. *Id*. ¶ 29. Nevertheless, over three years after the ESOP Transaction, Plaintiffs sued alleging that Argent breached its ERISA fiduciary

---

republican-tax-bill-cuts.html; https://taxfoundation.org/research/all/federal/final-tax-cuts-and-jobs-act-details-analysis/;
https://www.usatoday.com/story/news/politics/2017/12/18/how-soon-after-president-trump-signs-tax-bill-you-see-effects/961497001/.
[5] *See, e.g.*, https://www.stout.com/en/insights/article/fj17-how-changes-corporate-tax-code-could-impact-business-valuations.

duties as trustee by causing the Plan to pay more than the statutorily required "adequate consideration" for EMHI stock. Plaintiffs also sued Creps, Jeff Jones, Sherwood, and Dr. Khan as Sellers/Board members, an ESOP Committee and Ramsay, Jeff Jones, and Spahn as members of the "ESOP Committee," and Nicole Jones, who had her shares redeemed by EMHI, alleging some massive conspiracy to pressure Argent (and presumably all of Argent's advisors) to approve the ESOP Transaction for more than adequate consideration.

This Court may recall that Plaintiffs premised their claims largely on the allegation that the Plan overpaid because there were allegedly two prices paid for EMHI stock. ECF No. 91 ¶¶ 9-12, 91, 103, 106, 153. Defendants repeatedly explained to Plaintiffs that Plaintiffs were misinterpreting a document, and the allegation of two stock prices was false. The Plan's administrator even filed a clarified public Form 5500 report and provided a copy of the Stock Purchase Agreement to avoid confusion. *See, e.g.,* ECF No. 108, pp. 7-9. *In order to survive dismissal*, however, Plaintiffs continued to assert the multiple-stock-price theory in an amended pleading, and they asserted convoluted arguments that there were multiple share prices in order to avoid dismissal. ECF No. 119, pp. 9-10.

Plaintiffs must have known that there was not more than one share price, because they needed no additional information to quickly abandon the multiple-stock-price theory in discovery. Discovery also quickly failed to support any of Plaintiffs' claims. So Plaintiffs resorted to wild theories, gamesmanship, and false assertions—the most significant being their representation that the DOL determined the ESOP Transaction violated ERISA as a key part of their theory in this case. *See* ECF No. 207 at 4 ("The DOL investigation is a key part of Plaintiffs' theory of the case. They are relying on the DOL investigation and

4

conclusions to make arguments about Defendants' liability . . .").[6] Plaintiffs refused to disclose their communications with the DOL on the basis of a supposed common interest agreement between the named plaintiffs and the DOL (which the named plaintiffs did not even know about). After the DOL told this Court that it never made final determinations about the ESOP Transaction, *see* ECF No. 220, and this Court rejected Plaintiffs' claims of a common interest, *see* ECF Nos. 232; 275, Plaintiffs were unable to rely on a non-existent DOL determination to avoid proving their claims in this Court.

Now, Plaintiffs are relying on novel, and often absurd, interpretations of ERISA law and assumptions about the nature of an ESOP. The Envision Defendants leave for another day a complete discussion of the problems with all of Plaintiffs' theories in this case. In this Motion, however, the Envision Defendants respectfully request that this Court grant partial summary judgment in their favor on a subset of the claims against the Envision Defendants.

## II.    SUMMARY OF CLAIMS FOR WHICH ENVISION DEFENDANTS SEEK SUMMARY JUDGMENT

The Envision Defendants move for summary judgment on:[7] (1) Count I against the Board for "caus[ing] the ESOP to purchase their Envision shares for more than fair market value and caus[ing] the ESOP to endure unreasonable financing terms" in violation of ERISA Section 406(a). ECF No. 91 ¶¶ 31-34; (2) Count III against the Sellers for allegedly

---

[6]    *See also* ECF No. 202 at 1 ("Plaintiffs rely on those conclusions to support their claims and theories."); ECF No. 275 at 12-13 ("As Magistrate Judge Dominguez Braswell notes in a previous order, 'Plaintiffs have tried to soften the relevance of the DOL investigation . . .Braswell ultimately rejected Plaintiffs' arguments on the limited import of these files . . .").

[7]    Plaintiffs' claims are brought pursuant to ERISA §§ 502(a)(2) and (a)(3). ERISA § 502(a)(2) authorizes a civil action to recover loss to a plan caused by a fiduciary breach, and ERISA § 502(a)(3) authorizes a civil action for "appropriate equitable relief" to remedy a violation of ERISA or a plan document.

violating ERISA's prohibited transaction provision in Section 406(b)(3) by "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." *Id*. at ¶¶ 36-37; and (3) Count II against Nicole Jones for appropriate equitable relief as a "non-fiduciary party in interest" on the basis that she knew or should have known that the ESOP Transaction violated ERISA. *Id*. at ¶¶ 34-36.

## III. KEY CONCEPTS IMPLICATED IN ESOP STOCK TRANSACTIONS

The Envision Defendants wish to address some key concepts about ERISA and ESOPs that are implicated in this case, primarily because Plaintiffs have misconstrued them repeatedly, presumably in an attempt to influence this Court's decision on claims, including those for which the Envision Defendants seek summary judgment.

### A. What is an ESOP?

An ESOP is a unique type of optional benefit plan that, for purposes of ERISA, is ***not considered a traditional retirement plan***. Congress explained that although ESOPs can be used as a retirement plan, for purposes of applying ERISA's statutory provisions to ESOPs, ESOPs must not be considered traditional retirement plans, but must be thought of as having two principal purposes: (1) provide the sponsoring corporation with alternative corporate financing; and (2) provide beneficial stock ownership (not legal ownership) to eligible employees and incentivize the employees by "linking the day-to-day performance of work by employees and the day-to-day growth and operation of business enterprise." ERISA-LH 30-C, 1972 WL 136948 (A.&P.L.H.), 104, 105. [8] An

---

[8] In interpreting ERISA, including its fiduciary provisions, the Supreme Court routinely relies on legislative history. *Varity Corp. v. Howe*, 516 U.S. 489, 496, 116 S. Ct. 1065, 1070, 134 L. Ed. 2d 130 (1996) (ERISA legislative history helpful to interpreting powers and duties of trustees and other fiduciaries); *Mertens v. Hewitt Assocs.*, 508 U.S.

"ESOP's primary purpose[ ] is not to serve as a retirement vehicle but, rather, to serve as an incentive for corporations to structure their financing in such a way that employees can gain an ownership stake in the company for which they work." 129 Cong. Rec. S16629, 16637. ESOPs are a corporate investment in workers who, through "labor power," might grow the company and participate in that growth. *Id.* at 106; see also 132 Cong. Rec. S7934-01, 1986 WL 776250 (Senator Long, the "father of the ESOP," discussing an ESOP's purpose).

The fact that, for purposes of ERISA, an ESOP must not be considered a retirement plan is extremely important when resolving ERISA claims that involve ESOPs. ERISA requires that courts interpret ERISA in light of the particular type of plan involved,[9] and Congress was "***deeply concerned***" with "regulations and rulings which treat employee stock ownership plans as conventional retirement plans . . ." *See* 132 Cong. Rec. S7892-02, 1986 WL 776243 (emphasis added); *id.* (indicating Congressional committee concern with regulatory agencies treating "ESOPs as conventional retirement plans"). For example, consistent with the fact that an ESOP is not a retirement plan, ESOP trustees, like Argent, are exempt from any requirement to seek a "fair return" on the acquisition of company stock, meaning the goal of an ESOP trustee is not to maximize the return on the investment in stock; the goal of an ESOP trustee is to facilitate employee

---

248, 264, 113 S. Ct. 2063, 2073, 124 L. Ed. 2d 161 (1993) ("ERISA's legislative history confirms" interpretation of "the Act's fiduciary responsibility provisions . . .") (internal quotations and citations omitted).

[9]    Under ERISA, questions about the nature and scope of ERISA fiduciary duties must be assessed in view of the particular type of plan involved and the particular decision being made. Because of this, it is extremely important to understand what an ESOP is, what it is not, and what the goals of an ERISA fiduciary are. *DeFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 420 (4th Cir. 2007) (ERISA's fiduciary duty must be interpreted with consideration of "*the particular plan and decision at issue.*") (emphasis added).

beneficial ownership of stock, after which the employees must work hard if they want to increase the stock's value. *See* Employee Stock Ownership Plans: An Employer Handbook (1980) ("Employer Handbook"), pp. 27-28[10]; *see also* 32 Cong. Rec. S7934-01, 1986 WL 776250 (quoting Employer Handbook).

**B. The Trustee—and Only the Trustee—has the Fiduciary Obligation to Represent the Interests of the ESOP in an ESOP Transaction**

Under ERISA, trust assets must be managed by a trustee, who, by statute, has the "*exclusive* authority and discretion to manage and control the assets of the plan . . ." 29 U.S.C. § 1103(a) (emphasis added).[11] The company, the board, selling shareholders, and ESOP committees and their members, do not have any authority or discretion over the decision on behalf of the ESOP to invest in stock if they are not serving as trustees.

In fact, in an ESOP's formation and an ESOP transaction, there are significant corporate decisions and selling shareholder decisions that are not subject to ERISA fiduciary responsibilities.[12] Congress wanted companies and selling shareholders to make many decisions in their own self-interests; for example, Congress created ESOP tax benefits specifically for companies and selling shareholders, and Congress wanted plan sponsors to use ESOPs "as a corporate financing vehicle . . .to finance [their] capital growth." 132 Cong. Rec. S7934-01, 1986 WL 776250 (ESOPs intended as "technique of

---

[10] https://www.finance.senate.gov/imo/media/doc/prt96-25.pdf.

[11] There is an exception for directed trustees, but Argent was discretionary for the ESOP Transaction.

[12] The party that makes the discretionary decision on which trustee to retain has a limited fiduciary duty to monitor the trustee, but all other actions and decisions outside of the limited duty to monitor are not subject to ERISA fiduciary standards. *See, e.g.*, *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 881–82 (N.D. Ill. 2009), *aff'd sub nom. Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011) (duty to monitor is limited to selection and retention of fiduciaries, it does not require examining of every action taken by an appointed fiduciary).

finance to acquire the stock of an employer"); Tax Reform Act of 1976, § 803(h), 90 Stat. 1590 ("Congress, in seeking to permit and promote ESOPs," was concerned with "securing capital funds for necessary capital growth.").

### C. Plaintiffs' Claims of Supposed "Conflicts of Interest" are Untenable

Plaintiffs have repeatedly asserted that various parties were conflicted because they supposedly stood to gain financially from the ESOP Transaction. The notion that ERISA imposes liability on anyone with dual interests is patently absurd, if not frivolous.

*By statute*, ERISA does not prohibit anyone from "(3) serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest." 29 U.S.C. § 1108(c)(3). ERISA "does not prohibit the mere act of becoming a [fiduciary] with conflicting interests." *Friend v. Sanwa Bank California*, 35 F.3d 466, 468–69 (9th Cir. 1994); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1026 (9th Cir. 2025); *Kopp v. Klein*, 894 F.3d 214, 222 (5th Cir. 2018) (ERISA permits potentials for conflicts— that is not the same as a plausible claim for actual disloyalty). "[A] conflict of interest is not a *per se* breach: nowhere in the statute does ERISA explicitly prohibit a trustee from holding positions of dual loyalties. Instead, in order to prove a violation of the duty of loyalty, the plaintiff must go further and show actual disloyal conduct." *Troudt v. Oracle Corp.*, No. 16-CV-00175-REB-SKC, 2019 WL 1006019, at *10 (D. Colo. Mar. 1, 2019).

### D. The Trustee's Fiduciary Obligation is to Rely Reasonably on an Expert Assessment of "fair market value"

An ESOP trustee is "primarily directed to provide stock ownership . . . for employees in a manner consistent with the fiduciary duties" under ERISA. *See* Employer Handbook at 27. Under ERISA, there is a prohibited-transactions exemption that allows a trustee to cause an ESOP to acquire stock if it is for "adequate consideration," which

ERISA defines for private-company stock as "fair market value as determined in good faith" by the trustee. 29 U.S.C. §§ 1002(18) (emphasis added), 1108(e). In 1983, the Fifth Circuit was the first court, among *many*, to hold that adequate consideration does not permit a dispute over the value itself. The phrase "fair market value as determined in good faith" is expressly focused on *conduct or process* of a trustee. *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983). ERISA requires fair market value "as determined in" good faith, and a "court reviewing the adequacy of consideration under Section 3(18) is to ask if the price paid is 'the fair market value of the asset as determined in good faith by the ... fiduciary;' it is not to redetermine the appropriate amount for itself *de novo*." *Id*. at 1468 (emphasis added).

As such, ***this case is not a valuation dispute***. Plaintiffs can only challenge Argent's good-faith determination of fair market value, in reliance on its valuation and other advisors.

## IV.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The Envision Defendants and Their Roles at Envision

1. At the time of the ESOP Transaction on December 19, 2017, Creps was EMHI's CEO, a member of the Board, and a shareholder of EMHI.  Declaration of Richard J. Pearl ("Pearl Decl."), Ex. A (Declaration of Darrel Elliot Creps III), ¶ 4. Jeff Jones was EMHI's Managing Director of Finance, a member of the Board, and a shareholder of EMHI.  Pearl Decl. Ex. B (Declaration of Jeffery Ryan Jones), ¶ 4. Sherwood and Dr. Khan were members of the Board and shareholders of EMHI.  ECF No. 162 ¶ 65; Pearl Decl. Ex. C (Deposition of Tanweer Khan Transcript) at 37:14-24.

2. At the time of the ESOP Transaction, Ramsay was EMHI's CFO. Ramsay was appointed to the Board on January 31, 2018 – more than a month after the ESOP

Transaction closed.  ECF No. 311 ¶ 138.

3.  Nicole Jones is married to Jeff Jones. Pearl Decl. Ex. D (Deposition of Nicole Jones Transcript) at 14:16-22.

4.  Nicole Jones was an employee of Envision Radiology, LLC only for roughly six months in 2014 when she temporarily helped with billing.  Pearl Decl. Ex. E (Declaration of Nicole Jones) ¶ 2.

5.  Nicole Jones has never been a director, partner or officer of EMHI.  *Id*. ¶ 3.

**B.    Argent and the Envision Defendants' Roles in the ESOP Transaction**

6. Creps, Jones, and Sherwood interviewed three sell-side advisory firms in approximately March of 2017 and Envision retained CSG Partners, which advertised as the nation's largest investment banking practice for ESOPs and that had had been named "2016 ESOP Investment Bank of the Year" by the Global M&A Network. Pearl Decl. Ex. F (CSG Marketing Materials), CSG-EMH00001022-48 at 23.

7.  Envision retained Bryan Cave to represent it in connection with a possible ESOP transaction. Pearl Decl. Ex. G (Deposition of Jeff Jones Transcript) at 80:5-12.

8.  In September 2017, EMHI appointed a Trustee Search Committee to identify, evaluate and select an institutional trustee for the proposed ESOP. The members of the Trustee Search Committee were the following non-Sellers: Aaron Ramsay (CFO); Jared Oldham (VP Operations and Development), and Linda Szymczak (Chief Administrative Officer).  Pearl Decl. Ex. H (Declaration of Aaron Ramsay) ¶¶ 12-14.

9. In connection with the ESOP Transaction, EMHI and Argent entered into an engagement letter through which EMHI appointed Argent as the trustee of the to-be-formed    ESOP.    Pearl   Decl.   Ex.   I   (Argent   Engagement   Agreement), ARGENT_HARRISON_0000077-80.

10. Effective December 19, 2017, EMHI and Argent also entered into a Trust Agreement through which EMHI appointed Argent as trustee of the Envision Management Holding, Inc. Employee Stock Ownership Trust ("ESOP Trust"), and Argent accepted that appointment. Pearl Decl. Ex. J (Envision Management Holding, Inc. Employee Stock Ownership Trust), EMH-Harrison0000211-226.

11. The Argent engagement letter provides that ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████ Ex. I at ARGENT_HARRISON_0000077 (emphasis added).

12. The Argent engagement letter further provides: ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████ *Id.*

13. Mark Shorthouse, Argent's relationship manager for the proposed ESOP

transaction and a member of Argent's fiduciary committee, understood that Argent had the responsibility to determine whether to purchase the EMHI stock on behalf of the Plan, and if so, the terms of that transaction. Pearl Decl. Ex. K (Deposition of Mark Shorthouse Transcript) at 40:1-19.

14. Argent retained the valuation firm of ComStock Advisors ("ComStock") to serve as its financial advisor for the proposed transaction. *Id*. at 83:5-13.

15. Argent retained the law firm of Morrison Cohen LLP ("Morrison Cohen") to serve as its legal advisor for the proposed transaction. *Id*. at 102:14-20.

16. Argent retained Charles Wilhoite of Willamette Management Associates to serve as a healthcare industry expert in connection with the proposed transaction. *Id*. at 84:4-9.

17. Creps and Jeff Jones met in person with Argent and a healthcare industry expert Argent had retained to assist Argent with its evaluation of the Company and the proposed transaction. Pearl Decl. Ex. L (Deposition of Darrel Creps III Transcript) at 297:19-298:9; Ex. G at 163:13-23; Ex. B ¶ 15.

18. During the period Argent was evaluating the potential transaction, Creps and Jeff Jones were aware that Argent had retained a financial advisor for the proposed transaction and had retained a legal advisor for the proposed transaction. Ex. L at 84:11-16; Ex. G at 92:14-16; Ex. A ¶ 20.

19. Creps and Jeff Jones also were aware of significant discussions and exchanges of information between Argent's team and the Envision team, and that Argent's valuation firm, ComStock, was advising Argent on the "fair market value" of Envision's stock. Ex. L at 96:15-22; 156:14-157:6; 164:11-165:10; 180:4-14; Ex. G at 88:25-89:12-22; 215:3-25;

Ex. A ¶ 22; Ex. B ¶¶ 18-19.

20. On December 18, 2017, Argent's Fiduciary Committee met to consider the proposed purchase of EMHI stock by the to-be-formed Plan and ultimately voted to approve the transaction on the terms set forth in the final term sheet and all of the transaction documents that had been drafted. Pearl Decl. Ex. M (Argent Fiduciary Committee Meeting Minutes), ARGENT_HARRISON_0001885-88 at 88.

21. The ESOP Transaction closed on December 19, 2017. The Plan's acquisition of the EMHI shares was memorialized in a Stock Purchase, Redemption and Subscription Agreement, which Argent, in its capacity as trustee of the ESOP Trust, executed on behalf of the ESOP Trust. Pearl Decl. Ex. N (Stock Purchase, Redemption, and Subscription Agreement), EMH-Harrison0000018-068. In that agreement, Argent represented that it "has the legal power and right…to enter into and perform this Agreement and, on behalf of the [ESOP Trust], to purchase and acquire the Shares in accordance with the terms of this Agreement." *Id*. at § 3.4(f).

22. The Plan's acquisition of the EMHI stock from the Sellers was financed in part through seller notes in favor of Sellers Creps, Jeff Jones, Sherwood, and Dr. Khan. Those seller notes were executed by Argent, in its capacity as trustee of the ESOP Trust, on behalf of the ESOP Trust. Pearl Decl. Ex. O (Seller Notes), EMH-Harrison0000354-365 at 356, 359, 362, 365.

23. The Plan also financed the acquisition of EMHI stock through an "internal" loan from EMHI, as evidenced by an ESOP note. Argent, in its capacity as trustee of the ESOP Trust, executed the ESOP note on behalf of the ESOP Trust. Pearl Decl. Ex. P (ESOP Note), EMH-Harrison0000512-514 at 514.

24. No Board member had any authority to demand that Argent or anyone else approve the transaction or that the transaction take place, and they did not, in fact, have any communications with Argent with respect to Argent's decision to agree to the transaction on behalf of the Plan, nor did they have any role whatsoever in Argent's decision to agree to the transaction on behalf of the Plan. Ex. A ¶ 24; Ex. B ¶ 23.

25. No Board member made the decision as to whether the Plan would agree to the ESOP Transaction or acquire shares of EMHI. No Board member made any recommendation or direction, written or otherwise, to Argent or anyone else to agree to the transaction on behalf of the Plan or that the Plan acquire shares of EMHI. Ex. A ¶¶ 25, 26; Ex. B ¶¶ 24, 25.

26. No Board member made the decision whether the Plan would agree to borrow money from Creps, Sherwood, Jeff Jones, and Dr. Khan, or would enter into the Seller Notes. No Board member gave any recommendation or direction, written or otherwise, to Argent or anyone else to cause the Plan to borrow money from Sellers or to cause the Plan to enter into the Seller Notes. Ex. A ¶¶ 28, 29; Ex. B ¶¶ 27, 28.

27. No Board member executed any documents on behalf of the Plan for the transaction. Ex. A ¶ 31; Ex. B ¶ 30.

28. One day prior to the ESOP Transaction closing, which occurred on December 19, 2017, Creps, Jeff Jones and Sherwood discussed the impact of the pending Trump tax cuts. They believed that once the tax cuts were enacted into law, they would increase the value of EMHI, and the Sellers could collectively reap 10%-15%, or $20 million to $25 million, of additional purchase price for their EMHI shares. Ex. L at 294:13-295:23; Ex. G at 266:9-268:7. They decided to allow the Plan and the participants to be the beneficiaries

15

of the tax cuts, and not to delay the closing in order to reap the benefits of the tax cuts. Ex. L at 294:13-295:22.

29. Since the ESOP Transaction, the per-share value of EMHI's stock has increased each year. Ex. A ¶ 32; Ex. B ¶ 32. As of December 31, 2024, the shares of EMHI stock held by the Plan were valued at $2,842.59 per share. ECF No. 328 at 4.

30. Creps, Sherwood, and Jeff Jones have donated hundreds of thousands of dollars to provide grants to employees who need financial assistance for help with rent or medical bills or other personal financial issues. Ex. A ¶ 36; Ex. B ¶ 45.

### C. Nicole Jones' Lack of Knowledge of the Events Surrounding the ESOP Transaction

31. In approximately early December 2017, Jeff Jones gifted some of his shares in EMHI to Nicole Jones. Ex. E ¶ 5; Ex. G at 245:16-25. Ms. Jones had no understanding of why her husband gifted those EMHI shares to her. Ex. D at 43:2-9.

32. Nicole Jones had no understanding of the fair market value or potential fair market value of the stock that her husband had gifted to her, and she never saw or heard any estimates of the value or potential value of the stock. Ex. E ¶¶ 6-7. She did not have any understanding that the Plan could not pay an unfair price for the EMHI shares; nor did she have knowledge whether the Plan, in fact, paid an unfair price for those shares. Ex. D at 63:3-8; 69:7-13.

33. Nicole Jones does not recall ever seeing the Fairness Opinion that ComStock provided to Argent. *Id*. at 62:12-15; 66:2-8.

34. Nicole Jones had no understanding of the proposed transaction through which the Plan would acquire shares in EMHI, except that her shares were to be redeemed directly by EMHI. Ex. E ¶ 8.

35. Under the Stock Purchase, Redemption and Subscription Agreement dated December 19, 2017, EMHI redeemed the shares held by Nicole Jones. Those shares were not sold to the Plan. Ex. N at EMH-Harrison030-031, §§ 2.1(b), 2.3.

36. At the time her shares were redeemed by EMHI, Nicole Jones did not have any understanding as to the redemption price for her shares, or how that price was determined. Ex. E ¶ 9.

37. Nicole Jones did not play any role in the due diligence process for the proposed transaction through which the Plan would acquire shares in EMHI or review any due diligence materials. *Id*. ¶ 10. She did not know that the company would be providing financial and other information about EMHI for the proposed ESOP Transaction to Argent. Ex. D at 64:9-20. She did not have any understanding of Argent's role in the proposed transaction, or any of Argent's or Envision's advisors' roles, and she did not communicate with any of them. *Id*. at 31:15-20; 32:22-33:9; 34:21-37:8; 45:15-21; 68:2-15; Ex. E ¶¶ 11-13.

38. Nicole Jones did not receive a Seller Note from the Plan. Pearl Decl. Ex. Q (Table of Contents to Closing Binder), EMH-Harrison000001-0000006 at 4.

## V. ARGUMENT

### A. Summary Judgment Legal Standard

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a*); Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" only if a fact finder reasonably could decide a fact issue in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably

affect the outcome of the case under the governing law. *Farthing*, 39 F.3d at 1134-1135.

**B. Summary Judgment is Warranted in Favor of Creps, Jeff Jones, Dr. Khan, Ramsay, and Sherwood on Count I**

Count I asserts claims against the Board for violations of ERISA's fiduciary prohibited-transactions provisions. This claim fails because the Board did not "cause" the Plan to enter into the ESOP Transaction.

Subject to broad statutory and regulatory exemption,[13] ERISA Section 406(a) states that a fiduciary "shall not cause the plan to engage in" certain transactions that the fiduciary knows or should know are between a plan and defined "parties in interest." 29 U.S.C. § 1106(a) (emphasis added). Plaintiffs allege that Sellers were parties in interest and that the ESOP Transaction was prohibited by three provisions of ERISA Section 406(a). *See* ECF No. 91 ¶¶ 122-125 (alleging ESOP Transaction violated ERISA §§ 406(a)(1)(A), (B), and (D)). Plaintiffs also allege that Board members Creps, Jeff Jones, Dr. Khan, Ramsay, and Sherwood were fiduciaries and "caused" the Plan to engage in the ESOP Transaction. *Id.* at ¶ 120.

As a preliminary matter, Ramsay is entitled to summary judgment because it is undisputed that he was not appointed to the Board until January 31, 2018, over a month *after* the ESOP Transaction's close. SUMF ¶ 2. Ramsay therefore could not have caused the ESOP Transaction on December 19, 2017, and summary judgment on Count I is

---

[13] The prohibited transaction provisions in Section 406(a) are tempered by exemptions in ERISA Section 408. *See* 29 U.S.C. § 1108. Exempt transactions are not prohibited under ERISA. *Reich v. Compton*, 57 F.3d 270, 288 (3d Cir. 1995), amended (Sept. 8, 1995) (observing that only "without a § 408 exemption, a per se violation of ERISA exists"). Here, the ESOP Transaction was exempt because Argent made a good-faith determination of fair market value. *See* 29 U.S.C. §§ 1108(e), 1002(18). The Board does not move for summary judgment of Count I on this basis, but Argent and others will present voluminous evidence at trial of Argent's good-faith determination.

warranted in his favor.

Creps, Jeff Jones, Dr. Khan, and Sherwood—Board members on the date of the ESOP Transaction—also are entitled to summary judgment, because in order for a fiduciary to "cause" a plan to engage in a transaction under 406(a), the person must have exercised the *final, discretionary fiduciary authority* to agree *on behalf of the plan itself* to enter into the transaction, including the Seller Notes. The evidence establishes that Argent made that decision—not the Board.

Under ERISA, every plan must be "established and maintained" pursuant to a written instrument, which "provides for" a named fiduciary. 29 U.S.C. § 1102(a). The named fiduciary must appoint a trustee, and upon appointment, the trustee has "*exclusive* authority and discretion to manage and control the assets of the plan." 29 U.S.C. § 1103(a) (emphasis added). Once a named fiduciary designates another fiduciary, ERISA affirmatively absolves the appointing fiduciary of any responsibility for the matters designated to the appointed fiduciary. *See* 29 U.S.C. § 1105(a) (when named fiduciary allocates someone else to perform a fiduciary obligation, "then such named fiduciary shall not be liable for an act or omission of such person in carrying out such responsibility"). In other words, under ERISA, once Argent was appointed, the appointing fiduciary had no responsibility for trustee matters, and Argent had the exclusive discretion and authority to make decisions on behalf of the Plan concerning plan assets.

This issue was addressed squarely in *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2020 WL 3639648, at *7 (N.D. Cal. July 6, 2020). There, the plaintiffs sued directors, who appointed the ESOP's trustee, for allegedly causing the ESOP to engage in an ESOP stock transaction. The court granted summary judgment for the

19

directors because they did not actually exercise authority or control over the final decision on behalf of the ESOP to enter into the transaction. *Id.*, *relying on Fish v. Greatbanc Tr. Co.,* No. 09 C 1668, 2016 WL 5923448, at *60 (N.D. Ill. Sept. 1, 2016) (following a bench trial concluding that "[i]t would be a bizarre logic that would hold [the director defendants] accountable for 'causing' the ESOP to engage in a transaction when they hired an independent trustee for the specific purpose of deciding whether to cause the ESOP to engage in the Transaction (by declining to tender its shares) or not, in accord with the independent trustee's independent determination of which alternative was in the ESOP's best interests.").

Similarly, in *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023 (N.D. Ill. 2009), the court dismissed claims for causing a prohibited transaction as against board members because the board did not require the ESOP to agree to the deal, and there was an independent trustee who made the decision to enter into the transaction on behalf of the ESOP. The court explained that in an ESOP transaction, the board makes "a non-fiduciary decision as settlor to create the ESOP," then "a non-fiduciary business decision on [the company's] behalf to enter into the deal," but "[the trustee], acting on behalf of the ESOP," makes the "independent decision to also enter into the deal." *Id.* at 1023, as amended (Mar. 11, 2010); *see also Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, No. 18-CV-1861-WCG, 2022 WL 4088166, at *19 (E.D. Wis. Mar. 17, 2022) ("no one can cause a prohibited transaction unless he or she exercises discretionary authority or control over whether the plan enters the transaction") (additional history omitted); *Szalanski v. Arnold*, 609 F. Supp. 3d 698 (W.D. Wis. 2022) (granting dismissal of directors who had a robust role in the transaction in their corporate capacities or as sellers, but

20

trustee had the ultimate discretion"); *Zavala v. Kruse-W., Inc*., 398 F. Supp. 3d 731, 744 (E.D. Cal. 2019)(dismissing claims against board members because the trustee caused the ESOP to buy stock); *Akers v. Palmer*, 71 F.3d 226 (6th Cir.1995) ("the decision to create an ESOP and fund it with newly-issued stock is a settlor function")**.**

Here, Argent agreed in writing to serve as the Plan's "discretionary trustee" and

 SUMF ¶ 12. Argent had the discretion to

*Id*. The record establishes that Argent, in fact, evaluated, considered, and ultimately voted to approve the ESOP Transaction and its terms, upon advice from its independent advisors, and Argent executed transaction documentation on behalf of the Plan. *Id*. ¶¶ 20-23.

No Board member had any authority to demand that Argent approve the transaction or that the transaction take place. *Id*. ¶ 24. No Board member had any communications with Argent about Argent's decision to agree to the transaction on behalf of the Plan, and they had no role in Argent's decision to agree to the transaction on behalf of the Plan. *Id*. No Board member made the decision whether the Plan would agree to the transaction or acquire Envision shares, and no Board member made any recommendation or direction, written or otherwise, to Argent or anyone else to agree to the transaction on behalf of the Plan or that the Plan acquire shares. *Id*. ¶ 25. No Board member signed any document on behalf of the Plan or made any decisions about whether the Plan would agree to any transaction term. *Id*. ¶ 27. No Board member made any

decision, recommendation, or direction with respect to the decision whether the Plan would enter into Seller Notes or make payments on any Seller Notes. *Id*. ¶ 26.

Under these circumstances, Argent "cause[d]" the transaction and the loans for purposes of Plaintiffs' claims for violations of ERISA § 406(a). *Foster*, 2020 WL 3639648 at *7 (granting summary judgment in board of directors' favor on 406(a) claim because trustee made decision to cause the ESOP to enter into transaction, and there was no "evidence that supports a finding that the Director Defendants *caused* [the trustee] to engage in the transaction") (emphasis original).

Summary judgment is warranted in Ramsay, Creps, Jeff Jones, Dr. Khan, and Sherwood's favor on Count I.

**C.  Summary Judgment is Warranted in Favor of Creps, Jeff Jones, Dr. Khan, and Sherwood on Count III**

In Count III, Plaintiffs claim that Creps, Jeff Jones, Dr. Khan, and Sherwood violated ERISA's fiduciary prohibited transaction provision in Section 406(b)(3) by "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." ECF No. 91 ¶ 138. Like ERISA Section 406(a), ERISA Section 406(b) only applies to "a fiduciary" who causes a plan to engage in certain transactions. 29 U.S.C. § 1106(b); *see also Foster*, 2020 WL 3639648, at *9 (406(b) claims are only available against a fiduciary).

Although Section 406(b) does not expressly state that it applies to the fiduciary who causes a plan to engage in a transaction, 406(b) must be read to apply only to those who actually exercised the final, discretionary fiduciary authority on behalf of the plan with respect to the transaction. For example, in *Zavala v. Kruse-W., Inc.*, the plaintiff alleged that selling shareholders violated 406(b) because they were fiduciaries, in some general

22

sense, and received money in an ESOP transaction. *See* 2021 WL 5883125, at *9 (E.D. Cal. Dec. 13, 2021). The court held that 406(b) must have an element of causation to make sense, and the sellers could not violate 406(b) unless they "*caused* the purchase of Kruse-Western stock to occur such that the purchase of the stock constituted an act of self-interest by the ESOP fiduciaries." *Id.* It is not enough under 406(b) that board members "were fiduciaries of the ESOP" generally—fiduciaries are not liable under 406(b) unless they "exercised control over the ESOP and **caused it** to buy the…stock." *Zavala v. Kruse-W., Inc.*, 398 F. Supp. 3d 731, 744 (E.D. Cal. 2019) (emphasis added); *Foster*, 2020 WL 3639648, at * 9 (granting summary judgment on 406(b) because "no reasonable trier of fact could find that the Director Defendants were fiduciaries for purposes of the ESOP Transaction").

Courts interpreting 406(b) in non-ESOP cases have agreed that only the fiduciary who exercises discretion on behalf of the ERISA plan *in the transaction being challenged* could be liable. *See DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743, 748 (6th Cir. 2010) ("§1106 applies only to those who act in a fiduciary capacity" with regard to the activity prohibited by 1106); *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 724 (6th Cir. 2000) (dismissing 406 claim against plan sponsor because it was not acting in a fiduciary capacity in the transaction being challenged); *see also Murphy v. Verizon Commc'ns, Inc.*, 2013 WL 5206451, at *14 (N.D. Tex. Sept. 16, 2013) *aff'd*, 587 F. App'x 140 (5th Cir. 2014) ("If the entity or person in question is not performing fiduciary functions in connection with a particular transaction, then the entity is not a fiduciary to whom Section 406(b)'s prohibition applies").

Plaintiff's 406(b) claim against Creps, Jeff Jones, Dr. Khan, and Sherwood fails

because Argent had, and exercised, the discretionary authority to enter into the ESOP Transaction and the Seller Notes on behalf of the Plan, not Creps, Jeff Jones, Dr. Khan, or Sherwood. SUMF ¶¶ 11-13, 20-27; *see also* Section V(C) above.

**D.      The Court Should Grant Summary Judgment on the "Knowing Participation" Claim Against Nicole Jones in Count II**

In Count II, Plaintiffs claim that Nicole Jones, who Plaintiffs do not allege was a fiduciary to the Plan, should be liable under 29 U.S.C. §1132(a)(3) for "appropriate equitable relief" because she, as a non-fiduciary, "knowingly participated" in transactions that violated ERISA § 406(a).[14] Dkt. No. 91 at ¶ 132. In *Harris Trust and Sav. Bank v. Salomon Smith Barney*, 530 U.S. 238, 251, the Supreme Court held that ERISA liability under 29 U.S.C. § 1132(a)(3) for "appropriate equitable relief" can extend to nonfiduciaries for "knowingly participating" in a fiduciary's ERISA violation. A plaintiff who seeks to impose liability on a nonfiduciary "must show: (1) there was an underlying ERISA violation; (2) the nonfiduciary defendant had 'actual or constructive knowledge of the circumstances that rendered the transaction unlawful'; and (3) the relief sought is appropriate equitable relief." *Gamino v. KPC Holdings, Inc.*, 2022 WL 4596576 at *5 (C.D. Cal. Aug. 15, 2022), *citing Harris Trust*, 530 U.S. at 249-251. Summary judgment is appropriate here for Nicole Jones because the undisputed facts demonstrate that she

---

[14]      Count II also purports to assert an ERISA § 502(a)(3) claim for "knowing participation" with respect to promissory notes from the Plan (i.e. Seller Notes) and payments by the Plan on those notes. *See* ECF No. 91 at ¶¶ 134-136. Nicole Jones never took back a Seller Note from the Plan, *see* SUMF ¶ 38, so she is entitled to summary judgment on this aspect of Count II as well.

had no actual or constructive knowledge of any circumstances suggesting that the ESOP transaction was unlawful.[15]

There is a heightened standard for nonfiduciary liability under ERISA. "[A]n ERISA plaintiff cannot rely solely on the knowledge that would satisfy a fiduciary's liability for a prohibited transaction to likewise hold a nonfiduciary party in interest liable for that transaction. Rather, the plaintiff must show that the defendant **knew or should have known that the transaction violated ERISA**." *Teets v. Great-W. Life & Annuity Ins. Co*., 286 F. Supp. 3d 1192, 1209 (D. Colo. 2017), aff'd, 919 F.3d 1232 (10th Cir. 2019), *withdrawn from bound volume, and aff'd*, 921 F.3d 1200 (10th Cir. 2019) (emphasis added); *see also Rozo v. Principal Life Ins. Co*., 344 F. Supp. 3d 1025, 1037-38 (S.D. Iowa 2018) *rev'd on other grounds*, 949 F.3d 1071 (8th Cir. 2020) (granting summary judgment in favor of nonfiduciary defendant where the plaintiff failed to meet the "heightened standard" for nonfiduciary liability under Harris Trust, *i.e.*, "the rule that a nonfiduciary can only be held liable if it knew or should have known that the transaction violated ERISA").[16]

---

[15] Neither Nicole Jones nor the other Envision Defendants concede that EMHI's redemption of her stock was a transaction between the Plan and a party in interest in the first instance, or that it was a "prohibited transaction" under ERISA § 406(a).

[16] Plaintiffs may cite *Cunningham v. Cornell* for the notion that all Plaintiffs have to prove under 502(a)(3) is that a nonfiduciary knew of a prohibited transaction, because exemptions are affirmative defenses. 145 S. Ct. 1020, 1027, 221 L. Ed. 2d 591 (2025). This is wrong. In *Cornell*, the Supreme Court addressed a claim against the ERISA **fiduciary** who actually caused a prohibited ESOP transaction and held that Plaintiffs only have the burden of proving the prohibited transaction, not that an exemption does not apply. A claim against a nonfiduciary is fundamentally different; indeed, the cases holding that a claim against a nonfiduciary requires a plaintiff to prove the circumstances that rendered the transaction actually unlawful—i.e. an exemption did not apply—already assumed that a plaintiff could state a claim against a *fiduciary* merely by alleging the prohibited transaction. *See, e.g., Teets v. Great-W. Life & Annuity Ins. Co.*, 286 F. Supp. 3d 1192, 1208 (D. Colo. 2017) (as to a nonfiduciary, a plaintiff has to prove more than

25

Under ERISA, a trustee can cause an ESOP to acquire employer stock if it is for "adequate consideration"—i.e., fair market value as determined in good faith by the trustee. 29 U.S.C. §§ 1002(18), 1108(e). This is a process-based standard focused on the trustee's conduct in estimating the fair market value for the stock. As such, Plaintiffs must prove that Nicole Jones knew or should have known that Argent failed to conduct a good faith assessment of fair market value and that the Plan paid more than "adequate consideration" when it purchased the stock from the Company.

Courts in other cases involving ESOP purchase transactions have granted summary judgment in favor of nonfiduciaries where the nonfiduciaries had no insight into the trustee's process that could alert them that a transaction violated ERISA. In *Foster v. Adams and Associates*, 2020 WL 3639648 (N.D. Cal. July 6, 2020), plaintiffs filed suit against various defendants arising out of an ESOP formation transaction. The plaintiffs in that case alleged that the selling shareholders knew the acquisition of shares by the plan was for excessive consideration based on their association with the company. *Foster*, 2020 WL 3639648 at *7. The selling shareholders countered that the record was devoid of any evidence suggesting the selling shareholders' involvement in the company's due diligence responses. *Id.* The court held that the selling shareholders lacked actual or constructive knowledge that the transaction violated the law, finding that plaintiffs' claims could not survive summary judgment where plaintiffs failed to provide evidence supporting their inferences that the selling shareholders would have had some knowledge based on their company roles. *Id.*

---

just a prohibited transaction, a plaintiff has to prove "circumstances that rendered the transaction unlawful"), aff'd, 919 F.3d 1232 (10th Cir. 2019), withdrawn from bound volume, and aff'd, 921 F.3d 1200 (10th Cir. 2019).

Similarly, in *Gamino, supra,* the court granted summary judgment in favor of a seller in the context of an ESOP transaction where the seller was not involved in the valuation of the stock of the company sold to the ESOP, did not participate in due diligence meetings, and never saw the materials relied upon by the trustee and its valuation advisor to value the company. The court held that the "crux of Plaintiff's claim is that [the seller] had constructive knowledge that the ESOP was overpaying for [the company] stock," and found that the undisputed record failed to support that the seller had actual or constructive knowledge of the circumstances that rendered the transaction unlawful. *Id.* at 8-9.

The Court should similarly grant summary judgment here to Nicole Jones on the "knowing participation" claim in Count II. By way of background, Ms. Jones is married to Jeff Jones, who at the time of the ESOP Transaction was the Managing Director of Finance for EMHI. SUMF ¶¶ 1, 3. Except for roughly six months in 2014 when she helped with the billing function at Envision, Nicole Jones was not an employee of Envision. *Id.* ¶ 4. She was never a director, partner, or officer of Envision or EMHI. *Id.* ¶ 5.

In early December 2017—roughly one week before the closing of the ESOP Transaction, Jeff Jones gifted some of his shares of EMHI stock to Nicole Jones. *Id.* ¶ 31. Ms. Jones had no understanding of why her husband gifted those EMHI shares to her. *Id.* Prior to the closing of the ESOP Transaction, Nicole Jones never saw or heard any estimates of the value or potential value of the EMHI stock that her husband had gifted to her. *Id.* ¶ 32. She does not recall ever seeing the Fairness Opinion provided by Argent Trust's financial advisor, Comstock Advisors. *Id.* ¶ 33. And she did not have any understanding that the Plan could not pay an unfair price for the EMHI shares; nor did

she have knowledge whether the Plan, in fact, paid an unfair price for those shares. *Id*. ¶ 32.

Ms. Jones also played no role in the due diligence process for the proposed ESOP Transaction. *Id*. ¶ 37. She did not know that the company would be providing financial and other information about EMHI for the proposed ESOP Transaction. *Id*. She also did not have an understanding of the roles of key players in the ESOP Transaction—CSG Partners, Argent Trust Company, or ComStock Advisors. *Id*.

The undisputed facts show that Nicole Jones was essentially a stranger to the ESOP Transaction. She was not an employee, director or officer of EMHI at the time of the transaction. She had no insight into the due diligence process for the ESOP Transaction, and did not understand the roles of the parties to the transaction or their advisors. Ms. Jones was not aware of any estimates of the value of the shares to be sold to the Plan, and she had no knowledge as to whether the Plan overpaid for the purchased shares. In short, the undisputed evidentiary record shows that Ms. Jones had no actual or constructive knowledge of any circumstances suggesting that the ESOP Transaction may have violated ERISA. Summary judgment is appropriate on the "knowing participation" claim against her in Count II.

## VI. CONCLUSION

For these reasons, the Envision Defendants respectfully request that this Court: (1) enter judgment in favor of Creps, Jeff Jones, Dr. Khan, Ramsay, and Sherwood on Count I; (2) enter judgment in favor of Creps, Jeff Jones, Dr. Khan, and Sherwood on Count III; and (3) enter judgment in favor of Nicole Jones on Count II.

Dated: September 2, 2025

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ W. Bard Brockman*
W. Bard Brockman
Katelyn W. Harrell
1201 West Peachtree Street NW
One Atlantic Center, 14th Floor
Atlanta, Georgia 30309
Telephone: (404) 572-6600
Email: bard.brockman@bclplaw.com
Email: katelyn.harrell@bclplaw.com

Michael J. Hofmann
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
E-mail: Michael.Hofmann@bclplaw.com

*Attorneys for Defendants Envision Management Holding, Inc. Board of Directors; Darrel Creps III, Paul Sherwood, Jeff Jones, Nicole Jones, Aaron Ramsay, and Tanweer Khan*

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Richard J. Pearl*
Richard J. Pearl
320 South Canal Street
Suite 3300
Chicago, Illinois 60606
Telephone: (312) 569-1907
Email: rick.pearl@faegredrinker.com

*Attorney for Defendants Darrel Creps III, Paul Sherwood, Jeff Jones, and Tanweer Khan*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 2, 2025, a true and correct copy of the foregoing was served on all counsel of record.

*/s/ Richard J. Pearl*