**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

ROBERT HARRISON and GRACE HEATH, on behalf of themselves, the ENVISION MANAGEMENT HOLDING, INC. ESOP, and all other similarly situated individuals,

Plaintiffs,

v.

ENVISION MANAGEMENT HOLDING, INC. BOARD OF DIRECTORS, ENVISION MANAGEMENT HOLDING, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, ARGENT TRUST COMPANY, DARREL CREPS, III, PAUL SHERWOOD, JEFF JONES, NICOLE JONES, AARON RAMSAY, TANWEER KHAN, and LORI SPAHN,

Defendants.

Civil Action No. 1:21-cv-00304-CNS-MDB

**PLAINTIFFS' OPPOSITION TO ENVISION DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

STATUTORY BACKGROUND .......... 3

RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS .......... 5

STATEMENT OF ADDITIONAL DISPUTED FACTS .......... 12

LEGAL STANDARD .......... 16

ARGUMENT .......... 16

I. The Evidence Shows that the Board Defendants Exercised their Fiduciary Authority and—Along with Argent—Caused the ESOP Transaction .......... 16

A. The Board Defendants—Including Ramsay—Were Fiduciaries .......... 17

1. The Board Defendants—Including Ramsay—Engineered the Trustee Selection Process to Install a Compliant Trustee .......... 18

2. The Board Defendants "Pre-Negotiated" Retaining Control with Argent .......... 20

3. The Board Defendants and Ramsay Manipulated Argent's Process by Withholding and Misrepresenting Material Information .......... 21

B. Defendants Misconstrue ERISA and Mischaracterize the Case Law .......... 22

II. Plaintiffs' § 406(b)(3) Claim Does Not Require Proof of Causation .......... 24

III. Nicole Jones Had Actual or Constructive Knowledge of the Circumstances that Rendered the ESOP Transaction Unlawful .......... 26

A. Nicole Jones Knew or Should Have Known the ESOP Transaction Met the Elements of § 406(a) .......... 27

B. Defendants' Authorities Cannot Be Reconciled with the Supreme Court's Cunningham Decision .......... 28

C. Even under Defendants' Incorrect Standard, the Record Shows That Nicole Jones Had Constructive Knowledge of the ESOP's Overpayment .......... 29

CONCLUSION .......... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akers v. Palmer*,
71 F.3d 226 (6th Cir. 1995) ........ 24

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) ........ 26

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*,
2022 WL 4088166 (E.D. Wis. Mar. 17, 2022), *report and recommendation adopted*, 2022 WL 4080528 (E.D. Wis. Sept. 6, 2022), *judgment entered sub nom. Appvion Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Argent Tr. Co.*, 2022 WL 18278645 (E.D. Wis. Dec. 16, 2022), *aff'd in part, rev'd in part & remanded sub nom. Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928 (7th Cir. 2024), *remanded sub nom. Appvion, Inc. v. Richards*, 2025 WL 346736 (E.D. Wis. Jan. 30, 2025) ........ 24

*Brundle v. Wilmington Tr., N.A.*,
919 F.3d 763 (4th Cir. 2019), *as amended* (Mar. 22, 2019) ........ 1, 4

*Chao v. Hall Holding Co.*,
285 F.3d 415 (6th Cir. 2002) ........ 4, 5, 26

*Chesemore v. All. Holdings, Inc.*,
886 F. Supp. 2d 1007 (W.D. Wis. 2012), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) ........ 19, 20, 22

*Coldesina v. Estate of Simper*,
407 F.3d 1126 (10th Cir. 2005) ........ 18

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025) ........ 3, 27, 28, 29

*DeLuca v. Blue Cross Blue Shield of Mich.*,
628 F.3d 743 (6th Cir. 2010) ........ 25

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982) ........ 5

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) ........ 4, 5

*Eaves v. Penn*,
587 F.2d 453 (10th Cir. 1978) ........ 4, 26

*Facenda v. N.F.L. Films, Inc.*,
542 F.3d 1007 (3d. Cir. 2008) ... 30

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ... 1, 2, 3, 4

*Fish v. GreatBanc Tr. Co.*,
749 F.3d 671 (7th Cir. 2014) ... 5, 23

*Foster v. Adams & Assocs.*,
2020 WL 3639648 (N.D. Cal. July 6, 2020) ... 23, 25, 28

*Gamache v. Hogue*,
696 F. Supp. 3d 1360 (M.D. Ga. 2023) ... 1, 21, 22

*Gamino v. KPC Healthcare Holdings, Inc.*,
2021 WL 162643 (C.D. Cal. Jan. 15, 2021) ... 2, 25

*Gamino v. KPC Healthcare Holdings, Inc.*,
2022 WL 4596576 (C.D. Cal. Aug. 15, 2022) ... 28

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000) ... 3, 26, 27, 29

*Hartkopp v. State Farm Fire & Cas. Co.*,
744 F. Supp. 3d 1214 (D. Colo. 2024) ... 16

*Howard v. Shay*,
100 F.3d 1484 (9th Cir. 1996) ... 5

*Hunter v. Caliber Sys., Inc.*,
220 F.3d 702 (6th Cir. 2000) ... 25

*Hurtado v. Rainbow Disposal Co.*,
2018 WL 3372752 (C.D. Cal. July 9, 2018) ... 25

*Jaxon v. Circle K Corp.*,
773 F.2d 1138 (10th Cir. 1985) ... 30

*Keach v. U.S. Tr. Co.*,
234 F. Supp. 2d 872 (C.D. Ill. 2002) ... 21, 24

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ... 17, 22

*Mountain Food, LLC v. Sentry Ins. Mut. Co.*,
636 F. Supp. 3d 1307 (D. Colo. 2022) ... 24

*Murphy v. Verizon Comm'cns, Inc.*,
2013 WL 5206451 (N.D. Tex. Sept. 16, 2013), *aff'd*, 587 F. App'x 140 (5th Cir. 2014) ........ 25

*Nat'l Sec. Sys., Inc. v. Iola*,
700 F.3d 65 (3d Cir. 2012) ........ 25

*Neil v. Zell*,
767 F. Supp. 2d 933 (N.D. Ill. 2011) ........ 4, 23

*Owners Ins. Co. v. Lennar Corp.*,
2024 WL 415451 (D. Colo. Feb. 5, 2024) ........ 16

*Perez v. Bruister*,
54 F. Supp. 3d 629 (S.D. Miss. 2014), *aff'd as modified*, 823 F.3d 250 (5th Cir. 2016) ........ 21

*Ramirez v. AMPAM Parks Mech., Inc.*,
2025 WL 621546 (C.D. Cal. Feb. 14, 2025) ........ 25

*Ramos v. Banner Health*,
461 F. Supp. 3d 1067 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021) ........ 17

*Reich v. Valley Nat'l Bank of Ariz.*,
837 F. Supp. 1259 (S.D.N.Y. 1993) ........ 4

*Rozo v. Principal Life Ins. Co.*,
344 F. Supp. 3d 1025 (S.D. Iowa 2018) ........ 28

*Salama v. City of Pueblo*,
2025 WL 1794458 (D. Colo. June 30, 2025) ........ 2, 17, 23

*Scalia v. Reliance Tr. Co.*,
2021 WL 795270 (D. Minn. Mar. 2, 2021) ........ 2, 19, 22, 30

*In re Schering-Plough ERISA Litig.*,
2010 WL 2667414 (D.N.J. June 29, 2010) ........ 18

*Self v. Crum*,
439 F.3d 1227 (10th Cir. 2006) ........ 16

*Su v. Bensen*,
2024 WL 3825085 (D. Ariz. Aug. 15, 2024) ........ 2, 20, 21

*Szalanski v. Arnold*,
609 F. Supp. 3d 698 (W.D. Wis. 2022) ........ 24

*Teets v. Great-W. Life & Annuity Ins. Co.*,
286 F. Supp. 3d 1192 (D. Colo. 2017) .................................................................... 28

*Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*,
259 F.3d 1226 (10th Cir. 2001) ................................................................................ 16

*Walsh v. Reliance Tr. Co.*,
2023 WL 1966921 (D. Ariz. Feb. 13, 2023) ..................................................... 20, 29, 30

*Estate of Ward v. Pueblo Cnty., Colo.*,
2025 WL 1359356 (D. Colo. May 9, 2025), *appeal filed*, *Estate of Ward v. Lucero* (10th Cir. 2025) .......................................................................... 19

*Zavala v. Kruse-W., Inc.*,
2021 WL 5883125 (E.D. Cal. Dec. 13, 2021) ............................................................ 25

*Zavala v. Kruse-W., Inc.*,
398 F. Supp. 3d 731 (E.D. Cal. 2019) ...................................................................... 24

**Statutes**

29 U.S.C. § 1002(14)(F) ............................................................................................ 27

29 U.S.C. § 1002(14)(H) ............................................................................................ 27

29 U.S.C. § 1002(21)(A) ........................................................................................ 17, 22

29 U.S.C. § 1103(a) .................................................................................................... 22

29 U.S.C. § 1106(a)(1)(A) ...................................................................................... 26, 27

29 U.S.C. § 1106(a)(1)(B) ............................................................................................ 26

29 U.S.C. § 1106(a)(1)(D) ............................................................................................ 27

29 U.S.C. § 1106(a)(1)(E) ............................................................................................ 26

29 U.S.C. § 1106(b)(2) ................................................................................................ 25

29 U.S.C. § 1106(b)(3) ......................................................................................... 2, 24, 25

**Other Authorities**

26 C.F.R. § 1.404(a)–1(b) ............................................................................................. 4

29 C.F.R. § 2509.75-8 .................................................................................................. 17

53 Fed. Reg. 17,632-33 ................................................................................................. 5

10B Fed. Prac. and Proc. Civ. § 2730 (4th ed.) ..... 30

Fed. R. Civ. P. 56(a) ..... 16

*Employee Stock Ownership Plans (ESOPs)*, IRS, https://www.irs.gov/retirement-plans/employee-stock-ownership-plans-esops ..... 3

## INTRODUCTION

ERISA imposes strict "duties and obligations on all pension plan fiduciaries, including those of ESOPs." *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 769 (4th Cir. 2019), *as amended* (Mar. 22, 2019). The statute does not relax its standards in the ESOP context; "ESOP fiduciaries are subject to the same duty of prudence that applies to ERISA fiduciaries in general[.]" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014). Defendants' contrary interpretation is meritless. *Contra* Br.[1] 6-8.

Faced with the reality that Plaintiffs' fact-intensive ERISA claims are not suitable for summary judgment, Defendants attempt to isolate and dismiss three claims against the Board Defendants[2] and Nicole Jones by mischaracterizing the record and misstating caselaw. All three attempts fail. Each challenged claim presents classic fact disputes regarding causation and knowledge—precisely the issues reserved for trial.

*First*, the Board Defendants argue that Plaintiffs' § 406(a) prohibited-transaction claim fails because they supposedly did not "cause" the ESOP Transaction. They blame Argent alone, but the record shows otherwise. Acting as fiduciaries, the Board Defendants handpicked Argent as trustee in a process they controlled, "pre-negotiated" keeping control of the Envision board even after they sold it to the ESOP, and manipulated the due diligence process to achieve their desired outcome. These facts—among others—create a genuine dispute as to whether the Board Defendants caused the ESOP Transaction, precluding summary judgment. *See Gamache v. Hogue*, 696 F. Supp. 3d 1360, 1375 (M.D. Ga. 2023) (denying summary judgment on § 406(a) claim against non-

---

[1] References to "Br." are to the Envision Defendants' memorandum of law at ECF 332.
[2] The "Board Defendants" as used in this brief are Defendants Del Creps III, Jeff Jones, Paul Sherwood, Tanweer Khan, and Aaron Ramsay.

trustee board members because "there is a genuine issue of material fact as to whether Defendants caused the ESOP to engage in [prohibited] transactions"). That result is hardly unusual: "Causation in fact is typically a question for the jury[.]" *Salama v. City of Pueblo*, 2025 WL 1794458, at *1, *5 (D. Colo. June 30, 2025) (Sweeney, J.) (citation omitted) (denying summary judgment on both issues of factual and legal causation).

Defendants' theory would allow corporate boards to evade ERISA liability simply by hiring a trustee to rubber-stamp a conflicted transaction. Courts have squarely rejected that approach. *See Su v. Bensen*, 2024 WL 3825085, at *6, *23 (D. Ariz. Aug. 15, 2024) (board defendants found liable ***after trial*** for ESOP's overpayment even though they appointed an independent trustee who made the final decision to enter the ESOP transaction); *Scalia v. Reliance Tr. Co*., 2021 WL 795270, at *30-31 (D. Minn. Mar. 2, 2021) (denying summary judgment for board defendants because fact disputes existed concerning their liability despite the appointment of independent ESOP trustee).

*Second,* Defendants incorrectly argue that Plaintiffs' § 406(b)(3) self-dealing claim against the Sellers—all of whom are Board Defendants—also fails for lack of causation. That argument ignores the statute's text: § 406(b)(3) prohibits a fiduciary from "***receiv[ing]*** any consideration for his own personal account" in connection with a prohibited transaction. 29 U.S.C. § 1106(b)(3) (emphasis added). Because no causation requirement appears in the text of § 406(b)(3), courts confronted with this same argument have rejected it. *See, e.g.*, *Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 162643, at *6 (C.D. Cal. Jan. 15, 2021) (holding § 406(b)(3) claim contains no causal element).

*Third,* Defendants assert that Nicole Jones cannot be liable as a knowing participant because she lacked knowledge of the ESOP's overpayment. That argument

misstates governing law. Knowing participation requires knowledge of elements of the prohibited transaction claim—and overpayment is not such an element. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000). The Supreme Court recently confirmed Plaintiffs are not required to prove that the ESOP overpaid because that is relevant to Defendants' affirmative defense—not Plaintiffs' claim. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 703-05 (2025). Regardless, the evidence shows Nicole Jones had actual or constructive knowledge of facts (in Transaction documents she signed or to which she had access) indicating that the ESOP overpaid, which precludes summary judgment.

For the reasons contained herein, Defendants' motion should be denied in full.

## STATUTORY BACKGROUND

As in prior briefing, Defendants spend much of their motion making a policy argument as to why they believe ESOPs and their fiduciaries should get a pass from ERISA's strict rules and protections. *See, e.g.*, ECF 198. But that is not the law. Plaintiffs already addressed Defendants' incorrect interpretation of the law in prior responsive briefing, *see, e.g.*, ECF 215, but again address Defendants' primary points here.

*First*, Defendants' view that ESOPs are "not considered a traditional retirement plan," Br. at 6, is wrong.[3] The Supreme Court has explained that an "'employee stock ownership plan' (ESOP) [is] a type of pension plan that invests primarily in the stock of the company that employs the plan participants." *Dudenhoeffer*, 573 U.S. at 412. Defendants' arguments that ESOP fiduciaries are held to a lesser standard than ERISA

[3] The IRS, which allows tax exemptions for retirement plans, has also plainly stated: "An employee stock ownership plan (ESOP) is an IRC section 401(a) qualified defined contribution plan[.]" *Employee Stock Ownership Plans (ESOPs)*, IRS, https://www.irs.gov/retirement-plans/employee-stock-ownership-plans-esops.

imposes on all plan fiduciaries fares no better. Br. at 6-9. The Supreme Court has explained that ERISA "does not create a special presumption favoring ESOP fiduciaries. Rather, the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings." *Dudenhoeffer*, 573 U.S. at 418-19; *see also Eaves v. Penn*, 587 F.2d 453, 460 (10th Cir. 1978); *Brundle*, 919 F.3d at 769. Thus, Defendants' position that ESOPs operate outside ERISA's protections is ill-founded.

*Second*, Defendants' statements that Plaintiffs and Class members "paid nothing for the stock," are also incorrect. Br. at 3. They paid for the stock through their labor because ESOP contributions are a form of compensation; Envision receives tax deductions for ESOP contributions precisely because the IRS views ESOP contributions as employee compensation. 26 C.F.R. § 1.404(a)–1(b). Circuit courts have recognized that "[a]n employer's contributions to an ESOP thus constitute a valuable form of deferred compensation, rather than a gift to employees." *Brundle*, 919 F.3d at 769 n.1; *see also Neil v. Zell*, 767 F. Supp. 2d 933, 943 (N.D. Ill. 2011) ("Employee benefits are not a mere gratuity, but a form of deferred wages." (quoting *Reich v. Valley Nat'l Bank of Ariz.*, 837 F. Supp. 1259, 1286-87 (S.D.N.Y. 1993))).

*Third*, Defendants assert that ERISA's fiduciary duties are fulfilled merely by relying on an advisor's assessment of fair market value. Br. at 9-10. On the contrary, retention of an advisor is not sufficient to satisfy these strict duties. *See Donovan v. Cunningham*, 716 F.2d 1455, 1474 (5th Cir. 1983) ("An independent appraisal is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled."); *Chao v. Hall Holding Co.*, 285 F.3d 415, 430 (6th Cir. 2002)

("[I]ndependent expert advice is not a 'whitewash.'" (quoting *Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996))); *accord Donovan v. Bierwirth*, 680 F.2d 263, 272 (2d Cir. 1982).

*Finally*, Defendants' argument that "this case is not a valuation dispute," Br. at 10, is puzzling to say the least. Several courts of appeal have held the "adequate consideration" defense that Defendants rely on to require both a determination of fair market value and an examination of the process that led to the determination of fair market value. *See Chao*, 285 F.3d at 437; *see also Donovan*, 716 F.2d at 1467 (noting that adequate consideration inquiry is not "a search for subjective good faith" and that "a pure heart and an empty head are not enough"); *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 680 (7th Cir. 2014) ("The Department of Labor has identified two requirements for a transaction to be considered supported by adequate consideration: a **substantive requirement** that the value assigned **reflect the fair market value** . . . and a procedural requirement that the fiduciary actually determine the value assigned in good faith." (emphasis added) (citing 53 Fed. Reg. 17,632-33)).

## RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Deny. Nicole Jones was a shareholder of Envision Management Holding Inc. ("Envision"), and hence a partner/owner. Ex. A (EMH-Harrison0000007 at 07).

6. Deny. CSG represented the Sellers (Creps, Jones, Sherwood, and Khan), not Envision. *See* Ex. B (CSG-EMH00001022 at 1024) ("[redacted]"); Ex. C (Creps Tr. 76:2-11).

7. Admit.

8. Deny. The Board Defendants, who were also Sellers, appointed Argent for the ESOP Transaction. Ex. D (ARGENT_HARRISON_0003657 at 3658, 3660-3662). The Sellers' legal counsel advised them to put non-sellers on the Trustee Selection Committee so the Transaction "[redacted]." Ex. F (EMH-Harrison0030368) (emphasis added). The Trustee Search Committee members also received warrants from the ESOP Transaction, and all reported to Jeff Jones and/or Creps (two of the Sellers). Ex. G (Envision Defs' Am. Resp. to Interrogatory No. 8); Ex. H (Ramsay Tr. 38:23–39:12); Ex. W (ARGENT_HARRISON_0000696 at 722, 773). Before his appointment to the Committee, Jeff Jones told Ramsay he would receive synthetic equity from the ESOP Transaction, and Ramsay expressed gratitude. Ex. I (EMH-Harrison0017525).

9. Deny. Argent was appointed as the ESOP trustee by Board resolution executed on December 15, 2017. Ex. D (ARGENT_HARRISON_0003657 at 3658, 3660-3662).

10. Deny. Envision, through its Board of Directors (Creps, Jeff Jones, Sherwood, and Khan), appointed Argent as trustee. Ex. D (ARGENT_HARRISON_0003657 at 3658, 3660-3662).

11. Deny. The engagement letter also provides that Argent will serve as the ESOP trustee "[redacted]." Ex.

J (ARGENT_HARRISON_0000077 at 77). The Board Defendants exercised fiduciary authority and control over the ESOP Transaction. *See* ¶¶ 19, 24, 39-59.

12. Deny. The engagement letter also references the "[redacted]" Ex. J (ARGENT_HARRISON_0000077 at 77) (emphasis added). The Board Defendants exercised fiduciary authority and control over the ESOP Transaction. *See* ¶¶ 19, 24, 39-59.

13. Deny. The Board Defendants also had a duty to monitor Argent, to provide it complete and accurate information, and to confirm that Argent was appropriately fulfilling its fiduciary duties to the ESOP. Ex. L (Halpern Rebuttal ¶¶ 122-129).

14. Deny. Argent alone did not retain ComStock; Jeff Jones, acting on behalf of Envision (then owned by the Sellers), also engaged ComStock. Ex. N (ARGENT_HARRISON_0000385 at 389).

15. Deny. Argent alone did not retain Morrison Cohen; Jeff Jones, acting for Envision (then owned by the Sellers), also engaged the firm. Ex. O (ARGENT_HARRISON_0001777 at 1779).

16. Deny. Argent did not hire Mr. Wilhoite as an expert, but rather for "consulting services," and Mr. Wilhoite did not view his role as ensuring that Argent followed his advice. Ex. P (ARGENT_HARRISON_0000073 at 73); Ex. Q (Wilhoite Tr. Vol. I 69:15-23). Mr. Wilhoite provided a written "preliminary" analysis of a draft ComStock valuation and made recommendations to Argent for follow-up but provided no other analyses. Ex. R (ARGENT_HARRISON_0026527); Ex. Q (Wilhoite Tr. Vol. I 73:25-74:3). Further, Argent alone did not hire Mr. Wilhoite; Jeff Jones, acting on behalf of Envision (then

owned by Sellers), also engaged Willamette Management Associates. Ex. P (ARGENT_HARRISON_0000073 at 76).

17. Deny. Mr. Wilhoite did not view his role as ensuring that Argent followed his advice. Ex. Q (Wilhoite Tr. Vol. I 69:15-23).

18. Deny. Argent alone did not retain ComStock and Morrison Cohen. ¶¶ 14-15.

19. Deny. The Sellers failed to provide complete and accurate information to Argent and its advisors about Envision. *See, e.g.*, ¶ 49. The Sellers failed to provide complete and accurate information about a [redacted] offer and four prior valuations of Envision entities that the trustee team had requested. Ex. S (ARGENT_HARRISON_0024977 at 24978); Ex. T (O'Brien Tr. 109:13-113:4); Ex. V (Shorthouse Tr. 214:23-220:14). In addition, Creps, Jeff Jones, and the other Sellers failed to oversee or understand Argent's work. Ex. L (Halpern Rebuttal ¶¶ 122-129); Ex. ZZ (Khan Tr. 81:17-20, 87:5-16, 91:2-15); Ex. C (Creps Tr. 164:11-165:19, 181:10-14, 204:14-19, 207:8-208:18); Ex. U (J. Jones Tr. 83:7-87:4, 131:14-132:20, 218:18-219:4, 220:20-222:8).

20. Admit.

21. Deny. The ESOP Transaction was memorialized in closing documents in the Transaction Binder, including but not limited to the Stock Purchase, Redemption and Subscription Agreement. Ex. M (EMH-Harrison0000018-68).

22. Deny. The ESOP Transaction included an Assumption and Exchange Agreement, which provided that the Seller Loans be refinanced and that warrants be issued to the Sellers. Ex. K (EMH-Harrison0000458-468 at 458-459).

23. Deny. The ESOP Transaction included an Assumption and Exchange Agreement, which provided that the Seller Loans be refinanced and that warrants be issued to the Sellers. Ex. K (EMH-Harrison0000458-468 at 458-459).

24. Deny. The Board Defendants exercised *de facto* control over Argent's decision because they engineered the trustee selection process so that their pick (Argent) would be appointed as a compliant ESOP trustee, did not appoint Argent as trustee until after Argent approved the Transaction terms, "pre-negotiated" control of Envision with Argent, and withheld complete and accurate information about Envision to Argent to ensure Argent's approval of the ESOP Transaction. ¶¶ 19, 39-59.

25. Deny. *See* ¶¶ 19, 24, 39-59.

26. Deny. *See* ¶¶ 19, 24, 39-59.

27. Deny. The Board acted on behalf of the ESOP when it appointed Argent and when it approved the ESOP Transaction, which in turn caused the ESOP to purchase Envision shares. Ex. D (ARGENT_HARRISON_0003657 at 3658, 3660-3662); Ex. J (ARGENT_HARRISON_0000077 at 77); *see* ¶¶ 19, 24, 39-59.

28. Deny. On cross examination, Creps admitted this belief was not based on a "thorough valuation" and that Jones or Ramsay only performed "a quick dirty analysis." Ex. C (Creps Tr. 300:8-303:2). Contemporaneous emails show that Envision's counsel stated, "[redacted]." Ex. X (EMH-Harrison0011083). The same counsel also told Argent that it was not going to do a deal based on "[redacted]." Ex. Y (MOCO0004006 at 4007). After the Transaction, Ramsay wrote, "[redacted]

[redacted]." Ex. AA (EMH-Harrison0028030 at 28031).

29. Deny. ComStock's 2024 valuation did not apply a discount for lack of control or a sufficient discount for lack of marketability in its fair market value determination. Ex. BB (EMH-Harrison0045071 at 45152).

30. Deny. Defendants provide no evidence of these donations. When Plaintiff Harrison raised questions about the ESOP, Envision management instructed him not to discuss the ESOP. Ex. CC (Harrison Amended Resp. to Irog. 10); Ex. DD (Harrison Tr. 101:7-102:24).

31. Deny. Nicole Jones is a party to and signed the Stock Purchase, Redemption and Subscription Agreement ("SPA") and the Shareholder Rights and Limitation Agreement ("SRLA"), showing that she sold her Envision shares in the ESOP Transaction. *See, e.g.*, Ex. M (EMH-Harrison0000018 at 58); Ex. AAA (EMH-Harrison000123 at 138); Ex. EE (N. Jones Tr. 50:8-51:8). She knew or should have known that the gift was [redacted]. *See* Ex. U (J. Jones Tr. 62:25-63:25).

32. Deny. Nicole Jones is a party to and signed the SPA and the SRLA, which show the value of the Envision stock gifted to her and which she sold in the ESOP Transaction. *See, e.g.*, Ex. M (EMH-Harrison0000018 at 58); Ex. AAA (EMH-Harrison000123 at 138); Ex. EE (N. Jones Tr. 50:8-51:8). The SPA refers to the ComStock opinion of fair market value for Envision stock. Ex. M (EMH-Harrison0000018 at 46). The closing binder includes ComStock's Fairness Opinion, which sets forth ComStock's opinion on whether the ESOP's purchase price was for no more than fair market value.

Ex. XX (EMH-Harrison0000141 at 141-147); Ex. BBB (EMH-Harrison0000001 at 03); *see also* ¶ 60.

33. Deny. *See* ¶ 32.

34. Deny. *See* ¶ 32. The SPA states the ESOP would acquire 100% of Envision stock. Ex. M (EMH-Harrison0000018 at 21, 30, 33). Nicole Jones testified that the ESOP purchased her Envision stock. Ex. EE (N. Jones Tr. 56:5-7).

35. Deny. The shares that Envision redeemed from Nicole Jones were sold to the ESOP. Ex. M (EMH-Harrison0000018 at 21, 30-31 (§§ 2.1(b), 2.4)); Ex. EE (N. Jones Tr. 56:5-7).

36. Deny. Nicole Jones is a party to and signed the SPA and the SRLA, which show the value of the Envision stock that her husband gifted to her and which she sold in the ESOP Transaction. *See, e.g.*, Ex. M (EMH-Harrison0000018 at 58); Ex. AAA (EMH-Harrison000123 at 138); Ex. EE (N. Jones Tr. 50:8-51:8).

37. Deny. Nicole Jones is a party to and signed the SPA and the SRLA, in which all Sellers made several warrants and representations regarding Envision and the sale of Envision to the ESOP, such as: the ESOP would "[redacted]" that Envision was "[redacted]," that "[redacted]" and that the "[redacted]" on the Disclosure Schedule. Ex. M (EMH-Harrison0000018 at 32-45).

38. Deny. Nicole Jones received a Redemption Note. Ex. E (EMH-Harrison0000391 at 391-393).

**STATEMENT OF ADDITIONAL DISPUTED FACTS**

39. Envision Management, LLC (then owned by Sellers) established the Envision Management LLC Profit Sharing Plan ("PSP") on August 29, 2017. Ex. HH (ARGENT_HARRISON_0009049). Envision Management, LLC appointed Ramsay as the PSP's trustee (defined as a Named Fiduciary) on August 29, 2017, and he accepted his appointment on the same day. Ex. HH (ARGENT_HARRISON_0009049 at 9057 (§ 1.28(b))); Ex. II (ARGENT_HARRISON_0010445).

40. The day the ESOP Transaction closed (December 19, 2017), the PSP was restated as the ESOP, and the Board Defendants removed Ramsay as the trustee and appointed Argent as the ESOP trustee through execution of the ESOP Trust Agreement. Ex. JJ (ECF 108-6 at EMH-Harrison0000211).

41. The Board Defendants are Named Fiduciaries under the ESOP Plan Document. Ex. FF (ECF 108-7 at EMH-Harrison0000288 (§ 1.35)).

42. The Board Defendants possess the power to remove Argent as the ESOP trustee and to appoint a new trustee. Ex. JJ (ECF 108-6 at EMH-Harrison0000220 (§ XI(a))); Ex. FF (ECF 108-7 at EMH-Harrison0000314, 316 (§§ 13.1, 13.7)).

43. Section 12 of the Plan Document provides that the ESOP trustee must vote on any tender offer at the direction of the ESOP Committee. Ex. FF (ECF 108-7 at EMH-Harrison0000313-314).

44. Action taken by Envision is made through "resolution or written direction" by the Board of Directors. Ex. FF (ECF 108-7 at EMH-Harrison0000316 (§ 13.7)).

45. In April 2017, Creps and Jeff Jones met with Argent personnel Mark Shorthouse and Steve Martin, Bryan Cave attorneys, and others about a potential ESOP transaction. Ex. KK (ARGENT_HARRISON_0024282).

46. Envision's legal counsel at Bryan Cave sent an "[redacted]" copy of Envision's draft request for proposal for an ESOP trustee to Argent "[redacted]." Ex. Z (ARGENT_HARRISON_0024285).

47. Jeff Jones stated in a videorecorded presentation to Envision employees that the former owners of Envision maintaining their Board seats was "pre-negotiated with th[e] trustee. . . . And what's unique about ESOPs is—even though the Trustee has power to appoint [the] Board of Directors—the Board of Directors hires the Trustee, which means they can also fire the Trustee. So it's kind of a circular governance . . . ." Ex. LL (EMH-Harrison0020288 at 43 min. & 40 sec. - 44 min. & 23 sec.)[4].

48. During a November 17, 2017 Argent Committee Meeting, Argent's legal counsel, Morrison Cohen, stated that "[redacted]" on the ESOP Transaction was "[redacted]" due to "[redacted]." Ex. MM (ARGENT_HARRISON_0000333 at 335).

49. During the in-person meeting involving Creps, Jeff Jones, Ramsay, Argent, and its advisors, the Sellers inaccurately disclosed that a prior buyer ([redacted]) was interested in purchasing the company for [redacted]. Ex. NN (COMSTOCK_0000691 at 697) ("offer . . . by [redacted] [redacted] [redacted]"); Ex. OO (ARGENT_HARRISON_0029703). In fact, [redacted] offered to pay between [redacted] [redacted]. Ex. GG (CDI000089); Ex. PP (Raschke Tr. 83:3-84:5).

---

[4] Plaintiffs can provide a video file to the Court upon request.

50. The Sellers' initial offer to sell Envision to the ESOP was $[redacted]. Ex. QQ (ARGENT_HARRISON_0029654 at 29655).

51. On December 10, 2017, the draft term sheet reflected a proposed purchase price of $[redacted]. Ex. RR (ARGENT_HARRISON_0026472 at 26473).

52. On December 11, 2017, the Sellers proposed a transaction structure change to Argent. Ex. SS (ARGENT_HARRISON_0026470).

53. During a December 14, 2017 meeting regarding the ESOP Transaction, Argent committee member David Williams "[redacted]. Ex. TT (ARGENT_HARRISON_0001327 at 1328).

54. On December 15, 2017, Mark Shorthouse of Argent confirmed the final ESOP Transaction term sheet that included the purchase price and other material Transaction terms. Ex. UU (ARGENT_HARRISON_0027009).

55. John O'Brien of ComStock expressed his opinion that the "[redacted]" "[redacted]" but did not ask to change that aspect of the deal. Ex. VV (ARGENT_HARRISON_0026562).

56. Mark Shorthouse of Argent told John O'Brien that the Seller's legal counsel still wanted to proceed with the transaction structure change. Ex. Y (MOCO0004006).

57. On December 18, 2017, Argent approved the ESOP Transaction with a $177 million purchase price and the Sellers' December 11 transaction structure change. Ex. WW (ARGENT_HARRISON_0001885 at 1888); *compare* Ex. RR (ARGENT_HARRISON_0026472 at 26473-26474), *with* Ex. A (EMH-Harrison0000007 at 08-09).

58. The Board Defendants suffered conflicts of interest because they were Sellers and ESOP fiduciaries. Ex. L (Halpern Rebuttal ¶ 24).

59. The Board Defendants appointed Jeff Jones, Aaron Ramsay, and Lori Spahn to the ESOP Committee on December 15, 2017, and they did not accept the appointments until December 19, 2017. Ex. D (ARGENT_HARRISON_ 0003657 at 3658); Ex. YY (EMH-Harrison0000297 at 303).

60. Nicole Jones signed the SPA and the SRLA. Ex. M (EMH-Harrison0000018 at 58); Ex. AAA (EMH-Harrison000123 at 138); Ex. EE (N. Jones Tr. 50:8-51:8. The SPA identifies Argent as the ESOP trustee, who executed the SPA on behalf of the ESOP. Ex. M (EMH-Harrison0000018 at 56). She knew or should have known four of the five Sellers were Envision Board members at the time of the ESOP Transaction and would keep their Board seats post-Transaction. Ex. AAA (EMH-Harrison0000123 at 129 ([redacted]). She knew or should have known that the ESOP Plan Document (included in the Transaction closing documents and referenced in the SPA) required that any tender offers to buy Envision would be voted at the direction of the ESOP Committee of which her husband is a member. Ex. EE (N. Jones Tr. 90:8-11); Ex. FF (ECF 108-7 at EMH-Harrison0000313-314 (§ 12)); Ex. BBB (EMH-Harrison0000001 at 04); Ex. YY (EMH-Harrison00000297 at 303); Ex. M (EMH-Harrison0000018 at 42). She knew or should have known that the ESOP purchased Envision stock from the Sellers in exchange for cash, notes, and warrants and that the ESOP transferred cash and other consideration to Sellers as part of the ESOP Transaction. Ex. M (EMH-Harrison0000018 at 30-31, 63).

61. Nicole Jones's knowledge about the ESOP Transaction came from her husband, Seller and Board Defendant Jeff Jones. Ex. EE (N. Jones. Tr. 41:1-8).

62. Jeff Jones viewed selling to the ESOP as beneficial compared to a third-party sale because he did not need to "walk away, retire." Ex. U (J. Jones Tr. 62:7-20).

## LEGAL STANDARD

Summary judgment is appropriate only if the movant demonstrates that (1) "there is no genuine dispute" of material fact, and (2) they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citation omitted). At summary judgment, "[t]he factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Hartkopp v. State Farm Fire & Cas. Co.*, 744 F. Supp. 3d 1214, 1217 (D. Colo. 2024) (citing *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)). "Summary judgment is a drastic remedy" only appropriate where "there is an absence of genuine material fact disputes." *Owners Ins. Co. v. Lennar Corp.*, 2024 WL 415451, at *4 (D. Colo. Feb. 5, 2024) (Sweeney, J.) (citation omitted).

## ARGUMENT

### I. The Evidence Shows that the Board Defendants Exercised their Fiduciary Authority and—Along with Argent—Caused the ESOP Transaction

Defendants contend that "only the Trustee . . . has the fiduciary obligation to represent the interest of ESOP in an ESOP transaction." Br. at 8-9. They also assert that *only* Argent exercised control over the ESOP Transaction and, hence, caused it. *Id.* This argument is contrary to numerous decisions which have allowed ERISA fiduciary breach and prohibited transaction claims against director defendants to proceed to trial even

though they appointed an independent fiduciary to approve an ESOP transaction. *See infra*. Further, the Board Defendants' argument that they did not cause the ESOP Transaction ignores the record. Ample evidence shows that they exercised *de facto* fiduciary authority and control over the ESOP Transaction by (1) orchestrating the trustee selection process to install Argent, (2) pre-negotiating material deal terms to protect their interests, and (3) manipulating and withholding information to ensure Argent's approval. At minimum, this evidence creates fact disputes about whether the Board Defendants caused the ESOP Transaction. *Salama*, 2025 WL 1794458, at *1, *5 (denying summary judgment on factual and legal causation because "[c]ausation in fact is typically a question for the jury" (citation omitted)).

### *A. The Board Defendants—Including Ramsay—Were Fiduciaries*

ERISA has two types of fiduciaries: named fiduciaries and functional (*de facto*) fiduciaries. 29 U.S.C. § 1002(21)(A). The Board Defendants, including Ramsay, were:

- **Named Fiduciaries**: The ESOP Plan Document expressly identifies the Envision Board as a "Named Fiduciary" responsible for appointing the trustee. ¶¶ 41-42. Having appointed Argent, the Board Defendants had a duty to monitor its actions at reasonable intervals. 29 C.F.R. § 2509.75-8 (FR-17 Q&A); *see also Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1141 (D. Colo. 2020) ("fiduciaries 'cannot simply name [other] fiduciaries and then turn a blind eye to the performance of their appointees.'" (citation omitted)), *aff'd*, 1 F.4th 769 (10th Cir. 2021). Defendant Ramsay was also a "Named Fiduciary" while he served as the PSP trustee from August 29, 2017 until the Board restated the PSP as the ESOP and appointed Argent as trustee on December 19, 2017. ¶¶ 39-40.

- **Functional Fiduciaries**: All Board Defendants also exercised discretionary authority and control over plan assets and administration by orchestrating the ESOP Transaction's structure and execution, *see infra*. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties[.]" (citation omitted)).

"Whether a party [acted as] an ERISA fiduciary is a mixed question of fact and law." *See Coldesina v. Estate of Simper*, 407 F.3d 1126, 1131 (10th Cir. 2005) (citation omitted); *In re Schering-Plough ERISA Litig.*, 2010 WL 2667414, at *9 (D.N.J. June 29, 2010).

1. <u>The Board Defendants—Including Ramsay—Engineered the Trustee Selection Process to Install a Compliant Trustee</u>

All Board Defendants caused the ESOP Transaction by engineering a structure in which they maintained control over several key aspects of the Transaction. The Board installed Ramsay (who directly reported to them) as trustee for the ESOP's predecessor plan (the PSP). ¶ 39. Ramsay remained the trustee up until the day the Transaction closed, and Argent was appointed only *after* it approved the Transaction purchase price and material terms. ¶¶ 40, 54, 57.

The Board Defendants also manipulated the trustee selection process to steer the appointment towards Argent, their preferred choice. The record shows that several months before forming the Trustee Selection Committee, Defendants Creps and Jeff Jones met with Argent about the potential Transaction. ¶ 45. Then, during the formal selection process, Sellers' legal counsel sent Argent an "[redacted]" copy of its request for proposal to give Argent "[redacted]" a response. ¶ 46. In fact, internal emails show that a Trustee Selection Committee was created solely to make the selection process "***appear***" arm's-length, rather than to actually ***be*** arm's-length. ¶ 8. The Board also incentivized Ramsay and the other Committee members to pick a compliant Trustee by granting them warrants (similar to stock options) contingent on the ESOP Transaction closing. *Id.* In fact, Seller Jones informed Ramsay that he would receiving substantial incentive compensation if the ESOP transaction closed, to which Ramsay expressed his gratitude. *Id.* Unsurprisingly, the Trustee Selection Committee selected Argent. *Id.* Still,

the Board Defendants waited to appoint Argent as ESOP trustee until *after* Argent notified them that it approved the purchase price and other material Transaction terms. ¶¶ 9, 54. They kept Argent under their thumb because they could fire Argent for any reason or no reason at all. ¶ 42. And, while the Board Defendants should have installed members to the ESOP Committee to monitor Argent during its due diligence process, they failed to appoint Committee members until the Transaction closed.[5] *See* ¶¶ 58-59.

These facts are more than sufficient for a factfinder to conclude that the Board Defendants (including Ramsay) exercised functional control over the ESOP Transaction—precisely the kind of control that can render them liable. *See Chesemore v. All. Holdings, Inc.*, 886 F. Supp. 2d 1007, 1056 (W.D. Wis. 2012) (finding non-trustee liable for ESOP overpayment where he "exercised his control to arrange a transaction that would use plan assets to benefit him personally" and concluding "he entered a prohibited transaction in his role as a fiduciary"), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016); *see also Scalia*, 2021 WL 795270, at *29-31 (denying summary judgment where directors "orchestrated" trustee appointment to rubber-stamp ESOP deal). This Court has repeatedly denied summary judgment on issues of causation which are fact-bound. *See, e.g.*, *Estate of Ward v. Pueblo Cnty., Colo.*, 2025 WL 1359356, at *3 (D. Colo. May 9, 2025), *appeal filed*, *Estate of Ward v. Lucero* (10th Cir. 2025).

---

[5] Plaintiffs' expert, Samuel Halpern, opined, "[T]he Directors *acting from their financially self-interested perspective as Sellers*, initiated, explored, positioned, and ultimately arranged for the sale of their shares to the ESOP and thus, were effectively precluded from acting *from the perspective of Governing Fiduciaries* with the thoroughness, objectivity and independence that Recognized Practices demand . . . . They were simply not in a position effectively to act as fiduciaries . . . or to push Argent to more effectively negotiate with (literally) themselves as Sellers." Ex. L (Halpern Rebuttal ¶ 33).

That Ramsay was not a Board member until after the Transaction closed is irrelevant because he was the ***ESOP trustee*** in the months leading up to closing. He was also the Company's CFO, was actively involved in structuring, negotiating, and executing the ESOP Transaction, and executed Argent's engagement letter. *Walsh v. Reliance Tr. Co.*, 2023 WL 1966921, at *17-18 (D. Ariz. Feb. 13, 2023) (finding company CFO acted as a fiduciary when he executed ESOP trustee's engagement letter and trust agreement).

2. <u>The Board Defendants "Pre-Negotiated" Retaining Control with Argent</u>

The Board Defendants conditioned the ESOP Transaction on their ability to retain control. Defendant Jeff Jones admitted that the Sellers/Board Defendants and Argent "pre-negotiated" that the Sellers would retain control of the Envision Board even after the ESOP ostensibly purchased 100% of Envision stock. ¶ 47. Courts have relied on similar facts to hold board defendants liable for an ESOP's overpayment even when they appointed an independent trustee who made the decision to consummate the transaction. *See Bensen*, 2024 WL 3825085, at *21-22 (in post-trial decision, finding director defendants liable for ESOP's overpayment, in part because the directors retained control of the company while allowing the ESOP to pay for control).

On top of allowing the Board Defendants to retain control over Envision after the ESOP purchased it, Argent feebly negotiated with the Sellers on price.[6] And when material deal terms changed right before closing, Argent did not object—underscoring the Sellers/Board Defendants' dominance over the transaction. ¶¶ 52, 55-57; *Chesemore*, 886 F. Supp. 2d at 1054 (finding the sellers exerted control over ESOP trustee and "[n]o surprise then that when [Sellers] proved inflexible as to either, the trustees just went

[6] Specifically, Argent accepted a purchase price ($177 million) that was [redacted]% of the Board Defendants' initial purchase price offer ($[redacted]). ¶¶ 50, 54, 57.

along”). Furthermore, Argent employees indicated they were “worried” about not closing on the Board Defendants’ preferred timeline, and Argent’s legal advisor admitted that it was “[redacted]” to perform “[redacted].” ¶¶ 48, 53; *see also Bensen*, 2024 WL 3825085, at *21-22 (finding board defendants pushed trustee into an abbreviated diligence timeline).

Argent’s discretion to approve the ESOP Transaction does not shield the Board Defendants from fiduciary liability because the Board Defendants exerted influence and control over the ESOP Transaction, which satisfies ERISA causation. *Keach v. U.S. Tr. Co.*, 234 F. Supp. 2d 872, 882-83 (C.D. Ill. 2002) (directors caused transaction by appointing trustee as part of “inextricably intertwined” plan to effect ESOP sale). Courts have denied summary judgment to similarly-situated board defendants—who appointed an ESOP trustee—because they *exercised* control over ESOP transactions, holding that “there is a genuine issue of material fact as to whether Defendants caused the ESOP to engage in [prohibited] transactions.” *Gamache*, 696 F. Supp. 3d at 1375.

3. The Board Defendants and Ramsay Manipulated Argent’s Process by Withholding and Misrepresenting Material Information

The Board Defendants and Ramsay exerted further control over the ESOP Transaction by misrepresenting a fictional “[redacted]” valuation offer from a third-party buyer, when the real offer was only [redacted]. ¶¶ 19, 49. Argent and its advisors also requested—but were not provided—prior valuations of the company. *Id*. In other words, the Board’s withholding of material information from Argent helped ensure that the ESOP Transaction would go through on their desired terms. Courts have found withholding of complete and accurate information as a basis for liability under § 406(a). *Perez v. Bruister*,

54 F. Supp. 3d 629, 662, 668, 681 (S.D. Miss. 2014) (finding seller/board member liable for overpayment because he "failed to provide complete and accurate information" to the trustee's valuation firm), *aff'd as modified*, 823 F.3d 250 (5th Cir. 2016); *see also Chesemore*, 886 F. Supp. 2d at 1054 (holding seller liable as a fiduciary due to his involvement in ESOP planning and execution process).

### *B. Defendants Misconstrue ERISA and Mischaracterize the Case Law*

The Board Defendants argue that once they appointed an ESOP trustee, the trustee possesses "exclusive authority and discretion to manage and control the assets of the plan," which insulates board members from liability. Br. at 19 (citing 29 U.S.C. § 1103(a)). But this ignores decisions that find individuals—in particular board defendants—to be *de facto* fiduciaries who are liable for an ESOP's overpayment. A fiduciary is defined "not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens*, 508 U.S. at 262. Courts have held that non-trustee fiduciaries can be liable under ERISA where they participated in, influenced, or caused a prohibited transaction, even if they did not approve the transaction themselves. *Gamache*, 696 F. Supp. 3d at 1375 (denying summary judgment where evidence showed board members exercised fiduciary control over the ESOP transaction); *Scalia*, 2021 WL 795270, at *29-31 (denying summary judgment where directors "orchestrated" ESOP sale and trustee appointment).

Defendants' argument is also incompatible with ERISA's framework, which imposes strict duties on all fiduciaries who exercise ***any*** authority or control over plan assets or administration. 29 U.S.C. § 1002(21)(A). If Defendants were correct that only the trustees could be liable, this would become a roadmap for avoiding ERISA liability—

board members could simply install a cooperative trustee and rubber-stamp a sale, no matter how tainted it was. That is precisely the scheme courts refuse to endorse.

Unable to reconcile their position with controlling ERISA authority, Defendants rely on cases that involved no evidence of orchestration—unlike here. For example, in *Foster v. Adams & Assocs.*, the court dismissed claims where plaintiffs relied only on the board's power to monitor the trustee and nothing more. 2020 WL 3639648, at *6-7 (N.D. Cal. July 6, 2020). By contrast, Plaintiffs here present direct evidence of orchestration: pre-selection of Argent, pre-negotiated deal terms, and manipulation of due diligence. In *Fish v. Greatbanc Trust Co.*, the court did not even reach the causation issue because the court found the defendants carried their adequate consideration defense—a fact-based defense not available to Defendants here. 2016 WL 5923448, at *61 (N.D. Ill. Sept. 1, 2016). Even then, *Fish* acknowledged that the board defendants "were undeniably a 'but for' cause of the transaction." *Id.* at *60. And, whether § 406(a)'s causation requirement is "but for" causation or "legal causation," neither are amenable to summary judgment because there are numerous disputes of fact concerning the amount of control the Board Defendants exercised over the Transaction. *Salama*, 2025 WL 1794458, at *1-2, *5 (summary judgment denied for issue of legal causation "for substantially the same reasons" it was denied for the issue of "but for" causation).

Finally, in *Neil v. Zell*, the plaintiffs alleged only that the directors adopted the ESOP—not that they interfered with the trustee's judgment or orchestrated the deal. *See* 677 F. Supp. 2d 1010, 1022-23 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010). This case is the opposite: Plaintiffs have detailed evidence that the Board Defendants steered

trustee selection, controlled deal terms, and withheld material information to ensure the ESOP Transaction closed with their preferred terms.[7]

Unlike in Defendants' cases, Plaintiffs present "something more" than appointing a trustee—such as influencing the transaction structure or terms. *Keach*, 234 F. Supp. 2d at 883. The disputed facts here make summary judgement inappropriate. *See Mountain Food, LLC v. Sentry Ins. Mut. Co.*, 636 F. Supp. 3d 1307, 1313 (D. Colo. 2022) (Sweeney, J.) (denying summary judgement because the "the issues of causation . . . are heavily disputed issues of material fact").

## II. Plaintiffs' § 406(b)(3) Claim Does Not Require Proof of Causation

Defendants similarly contend that Plaintiffs' § 406(b)(3) claim fails because the Board Defendants did not "cause" the ESOP Transaction. Br. at 22-24. That argument does not align with the plain text of § 406(b)(3) or case law interpreting it. Section 406(b)(3) prohibits a plan fiduciary from "***receiv[ing]*** any consideration for his own personal account" in connection with a plan transaction. 29 U.S.C. § 1106(b)(3) (emphasis added). It does not include any requirement that the fiduciary also ***cause*** the

[7] Defendants' remaining caselaw is likewise inapplicable. *See Szalanski v. Arnold*, 609 F. Supp. 3d 698, 704 (W.D. Wis. 2022) (dismissing claim because the plaintiff failed to provide support for why transaction negotiations were fiduciary acts and distinguishing ESOP purchase from ESOP sale); *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 2022 WL 4088166, at *19 (E.D. Wis. Mar. 17, 2022) (analyzing claim against directed trustee who provided valuations but did not approve transaction at-issue), *report and recommendation adopted*, 2022 WL 4080528 (E.D. Wis. Sept. 6, 2022), *judgment entered sub nom. Appvion Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Argent Tr. Co.*, 2022 WL 18278645 (E.D. Wis. Dec. 16, 2022), *aff'd in part, rev'd in part & remanded sub nom. Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928 (7th Cir. 2024), *remanded sub nom. Appvion, Inc. v. Richards*, 2025 WL 346736 (E.D. Wis. Jan. 30, 2025); *Zavala v. Kruse-W., Inc.*, 398 F. Supp. 3d 731, 744 (E.D. Cal. 2019) (dismissing claim because complaint lacked allegations beyond the directors' appointment power); *Akers v. Palmer*, 71 F.3d 226, 230-32 (6th Cir. 1995) (affirming dismissal related to company's annual ESOP contributions that did not constitute a prohibited transaction).

underlying transaction. Defendants' own motion acknowledges as much. *See* Br. at 22 ("Section 406(b) does not expressly state that it applies to the fiduciary who causes a plan to engage in a transaction[.]").

Indeed, when "[r]ead most naturally, § 406(b)(3) is a flat prohibition on a fiduciary's ***receipt*** of consideration in connection with a transaction involving plan assets." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 94 (3d Cir. 2012) (emphasis added). Accordingly, courts in similar ESOP cases hold that "§ 406(b) does not have a causal element; it requires only that the fiduciary received consideration from a transaction involving assets of the plan." *Hurtado v. Rainbow Disposal Co.*, 2018 WL 3372752, at *11 (C.D. Cal. July 9, 2018). *See also Gamino*, 2021 WL 162643, at *6 (same); *Ramirez v. AMPAM Parks Mech., Inc.*, 2025 WL 621546, at *6 (C.D. Cal. Feb. 14, 2025) (same).

Defendants rely on decisions that either do not involve § 406(b)(3) or do not analyze its specific language. Several decisions address fiduciary status under § 406(b)***(2)***, rather than § 406(b)***(3)***. *See Foster*, 2020 WL 3639648, at *9 (quoting § 406(b)(2)); *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 748 (6th Cir. 2010) (affirming dismissal of § 406(b)(2) claim). But § 406(b)(2) decisions are unhelpful where it does not refer to the ***receipt*** of consideration. *See* 29 U.S.C. § 1106(b)(2), (3). Defendants' reliance on *Zavala* is also misplaced. *Zavala* did not analyze the statutory distinctions among § 406(b)(1), (b)(2), and (b)(3); instead, it addressed them together without textual analysis. *Zavala v. Kruse-W., Inc.*, 2021 WL 5883125, at *7-9 (E.D. Cal. Dec. 13, 2021). Defendants' remaining legal authority is also inapposite. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 724-25 (6th Cir. 2000); *Murphy v. Verizon Comm'cns, Inc.*, 2013 WL 5206451, at *14-15 (N.D. Tex. Sept. 16, 2013), *aff'd*, 587 F. App'x 140 (5th Cir. 2014)

simply held that a § 406(b) claim could not proceed in the absence of an underlying prohibited transaction under § 406(a). Those decisions do not support reading a causation element into § 406(b)(3).

Finally, assuming *arguendo* that causation is required, Plaintiffs have shown that a triable issue exists as to whether the Board Defendants caused the ESOP Transaction in violation of 29 U.S.C. § 1106(a)(1)(A), (B), and (E). *See supra* Section I.

## III. Nicole Jones Had Actual or Constructive Knowledge of the Circumstances that Rendered the ESOP Transaction Unlawful

Defendants argue that Nicole Jones cannot be liable for knowing participation because she lacked ***actual*** knowledge that the ESOP overpaid. Br. at 26. This argument fails. First, constructive knowledge—which may be inferred from documents she signed and had access to—is a sufficient basis for liability. Second, this claim does not require knowledge of overpayment. Third, even using their incorrect standard, genuine disputes of material fact regarding Ms. Jones's knowledge precludes summary judgment.

In *Harris Trust*, the Supreme Court held that a nonfiduciary is liable when they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." 530 U.S. at 251. The "circumstances, in turn, involve a showing that the plan fiduciary, with actual or constructive knowledge of the ***facts satisfying the elements of a § 406(a) transaction***, caused the plan to engage in the transaction." *Id.* (emphasis added) (citation omitted). In other words, a transaction is "unlawful" if it satisfies the elements of a § 406(a) prohibited transaction, regardless of whether any exemption under § 408 applies. *Id*. at 250-51. Indeed, courts recognize § 406(a) as imposing *per se* prohibitions on an ESOP's purchase of employer stock. *Chao*, 285 F.3d at 439; *see Eaves*, 587 F.2d at 457-59; *see also Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th

Cir. 2016) ("Five of our sister circuits agree with the position that section 408 exemptions are affirmative defenses, or that the defendant bears the burden of proof, or both."). Most recently, the Supreme Court in *Cunningham v. Cornell* reaffirmed that a prohibited transaction claim requires proving only the elements of § 406(a); it does ***not*** require disproving the affirmative defenses set forth in the § 408 exemptions. 604 U.S. at 703-05. Defendants' contention that knowledge of a § 406(a) violation requires knowledge that the § 408(e) "adequate consideration" exemption does not apply is therefore incompatible with *Cunningham*. *Id*.

### *A. Nicole Jones Knew or Should Have Known the ESOP Transaction Met the Elements of § 406(a)*

Section 406(a)(1)(A) prohibits a fiduciary from causing the sale of property between a plan (the ESOP) and a party in interest (the Board Defendants and spouse Nicole Jones). 29 U.S.C. § 1106(a)(1)(A); *id.* § 1002(14)(F), (H). Section 406(a)(1)(D) bars any transfer of plan assets to a party in interest. 29 U.S.C. § 1106(a)(1)(D).

Nicole Jones had actual or constructive knowledge of the following facts reflected in the SPA and SRLA, both of which she executed:

1. Argent served as the ESOP trustee, knew that it caused the ESOP's purchase of Envision stock from the Sellers, and signed the SPA on the ESOP's behalf;
2. Each Seller was an Envision Board member (or spouse of a Board member) at the time of the ESOP Transaction;
3. The ESOP purchased Envision stock from the Sellers in exchange for cash, notes, and warrants; and
4. The ESOP transferred cash and other consideration to the Sellers.

¶¶ 31, 34-35, 60. These facts establish knowledge of the elements of both § 406(a)(1)(A) and (D) claims. *Harris Tr.*, 530 U.S. at 251; *see also Cunningham*, 604 U.S. at 700 ("Any transaction that satisfies its three elements is presumptively unlawful.").

### *B. Defendants' Authorities Cannot Be Reconciled with the Supreme Court's Cunningham Decision*

Defendants' authorities predate *Cunningham* or elide the statutory distinction between elements and exemptions. *Cunningham* makes clear: § 406(a) prohibitions are "categorical: Any transaction that satisfies its three elements is presumptively ***unlawful***" and § 408 exemptions are affirmative defenses that defendants—not plaintiffs—must prove 604 U.S. at 700 (emphasis added); *see also id.* at 709. Thus, Defendants' reliance on *Gamino v. KPC Healthcare Holdings, Inc.*, 2022 WL 4596576, at *7-8 (C.D. Cal. Aug. 15, 2022)—which required knowledge of overpayment—cannot be squared with *Cunningham*. *Foster* is likewise unhelpful because it does not articulate the applicable standard; rather, it granted summary judgment because the plaintiffs either conceded that the seller had no knowledge or inappropriately relied on inferences that were not supported by evidence. 2020 WL 3639648, at *7.[8]

Defendants also cite *Teets* and *Rozo* for the proposition that a non-fiduciary must know that "the transaction violated ERISA." Br. at 25 (quoting *Teets v. Great-W. Life & Annuity Ins. Co.*, 286 F. Supp. 3d 1192, 1209 (D. Colo. 2017)) (citing *Rozo v. Principal Life Ins. Co.*, 344 F. Supp. 3d 1025, 1037-38 (S.D. Iowa 2018) (adopting *Teets*)). Defendants appear to read *Teets* and *Rozo* as holding that Plaintiffs must identify facts that disprove any potential exemption. Br. at 25. However, *Cunningham's* holding forecloses that position; requiring plaintiffs to plead and disprove all 21 exemptions under § 1108 and the hundreds of regulatory exemptions would "make little sense." 604 U.S. at 705. Again, *Cunningham* confirmed that an ESOP transaction is "presumptively unlawful"

---

[8] The court also denied cross-motions as to two additional sellers' knowledge but did not analyze the contours of *Harris Trust*. *Foster*, 2020 WL 3639648 at *8.

if it meets the ***elements of § 406(a).*** *Id.* at 700. Thus, the knowing participation claim against Nicole Jones requires actual or constructive knowledge that the ESOP Transaction satisfies the § 406(a) elements.

### *C. Even under Defendants' Incorrect Standard, the Record Shows That Nicole Jones Had Constructive Knowledge of the ESOP's Overpayment*

Even assuming *arguendo* that Plaintiffs must show knowledge of overpayment, the record still defeats summary judgment. As a preliminary matter, Defendants' brief focuses entirely on Nicole Jones's subjective "understanding" and her actual knowledge. Br. at 27-28. But constructive knowledge—which may be inferred from the documents she signed and had access to—is sufficient under *Harris Trust*. 530 U.S. at 251 (requiring "actual or constructive knowledge of the circumstances").

Nicole Jones executed the SPA and SRLA, which establish constructive knowledge that the Sellers retained control over Envision, despite selling 100% of their stock to the ESOP. ¶ 60. Evidence showing actual or constructive knowledge that the Sellers retained control of Envision is sufficient to create a genuine issue of material fact concerning Nicole Jones's knowledge of the ESOP's overpayment. *Walsh*, 2023 WL 1966921, at *29 (denying summary judgment for knowing participation claims when sellers retained control of the company they sold to ESOP). For example, the SRLA shows that the four Sellers remained on the Envision Board after the Transaction, thereby demonstrating that control was not transferred to the ESOP. ¶ 60. Also, the SPA references the ESOP Plan Document, which gave ESOP Committee members—not the ESOP Trustee—the power to vote on any tender offers to buy Envision from the ESOP. ¶ 60. And of course, Nicole Jones had access to her husband (Seller, Board Defendant, and ESOP Committee member Jeff Jones) for information about the Transaction; and he

testified that selling to a third-party (rather than the ESOP) meant losing control. ¶¶ 61-62. From this evidence, a reasonable factfinder could infer that Nicole Jones knew or should have known the ESOP paid for control that it did not receive.

Defendants argue that Ms. Jones played no role in Argent's diligence process and did not "understand[]" Argent's role. Br. at 27-28. But knowledge of Argent's diligence process is not required to maintain a knowing participation claim. *See Walsh*, 2023 WL 1966921, at *29 (denying summary judgment on directors' knowing participation). More importantly, the SPA (which she signed) identifies Argent's role. *See supra* Section IV.A. Indeed, all of Defendants' arguments rely on the lack of actual knowledge or understanding; they fail to grapple with material disputes of fact concerning Nicole Jones's ***constructive*** knowledge. *See Scalia*, 2021 WL 795270, at *37 (knowing participation claim is "a fact-intensive inquiry, precluding summary judgment"). Ultimately, these issues are for the factfinder to decide at trial. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1024 (3d. Cir. 2008) ("summary judgment is often inappropriate when a state of mind, such as intent or knowledge, is an element of a claim."); 10B Fed. Prac. and Proc. Civ. § 2730 (4th ed.) (same); *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 n.2 (10th Cir. 1985) ("the affidavit of an interested party concerning facts known only to him" are "particularly inappropriate for summary judgment disposition." (citation omitted)).

## CONCLUSION

Defendants do not meet their burden under Rule 56. Plaintiffs present material fact disputes regarding the Board Defendants' fiduciary status, their role in causing prohibited transactions, their receipt of improper consideration, and Nicole Jones's knowledge of the circumstances rendering the ESOP Transaction unlawful.

Dated: October 21, 2025

Respectfully submitted,

_/s/ Michelle C. Yau_
Michelle C. Yau
Caroline E. Bressman
Ryan A. Wheeler
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
Suite 800
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
cbressman@cohenmilstein.com
rwheeler@cohenmilstein.com

*Attorneys for Plaintiffs and the Rule 23 Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of October, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

LGolumbic@groom.com
PRinefierd@groom.com
WDelany@groom.com
rick.pearl@faegredrinker.com
asalek-raham@groom.com

*/s/ Michelle C. Yau*
Michelle C. Yau