**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:21-cv-304-CNS-MDB**

ROBERT HARRISON and GRACE HEATH, on behalf of themselves, the ENVISION MANAGEMENT HOLDING, INC. ESOP, and all other similarly situated individuals,

Plaintiffs,

v.

ENVISION MANAGEMENT HOLDING, INC. BOARD OF DIRECTORS, ENVISION MANAGEMENT HOLDING, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, ARGENT TRUST COMPANY, DARREL CREPS, III, PAUL SHERWOOD, JEFF JONES, NICOLE JONES, AARON RAMSAY, TANWEER KHAN, and LORI SPAHN,

Defendants.

---

**ENVISION DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. PLAINTIFFS' ENTIRE CASE IS GROUNDED IN MISCONCEPTIONS ABOUT ERISA AND ESOPS........ 1

III. REPLY CONCERNING ENVISION DEFENDANTS' UNDISPUTED FACTS........ 2

IV. ENVISION DEFENDANTS' RESPONSE CONCERNING pLAINTIFFS' ADDITIONAL FACTS ........ 9

V. ARGUMENT ........ 13

- A. Aaron Ramsay Did Not "Cause" the ESOP Transaction........ 13
- B. Creps, Jeff Jones, Dr. Khan, and Sherwood Did Not "Cause" the ESOP Transaction ........ 14
- C. Creps, Jones, Dr. Khan, and Sherwood Were Not Fiduciaries for Purposes of ERISA Section 406(b)........ 18
- D. Nicole Jones Did Not Have Actual or Constructive Knowledge of Argent's Good Faith Determination of Fair Market Value........ 19

VI. CONCLUSION........ 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Chesemore v. All. Holdings, Inc.*,
886 F. Supp. 2d 1007, 1013 (W.D. Wis. 2012) .......... 14

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) .......... 13

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) .......... 2, 18

*Evans v. McDonald's Corp.*,
936 F.2d 1087 (10th Cir.1991) .......... 13

*Fish v. Greatbanc Tr. Co.*,
No. 09 C 1668, 2016 WL 5923448 (N.D. Ill. Sept. 1, 2016) .......... 17

*Foster v. Adams & Assocs., Inc.*,
2020 WL 3639648 (N.D. Cal. July 6, 2020) .......... 16, 17, 18

*Gray v. Briggs*,
45 F. Supp. 2d 316 (S.D.N.Y. 1999) .......... 20

*Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000) .......... 19

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) .......... 19

*Muff v. Wells Fargo Bank NA*,
71 F.4th 1094 (8th Cir. 2023) .......... 13

*Nat'l Sec. Sys., Inc. v. Iola*,
700 F.3d 65 (3d Cir. 2012) .......... 19

*Patelco Credit Union v. Sahni*,
262 F.3d 897 (9th Cir. 2001) .......... 19

*Scalia v. Reliance Tr. Co.*,
2021 WL 795270 (D. Minn. Mar. 2, 2021) .......... 15

*Szalanski v. Arnold*,
609 F. Supp. 3d 698 (W.D. Wis. 2022) .......... 17

*Walsh v. Bowers*,
561 F. Supp. 3d 973 (D. Haw. 2021) .......... 18

*Zavala v. Kruse-W., Inc.*,
398 F. Supp. 3d 731 (E.D. Cal. 2019) ... 18

**Statutes, Rules & Regulations**

29 U.S.C. § 1002(21) ... 18

29 U.S.C. § 1102(b)(2), (c)(3), 1105(c) ... 16

29 U.S.C. § 1108(e) ... 19

29 U.S.C. § 1108(e), 1002(21) ... 2

ERISA 406(b)(3) ... 19

ERISA § 408 ... 20

ERISA § 502(a)(3) ... 19, 20

**Other Authorities**

Hearing of the Committee on Finance, July 19 and 20, 1978, at pp. 314-315 ... 17

*https://www.finance.senate.gov/imo/media/doc/sprt95-31.pdf* ... 2

## I. INTRODUCTION

Reading Plaintiffs' fundamental theory in this case—that the sellers/board members manipulated an ESOP stock transaction, with the company's investment banker (CSG), in order to improperly influence an allegedly conflicted[1] trustee (Argent), the trustee's independent valuation advisor (ComStock), and the trustee's independent industry expert (Willamette), in plain view of the parties' respective law firms (Morrison Cohen and Bryan Cave)—one would expect Plaintiffs to present mountains of emails, documents, and other evidence of this massive conspiracy. Certainly one would expect compelling evidence of how the sellers/board members influenced the precise valuation issues Plaintiff raise with ComStock's assessment.

Plaintiffs present none of that. They rely on wild conspiracy theories, unsupported inferences, and strained (and demonstrably incorrect) interpretations of ERISA to try and manufacture liability. Worse yet, Plaintiffs ***yet again*** change their theory[2] by improperly proposing a *completely new legal theory* not in their Amended Complaint. Conspiracy theories are not evidence, and Plaintiffs cannot re-write ERISA to try and create liability. If the Sellers wanted more for their stock, all they had to do was wait a couple of days to get the benefit of the pending tax cuts. *See* Dkt. No. 332 at 2-3. This Court should grant partial summary judgment.

## II. PLAINTIFFS' ENTIRE CASE IS GROUNDED IN MISCONCEPTIONS ABOUT ERISA AND ESOPS

---

[1] Plaintiffs cannot contest that ERISA does not prohibit conflicting interests. Dkt. No. 332 at 9.

[2] Plaintiff first alleged—falsely—the Plan paid two prices for stock. ECF 91 ¶¶ 9-13. Then Plaintiffs spent years hinging their case on supposed DOL determinations *that the DOL said it had never made*. ECF 202, 207, 220, 275, 332 at 4.

Plaintiffs are trying to lead this Court into erroneous beliefs. ***First***, Plaintiffs miss the point when they argue that ESOP fiduciaries are bound by the same standard of fiduciary conduct as all ERISA fiduciaries. Opp. at 1. The same *provision* applies, but the *interpretation* depends on the type of plan and the decision involved. ESOP fiduciaries act like ESOP fiduciaries, not, as Plaintiffs argue, like fiduciaries of 401(k) plans.[3] Congress (and courts) have made it crystal clear that ESOPs are not traditional retirement plans.[4] ***Second***, this case is not a valuation dispute; the authority on this point is overwhelming, which Plaintiffs must know, because their expert, Samuel Halpern, was counsel at the DOL when it first lost this argument more than 40 years ago in *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) (the adequate consideration standard focuses on conduct, not the valuation); P. Ex. M, Halpern Resume at 4. Argent's duty was to assess "fair market value ***as determined in good faith***." 29 U.S.C. § 1108(e), 1002(21) (emphasis added). ***Third***, this case is about Argent's good-faith reliance on its various advisors; no one is claiming some "magic-wand," blind-reliance theory. *See* Opp. at 4-5. ***Fourth***, this case is not about Plaintiffs' investment of hard-earned retirement money. It is undisputed they paid nothing in the ESOP transaction—just as Congress intended.[5]

## III. REPLY CONCERNING ENVISION DEFENDANTS' UNDISPUTED FACTS

---

[3] *See* Dkt. No. 198, pp. 2-4 (courts must consider the type of plan and decision at issue when interpreting ERISA's fiduciary provisions).

[4] *Id.*, pp. 6-7 (ESOPs are not traditional retirement plans); Dkt. No. 332, pp. 6-8.

[5] A Congressional handbook explains that the ESOP borrows money from a bank or other lender, as it did in this case. *See* *https://www.finance.senate.gov/imo/media/doc/sprt95-31.pdf* , at 2. Furthermore, ESOPs benefit employees who stay with the company the longest, because—unlike traditional retirement plans—ESOP stock does not vest immediately. *Id.* An ESOP is not a wage, as Plaintiffs falsely claim. It is an incentive and opportunity for participants to work hard, stay with the company, and potentially help grow the value.

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed. Plaintiffs present no evidence Nicole Jones was a director, partner, or officer. Plaintiffs denied by stating that Nicole Jones was a *shareholder*.

6. Undisputed. Plaintiffs present no evidence that Creps, Jones, and Sherwood did not interview three firms or CSG did not advertise its accolades. Plaintiffs denied by falsely stating that Creps, Jones, and Sherwood—not Envision—retained CSG. The CSG engagement letter is with Envision. Pearl Decl. Ex. R (EMH-HARRISON0018609).

7. Undisputed.

8. Undisputed. Plaintiffs present no evidence that EMHI did not appoint a Trustee Search Committee to identify, evaluate and select an institutional trustee, and that the members were *non-Sellers* Ramsay, Jared Oldham, and Linda Szymczak. Ramsay, Oldham, and Szymczak communicated with trustee candidates, *see* Pearl Decl. Ex. S (EMH-Harrison0015963-65), Ex. T (EMH-Harrison0025638-39), Ex. U (EMH-Harrison0025658-60); interviewed potential trustees, *see* Pearl Decl. Ex. V (EMH-Harrison0025536); discussed the candidates, *see* Pearl Decl. Ex. W (EMH-Harrison00256667-69); and selected Argent, *see id.*, all without Seller involvement. The Committee informed the Sellers of their decision *after* their independent selection process was complete. Pearl Decl. Ex. X (EMH-Harrison0025666) ("[redacted]") It is undisputed that the selection process took place without Board/Seller involvement.

9. Undisputed. Plaintiffs present no evidence that EMHI and Argent did not enter into an engagement letter where EMHI appointed Argent as trustee of the to-be-formed ESOP.

10. Undisputed. Plaintiffs present no evidence that EMHI and Argent did not enter into a Trust Agreement where EMHI appointed Argent as trustee of the Trust.

11. Undisputed. Plaintiffs present no evidence that the engagement letter does not contain the quoted language. Plaintiffs deny by pointing to a different statement in the engagement letter.

12. Undisputed. *See* ¶ 11.

13. Undisputed. Plaintiffs present no evidence that Mark Shorthouse of Argent did not understand Argent had the responsibility to determine whether and on what terms the Plan might purchase EMHI stock. Plaintiffs deny by claiming the Board had *other* duties, which the Envision Defendants dispute. Regardless, the Board and Argent are separate entities with distinct responsibilities. The *Board*'s alleged responsibilities do not raise a fact dispute about Shorthouse's understanding of *Argent*'s role.

14. Undisputed. Plaintiffs present no evidence contradicting that Argent alone retained ComStock. Jeff Jones signed for EMHI's limited agreement to pay fees.

15. Undisputed. Plaintiffs present no evidence contradicting that Argent alone retained Morrison Cohen. Jeff Jones signed for EMHI's limited agreement to pay fees.

16. Undisputed. Plaintiffs present no evidence that contradicts that Argent alone retained Willamette. Jeff Jones signed for EMHI's limited agreement to pay fees.

17. Undisputed. Plaintiffs present no evidence that contradicts that Creps and Jones met in person with Argent and Wilhoite, whom Argent retained to assist Argent with its evaluation of the Company and the proposed transaction. Plaintiffs deny by claiming that

Wilhoite did not view his role as *ensuring* Argent followed his advice. This is irrelevant to whether *Creps and Jeff Jones* understood and believed that Argent would *endeavor* to follow Wilhoite's advice.

18. Undisputed. Plaintiffs present no evidence that Creps and Jeff Jones were not aware Argent retained advisors for the proposed transaction. Plaintiffs deny by falsely stating, *see* ¶¶ 14-15, that Argent alone did not retain both firms.

19. Undisputed. Plaintiffs make meritless arguments—*see* ¶ 49—that the Board withheld information from Argent about a previous offer. They also claim the Board withheld four prior valuations but do not cite the valuations allegedly withheld. Even if true, none of this would not negate the fact that Creps and Jeff Jones were aware Argent was conducting significant diligence.

20. Undisputed.

21. Undisputed. Plaintiffs present no evidence that the Plan's acquisition of EMHI shares was not memorialized in a Stock Purchase, Redemption and Subscription Agreement (SPA) that Argent executed on behalf of the ESOP Trust. Plaintiffs deny by stating that the parties executed other agreements, which does not raise a dispute about the truth of the original fact.

22. Undisputed. Plaintiffs present no evidence that the Plan's acquisition of EMHI stock was not financed *in part* through seller notes and that Argent executed the notes on behalf of the ESOP Trust. Plaintiffs deny by stating the parties executed other agreements, which does not raise a dispute about the truth of the original fact. Moreover, the additional agreement was also executed by Argent on *behalf of the ESOP Trust*. P. Ex. K at 466.

23. Undisputed. Plaintiffs present no evidence that the Plan did not also finance the

acquisition of EMHI stock through an "internal" loan from EMHI and that Argent executed the notes on behalf of the ESOP Trust. Plaintiffs deny by stating the parties to the ESOP Transaction executed *other* agreements, which does not raise a dispute about the truth of the original fact.

24. Undisputed. Plaintiffs present no evidence that the Board had authority to demand that Argent approve the transaction, or that the Board had *any* communications with Argent about Argent's decision on behalf of the Plan. Plaintiffs dispute by claiming that the Board *appointed* Argent, decided to remain on the Board after the close, and did not provide certain information to Argent. As discussed below, *even if true*, those do not create a genuine fact dispute whether the Board *made the decision* to enter into the ESOP Transaction *on behalf of the ESOP*. The Board had no authority to enter into the ESOP Transaction on behalf of the ESOP and did not make the decision on behalf of the ESOP.

25. Undisputed. *See* ¶ 24.

26. Undisputed. *See* ¶ 24.

27. Undisputed. Plaintiffs present no evidence that any Board member executed documents on behalf of the Plan for the transaction. Plaintiffs deny by stating the Board "acted" on behalf of the ESOP when the Board appointed Argent and the Board approved the ESOP Transaction, citing the *corporate* resolutions by which the Board voted *on behalf of the company, EHMI*. The Board signed *no* documents on behalf of the ESOP, and the Board's decision *on behalf of the company* is not on behalf of the Plan.

28. Undisputed. Plaintiffs present no evidence to contradict that Creps, Jeff Jones, and Sherwood believed tax cuts would be enacted imminently and increase stock value, and they decided not to delay to give the benefit to the Plan. The emails Plaintiffs cite are

irrelevant to the sellers' belief, *before the transaction's close*, that the value *would increase* when the tax cuts were enacted. Others, [redacted] D. Ex. M at 85; *see also* ECF 332 at n.4. Ramsay was not a valuation expert and did not testify as the Sellers' belief. Furthermore, after the transaction, Ramsay observed that the value had increased due to the tax cuts. P. Ex. AA at 28030-31.

29. Undisputed. Plaintiffs present no evidence to contradict that the value of EMHI's stock increased each year since the ESOP Transaction or Plan stock was valued at $2,842.59 per share as of December 31, 2024. Plaintiffs deny by claiming the 2024 valuation did not apply certain discounts, but they cite only the valuation itself and no fact support for their interpretation of that valuation. P. Ex. BB. No evidence disputes the accuracy of the 2024 valuation. Moreover, in their briefing on class certification, Plaintiffs said, "Defendants wrongly assert that one of Plaintiffs' allegations supporting overpayment…would require all later valuations of Envision stock to be lower. Nonsense. The Complaint seeks no remedy relating to the post-Transaction stock valuations." ECF 214 at 5. Plaintiffs ***yet again*** change another argument.

30. Undisputed. Plaintiffs present no evidence that Creps, Sherwood, and Jeff Jones have *not* donated to provide grants to employees. Plaintiffs deny by stating that Plaintiff Harrison was told not to discuss the ESOP when he asked questions—this has nothing to do with charity.

31. Undisputed. Plaintiffs present no evidence that Nicole Jones had any understanding of why Jeff Jones gifted stock to her. Plaintiffs deny by stating Ms. Jones

knew or should have known the gift was to avoid taxes,[6] citing a portion of Jeff Jones's deposition testimony. P. Ex. U at 62:25-63:25. The deposition testimony cited addresses *Jeff Jones's* understanding of potential benefits of doing an ESOP transaction generally—it does not address why Mr. Jones gifted EMHI stock to Ms. Jones or her understanding.

32. Undisputed. Plaintiffs present no evidence that Nicole Jones understood a good-faith assessment of "fair market value" of stock. Plaintiffs deny by stating that Ms. Jones signed transaction documents which stated the redemption price, but knowledge of price is not knowledge of Argent's good-faith assessment. Plaintiffs state that the closing binder contained ComStock's fairness opinion, but the fairness opinion *supports* the propriety of the transaction, and it does not establish Ms. Jones knew or should have known of any valuation principles or an alleged lack of good faith on Argent's part.

33. Undisputed. Plaintiffs present no evidence that Nicole Jones saw the fairness opinion ComStock provided to Argent. *See also* ¶ 32.

34. Undisputed. Plaintiffs present no evidence that Ms. Jones understood anything about the transaction other than her shares were redeemed. In denying, Plaintiffs cite deposition testimony: "I'm not clear on how the transaction worked." P. Ex. EE at 56:3-4.

35. Undisputed. Plaintiffs present no evidence that disputes that *EMHI* redeemed shares held by Nicole Jones. Plaintiffs deny by stating that the shares EMHI redeemed from Nicole Jones were sold to the ESOP, citing the SPA. The SPA states [redacted] P Ex. M at 30 (§§

[6] The suggestion that it is improper to structure an ESOP transaction to maximize tax savings is ludicrous. Congress repeatedly explained that it wanted sellers to personally benefit from tax benefits Congress created specifically for ESOPs. *See* Employer Handbook, at 4-5; ECF 332 at 8.

2.1(b), 2.4)).

36. Undisputed. Plaintiffs present no evidence that Nicole Jones understood how the redemption price was determined. Plaintiffs deny by stating that Ms. Jones signed transaction documents stating the redemption price, not how that price was determined.

37. Undisputed. Plaintiffs present no evidence that Nicole Jones communicated with Argent or advisors involved in the proposed transaction or that Ms. Jones knew anything about Argent's due diligence process. Plaintiffs deny by stating that Ms. Jones signed transaction documents, which made certain representations about corporate topics—this has nothing to do with Argent's process.

38. Undisputed. Plaintiffs do not present any evidence that Nicole Jones received a Seller Note *from the Plan*. Plaintiffs deny this fact by stating that Ms. Jones received a Redemption Note. P. Ex. E at 391-393. The Redemption Note is a note *from EMHI* to Ms. Jones, not the Plan.

## IV. RESPONSE CONCERNING PLAINTIFFS' DISPUTED FACTS

39. Undisputed. Does not create a fact dispute regarding Argent's sole discretion to act on behalf of the ESOP. Ramsay countersigned the Argent engagement as "CFO Trustee Committee" on September 28, 2017. D. Ex. I at 80. Plaintiffs cite no evidence that Ramsay somehow was ESOP trustee because of his role with the profit sharing plan. There is no genuine fact dispute that Argent, not Ramsay, was trustee of the Plan for the ESOP Transaction. *See* ¶¶ 9-12.

40. Disputed, because Plaintiffs misstated the documents, and does not create a fact dispute regarding Argent's sole discretion to act on behalf of the ESOP. On December 15, 2017, four days before the close, EMHI, through written consent of the Board, [redacted]

[redacted] P. Ex. D at 3657. EMHI further resolved to [redacted] *Id*. at 3658.

41. Disputed but not material. The Board Defendants were not trustees and were "Named Fiduciaries" only while they were actually on the Board (Aaron Ramsay was not appointed to the Board until more than a month after the ESOP Transaction). *See* ¶ 2.

42. Disputed but not material. Does not create a fact dispute regarding Argent's sole discretion to act on behalf of the ESOP.

43. Undisputed. Does not create a fact dispute regarding Argent's sole discretion to act on behalf of the ESOP. Section 12 of the Plan Document relates to post-transaction events, not the transaction itself. The ESOP Committee was not formed until after the transaction. *See* ¶ 39. Argent was discretionary trustee for the proposed transaction on behalf of the Plan, *see* ¶¶ 9-11, 39.

44. Undisputed. Does not create a fact dispute regarding Argent's sole discretion to act on behalf of the ESOP.

45. Undisputed. Does not create a fact dispute regarding Argent's sole discretion to act on behalf of the ESOP.

46. Undisputed. Does not create a fact dispute regarding Argent's sole discretion to act on behalf of the ESOP. Steve Schaffer sent the cited email on September 5, 2017. On that *same day*, Schaffer *also* sent the RFP to GreatBanc Trust Company, stating,

"[redacted]," the same thing he stated in the email to Argent. Pearl Decl. Ex. Y (EMH-Harrison0016640). Schaffer sent the request for proposal to two other candidates *one day later*, on September 6, 2017. Pearl Decl. Ex. Z (EMH-Harrison0016567) and Pearl Decl. Ex. AA (EMH-Harrison0016573).

47. Undisputed.

48. Undisputed. Does not create a fact dispute regarding Argent's sole discretion to act on behalf of the ESOP. Independent, outside legal counsel was not concerned [redacted] P. Ex. MM at 335.

49. Disputed but not material. The handwritten notes do not say "[redacted]." P. Ex. NN at 697. Further, the notes do not specify details [redacted] P. Ex GG, P. Ex. PP at 83:3-84:5.

50. Undisputed.

51. Undisputed.

52. Undisputed. The Envision Defendants state further that the structure change did not change the purchase price. The mechanics differed under the updated structure, but the outcome did not. P Ex. TT at 1327 ("[redacted]

[redacted]

53. Undisputed that the quote appears in the cited document, which are minutes of an Argent committee meeting that took place on December 14, 2017. One of the items discussed was [redacted] *Id.* at 1327. For context, [redacted] *Id.* [redacted] *Id.* Moreover, regardless of any "concerns" about the Company's reaction if the closing was delayed, *the closing was delayed anyway*, because it is undisputed that the ESOP Transaction closed on December 19, 2017, five days after the meeting, and four days after the initial December 15 closing date.

54. Undisputed.

55. Undisputed. *But see* ¶ 52.

56. Undisputed. *But see* ¶ 52.

57. Undisputed.

58. Disputed, because Plaintiffs do not specify what "conflicts of interest" the Board allegedly "suffered" simply because they were Sellers and ESOP fiduciaries, but not material. *See supra* 17.

59. Undisputed.

60. Undisputed that Nicole Jones signed the SLRA and SPA and that the SPA identifies Argent as the ESOP Trustee. This does not create a fact dispute regarding Ms. Jones's knowledge.

61. Undisputed.

62. Undisputed that Jeff Jones viewed this as one benefit, among "several," of selling to an ESOP. P. Ex. U at 62:10.

## V. ARGUMENT

### A. Aaron Ramsay Did Not "Cause" the ESOP Transaction

The Envision Defendants sought summary judgment on Count I against the "Board Defendants" for supposedly causing the ESOP to purchase stock and borrow money. ECF 91 ¶¶ 116-27. In particular, Plaintiffs allege that "[b]ecause the Board… also had the power to direct Argent with respect to decisions for the ESOP, they also caused the ESOP Transaction…" *Id*. at ¶ 123. It is ***undisputed***, however, that Ramsay was not a Board member until after the transaction closed, and Plaintiffs agree. Opp. at 20. It was impossible for Ramsay to have participated because he was not on the Board until well after the ESOP Transaction's close.

In their Opposition, Plaintiffs propose a new legal theory not pleaded in the Amended Complaint and not premised on Ramsay's (later) role as a Board member. Plaintiffs argue his status as a Board member is "irrelevant" because he allegedly was the ESOP "trustee" for purposes of evaluating and agreeing to the ESOP Transaction. *Id*. But a plaintiff "cannot allege one theory of liability in a complaint" and then "turn around and surprise [a defendant] at the summary judgment stage" with a different theory of liability. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000); *see also Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090–91 (10th Cir.1991) (even liberalized pleading rules do not allow last-minute changes to plaintiff's theories). For Plaintiffs to attempt to bring new claims is outrageous.

In addition, Plaintiffs' new claim is frivolous. Ramsay was appointed trustee of the trust of a predecessor profit sharing plan, which was eventually amended and renamed

as the Plan and ESOP Trust, from which Ramsay resigned as trustee, before the ESOP Transaction closed. SUMF ¶¶ 39-40. Months before the ESOP Transaction, ***Argent was engaged*** as a trustee of the predecessor profit sharing plan, which Argent recognized would be restated as the Plan. *See id*. Argent assumed "[redacted]" *Id*. ¶ 11-12. Argent, and only Argent, was trustee for the transaction that Plaintiffs challenge. Plaintiffs do not cite a single fact suggesting that anyone thought Ramsay was the Plan's trustee, or that Ramsay took any action on behalf of the Plan.[7]

### B. Creps, Jeff Jones, Dr. Khan, and Sherwood Did Not "Cause" the ESOP Transaction

Count I alleges that the actual Board members caused the Plan to engage in the ESOP transaction and enter into loans. Plaintiffs do not genuinely dispute the general rule that an *ESOP trustee* "causes" a transaction for purposes of ERISA's prohibited-transactions provisions, or that Argent was trustee. SUMF ¶¶ 9-12; 39-40. Plaintiffs rely on a rare exception if a trustee "rubber stamps" a company defendant's decision. Opp. at 19. This requires egregious interference from the company defendants not present here. For example, in *Chesemore v. All. Holdings, Inc.*, board defendants ***were also the ESOP trustees***. 886 F. Supp. 2d 1007, 1013 (W.D. Wis. 2012). The board planned the transaction and, as trustees, "negotiated" the deal. *Id*. At the last minute, they appointed an outside trustee and told him "he could not renegotiate," he could "not raise any issues

[7] Plaintiffs also state that Ramsay should be liable in Count I as EMHI's CFO due to his involvement in the ESOP Transaction and for executing Argent's engagement letter. Once again, this is a new theory not pleaded in the complaint, and thus is untimely. Moreover, it is black-letter law that a corporate officer's duties relating to an ESOP do not result in fiduciary discretion over the ESOP's decision to enter into the ESOP Transaction. *See* ECF 332 at n.12.

he believed could be changed to improve the transaction for the ESOP," and his role was "to provide a simple 'thumbs up or thumbs down.'" *Id*. They required the trustee to rely on a valuation prepared for the *company defendants and sellers*. *Id*. at 1034.

The other case Plaintiffs cite, *Scalia v. Reliance Tr. Co.*, did not even involve a claim that board members "caused" prohibited transactions. The claim was a general breach of fiduciary duty claim because company defendants pre-determined the transaction price, and then ensured appointments of a trustee (without considering any other candidates) and advisors to agree to that price. 2021 WL 795270, at *29 (D. Minn. Mar. 2, 2021). The court denied cross motions for summary judgment because of a fact dispute whether the company defendants "orchestrated" the transaction and could be considered fiduciaries. *Id*. at *30.

Here, no genuine fact dispute exists: Argent did not rubber stamp the deal and the Board members did not "cause" the ESOP to agree to the transaction. The Board defendants were not trustees, they did not select Argent, the deal was not "pre-negotiated" at a set price, they did not restrict Argent's selection of or reliance on its own advisors, and Argent took significant and material action, independently. SUMF ¶¶ 8-20.

Plaintiffs argue that *Envision's counsel* sent Argent the RFP [redacted]" to an advantage (apparently roping lawyers into the alleged conspiracy). *Id*. ¶ 46. But not a single *fact* suggests there was any reason to choose Argent over others. If sending an RFP before sending to others was part of some conspiracy to control Argent's decision-making, surely there would be factual evidence of ***how Argent's actual decision-making*** was controlled by the Board. There is none. What is more, Plaintiffs are trying to mislead this Court: company counsel sent the *same RFP* "[redacted]*"* to another trustee

the same day, and then to *two other trustees* a day later. *Id.* ¶ 46.

Plaintiffs next claim Argent was reluctant to push back the closing date, originally December 15, because they did not think the other side would agree. But, as Plaintiffs did not inform this Court, ***the closing was pushed back to December 19 anyway***. SUMF ¶ 53. Plaintiffs then misleadingly argue that the company or board members changed the transaction structure last-minute and that ComStock did not push back on the change—but this is a red herring. The *structure* had no impact on price or any of Plaintiffs' claims in this case. *Id.* ¶¶ 55-56. And Plaintiffs have not presented a shred of evidence that *ComStock* was part of some massive conspiracy.

Plaintiffs cite more benign facts. They argue that the Board technically appointed Argent. This argument is just confusing. A separate Trustee Selection Committee interviewed and selected Argent. *Id.* ¶ 8. In any event, ERISA not only permits, but requires named fiduciaries to appoint other fiduciaries, and it allows fiduciaries to allocate fiduciary responsibilities to others. 29 U.S.C. 1102(b)(2), (c)(3), 1105(c).[8] The appointing fiduciary is not deemed to control the appointed fiduciary. Once fiduciary responsibility is allocated, the named fiduciary "shall not be liable for an act or omission" of the person to whom duties are allocated (with narrow exceptions). *Id.* For this reason, among many others, the mere *appointment* of an independent ESOP trustee does not mean that appointing parties in any way "caused" the trustee's decisions. *See Foster v. Adams & Assocs., Inc.*, 2020 WL 3639648, at *7 (N.D. Cal. July 6, 2020) (company defendants who

---

8 Once again, Plaintiffs are trying to challenge perfectly permissible conduct that Congress encouraged, namely for a board of directors to select fiduciaries of an ESOP. *See, e.g.* 132 Cong. Rec. S7892-02, 1986 WL 776243 ("it is not at all uncommon or undesirable for individual fiduciaries selected by the board of directors to be responsible for managing a company's ESOP.").

had appointed ESOP trustee did not "cause" the ESOP transaction).

Plaintiffs also argue that the Board members "orchestrated" the transaction because the Board defendants decided to remain on the board after the close. This has nothing to do with Argent's authority on behalf of the Plan. Moreover, Plaintiffs (yet again) are attempting to challenge conduct that is perfectly permissible.[9] In the cases the Envision Defendants cited in their motion, the board defendants decided to remain on the board, but they did not cause the ESOP Transaction when an independent trustee was appointed. *See, e.g.*, *Foster*, 2020 WL 3639648, at *7; *see also* ECF 332 at 19-21.

Last, Plaintiffs argue that the Board defendants misled Argent and ComStock about a previous "offer" from CDI—Plaintiffs claim [redacted] SUMF ¶ 49. The documents evince no deliberate attempt to mislead Argent—at best, the evidence about the informal discussions with CDI show various numbers informally thrown around. *Id*. And Plaintiffs have not demonstrated how this resulted in the Board effectively controlling Argent's decision such that Argent rubber-stamped the deal. Argent engaged expert, independent advisors. Not a single person testified that the CDI discussions about 18 months before the transaction were material to fair market value.

This is because a third-party indication of interest is not fair market value, but

---

9 The ability of the company to remain governed by people who governed before an ESOP transaction is ***a feature of the ESOP***, not a bug, as Plaintiffs claim. Hearing of the Committee on Finance, July 19 and 20, 1978, at pp. 314-315 (ESOPs allow owners to divest holdings while still controlling the direction of the business). There is nothing wrong with an ESOP acquiring 100% of the stock and the former board members continuing to lead the company into the future and during a transition period. It is in no one's interests if directors and officers who led the company in the past just drop the keys at the door on their way out after an ESOP transaction.

merely an opening indication by a buyer. *See Walsh v. Bowers*, 561 F. Supp. 3d 973, 981 (D. Haw. 2021) ("preliminary nonbinding indication of interest has little relevance to the actual value of the Company"). The relevance is even less as time passes between the third-party interest and the transaction date. *Donovan*, 716 F.2d at 1469 (finding reliance on year-old valuation was not proper because *valuations must be performed at the time of the transaction at issue*). What's more, courts have held that there is "*no evidence*" that company defendants control a trustee's decision such that they "caused" it, *even if*, as plaintiffs claim, company defendants failed to "disclose [] allegedly material information." *Foster*, 2020 WL 3639648, at *7.

### C. Creps, Jones, Dr. Khan, and Sherwood Were Not Fiduciaries for Purposes of ERISA Section 406(b)

In Count III, Plaintiffs claim that Creps, Jeff Jones, Dr. Khan, and Sherwood violated ERISA's prohibited-transactions provision in 406(b) merely because they were "fiduciaries" in some other capacity and they "received" consideration for selling stock. Opp. at 24. Though 406(b) does not expressly apply only to a person who receives consideration and *caused* the transaction, it is limited to "a fiduciary." *Zavala v. Kruse-W., Inc.*, 398 F. Supp. 3d 731, 744 (E.D. Cal. 2019); *Foster*, 2020 WL 3639648, at *9. A person is a "fiduciary" under ERISA if they actually exercise final, discretionary authority over plan management or administration, or have control of plan assets. 29. U.S.C. § 1002(21). The discretionary decision whether to engage in the transaction on behalf of the plan was Argent's, not Creps', Jeff Jones', Dr. Khan's, or Sherwood's. SUMF ¶¶ 9-12.

Plaintiffs' interpretation of 406(b)(3) also proves too much. If, as Plaintiffs argue, it is illegal for a person who was a fiduciary in some capacity to receive consideration from a plan, practically *every* ESOP transaction would violate 406(b)(3), as would countless

other transactions. This is particularly true because many courts have held that the 408 exemptions do not apply to 406(b) violations, *see*, *e.g.*, *Patelco Credit Union v. Sahni*, 262 F.3d 897, 910 (9th Cir. 2001); *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 94 (3d Cir. 2012), meaning ***Plaintiffs' interpretation of 408(b)(3) would simply ban ESOP transactions*** outright. ERISA 406(b)(3) is meant to ban self-dealing, which did not occur.

### D. Nicole Jones Did Not Have Actual or Constructive Knowledge of Argent's Good Faith Determination of Fair Market Value

In Count II, Plaintiffs seek "appropriate equitable relief" against *non-fiduciary* Nicole Jones for allegedly participating in transactions that violated ERISA. Plaintiffs claim that all they must prove is that Ms. Jones knew of a transaction prohibited by ERISA 406—which prohibits a fiduciary from causing a plan to acquire employer stock. Opp. at 26-27.

Generally speaking, non-fiduciaries are not liable under ERISA. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). Although ERISA Section 502(a)(3) authorizes a claim for "appropriate equitable relief" to remedy a violation of ERISA, for a non-fiduciary to be subject to appropriate equitable relief, a plaintiff must show, among other things, that the nonfiduciary defendant had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000). Knowledge of "unlawfulness" requires Plaintiffs to prove that Nicole Jones knew or should have known that the transaction violated Section 406(a) *and* did not qualify for an exemption—here, the "adequate consideration" exemption. *Id.*[10]

---

[10] As discussed above, the adequate consideration exemption is a conduct-based standard that required Argent to conduct "a good faith determination of fair market value." 29 U.S.C. § 1108(e). To prove their claim against Nicole Jones, Plaintiffs would have to prove that Nicole Jones had knowledge that Argent failed to conduct a good-faith determination of fair market value. Plaintiffs cannot meet this burden.

Plaintiffs' reliance on *Cunningham v. Cornell* is misplaced. Opp. at 28. That case did not deal with ERISA Section 502(a)(3) claims against a non-fiduciary. It dealt with direct claims against a fiduciary for causing the prohibited transaction. The Court held that the exemptions in ERISA Section 408 are affirmative defenses that a fiduciary must prove, but it did not address claims against a non-fiduciary. It cannot be the case that a non-fiduciary can be liable simply by knowing that a prohibited transaction occurred. Congress did not intend for non-fiduciaries to be "more prone to liability than the fiduciary." *Gray v. Briggs*, 45 F. Supp. 2d 316, 328 (S.D.N.Y. 1999).[11]

Plaintiffs also argue there is a genuine fact dispute about whether Nicole Jones had *constructive* knowledge that the transaction was for more than adequate consideration simply because she signed the key ESOP Transaction documents. Opp. at 29. This is outrageous. The transaction documents contain the deal's terms, they do not provide any information about Argent's due diligence process nor do they contain any information that suggests Argent failed to make a "good faith" *assessment* of "fair market value," in reliance on expert, independent advisors. *See* ECF 332 at 26-29. Nicole had no knowledge of Argent's process, nor did she communicate with Argent or any advisor at any point in the ramp up to the proposed transaction. *See* SUMF ¶¶ 31-38.

## VI. CONCLUSION

For these reasons, the Envision Defendants respectfully request that this Court grant their motion.

---

[11] The fact that a transaction was technically prohibited says nothing about its ultimate legality. "ERISA plans engage in transactions nominally prohibited by § [406] all the time, while also taking steps to comply with ERISA by relying on one or more of the many exceptions under § [408]." *Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1222 (10th Cir. 2019) (quotations and citations omitted).

Dated: November 17, 2025

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Richard J. Pearl*
Richard J. Pearl
320 South Canal Street, Suite 3300
Chicago, Illinois 60606
Telephone: (312) 569-1907
Email: rick.pearl@faegredrinker.com

*Attorneys for Defendants Envision Management Holding, Inc. Board of Directors, Darrel Creps III, Paul Sherwood, Jeff Jones, Nicole Jones, Aaron Ramsay, and Tanweer Khan*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 17, 2025, a true and correct copy of the foregoing was served on all counsel of record.

*/s/ Richard J. Pearl*