IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00304-CNS-MDB

ROBERT HARRISON, et al.,

     Plaintiffs,

     vs.

ENVISION MANAGEMENT HOLDING INC.
BOARD OF DIRECTORS, et al.,

     Defendants.

------------------------------------------------------------------

REPORTER'S TRANSCRIPT
Pretrial Conference

------------------------------------------------------------------

Proceedings before the HONORABLE CHARLOTTE N. SWEENEY, Judge, United States District Court for the District of Colorado, commencing on the 1st day of April, 2026, in Courtroom A-702, United States Courthouse, Denver, Colorado.

APPEARANCES

For the Plaintiffs:
MICHELLE C. YAU, Cohen Milstein Sellers & Toll PLLC, 1100 New York Avenue NW, Ste. 800, Washington, DC 20005

For the Envision Defendants:
RICHARD J. PEARL, Faegre Drinker Biddle & Reath LLP, 320 South Canal St., Ste. 3300, Chicago, IL 60606
ALLISON S. EGAN, Faegre Drinker Biddle & Reath LLP, One Logan Square, Ste. 2000, Philadelphia, PA 19103

For the Argent Defendants:
WILLIAM J. DELANY and LARS C. GOLUMBIC and PAUL J. RINEFIERD, Groom Law Group Chartered, 1701 Pennsylvania Ave., NW Ste. 1200, Washington, DC 20006

Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252, Denver, CO 80294, 303-335-2108
Proceedings reported by mechanical stenography; transcription produced via computer.

21-cv-00304-CNS-MDB   Pretrial Conference        04/01/2026   2

            *         *         *         *         *

     (The proceedings commenced at 11:04 a.m.)

          THE COURT:  We are here in 21-cv-304, Harrison, et

al. v. Envision Management, et al.  May I have entries of

appearance, please.

          MS. YAU:  Yes.  Michelle Yau for the plaintiffs

Harrison and Heath and the class.

          THE COURT:  Good morning.

          MS. YAU:  Good morning.

          MR. DELANY:  Good morning, Your Honor.  May it please

the Court, on behalf of Argent Trust Company, William Delany

from the Groom Law Group, and also with me from the Groom Law

Group is Lars Golumbic and Paul Rinefierd.

          THE COURT:  All right.  Good morning.

          MR. PEARL:  Good morning, Your Honor.  Richard Pearl

and Allison Egan for the remaining defendants, the Envision

defendants.

          THE COURT:  All right.  Good morning to you all.  We

are here for the pretrial conference.  Let me just log in to

my computer here.  Okay.  I took a look at the pretrial order.

I'm not going to have you redo any claims and defenses, but

know those are a smidge long for what we typically expect in a

pretrial order.  I'm going to allow it given the number of

claims and parties here, but that looked fine, although

overdone to an extent.

                    Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference      04/01/2026    3

The stipulations, I see there's some disagreement about what to do with admitted facts and verified interrogatory responses, and different judges handle this different ways.  Let me just tell you how I do it.  I don't force people to include stipulations in a pretrial order.  I see later on why that wasn't done, that some of the parties don't want them if it was admitted by another defendant.  That's neither here nor there, so I'm not going to change the stipulation section.

Know, however, that when it comes to jury instructions, I do expect the parties to confer in depth about stipulations to go -- well, sorry, it's a trial to the Court, so you're not doing anything.  That being said, I wouldn't mind stipulations, particularly in a trial like this.  So I still want you to confer about these issues, because really sometimes the parties don't want to stipulate because they're worried about jury confusion or a jury placing undue weight.

Since you don't have that concern, I would appreciate stipulations, so think about that as you move towards trial.  And if it can only be a stipulation between plaintiff and Argent or plaintiff and Envision, that's fine.  But think about if there's ways to kind of narrow the issues or narrow the facts in dispute.  So we'll deal with that as we move closer to trial.

I am painfully aware of the pending motion for

21-cv-00304-CNS-MDB   Pretrial Conference        04/01/2026    4

summary judgment, or partial.  I apologize that it is not done

yet.  We are working on it.  Nobody really cares about our

excuses, but our caseload has exploded in the last year,

including immigration matters, and those are taking a

forefront.

So I do apologize, but there's really nothing we can

do about it except try to handle cases in some sort of order

that makes sense.  So yours is kind of next high up on our

list.  I expect that to come out in the next month, so that

should help give you some guidance as you prepare for trial.

But typically I would have expected to get that to you before

the pretrial conference today, but that did not happen.

Let me talk about the witness lists, because the

parties did this differently.  As I see it, defendants

followed our instructions and separated out by will and may.

Plaintiff just kind of listed everybody as a will.  Are you

actually for sure calling 20 will-call witnesses?

MS. YAU:  Your Honor, that is the plan.  Some of them

are by designation, but, yes, they are will-calls.

THE COURT:  All right.  And in terms -- are any of

those 20 experts?  I maybe could have told this -- answered

this question myself if I studied them, but I didn't think so.

Are any of those experts?

MS. YAU:  There are three experts.

THE COURT:  So plaintiff has three and defendant has

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference        04/01/2026    5

three; is that correct?  Defendants have three?

MR. DELANY:  That's correct, Your Honor.

THE COURT:  All right.  So we've got six experts. Defendant, on the other hand, lists only six will-calls, three may-calls, plus any custodians as needed.  Is that pretty -- is that a good representation of what you expect?  I imagine it's lower because plaintiff is calling so many and listed several adverse.

MR. DELANY:  Your Honor, that sounds about right. The math that I did was that we generally have about 11 fact witnesses between all parties.  There's some that are going to come in by deposition designation, and then we have six experts amongst all parties.

THE COURT:  Okay.

MR. DELANY:  If that helps kind of narrow it down for the Court.

THE COURT:  All right.  So in terms of the deposition designations, is that because these folks are located elsewhere and will not be testifying at trial?

MR. DELANY:  That's largely correct, Your Honor. They're third parties.  I would go as far as to also say they're fairly tangentially related, and I think trying to be mindful of the Court's time, having a live trial, everybody was, I think, trying to strike a balance.

THE COURT:  All right.  So just to be clear, none of

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference    04/01/2026    6

those folks are testifying live?  Sometimes people like to designate deposition testimony even though the folks are coming, which I don't enjoy.  So let me confirm all the deposition designations, those folks will not be here?

MR. DELANY:  That's the intention.

THE COURT:  Okay.

MS. YAU:  Your Honor, on that point I just wanted to raise that there's one witness that's a party -- currently a party that defendants identified as testifying by deposition designation and that we identified as a live witness.  She is within the state of Colorado as far as we understand, and so our expectation is that she would testify live.

THE COURT:  All right.  And she's a named party?

MS. YAU:  She is a named party.

THE COURT:  All right.  I would anticipate she testifies live too.  If the plaintiff intends to call her, she does need to be here without a subpoena.  She's a party.  So she will be live.  To the extent defendants wish to introduce other testimony, since she's live, that will be live as well, so we wouldn't need deposition designations from her.

MR. DELANY:  Understood, Your Honor.

THE COURT:  Okay.  All right.  Moving along then, we've got the exhibit lists.  Know that I will expect a joint exhibit list, so your three lists will merge with no duplications.  Because it's a trial to the Court, I would

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference      04/01/2026    7

expect to see a significant number of stipulations on exhibits.  If you want to preserve authentication, note that on our chart.  That has a specific column.

So if you can reach agreement as to the exhibit's authentic, but you just don't think it should come in for hearsay or other reasons, that can be noted.  But I would not expect a lot of need to be battling about exhibits that you know are coming in for one reason or another because that's just going to waste time in what looks to be a lengthy trial. So please do spend the time working on exhibit stipulations. We'll talk about that at the trial prep conference, so those conversations should happen before the trial prep conference, so the list you give me at the conference should reflect those stipulations.

No discovery issues.  Discover is complete.  We've, I believe, dealt with the Nicole Jones issue in the special issues.  The most efficient method of accepting party admissions, what I would -- I leave that to the parties. Sometimes you want to use those in your exam, and that's fine. Sometimes you may want to present them separate.  That's fine. I'll leave that up to you.  I do not have a preference.  I'll just leave it to the parties on what they think the most effective presentation is of that type of testimony.

I wasn't sure of defendants' special issues, burden of proof on claims.  Are these matters that are addressed in

21-cv-00304-CNS-MDB   Pretrial Conference      04/01/2026   8

the summary judgment, or is this something different?

MR. PEARL:  Thank you, Your Honor.  Some of it is addressed in the summary judgment.

THE COURT:  Okay.

MR. PEARL:  Some of it just has to do overarching with the case and some very unique issues that arise here.  So the principal claim in this case -- should I go to the podium?

THE COURT:  Either way.  As long as you're speaking into the microphone, it's fine.

MR. PEARL:  So the principal claim in this case, as we all know, is that there was an employee stock ownership acquisition of stock, and the plaintiffs claim it was for in excess of adequate consideration.  And the way the law has shaken out after the Supreme Court's decision in Cornell is that with respect to that claim against the trustee, the plaintiffs establish a prohibited transaction, which is a fairly narrow inquiry, and then it's up to Argent to establish that it was for fair market value as determined in good faith.

That's sort of the prohibited transaction analysis.  But over -- there's sort of this umbrella over that of the actual causes of action that were brought in this case, and there's an ERISA 502(a)(2) claim, there's a 502(a)(3) claim, and those have elements themselves.  So when we think about who has the burden with respect to, for example, for a 502(a)(2) claim, the elements that Courts repeatedly identify

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference      04/01/2026   9

are a fiduciary status, breach of fiduciary duty, causation of loss.

Plaintiffs' position has been generally that they only have to establish a prohibited transaction.  We're not sure, well, what does that mean for causation of loss for them, if this is an affirmative defense, and how does the Court want sort of that evidence to start coming in, because in the typical case, the plaintiff puts on the case, the judge has a really good idea of what the case is at least about, and then we have the cross and the defense.

Here, it's going to be, I think, plaintiffs' entire case except for their experts and the two individual plaintiffs who have no real substantive knowledge here -- it's going to be cross-examining all of the witnesses for the parties and some of the third-party witnesses, and what we wanted to sort of -- it doesn't have to be addressed now. Maybe it could be addressed in a different issue that we wanted to raise, maybe in a lengthier trial brief, but who has the burden, how is that evidence going to come in, how are we going to divide time.

We're just sort of worried that if we end up with the majority of a burden on an issue, that, you know, we've all been in trials where the plaintiffs go, and by the time the defendants get there, the Court understandably says I already heard this, move on, move on, move on, and the full story

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    10

maybe comes out, maybe it doesn't.

So I think filing something maybe in the trial brief to at least get the Court -- not asking for a decision on that, but get the Court sort of aware and thinking about these issues so we all sort of -- maybe we get some direction on who has the burden, what that burden is, what element of what claim or what affirmative defense, and that would probably give us some guidance certainly on how to prepare witnesses, what we have to present, and maybe on the order of witnesses as well.

THE COURT:  Is there a dispute about this?  I mean, I am assuming underlying this there's a dispute about these burdens.

MR. PEARL:  Unfortunately there's a dispute about every legal issue in this case from fundamental elements of claims to the adequate consideration exemption to what is an employee stock ownership.  Yeah, there are -- this case has disputes.

THE COURT:  Okay.

MR. PEARL:  I'll put it that way.

THE COURT:  All right.  Well, I think what we're going to do is when we set the trial, which we're going to do shortly, we'll also set the trial prep conference, which is generally three weeks before that.  Before that we'll set kind of a status conference as you are working on jury instructions

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    11

because that --

MR. PEARL:  No jury instructions.

THE COURT:  Sorry.  It's just a wish I had that this was going to a jury.  Does anybody want to revisit that?  All right.  Well, we'll set a conference before that.  Here's my concern.  I don't want dozens of pages of briefing on these issues.  I think what would be helpful is in advance of the trial prep conference is to have really a joint statement where the differing positions are set out with maybe a citation to your leading case supporting your opinion, and let me take a look at the magnitude of what we're talking about in terms of disputes before I can answer those types of questions.

I am a smidge surprised there's that many disputes, because while there are some uncertain areas of law here, there shouldn't be that many where there's no guidance from our circuit or other Courts in this district.  So what I'd say is we'll set a date before the trial prep conference, and I'm suggesting probably even a month before, where that's presented so we can take a look at it in advance of the trial prep conference, and that's where you'd get guidance.  That may come later than you'd like, but I think that makes the most sense.

MR. PEARL:  And one other thing, if I may, Your Honor, is in some instances there doesn't seem to be the

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    12

compelling one single case that addresses the precise issue here.  In many situations we will provide materials that aren't argument, but let's look at this legislative history in ERISA cases is uniquely important, I think more so than in many other cases.  Can we provide citations to that and maybe attach copies of supporting materials so, to the extent Your Honor or your clerks want to look at that, it's available?

THE COURT:  I think that's fine.  I would say most stuff we can find.  If it was trickier for you to find, then attach it.  But if it's something you think is easily available, you don't need to attach it.

MR. PEARL:  Very helpful.  Thank you, Your Honor.

THE COURT:  All right.  So we'll talk about that in a minute.  Let me just see if there's anything else I wanted to cover in here.  All right.  The other thing I don't like, which is why I keep wishing this was a jury trial, is the reference to voluminous process exhibits.  What is that description hinting at?

MR. DELANY:  Your Honor, if I may, as my colleague alluded to, a major defense here will be Argent and its process as trustee in considering, negotiating, and ultimately agreeing to the transaction at issue.  That process takes place over approximately a four-month period, has a number of inputs, a number of documents, a number of milestones along the way.

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference      04/01/2026   13

Oftentimes what Courts find useful in these circumstances is -- in the record that material is oftentimes in disparate spots, different exhibit numbers, that sort of thing.  What sometimes Courts find useful is if that's all put together in one place so the Court can see the process information, for example, all in one binder, can easily reference it.

I think those were the major issues that we were referring to.  We are not speaking of something that goes beyond the exhibits that are already referenced in the court. And a big quick flash of good news, the parties have already agreed to the authenticity and admissibility of most exhibits, far further along in that regard than the normal trial.

THE COURT:  Okay.

MR. DELANY:  So rest easy, rest assured on that point, Your Honor.  So I think it was raised just as a flag for the Court that that process issue will have a number of documents that address and interact with it along the way.

MR. PEARL:  One clarification.  Just to clarify -- I agree with everything -- some of that process also relates to the Envision defendants because there's a process-based claim as well, Your Honor.

THE COURT:  And have you conferred with plaintiff about this idea of having this as one exhibit?

MR. DELANY:  Not yet, Your Honor.

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    14

THE COURT:  All right.

MS. YAU:  May I be heard, Your Honor?

THE COURT:  Yes.

MS. YAU:  We did try to understand since this issue was submitted as a special issue, and our understanding, at least to date, os that there was no suggestion of there being a single exhibit or a compilation of evidence that we've now primarily admitted -- or agreed to on admissibility.  But Your Honor's standing order requires there be binders created and available at trial with all of the exhibits, so we weren't really sure what the point is of pulling out a subset of documents when you already will have copies of everything and they're available to the witness as we understand, and so it just seemed a little bit superfluous.

MR. PEARL:  May I?

THE COURT:  Yes.

MR. PEARL:  I think the idea is there may be 300 e-mails back and forth that evidence process involved.  And just to back up just briefly, one of the reasons this is so important, as you've read in the summary judgment submissions from plaintiffs, is their case theory in large part is that Argent acted solely as a rubber stamp, that this was basically a blind stamp it.  And I think it's important because it's a facts and circumstances process-type analysis under ERISA, whether it's their burden or our burden, for example,

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference      04/01/2026   15

Exhibits 300, Your Honor, are e-mails from date A to date B that reflect back and forth. We may not go through those e-mails with witnesses. We may reference them in closing or reference them in filings. But as a matter of sort of logistics, do you want every one of those as a separate exhibit? Can we do a joint one so you have a binder and it's easier? This was more sort of we don't want to surprise you at trial with a box of every one of them is tabbed separately and nobody knows what to do with them.

THE COURT: All right. Well, let me give you some general guidance. It may make sense to do a compilation, but I don't want that to replace proper reference to the exhibits at trial. So I don't want a compilation of 200 e-mails, only three of which you talk about, and yet they're admitted into evidence when nobody has referenced how they're important.

So I would say if you do a compilation, I would still expect some foundation to be laid and at least a reference to them in closing or opening or something because that otherwise renders them somewhat meaningless, and I don't want to ferret through 300 pages of exhibits to find out their relevance when nobody's talked about it.

And then to plaintiff I'd simply say it may be helpful to allow that in some cases. I'm not going to force the parties, but it would be helpful on both sides if there was some organization to the exhibits, whether it's by topic,

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference    04/01/2026   16

whether it's chronological, whether it's anything.

And what else I'd say is we'll still require the original and one, even though largely I'll be looking on the screen, as you will, but it can be helpful to take back to chambers.  So you may eventually ask do you really need the original and one, and my answer is yes, because we do need the original in paper, and we may as well have a second set for me, even though largely I'll be guided by the computer.  So hopefully that helps.

But in general my approach to a trial is if you all agree, I'm not going to interfere.  So the more you can confer, even though it sounds like you disagree on almost the color of the sky, try to reach agreements on these things, because I'll honor them.  And there's a point to you conferring because, again, if you reach an agreement, I'm not going to disturb it.  So there is still a point in really trying to set aside some differences to think of how can we present from all parties' perspectives this in a more reasonable manner because that's what you want is me to have something that makes sense when I go back to decide the case.

All right.  So settlement sadly it doesn't appear went anywhere.  It says you do not intend to hold future settlement conferences.  I never like to read that because that really cuts off the prospect.  Is there any feeling that a ruling on the partial summary judgment motion could change

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference    04/01/2026    17

somebody's mind or is it really not critical?  Sometimes I know parties are waiting for that ruling to really reassess. Here, because it's a partial motion and doesn't deal with everything, maybe that isn't true.

I'll hear from you first, Ms. Yau.

MS. YAU:  Your Honor, we're always open to settlement discussions, and I would assume that a ruling on the partial summary judgment would be helpful to understand Your Honor's thinking about the case, and in general we always remain open to settlement discussions.

THE COURT:  All right.  And from defendants?

MR. PEARL:  For the Envision defendants, we agree generally with that, Your Honor.

MR. DELANY:  Same, Your Honor.

THE COURT:  Everybody sounds terribly reasonable, so there's probably more to that story.  What I would say is after you receive the summary judgment order, I am ordering you to confer about how that has changed anybody's settlement posture and whether you think it's worthwhile going to another mediation session.  I'm not familiar with Mr. Melnick, so I can't really comment on that.  Sometimes a different mediator can add something to the mix.  Sometimes it's helpful to use the same one because they have all the background.  But don't be afraid to change if you found somebody not effective, because I've had numerous cases settle with a fresh kind of

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    18

third-party view.

So I want you to confer when you receive the order. Send me a joint e-mail with all parties copied and an agreed-upon statement just in terms of whether you're going to look into attending another mediation, and if so, when, so I know.  Within five -- did I say -- within five days of receipt of that order I want you to confer, send that joint e-mail to me.  You don't have to file anything on the docket, just send an e-mail.

MS. YAU:  Yes, Your Honor.  One question.  I've read a fair amount of transcripts from prior pretrial hearings that Your Honor has had.  Would you suggest that we use one of the magistrates in this court, or are they terribly busy given everything else?

THE COURT:  Here's what I would say.  Don't call them a magistrate.  Call them a magistrate judge, because they take deep offense to that.  Second, you have one of the best magistrate judges on settlement.  Judge Braswell is trained in mediation separately, has settled numerous difficult cases, and has tried numerous difficult cases.  So I would think you'd be a fool not to want to give it a shot since you're not paying.

That said, she's very strict about when she will devote her time to things.  If she has any sense it's a waste of her time, she will not do it, and she usually sets a phone

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    19

conference with you in advance to ferret that out.  So be prepared to talk to her about numbers, because if she senses it's useless, she will not do it.

MS. YAU:  Okay.

THE COURT:  So this -- I will give you a referral, and this is your referral, but know that that doesn't mean it's going to happen.  It means she will consider it.  So you would send a joint e-mail to her saying you've been referred, you'd like to set a settlement conference, and I would even tip your hand that you're aware she may want to have conferences with the parties in advance to make sure it's worth doing.  But, yeah, that's fine with me, and she could be a good person to hear this, frankly.

MS. YAU:  All right.  Thank you, Your Honor.

THE COURT:  All right.  So let's see, we've got a ten-day trial.  I assume you're overestimating and not underestimating; is that fair?

MR. DELANY:  Your Honor, are you referring to the amount of trial time?

THE COURT:  Yes.

MR. DELANY:  Your Honor, again, this is one of these circumstances where you have, I believe -- my colleague can correct me if I'm wrong -- but a rare instance of agreement.  I think folks do realistically believe this is a ten-trial-day trial.  I think everybody's on the same page on that with 11

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    20

fact witnesses, six experts, detailed issues of valuation issues in the case that we believe Your Honor will benefit from everybody's experts to understand those issues, a factual period that spans four to five -- even more extensive than that -- months of process. We believe it to be -- and also with parties who handle these types of cases all the time, we believe it's an accurate estimate of how long it's going to take to give the Court proper understanding of the facts.

THE COURT:  All right.  Well, we will look for a two-week -- we're going to be going a bit out, still in this year, but I think our first available for a two-week -- and know that since we're going this far out, our criminal docket has not been set for the dates we're talking about.  We will undoubtedly have to set criminal matters with you knowing that 95 percent of the time they go away.  So we'll be keeping close watch on that, and we'll alert you if we think there's a criminal matter that will not go away because you will be bumped, but we do try to keep an eye on it, particularly if it's a trial to the bench.  So our first available to start would be October 26th.

Ms. Yau, does that work for plaintiffs?

MS. YAU:  Yes, that does.

THE COURT:  And defendants?

MR. DELANY:  Your Honor, I have a whole date matrix here, but, yes, I do believe that works.

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    21

THE COURT:  And Mr. Pearl?

MR. PEARL:  Your Honor, so this would be that week and then the consecutive week after it?

THE COURT:  Yes.

MR. DELANY:  Your Honor, while counsel is looking at the calendar, and maybe to buy a little bit of time, I think we're all in agreement too that we would -- because of the blended burden and it being a bench trial, the witnesses would be and the experts would be one and done.  They wouldn't be called back and things like that, and I think with that in mind, that adds some flexibility on our schedule for the experts.

THE COURT:  All right.

MR. PEARL:  First shot out of the box, it works for everybody.

THE COURT:  All right.  See, you all can agree on things.  All right.  So we're going to do October 26th for two weeks.  Just to reiterate what we just -- Mr. Delany just said, witnesses will be called once.  All parts of the exam will be done.  If you reach an agreement that you're not going to hold each other to the strict direct, cross, redirect, your direct, cross, redirect -- I'm fine with it, but you need to have an agreement.  Otherwise, I will be strict in terms of how that comes in, but I want you to talk about it.

MR. DELANY:  Understood, Your Honor.

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    22

THE COURT:  Let's -- so the trial prep conference, I would suggest we do October 1st at one.

Ms. Yau, would that work for you?

MS. YAU:  Let me just check.  Yes, Your Honor, that works for us.

THE COURT:  And Mr. Delany?

MR. DELANY:  Your Honor, for the Argent defendants, yes, that should work.

THE COURT:  All right.  Mr. Pearl?

MR. PEARL:  Yes, that works, Your Honor.

THE COURT:  Great.  And then what we're going to do is let's say by August 28th, that is when I would like you to file the joint statement -- and it doesn't matter what you call it -- wherein you detail some of these -- or not detail -- highlight and alert the Court to some of these issues with respect to burdens, et cetera.  Because it's a trial to the Court, that may not be as critical to deciding in advance, although I do understand it would help your presentation of evidence.  But so let's have you alert me to that.  If upon reading it, there's supplements that would be helpful, I'll let you know that and give you ten days to supplement in certain areas.

Hopefully maybe there's some developments that happen between now and then that could shed light on some of this, whether they're Court decisions, et cetera.  Maybe not, but

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB    Pretrial Conference    04/01/2026    23

we'll hope for some.  Further conferral obviously is welcome to eliminate some of those, but we'll at least have a sense of what we're talking about.

Obviously I wouldn't expect motions in limine because, one, it's a trial to the Court, and generally the Court is more than capable of kind of separating that out as it's happening.  So I would say in the practice standards it says they're highly discouraged.  They're even really not allowed absent some extraordinary circumstance.  A trial brief will still be allowed, and because of the type of case -- I think we have a 10-page limit -- I'll extend that to 20 pages.

I don't want to entertain much more because I'm going to be hearing it all, and I think 20 pages can give you enough to alert the Court to the key legal issues that we're going to be hearing.  Know that I will be requesting findings of fact and conclusions of law, and that is going to be a chore in this case is my guess, so please do not put that off, because that will be critical for all of you to do that.

So all right.  Anything else that we should address today that would be helpful?

MR. DELANY:  Your Honor, if I may, just a bit of clarity on the trial briefs.  As we did with summary judgment, obviously we have different defendants, different perspectives, and different issues, so we would like to -- Argent as the defendant would like to file its own trial

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference    04/01/2026    24

brief, and we just want to make sure that was acceptable.

THE COURT:  Yes, that's acceptable.

MR. DELANY:  Thank you, Your Honor.  No further issues on behalf of the Argent defendants.

MS. YAU:  In light of that I just wonder, we obviously want to end up as concise as possible, but if they're going to be -- if there's going to be a separate 20-page brief, essentially two 20-page briefs, can we at least consider and maybe come back to Your Honor as to whether we end up thinking we need 30 pages?

THE COURT:  I'd say shoot for the 20.  If it appears impossible, and I mean impossible, then file a motion for leave.

MS. YAU:  Okay.

THE COURT:  But I would think from plaintiffs' perspective, I still think it can be done even though there's different defenses that folks are pursuing, so I would think for claim purposes you still might be able to do the 20.

MS. YAU:  We will absolutely endeavor to do that.

THE COURT:  Anything else?

Mr. Pearl, do you have anything on behalf of the Envision defendants?

MR. PEARL:  No.  Thank you, Your Honor.

THE COURT:  Thank you all.  We will see you then in the fall, but please consider revisiting settlement after

Sarah K. Mitchell, RPR, CRR

21-cv-00304-CNS-MDB   Pretrial Conference     04/01/2026    25

receiving the order.  It may be fruitful, and, again, I wholeheartedly recommend Judge Braswell if you can get on her calendar.  With that, we'll be in recess.  Thank you.

THE COURTROOM DEPUTY:  All rise.  Court is in recess.

(The proceedings were concluded at 11:41 a.m.)

Sarah K. Mitchell, RPR, CRR

<u>REPORTER'S CERTIFICATE</u>

        I, SARAH K. MITCHELL, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Professional Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true and correct transcript.

        Dated this 14th day of April, 2026.


                    /s/ Sarah K. Mitchell

                   SARAH K. MITCHELL
                  Official Court Reporter
               Registered Professional Reporter
                Certified Realtime Reporter


                Sarah K. Mitchell, RPR, CRR