**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:21-cv-304-CNS-MDB**

ROBERT HARRISON and GRACE HEATH, on behalf of themselves, the ENVISION MANAGEMENT HOLDING, INC. ESOP, and all other similarly situated individuals,

Plaintiffs,

v.

ENVISION MANAGEMENT HOLDING, INC. BOARD OF DIRECTORS, ENVISION MANAGEMENT HOLDING, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, ARGENT TRUST COMPANY, DARREL CREPS, III, PAUL SHERWOOD, JEFF JONES, NICOLE JONES, AARON RAMSAY, TANWEER KHAN, and LORI SPAHN,

Defendants.

---

# THE PARTIES' JOINT STATEMENT ON TRIAL ISSUES

Pursuant to the Court's directive on the record at the April 1, 2026 Pretrial Conference, Plaintiffs, Argent, and the Envision Defendants submit this Joint Statement on Trial Issues, which the parties will address further in their respective trial briefs. The parties also reserve their rights with respect to any of the issues set forth in this Joint Statement and reserve the right to address additional issues beyond those set forth in this Joint Statement.

## I. Plaintiffs' Position: Overpayment Is Not an Element of Plaintiffs' Prohibited-Transaction Claims

Plaintiffs submit this position statement in response to issues raised by Defendants' Counsel at the April 1 Pretrial Conference. Dkt. 367 at 7-10. Although Defendants' submission raises several additional issues not identified at the Pretrial Conference, Plaintiffs address solely the three issues raised on the record: (1) the parties' respective burdens of proof on Plaintiffs' prohibited transaction claims; (2) whether loss or loss causation are elements of those claims; and (3) whether the allocation of those burdens should affect the parties' presentation of evidence or sequencing of witnesses at trial. Plaintiffs understand that the Court does not want "dozens of pages of briefing on these issues" in this Joint Pretrial Report. Dkt. 367 at 11.

Plaintiffs allege that Argent and the Board Defendants[1] violated ERISA's prohibited transaction rules, 29 U.S.C. § 1106(a)(1)(A), by causing the ESOP to purchase Envision stock from the Sellers, each of whom was indisputably a party in interest. Dkt. 91 ¶¶ 115-127. Section 1106 supplements ERISA's general fiduciary duties "by categorically barring certain transactions deemed likely to injure the pension plan." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 697 (2025) (internal quotations omitted). Under *Cunningham*, Plaintiffs establish a violation of § 1106(a)(1)(A) by proving the elements contained in that provision: that Argent and the Board Defendants caused the ESOP to engage in a transaction that they knew or should have known constituted a sale or exchange of property between the ESOP and parties in interest. Plaintiffs need not prove the absence of a § 1108 exemption. The exemption is an

[1] The Board Defendants include Darrel Creps, Jeff Jones, Tanweer Khan, Aaron Ramsay, and Paul Sherwood.

affirmative defense that "must be pleaded and proved by the defendant who seeks to benefit from them." *Id.* at 700–02.

All parties agree that the pertinent exemption in this case is § 1108(e), which exempts an ESOP's otherwise prohibited acquisition of Envision stock if, among other requirements, the acquisition is "for adequate consideration." 29 U.S.C. § 1108(e)(1). For stock lacking a generally recognized market, ERISA defines "adequate consideration" as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." 29 U.S.C. § 1002(18)(B). Defendants therefore must prove that the ESOP paid no more than fair market value for Envision stock and that Argent determined the price in good faith. "This burden is a heavy one." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996); *Perez v. Bruister*, 823 F.3d 250, 263 (5th Cir. 2016); *Brundle v. Wilmington Tr. N.A.,* 919 F.3d 763, 770 (4th Cir. 2019).

Even before *Cunningham*, courts held that loss and loss causation are not elements of a § 1106 prohibited transaction violation. *See, e.g.*, *Chao v. Hall Holding Co. Inc.*, 285 F.3d 415, 439 (6th Cir. 2002) ("requiring such a causal link would be contrary to Congress's creation of per se violations under § 406"); *Bugielski v. AT&T Servs., Inc.*, 76 F.4th 894, 901 (9th Cir. 2023) ("Since the prohibition against transactions between plans and parties in interest is per se in nature, a violation does not depend on whether any harm results from the transaction.").

Defendants argue that Plaintiffs bear the burden of proving overpayment because Plaintiffs seek recovery of the ESOP's losses under 29 U.S.C. § 1132(a)(2) and § 1109. But their position on overpayment cannot be squared with *Cunningham*, which makes clear that Defendants must prove all elements of their § 1108(e)

affirmative defense. If Defendants seek to avoid liability under § 1106(a)(1)(A), they must prove that the ESOP paid no more than fair market value for Envision stock—in other words, that the ESOP did not overpay. *Cunningham*, 604 U.S. at 700–02. Defendants cannot transfer that burden to Plaintiffs by relabeling the same factual issue as one of loss or loss causation.

Indeed, a court in this Circuit rejected the same argument that Defendants advance here. *Johnston v. Intermountain Healthcare, Inc.*, 2026 WL 1998490, at *10–11 (D. Utah July 10, 2026). The *Johnston* court rejected the contention that § 1132(a)(2) requires a plaintiff to plead loss and loss causation as additional elements of a prohibited-transaction claim, explaining that "no case law . . . requires importing additional pleading requirements onto a prohibited transaction claim just because it is made pursuant to § 1132(a)(2)." *Id*. at *11. Although *Johnston* arose at the pleading stage, its reasoning confirms that loss and loss causation do not become elements of the underlying § 1106 violation merely because Plaintiffs seek relief through § 1132(a)(2).

*Johnston* recognized that the elements of a prohibited transaction claim do not change merely because the claim is pursued against a fiduciary through § 1132(a)(2) or against a non-fiduciary through § 1132(a)(3). *Id.* at *10-11 (citing *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 248 (2000)). The same burden allocation therefore applies to Plaintiffs' non-fiduciary claims against the Seller Defendants[2]: if they seek to defeat the underlying prohibited transaction by invoking § 1108(e), Defendants

[2] The Seller Defendants include Darrel Creps, Paul Sherwood, Jeff and Nicole Jones, and Tanweer Khan.

must prove that exemption, including that the ESOP paid no more than fair market value. This conclusion is consistent with the Court's recent summary-judgment decision, which held that to prevail on their knowing participation claim against the Sellers, Plaintiffs need not prove that the Sellers knew that the ESOP overpaid. Summary Judgment Order, Dkt. 369 at 10-11. Neither *Harris Trust* nor the Court's summary-judgment decision makes loss or loss causation an element of Plaintiffs' § 1132(a)(3) knowing-participation claims.

Finally, at the Court's April 1 Pretrial Conference, the Envision Defendants' Counsel suggested that the Court's allocation of the burdens of proof could affect the presentation of evidence and sequencing of witnesses at trial. *See* Dkt. 367 at 9-10. On August 12, Plaintiffs provided Defendants with the position stated here, but Defendants have not provided their position. Plaintiffs' position is that there is no reason to deviate from the customary practice of dividing that time equally between the opposing sides.[3] Plaintiffs should present their case-in-chief first, followed by Defendants' case and any proper rebuttal testimony from Plaintiffs, including appropriate rebuttal expert testimony. Finally, the parties have already agreed that if Plaintiffs call a defense witness adversely during their case-in-chief, Defendants will have an opportunity to examine that witness at that time. Dkt. 367 at 21 (Argent's counsel stating "I think we're all in agreement too that we would -- because of the blended burden and it being a bench trial, the witnesses would be and the experts would be one and done."). This procedure affords Defendants

[3] *See* Nora Freeman Engstrom, *The Trouble with Trial Time Limits*, 106 Geo. L.J. 933, 972 (2018) (observing that courts "often allot equal—or nearly equal—amounts of time to those on either side of the 'v.'").

a full and fair opportunity to present their evidence within the ten trial days allotted by the Court.

## II. The Envision Defendants' Statement

As this Court is aware, this case concerns an employee stock ownership plan, or ESOP, and a transaction on December 19, 2017 (the "ESOP Transaction") whereby the Envision Management Holding, Inc. Employee Stock Ownership Plan (the "Plan") acquired 100% of the stock of Envision Management Holding, Inc. ("Envision"). Plaintiffs, two former Envision employees who were participants in the Plan, contend that the Plan paid too much for that stock, and Plaintiffs, alleging violations under ERISA, sued the Plan's independent trustee Argent Trust Company ("Argent"), members of Envision's board of directors (the "Board"), former shareholders who either sold their stock to Envision or to the Plan directly (the "Sellers"), and Aaron Ramsay, whom Plaintiffs now allege also acted as a trustee of the Plan for purposes of the ESOP Transaction.[4]

The operative Amended Complaint contains seven counts/claims against various categories of defendants for particular alleged violations and certain remedies. Plaintiffs bear the burden of proving each claim's elements, and those elements depend on the precise alleged misconduct and the capacity in which each defendant is sued. In addition, all of the claims in this case implicate fundamental ERISA, ESOP, and valuation principles that will guide the Court's assessment of the claims and defenses in this case.

---

[4] The Parties stipulated to dismissal of claims against The Envision Management Holding, Inc. Employee Stock Ownership Plan Committee ("ESOP Committee") and Lori Spahn, and dismissal of claims against Aaron Ramsay in his capacity as a member of the ESOP Committee. Dkt. No. 329.

The Envision Defendants thus respectfully submit the following list of trial issues for which there appears to be significant disagreement between Plaintiffs and all Defendants.

**1. Plaintiffs Bear the Burden of Proving the Elements of Each of Their Claims Brought Pursuant to ERISA §§ 502(a)(2) and (a)(3).**

The Amended Complaint contains seven counts, as follows:

| Count | ERISA Claim | Defendant | Underlying ERISA Violation | Alleged Capacity of Claim (Fiduciary v. Non-Fiduciary) |
|---|---|---|---|---|
| I. | 502(a)(2) for loss to the Plan caused by a fiduciary breach and (a)(3) claim for appropriate equitable relief to remedy a violation of ERISA or the plan document | Argent | ERISA § 406(a)(1)(A), (B) and (D) by "causing" the Plan to purchase stock from the employer and agree to unreasonable financing terms. | ERISA fiduciary who caused the Plan to enter into the transactions with a party in interest |
| I. | 502(a)(2) for loss to the Plan caused by a fiduciary breach and (a)(3) claim for appropriate equitable relief to remedy a violation of ERISA or the plan document | Board Defendants | ERISA § 406(a)(1)(A), (B) and (D) by "causing" the Plan to purchase stock from the employer and agree to unreasonable financing terms. | ERISA fiduciary who caused the Plan to enter into the transactions with a party in interest |
| II. | 502(a)(3) claim for appropriate equitable relief to remedy a violation of | Seller Defendants | Actual or constructive knowledge that the ESOP Transaction | Non-fiduciary |

| | | | | |
|---|---|---|---|---|
| | ERISA or the plan document | | was an illegal prohibited transaction | |
| III. | 502(a)(2) for loss to the Plan caused by a fiduciary breach and (a)(3) claim for appropriate equitable relief to remedy a violation of ERISA or the plan document | Board Defendants/Seller Defendants (Creps, Sherwood, Jones, and Dr. Khan) | ERISA § 406(b), which prohibits a fiduciary from receiving consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan | ERISA fiduciary |
| IV. | 502(a)(2) for loss to the Plan caused by a fiduciary breach and (a)(3) claim for appropriate equitable relief to remedy a violation of ERISA or the plan document | Argent | ERISA § 404 for breaching duties of prudence and loyalty in approving the ESOP Transaction | ERISA fiduciary |
| V. | 502(a)(2) for loss to the Plan caused by a fiduciary breach and (a)(3) claim for appropriate equitable relief to remedy a violation of ERISA or the plan document | Board Defendants | ERISA § 404 for breaching duty of prudence in monitoring Argent in its role as trustee | ERISA fiduciary |

| | | | | |
|---|---|---|---|---|
| VI. | 502(a)(2) for loss to the Plan caused by a fiduciary breach and (a)(3) claim for appropriate equitable relief to remedy a violation of ERISA or the plan document | Board Defendants | ERISA § 405 for co-fiduciary liability for alleged involvement in alleged fiduciary breaches by Argent | ERISA fiduciary |
| VII. | 502(a)(2) for loss to the Plan caused by a fiduciary breach and (a)(3) claim for appropriate equitable relief to remedy a violation of ERISA or the plan document | All Defendants | ERISA § 410(a) for an allegedly illegal indemnification agreement | ERISA fiduciary and non-fiduciary |

**2. Plaintiffs' ERISA § 502(a)(2) and (a)(3) Claims Have Elements that Plaintiffs Must Prove.**

The substantive provisions that Plaintiffs allege Defendants violated are all found in Part 4 of Subtitle B, Chapter 18, Subchapter I of ERISA (ERISA §§ 404, 405, 406). *See* 29 U.S.C. Subtitle B, Chapter 18, Subtitle I. Part 4 is entitled "fiduciary responsibility," and it contains all of ERISA's fiduciary responsibility provisions in sections 1021 through 1193c. Those sections have the shorthand designation that begin with the number "4" because they are found in Part 4, and they are all fiduciary responsibility provisions.

The provisions in Part 4 are not, however, administration and enforcement provisions and they do not set forth independent claims under ERISA. ERISA's administration and enforcement provisions are found in Part 5, entitled "administration

and enforcement," and within Part 5 is Section 1132(a), shorthand 502(a), which contains ERISA's *exclusive* civil-enforcement provisions. Any type of claim under ERISA, for any type of underlying violation, must be brought pursuant to one of the causes of action authorized by Section 502(a).

Here, Plaintiffs have the burden of proving the elements of their ERISA §§ 502(a)(2) or (a)(3) claims for underlying violations of ERISA's fiduciary provisions.

**Key Cases**: *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (reiterating that ERISA § 502(a) contains the "exclusive" private causes of action); *Slice v. Sons of Norway*, 34 F.3d 630, 631–32 (8th Cir. 1994) (rejecting argument that claim for violation of ERISA § 404—found in Part 4, like the prohibited-transactions provisions—can be brought independently and not under Section 502); *Sherfel v. Newson*, 768 F.3d 561, 567 (6th Cir. 2014) ("Congress intended ERISA's civil-enforcement provision, 29 U.S.C. § 1132(a), to be the exclusive remedy for rights guaranteed under ERISA[.]"); *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1336 (10th Cir. 2017) (causation is an element of a plaintiff's claim under ERISA § 502(a)(2) and "the plaintiff bears the burden of proving it"); *see also Parmenter v. Prudential Ins. Co. of Am.,* 93 F.4th 13, 19 (1st Cir. 2024) ("A claim for breach of a fiduciary duty under ERISA includes proving a breach, a loss, and the causal connection between the two."); *Parmenter v. Prudential Ins. Co. of Am.*, 93 F.4th 13, 19 (1st Cir. 2024) ("A claim for breach of a fiduciary duty under ERISA includes proving a breach, a loss, and the causal connection between the two."); *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011) (discussing elements of 502(a)(3) claims).

### 3. Plaintiffs Must Prove Causation of Loss and Entitlement to Equitable Relief for Claims Premised on a Prohibited Transaction.

Plaintiffs will rely on the Supreme Court's decision in *Cunningham v. Cornell* to argue that any claims they have brought, whether against fiduciaries or non-fiduciaries, for "prohibited transactions" under ERISA § 406 require Plaintiffs to prove only that a prohibited transaction occurred, because the prohibited-transaction exemptions in ERISA § 408 are affirmative defenses that a fiduciary must prove. But *Cunningham* did not address anything other than the question of whether a plaintiff must *plead*, in order to survive a motion to dismiss, that an exemption does not apply in order to state a claim against a fiduciary for a prohibited transaction. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 700, 145 S. Ct. 1020, 1027, 221 L. Ed. 2d 591 (2025) ("The Court concludes that plaintiffs need do no more than plead a violation . . ." of the prohibited transactions provisions). *Cunningham* did not even mention, much less analyze, ERISA § 502(a) or any other administration and enforcement provision in ERISA. The claim in that case was against a fiduciary who caused the prohibited transaction, and the Court held that a viable claim for the prohibited transaction requires the plaintiff to plead only that the transaction occurred.

With respect to burdens of proof at trial, the Supreme Court did not address that question. The Court also did not overturn extremely well-settled precedent interpreting various provisions in ERISA § 502(a) and explaining what those provisions require plaintiffs to plead and ultimately prove *regardless of the type of underlying violation alleged*. For example, a claim under ERISA § 502(a)(3) is limited to "appropriate equitable relief" to remedy a violation of ERISA or a plan. 29 U.S.C. § 1132(a)(3). On multiple occasions, the Supreme Court has interpreted that type of claim as requiring a plaintiff to

plead and prove that the relief sought truly is equitable and that it is "appropriate" to remedy a violation of ERISA. In fact, several of the key Supreme Court decisions setting forth limits on ERISA § 502(a)(3) claims involved claims for transactions prohibited by ERISA § 406. Not one of those cases held, or remotely suggests, that a plaintiff can bring and win a so-called "prohibited-transactions" claim without meeting the particular requirements for the *type* of prohibited-transactions claim the plaintiff brought pursuant to ERISA § 502(a)(3). Similarly, only ERISA § 502(a) states who has statutory standing to bring claims.

What this means in this case is that Plaintiffs can sufficiently prove that a prohibited-transaction technically occurred without having to prove that an exemption did not apply, and if they make this showing, then the burden will shift to Argent, as fiduciary trustee, or some other defendant, to prove that an exemption was met. But even if Plaintiffs prove that a prohibited transaction occurred, Plaintiffs still bear the burden of proving causation of loss for their claims under ERISA § 502(a)(2) and entitlement to appropriate equitable relief for their claims under ERISA § 502(a)(3). Proving a causal loss requires Plaintiffs to establish a non-speculative causal link between the alleged prohibited transaction and the decrease in the value of their account. Beyond ERISA § 502(a)(2) and § 502(a)(3), Plaintiff must also demonstrate a loss fairly traceable to the alleged prohibited transaction in order to establish Article III standing. If Plaintiffs fail to meet their burden of proving any element of their claims or fail to establish Article III standing for their prohibited transaction claim, then Defendants intend to seek judgment in their favor as a matter of law.

**<u>Key Cases</u>**: *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 120 S. Ct. 2180, 147 L. Ed. 2d 187 (2000) (ERISA § 502(a)(3) authorizes a claim for appropriate equitable relief against a non-fiduciary for an underlying prohibited transaction); *Pioneer Centres*, 858 F.3d at 1336 (a claim under ERISA § 502(a)(2) requires the plaintiff to prove causation of loss); *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1121–22 (D. Colo. 2020) *aff'd* 1 F.4th 769 (10th Cir. 2021) (noting that "the burden to prove that causation 'falls squarely on the plaintiff asserting a breach'"); *see also Henry v. Champlain Enters. Inc.*, 288 F. Supp. 2d 202, 230 (N.D.N.Y. 2003) ("While a district court is indeed vested with consideration discretion in fashioning a remedy for a breach of fiduciary duty, a plaintiff is not excused from demonstrating or alleging at least some loss that is causally connected to the breach."); *McMaken v. GreatBanc Tr. Co.*, No. 17-cv-4983, 2019 WL 1468157, at *5 (N.D. Ill. Apr. 3, 2019) (explaining that prohibited transaction claims brought under 29 U.S.C. § 1132(a)(2) "are a species of fiduciary duty breaches"); *Cunningham v. Cornell*, 604 U.S. 693, 708–09 (2025) ("District courts must also, consistent with Article III standing, dismiss suits that allege a prohibited transaction occurred but fail to identify an injury."); *see also Lujan v. Defs.' of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that a plaintiff must prove standing "adequately by the evidence adduced at trial").

#### 4. Plaintiffs Cannot Prove Misconduct Merely Because Some Defendants Wore Multiple Hats.

At times throughout this case, Plaintiffs argued that individual Envision Defendants acted improperly because they may have had personal or corporate interests that were not aligned with the Plan. Such a claim is patently meritless.

ESOPs, like all employer-sponsored benefit plans, begin with the corporate decision to investigate and potentially pursue formation of the plan. ERISA does not require employers to establish plans or mandate what kinds of benefits employers must provide if they choose to have such a plan. And plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate ERISA plans without acting as fiduciaries.

For those corporate personnel who may have some fiduciary role in the administration of an ERISA plan, ERISA certainly does not prohibit conflicts *per se*. Even those with adverse interests to ERISA plans can serve as fiduciaries, because ERISA only prohibits "actual" disloyalty in making discretionary fiduciary decisions. In ESOPs specifically, Congress and regulatory agencies *wanted* corporations and selling shareholders to use ESOPs for their own benefit—the ESOP's interests are protected by the trustee, while others are free, in their corporate/settlor capacity, or individual capacity, to obtain benefits from an ESOP that Congress created to incentive them to form more ESOPs.

<u>**Key Cases**</u>: *Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 116 S. Ct. 1783, 1788, 135 L. Ed. 2d 153 (1996) ("Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan," and employers are not ERISA fiduciaries when adopting, amending, or terminated plans); *Pegram v. Herdrich*, 530 U.S. 211, 212, 120 S. Ct. 2143, 2145–46, 147 L. Ed. 2d 164 (2000) ("[A]n ERISA fiduciary may also have financial interests adverse to beneficiaries."); *Friend v. Sanwa Bank California*, 35 F.3d 466, 468–69 (9th Cir. 1994) ("Congress never intended section 1104(a)(1) to establish a

per se rule of fiduciary conduct" that prohibits a fiduciary from having conflicting interests); *Kopp v. Klein*, 894 F.3d 214, 222 (5th Cir. 2018) (ERISA permits potentials for conflicts – that is not the same as a plausible claim for actual disloyalty); *see also* Employer Handbook, pp. 27-28 (". . . the exclusive benefit requirement with respect to investments does not prevent others from also deriving some benefit from a transaction with the trust, as a seller would make employer stock available to the trust only if there was a benefit to him by so selling."); Small Bus. Admin. Loans to ESOP's, GCM 37088 (I.R.S. GCM Apr. 14, 1977) ("However, the requirement that the [ESOP] loan be used for the purpose of benefiting the employees and their beneficiaries does not prevent others, including the employer from also deriving some benefit from a transaction with the trust").

**5. ESOPs by Congress' Design Involve Parties with Mutual Oversight Over Each Other.**

In an ESOP—and in any employer-sponsored benefit plan, for that matter—someone or some entity at the corporate level, typically (but not always) the board of directors, has to designate those who will act as fiduciaries. In an ESOP, that includes a trustee with the power to make certain discretionary decisions concerning the stock, which often includes the power to vote for directors. Thus, while the corporate board has the authority to appoint and remove the trustee, the trustee may have the discretionary authority to appoint and remove the directors.

To the extent Plaintiffs argue that this is improper, or *per se* renders the board or trustee beholden to each other, such an argument would be patently meritless. In fact, this precise arrangement was considered, discussed, and *endorsed* by Congress during

debates on significant ERISA amendments proposed in 1986, when Senator Long, the "Father of the ESOP," explained as follows:

> In a similar vein, it should be pointed out that it is not at all uncommon or undesirable for individual fiduciaries selected by the board of directors to be responsible for managing a company's ESOP. In connection with their role of managing the ESOP, these fiduciaries, who may also be corporate officers or directors, are also charged with making investment decisions such as participation in acquisitions by the plan, the distribution of plan benefits (subject to the plan provisions and ERISA) and the determination of the manner in which stock in the ESOP is voted. In making these decisions, fiduciaries are charged with operating in the best interest of plan participants keeping always in mind that the primary purpose of ESOPs under ERISA is to provide for employees a stock ownership interest in their employer.

*See* 132 Cong. Rec. S7892-02, 1986 WL 776243.

### 6. ERISA Regulates Benefit Plans Primarily by Regulating Conduct of Those Who Make Final, Discretionary Decisions About Plan Management and Administration.

Congress drafted ERISA to regulate plans largely by establishing standards of fiduciary conduct when a person actually makes a final, discretionary decision about plan administration and management. Pursuant to ERISA's prohibited-transactions provisions and exemptions, as here with Argent as trustee for the Envision ESOP, an ESOP's trustee is given the exclusive authority over ESOP assets and the discretionary decision whether to cause the ESOP to agree to the transaction's terms. ERISA does not regulate ESOP stock transactions by regulating the conduct of non-fiduciaries or counterparties to ESOP transactions, or settlor corporations that vote and act to establish ERISA plans.

**Key Cases**: *Donovan v. Cunningham*, 716 F.2d 1455, 1464 (5th Cir. 1983) (ERISA regulates largely through fiduciary standards); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023 (N.D. Ill. 2009) (employer's pre-transaction decisions to establish and pursue an ESOP are settlor, non-fiduciary decisions); *Fish v. Greatbanc Tr. Co.*, No. 09 C 1668, 2016 WL

5923448, at *60 (N.D. Ill. Sept. 1, 2016) (independent trustee makes the fiduciary decision on behalf of an ESOP to enter into a transaction, not directors who appointed the trustee); *see also Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2020 WL 3639648, at *7 (N.D. Cal. July 6, 2020) (same).

### 7. ERISA's Fiduciary Duties Must be Interpreted in View of the Type of Plan Involved and Particular Decision Being Made and Consistent with Congressional Intent.

To the extent any Defendants were fiduciaries for some particular purpose, the nature of their fiduciary obligations must be determined within the scope of the particular purpose of their fiduciary function and in view of the specific character and aims of an ESOP. In other words, fiduciaries of an ESOP must act like fiduciaries of ESOPs, not like fiduciaries of 401(k)s, health plans, or other types of plans. ESOPs are commonly used as a form of supplementary retirement plan in addition to a traditional retirement plan like a 401(k). But for purposes of ERISA's standards of conduct, an ESOP is not principally a retirement plan, because an ESOP's goals and operation are fundamentally different. The goals of an ESOP are to provide beneficial ownership of stock to eligible employees, who, through their hard work over time, have the chance to participate in the growth of the company and share in financial rewards, and to provide financing to the corporation to achieve that goal. The ESOP also operates by allowing distributions well before retirement age.

Importantly, during debate on the Tax Reform Act of 1976, Congress went on record as being "deeply concerned that the objectives sought by [ERISA] will be made unattainable by regulations and rulings which treat employee stock ownership plans as conventional retirement plans, which reduce the freedom of employee stock ownership trusts and employers to take the necessary steps to utilize employee stock ownership

plans in a wide variety of corporate transactions, and which otherwise impede the establishment and success of these plans." CONFERENCE REPORT No. 94-1515 on H.R. REP. No. 10612, 94th Cong., 2d Sess. 539 (1976), reprinted in [1976] U.S. CODE CONG. & AD. News 4118, 4235.

Additionally, "Congress's purpose in enacting" ERISA, per legislative history and Congressional materials, is helpful to interpreting ERISA provisions.

**Key Cases/Authority**: *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) ("the adequacy of a fiduciary's investigation is to be evaluated in light of the 'character and aims' of the particular type of plan he serves"); *DeFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 420 (4th Cir. 2007) (ERISA's fiduciary duties must consider "the particular plan and decision at issue"); *Petersen v. Comm'r of Internal Revenue*, 924 F.3d 1111, 1117 (10th Cir. 2019) (courts must apply trust standards bearing in mind the special nature and purpose of employee benefit plans); *see also Senate Committee on Finance Employee Stock Ownership Plans: An Employer Handbook* (1980) ("Employer Handbook"), available at https://www.finance.senate.gov/imo/media/doc/prt96-25.pdf; 132 Cong. Rec. S7934-01, 1986 WL 776250 (Congress' clear intent was that an ESOP is not primarily a retirement plan, but rather has as its primary objective the providing of stock ownership interests for employees and financing); 132 Cong. Rec. S13898-01, 1986 WL 785028. ("My primary purpose in suggesting a restatement of the 1976 provision was due to the thrust of many of the Tax Reform Act's amendments in the employee benefit plan area. In particular, due to this Act's amendments changing the philosophy of many employee benefit plans, the goal was to restate in that context the obvious point made in 1976: ESOPs are not conventional retirement plans") (statement of Senator

Long, the "Father of the ESOP"); 132 Cong. Rec. S7892-02, 1986 WL 776243 ("This amendment recognizes that to treat ESOP's as conventional retirement plans would be inconsistent with Congressional intent encouraging their use as a technique of finance."); Congress was concerned about courts treating ESOPs as traditional retirement plans. *See* CONFERENCE REPORT No. 94-1515 on H.R. REP. No. 10612, 94th Cong., 2d Sess. 539 (1976), reprinted in [1976] U.S. CODE CONG. & AD. News 4118, 4235; *see also* Tax Reform Act of 1976, § 803(h), Pub. L. No. 94-455 (Oct. 4, 1976); see also Small Bus. Admin. Loans to ESOP's, GCM 37088 (I.R.S. GCM Apr. 14, 1977) ("It should be noted, however, that in some cases it may not be appropriate to apply these requirements in the same way to ESOPs as to conventional retirement plans"). ESOPs also were intended to provide benefits to selling shareholders and the employer corporation, including tax benefits. *See* Employer Handbook, pp. 4-5. Evidence of Congressional intent is helpful when interpreting ERISA. *See, e.g., Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1661, 198 L. Ed. 2d 96 (2017) (Extra-statutory sources that evidence "Congress's purpose in enacting" ERISA provisions are helpful to interpreting ERISA); *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 99, 114 S. Ct. 517, 526, 126 L. Ed. 2d 524 (1993) (reviewing legislative history when interpreting ERISA); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254, 128 S. Ct. 1020, 1024, 169 L. Ed. 2d 847 (2008) (ERISA legislative history revealed congressional intent in enacting ERISA §§ 502(a) and 409(a)). Legislative intent has been particularly important to the Supreme Court in interpreting ERISA § 502(a), which sets forth ERISA's exclusive claims and remedies, and the powers and duties of trustees and other fiduciaries. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 217, 124 S. Ct. 2488, 2500, 159 L.

Ed. 2d 312 (2004); *Varity Corp. v. Howe*, 516 U.S. 489, 496, 116 S. Ct. 1065, 1070, 134 L. Ed. 2d 130 (1996) (ERISA legislative history helpful to interpreting powers and duties of trustees and other fiduciaries).

### 8. An ERISA "Prohibited-Transaction" is Not Wrongful Unless an Exemption Does Not Apply.

ERISA § 406(a) contains an extremely broad list of transactions that are prohibited, subject to exemptions in ERISA § 408. The transactions identified in Section 406 include the most common transactions that ERISA plans engage in every day, including hiring recordkeepers and advisors, engaging in financial transactions, and others. It also theoretically encompasses virtually every transaction that forms an ESOP, despite Congress' encouragement of the transactions the statute deems "prohibited." The fact that ERISA has a unique structure that essentially bans every transaction then allows them pursuant to exemptions does not mean that prohibited transactions establish *per se* misconduct under ERISA. A prohibited transaction is only actually unlawful if ERISA's exemptions, including the Adequate Consideration Exemption for ESOP stock transactions, do not apply.

**Key Cases**: *Reich v. Compton*, 57 F.3d 270, 288 (3d Cir. 1995), amended (Sept. 8, 1995) (observing that only "without a § 408 exemption, a per se violation of ERISA exists"); *Martin v. Feilen*, 965 F.2d 660, 670 (8th Cir. 1992) ("Congress has expressly authorized an ESOP to enter into transactions in the employer's stock and with interested parties . . .").

**9. Non-Fiduciaries Must Have Knowledge of a Wrongful Transaction to Potentially Be Subject to Equitable Relief Under ERISA § 502(a)(3).**

Congress drafted ERISA to intentionally limit the potential liability of non-fiduciaries and allocate responsibility based on a person's role in the administration of an ERISA plan. There is a narrow type of claim under ERISA § 502(a)(3) that can be brought against a non-fiduciary who has actual or constructive knowledge of an actual fiduciary's breach of trust. Such a claim is limited to "appropriate equitable relief," and it requires Plaintiffs to prove that a non-fiduciary knew, or should have known, that they were receiving plan assets because of that breach of trust.

**Key Cases**: *Mertens v. Hewitt Associates*, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (ERISA's limitations on actions against non-fiduciaries is "certainly not nonsensical," and the statute "allocates liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds); *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2022 WL 4596576, at *6 (C.D. Cal. Aug. 15, 2022) (for non-fiduciaries to be liable for equitable relief, they must have knowledge of "the circumstances that made the transaction unlawful, beyond the mere fact that it is prohibited from the perspective of a fiduciary"); *Teets v. Great-W. Life & Annuity Ins. Co.*, 286 F. Supp. 3d 1192, 1209 (D. Colo. 2017) ("[A]n ERISA plaintiff cannot rely solely on the knowledge that would satisfy a fiduciary's liability for a prohibited transaction" to satisfy the knowledge requirement for claims against others. "Rather, the plaintiff must show that the defendant knew or should have known that the transaction violated ERISA."); *Rozo v. Principal Life Ins. Co.*, 344 F. Supp. 3d 1025, 1037-38 (granting summary judgment because plaintiff could not show knowledge "that the transaction violated ERISA," not just knowledge of a prohibited

transaction), rev'd on other grounds, 949 F.3d 1071 (8th Cir. 2020); *Walsh v. Vinoskey*, 19 F.4th 672, 677 (4th Cir. 2021) (general knowledge of the transaction "is not enough," the person must know "the circumstances that rendered the transaction unlawful.") (emphasis original); *see also* Restatement (Third) of Trusts § 108 (2012) (third parties have no duty to inquire into trustee powers or conduct); *Su v. Alerus Fin., N.A.*, No. 1:23-CV-00537-DCN, 2025 WL 2712129, at *4 (D. Idaho Sept. 23, 2025) (merely participating in an ESOP transaction is not the same as knowing that the trustee had breached its fiduciary duties).

**10. The Adequate Consideration Exemption Focuses on Conduct, not Price, and the Trustee Complies with ERISA When it Makes a Good-Faith Assessment of Fair Market Value.**

ERISA's Adequate Consideration Exemption for an otherwise prohibited transaction permits a trustee to cause an ESOP to acquire employer stock if for adequate consideration, defined as "fair market value as determined in good faith" by the trustee. 29 U.S.C. §§ 1002(18), 1008(e). This establishes a standard of conduct, and a court reviewing adequate consideration does not conduct a *de novo* review of the valuation.

In situations like the instant case, where a trustee retains an independent, qualified advisor, the trustee satisfies its obligations by reasonably relying on the advisor's opinions, and it is well-established that a trustee does not have to become an expert on valuation in order to rely on the opinion of an expert.

**Key Cases**: *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) ("A court reviewing the adequacy of consideration under Section 3(18) is to ask if the price paid is 'the fair market value of the asset *as determined in good faith by the ... fiduciary*;' it is not to redetermine the appropriate amount for itself de novo.") (emphasis original); *Henry v. Champlain Enterprises, Inc.,* 445 F.3d 610, 620 (2d Cir. 2006) ("Thus, the

adequate consideration test focuses on the conduct of the fiduciaries in determining the price, not the price itself."); *Bussian v. RJR Nabisco, Inc*., 223 F.3d 286, 301 (5th Cir. 2000) (a fiduciary "need not become an expert in the valuation of closely held corporations" to rely on an independent appraisal) (citations omitted); *see also United States v. Boyle,* 469 U.S. 241, 251, 105 S. Ct. 687, 692–93, 83 L. Ed. 2d 622 (1985) (to require one relying on an expert attorney to seek a second opinion "would nullify the very purpose of seeking the advice of a presumed expert in the first place.")

**11. "Appraisal of Closely-Held Stock is a Very Inexact Science," and Fiduciaries Do Not Need to Follow Specific Valuation Approaches as a Matter of Law.**

In exercising their discretion in determining fair market value, ESOP trustees are not required to apply specific valuation approaches. As long as they act in good faith and reasonably under the circumstances, they satisfy their obligation to assess fair market value in good faith.

**Key Cases**: *Donovan v. Cunningham*, 716 F.2d 1455, 1473 (5th Cir. 1983) (appraisal is very inexact); *Herman v. Mercantile Bank, N.A.*, 143 F.3d 419, 422 (8th Cir. 1998) (determining value is not an exact science, and if trustee acted prudently, then trustee met its obligations).

**12. A Company's or Board's "Duty to Monitor" an ESOP Trustee in a Transaction Requires the Company and Board to Respect the Trustee's Independence and Not Meddle in the Trustee's Work or Affairs.**

ERISA requires someone to make the fiduciary decision to hire a trustee, and then someone must have the ability to fire and replace the trustee if circumstances so require. Those roles define the scope of the duty to monitor, depending on the particular type of plan involved and particular situation. In ESOP transactions, the independence of the

trustee is sacrosanct and of utmost importance, and those with a duty to monitor the trustee must only exercise that duty with respect to the hiring and removal of the trustee, if circumstances so require. The duty to monitor does not include, for example, the obligation to review the advice the trustee is obtaining from its advisors and critique the trustee's advisor's valuation opinions.

**Key Cases**: *Fish v. Greatbanc Tr. Co.*, No. 09 C 1668, 2016 WL 5923448, at *49 (N.D. Ill. Sept. 1, 2016)(the duty to monitor only applies to the person or entity that has the power to appoint and remove an ERISA fiduciary); *id.* (finding "particularly persuasive" the argument that a monitoring fiduciary must preserve the trustee's independence by not meddling); *Hudson v. Nat'l Football League Mgmt. Council*, No. 1:18-CV-4483-GHW, 2020 WL 1547467, at *8 (S.D.N.Y. Mar. 31, 2020) ("Put simply, the duty to monitor extends only to ensuring *that* appointing fiduciaries are performing their duties, not how they are performing those duties.") (emphasis original).

## III. Argent's Statement

Argent joins in the sections of the Envision Defendants' Statement that relate to ESOP trustees; specifically, Section II.1, 2, 3, 5, 6, 7, 8, 10, and 11. Argent also adds the following sections regarding principles specific to the Court's review of Argent's fiduciary actions in the 2017 Transaction that Plaintiffs challenge in this lawsuit.

### 1. Courts Apply a Deferential Standard of Review to Fiduciary Actions.

Based on Tenth Circuit precedent, and recent decisions from several Circuits, the Court should apply a deferential abuse of discretion or arbitrary and capricious standard of review in evaluating Argent's fiduciary decisions in the 2017 Transaction.

**Key Cases**: *Ershick v. United Mo. Bank of Kan. City, N.A.*, 948 F.2d 660, 666 (10th Cir. 1991); *Rush v. GreatBanc Tr. Co.*, 182 F.4th 619, 630–32 (7th Cir. 2026); *In re Quest Diagnostic ERISA Litig.*, 179 F.4th 217, 228–29 (3d Cir. 2026).

"The decisions of a fiduciary will be upheld unless they are arbitrary and capricious, not supported by substantial evidence or erroneous on a question of law." *Ershick*, 948 F.2d at 666. This is a "highly deferential" standard of review. *Id.* This applies with particular force to fiduciaries who have discretion over whether to approve an ESOP Transaction. *See Rush*, 182 F.4th at 630–32 (explaining that when evaluating an ESOP administrator's decision to approve the sale of ESOP stock, its decision should "receive judicial deference" and courts should apply an "abuse-of-discretion standard"); *cf. In re Quest*, 179 F.4th at 228–29 (explaining that when a trustee makes a discretionary decision," its "exercise" or that discretion "is not subject to control by the court except to prevent an abuse by the trustee of his discretion").

**2. Plaintiffs' Burden to Prove Argent Breached Its Duty of Prudence and Argent's Burden to Prove the Transaction was for Adequate Consideration Turn on the Same Inquiry: Whether Argent Conducted a Good Faith, Prudent Process.**

Whether Plaintiff can establish a breach of the duty of prudence and whether Argent can establish its affirmative defense under 29 U.S.C. § 1108(e) turns on the same inquiry: whether Argent conducted a prudent process.

**Key Cases**: *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 636–37 (7th Cir. 2005); *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618–20 (2d Cir. 2006) (Sotomayor, J.); *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1123–24 (D. Colo. 2020).

To establish its affirmative defense, Argent must show that the ESOP paid "adequate consideration" for the ESOP's purchase of company stock. *See Keach*, 419

F.3d at 536; *see also Henry*, 445 F.3d at 619. "Adequate consideration" is "the fair market value of the asset as determined in good faith by the trustee." *Keach*, 419 F.3d at 636. While an asset's fair market value and a trustee's good faith are "often stated as distinct requirements," the inquiries "overlap considerably" as both "expressly focus[] on the *conduct* of the fiduciaries." *Henry*, 445 F.3d at 619; *see also Keach*, 419 F.3d at 637 (explaining "[t]he degree to which a fiduciary makes an independent inquiry is critical" to the adequate consideration inquiry). "ESOP fiduciaries will carry the burden of proving that adequate consideration was paid by showing that they arrived at their determination of fair market value by way of a prudent investigation in the circumstances then prevailing." *Henry*, 445 F.3d at 620 (quoting *Eyler v. Comm'r*, 88 F.3d 445, 455 (7th Cir. 1996)). A trustee can show prudent investigation by "securing an independent assessment from a financial advisor or legal counsel," when the trustee also: (1) investigates the expert's qualifications; (2) provides the advisor with complete and accurate information; and (3) reasonably relies on the expert's advice under the circumstances. *Keach*, 419 F.3d at 636–37. These are the same factors considered when determining whether a fiduciary breached the duty of prudence, for which Plaintiffs have the burden of proof. *See Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1123–24 (D. Colo. 2020) (citing *Keach* and using the same factors to determine whether a fiduciary breached the duty of prudence).

## IV. Defendants' Position on Presentation of Witnesses at Trial

Plaintiffs’ statement includes positions regarding how the relative burdens should impact the parties’ presentation of evidence and order of witnesses. These issues would benefit from conferral between the parties and are not ripe for the Court’s consideration.

Defendants position generally is that the blended nature of the burden of proofs between Plaintiffs’ claims (*see* Section III.2 above) combined with the efficiencies attendant to a bench trial warrant certain modifications to the traditional presentation of evidence. Specifically, as to the calling of witnesses, Defendants’ position is that each fact witness shared between witness lists should be called once. When a shared fact witness is called, Defendants would begin with their direct examination, after which Plaintiffs would conduct their direct adverse examination. As to certain experts, specifically Plaintiffs’ rebuttal experts, Defendants’ position is that Plaintiffs’ rebuttal experts should testify after the Defense experts they rebut, with Defendants reserving the right to have their experts respond to Plaintiffs’ rebuttal experts’ testimony.

DATED: August 28, 2026

*/s/ Caroline E. Bressman*
COHEN MILSTEN SELLERS & TOLL LLP
Michelle C. Yau
Daniel R. Sutter
Caroline E. Bressman
Elizabeth M. McDermott
1100 New York Avenue N.W., Suite 800
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com
cbressman@cohenmilstein.com
emcdermott@cohenmilstein.com

Ryan Wheeler
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
rwheeler@cohenmilstein.com

*Counsel for Plaintiffs and the Rule 23 Class*

*/s/ Richard J. Pearl*
FAEGRE DRINKER BIDDLE & REATH LLP
Richard J. Pearl
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Tel: (312) 569-1907
rick.pearl@faegredrinker.com

Allison S. Egan
One Logan Square, Suite 2000
Philadelphia, PA 19103
(T) (215) 988-1982
allison.egan@faegredrinker.com

John W. Fogarty
1177 Avenue of the Americas, 43rd Floor
New York, NY 10036
(T) (212) 248-3245
john.fogarty@faegredrinker.com

Molly Nelson-Regan
1500 K Street, Suite 1100
Washington, DC 20005
(T) (202) 230-5257
molly.nelson-regan@faegredrinker.com

MOORE & VAN ALLEN PLLC

Mark A. Nebrig
Kaitlin M. Price
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(T) (704) 331-1000
marknebrig@mvalaw.com

*Counsel for Envision Management Holding, Inc. Board of Directors, Envision Management Holding, Inc. Employee Stock Ownership Plan Committee, Darrel Creps, III, Paul Sherwood, Jeff Jones, Aaron Ramsay, and Tanweer Khan*

s/ *Paul J. Rinefierd*
GROOM LAW GROUP, CHARTERED
Lars C. Golumbic
William J. Delany
Andrew D. Salek-Raham
Paul J. Rinefierd
Theodore A. Van Beek
1701 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel: (202) 857-0620
lgolumbic@groom.com
wdelany@groom.com
asalek-raham@groom.com
prinefierd@groom.com
tvanbeek@groom.com

*Counsel for Defendant Argent Trust Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 28, 2026, a true and correct copy of the foregoing was served on all counsel of record.

*/s/ Richard J. Pearl*